Jared W. Allen, ISB No. 5793
BEARD ST. CLAIR GAFFNEY PA
955 Pier View Drive
Idaho Falls, ID 83402
Tel: (208) 523-5171
Fax: (208) 529-9732
Email: allen@beardstclair.com

Glenn D. Bellamy, Ohio Bar No. 0070321 (Pro Hac Vice forthcoming)
Wood Herron & Evans LLP
600 Vine Street, Suite 2800
Cincinnati, OH 45202
Tel: (513) 707-0243
Fax: (513) 241-6234
E-mail: gbellamy@whe-law.com

Matthew A. Colvin Texas Bar No. 24087331 (Pro Hac Vice forthcoming)
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201
E-mail: colvin@fr.com
Tel: (214) 747-5070
Fax: (214) 747-2091

Attorneys for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| ABC IP, LLC, a Delaware limited liability company, RARE BREED TRIGGERS, INC., a Texas corporation, and RBTM LLC, a Wyoming limited liability company,<br><br>Plaintiffs,<br><br>vs.<br><br>ODIN WORKS, INC. an Idaho corporation, and THOMAS HINES, an individual,<br><br>Defendants. | Case No.:<br><br>COMPLAINT FOR PATENT AND TRADEMARK INFRINGEMENT AND JURY DEMAND |

This is an action for patent and trademark infringement in which ABC IP LLC ("ABC"), Rare Breed Triggers, Inc. ("Rare Breed"), and RBTM LLC ("RBTM") (collectively, "Plaintiffs") accuse ODIN Works, Inc. and Thomas Hines (collectively, "Defendants") of infringing U.S. Patent Nos. 12,038,247, 12,031,784, 12,578,159, 10,514,223, 11,724,003, 12,036,336, 12,274,807, and 12,636,403; infringing Plaintiffs' trademark rights; and engaging in unfair competition as follows:

**PARTIES**

1. ABC is a limited liability company organized under the laws of the State of Delaware with an address at 8 The Green, Suite A, Dover, Delaware 19901.

2. Rare Breed is a Texas corporation having a place of business at 2710 Central Freeway, Suite 150-151, Wichita Falls, TX 76306.

3. RBTM is a limited liability company organized under the laws of the State of Wyoming with an address at 1309 Coffeen Avenue, STE 1200, Sheridan, Wyoming 82801.

4. Upon information and belief, ODIN Works, Inc. is a corporation organized under the laws of Idaho with an address of 11350 W Executive Drive, Boise, ID 83713.

5. Upon information and belief, Thomas Hines is an individual residing at 1356 N Caterpillar Ave, Kuna, ID 83634, who is the owner or an owner of ODIN Works, Inc. and directs its operations, including directing ODIN Works, Inc. to sell products in violation of the Asserted Patents.

**JURISDICTION AND VENUE**

6. This is an action for patent infringement arising under 35 U.S.C. §§ 271(a)–(c), 281, and 284–85; trademark infringement; false designation of origin; and unfair competition under 15 U.S.C. §§ 1114 and 1125(a).

7. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1338, which directs that United States District Courts shall have original jurisdiction of any civil action

arising under any Act of Congress relating to patents and pursuant to 28 U.S.C. § 1331, which pertains to civil actions arising under the laws of the United States.

8. Personal jurisdiction over Defendants is proper in this District because the Defendants reside in and have a regular and established place of business in this District.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1400(b). Defendants reside in or have committed acts of infringement and have a regular and established place of business in this District.

**BACKGROUND**

10. This lawsuit asserts (a) direct, contributory, and induced infringement of U.S. Patent Nos. 12,038,247 ("the '247 Patent"), 12,031,784 ("the '784 Patent"), 12,578,159 ("the '159 Patent"), 10,514,223 ("the '223 Patent"), 11,724,003 ("the '003 Patent"), 12,036,336 ("the '336 Patent"), 12,274,807 ("the '807 Patent), and 12,636,403 ("the '403 Patent) (together, "the Asserted Patents"); and (ii) trademark infringement, false designation of origin, and unfair competition with regard to Plaintiffs' well-known FRT trademark.

11. The '247 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 16, 2024. Each and every claim of the '247 Patent is valid and enforceable. A true and correct copy of the '247 Patent is attached as Exhibit A.

12. The '784 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 9, 2024. Each and every claim of the '784 Patent is valid and enforceable. A true and correct copy of the '784 Patent is attached as Exhibit B.

13. The '159 Patent was lawfully and properly issued by the United States Patent and Trademark Office on March 17, 2026. Each and every claim of the '159 Patent is valid and enforceable. A true and correct copy of the '159 Patent is attached as Exhibit C.

14. The ’223 Patent was lawfully and properly issued by the United States Patent and Trademark Office on December 24, 2019. Each and every claim of the ’223 Patent is valid and enforceable. A true and correct copy of the ’223 Patent is attached as Exhibit D.

15. The ’003 Patent was lawfully and properly issued by the United States Patent and Trademark Office on August 15, 2023. Each and every claim of the ’003 Patent is valid and enforceable. A true and correct copy of the ’003 Patent is attached as Exhibit E.

16. The ’336 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 16, 2024. Each and every claim of the ’336 Patent is valid and enforceable. A true and correct copy of the ’336 Patent is attached as Exhibit F.

17. The ’807 Patent was lawfully and properly issued by the United States Patent and Trademark Office on April 15, 2025. Each and every claim of the ’807 Patent is valid and enforceable. A true and correct copy of the ’807 Patent is attached as Exhibit G.

18. The ’403 Patent was lawfully and properly issued by the United States Patent and Trademark Office on May 26. 2026. Each and every claim of the ’403 Patent is valid and enforceable. A true and correct copy of the ’403 Patent is attached as Exhibit H.

19. ABC is the current owner by assignment of all right, title and interest in and to the Asserted Patents. These assignments have been recorded at the United States Patent and Trademark Office (“USPTO”).

20. RBTM is the owner of the trademark FRT ® and variations thereof. Since at least 2020, the FRT ® mark has been used by Plaintiff Rare Breed to identify a unique trigger for firearms, which has been a remarkably successful offering. As a result of the long-term and high-profile use, the FRT ® trademark has come to be uniquely identified with Rare Breed and a valuable identifier of Rare Breed’s products. In addition to strong common law rights in the FRT ®

trademark, RBTM also owns the following federally registered trademarks and pending applications, including the right to enforce the marks against infringers:

| Mark | Goods | App. No. | Reg. No. | App. Date | Reg. Date |
|---|---|---|---|---|---|
| FRT | triggers for firearms | 97248519 | 8187914 | 2022-02-01 | 2026-03-24 |
| FRT-15 | triggers for firearms | 97245949 | 7004418 | 2022-01-31 | 2023-03-21 |
| FRT-22 | triggers for firearms | 97248530 | 8232406 | 2022-02-01 | 2026-04-28 |
| FRT-47 | triggers for firearms | 97248528 | 8232405 | 2022-02-01 | 2026-04-28 |
| FRT-MR3 | triggers for firearms | 99714625 | | 2026-03-20 | |
| FRT-RD3 | triggers for firearms | 99714703 | | 2026-03-20 | |
| FRT-15L3 | triggers for firearms | 98715335 | 8225451 | 2024-08-24 | 2026-04-21 |

Together, Plaintiffs' common law rights in and federal trademark registrations and pending applications are referred to as the "FRT Marks."

21. Rare Breed is the exclusive licensee of the Asserted Patents and the FRT Marks.

22. Plaintiffs have complied with the requirements of 35 U.S.C. § 287 either because the Asserted Patents are not practiced by ABC or any licensee and/or because any licensee has been required to mark its product.

23. Upon information and belief, Defendants have committed acts of direct, contributory, and induced patent infringement, which will be described in more detail below. These acts are in violation of 35 U.S.C. § 271 and should be considered willful.

**THE INVENTIONS**

24. A typical AR15-pattern firearm, for example, is considered a semiautomatic firearm. The operation of a *standard disconnector* AR-pattern trigger mechanism is commenced by the trigger member being pulled by the user. The trigger member releases the hammer from the

trigger sear and allows the hammer to strike the firing pin. A portion of the propellant gas is used to begin the process of sending the bolt carrier to the rear of the firearm. The rearward movement of bolt carrier cocks the hammer on the disconnector and then the bolt is allowed to return forward into battery with a new round inserted into the chamber. While this is happening, in the standard AR-pattern semiautomatic trigger, the user can either continue to hold the trigger member in a pulled (i.e., fired) state or allow the trigger to return to its reset state, in which the sear, rather than the disconnector, engages and holds the hammer in a cocked position. When the user reduces pressure on the trigger member to allow the trigger spring to reset the trigger member, the disconnector releases the hammer to engage the trigger sear.

25. In the standard AR-pattern trigger assembly, the purpose of the disconnector is to hold the hammer in a cocked position until the trigger member is reset by a trigger spring when the user lets the trigger reset. The disconnector allows the firearm to be fired only a single time when the trigger is pulled and held, because the user is not typically able to manually reset the trigger rapidly enough so that the sear engages before the bolt carrier or bolt returns to its in-battery position. The disconnector prevents the firearm from either firing multiple rounds on a single pull of the trigger, or from allowing the hammer to simply "follow" the bolt carrier as it returns to battery without firing a second round, leaving the hammer uncocked.

26. In contrast, in what Plaintiffs have coined a "forced reset" trigger mechanism, cycling of the bolt carrier or bolt causes the trigger member to be mechanically moved to the reset position and hold the trigger member there until the bolt or bolt carrier is back in battery, when it is safe for the user to pull the trigger again, without the need for a disconnector.

27. The '247 and '159 Patents provide a novel device for accelerating the firing sequence of any semiautomatic firearm, in contrast to a standard semiautomatic trigger or other

prior art devices that allow an accelerated rate of semiautomatic firing. The device can be selected to operate in either a standard semiautomatic mode or a “forced reset” semiautomatic mode and uses a cam, rotated by cycling of the action, to cause the trigger member to reset and prevent the trigger member from being pulled again until the action has returned to the in-battery position.

28. The ’784 Patent provides a device that works in a trigger system as an extended trigger member locking mechanism for use with a semi-automatic firearm that employs, in some embodiments, a “deflectable extension of the locking member that is actuated by forward movement of the bolt carrier,” among other innovations as explicitly claimed. Certain inventions of the ’784 Patent overcome the geometric limitations of prior art designs for use in multiple and varied semi-automatic firearm designs by allowing a locking member to deflect or fold separately from the body portion of the locking member when contacted by the forward portion of the bolt carrier as it cycles to the rear.

29. The ’223 Patent describes and claims a device in which the cycling of the action causes hammer contact with the trigger member to mechanically reset the hammer and trigger member. A locking bar prevents the trigger member from being pulled again by the user until the bolt carrier has returned to the in-battery position.

30. The ’003 Patent, the ’336 Patent, the ’807 Patent, and the ’403 Patent describe and claim a similarly operating device with the additional feature that it can be selected to operate in either of two distinct modes: 1) standard disconnector semiautomatic mode and 2) “forced reset” semiautomatic mode.

31. The claims of the patents define the scope of the patented inventions.

## THE INFRINGING DEVICES

32. On information and belief, Defendants previously or are currently making, using, selling, and/or offering for sale products that embody the technology claimed in the Asserted Patents, including the following (collectively, the "Infringing Devices"):

### I. The Arizona Regulator

33. On information and belief, Defendants previously or are currently making, using, selling, and/or offering for sale an Arizona Regulator ("the Arizona Regulator"), which embodies the technology claimed in at least the '247, '784, '159, and '403 Patents.

34. On information and belief, Defendant previously or is currently making, using, selling, and/or offering for sale the Arizona Regulator via the website https://www.odinworks.com/category-s/2033.htm, in multiple variants, including at least:

a. As a standalone product; and/or

b. Pre-installed in a receiver and/or complete firearm.

35. Exemplary photographs are shown below:







36. The Arizona Regulator can operate in at least a "disconnector mode," which is much like that of a standard AR-15 trigger. The user can switch between standard semiautomatic

with disconnector and "forced reset" semiautomatic with cam modes by rotating the safety selector between positions.

## II. The Disruptor

37. On information and belief, Defendants previously or are currently making, using, selling, and/or offering for sale a (3-Position) Disruptor ("the Disruptor"), which embodies the technology claimed in at least the '223, '003, '336, '807, and '403 Patents.

38. On information and belief, Defendants previously or are currently making, using, selling, and/or offering for sale the Disruptor via the website https://www.odinworks.com/category-s/2033.htm, in multiple variants, including at least:

c. As a standalone product; and/or

d. Pre-installed in a receiver and/or complete firearm.

39. Exemplary photographs are shown below:



40. The Disruptor also operates in a “disconnector mode,” which is much like that of a standard AR-15 trigger. The user can switch between safe, standard semiautomatic with disconnector, and “forced reset” semiautomatic with cam modes by moving the safety selector between positions.

41. When the Disruptor operates in the “forced reset” mode, the cycling of the action causes hammer contact with the trigger member to mechanically reset the hammer and trigger member. A locking bar/member prevents the trigger member from being pulled again by the user until the bolt carrier has returned to the in-battery position.

42. When in the standard semi-automatic mode, rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, at which time a user must manually reduce pressure on the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm again.

43. When in the “forced reset” semi-automatic mode, rearward movement of the bolt carrier causes rearward pivoting of the hammer causing the trigger member to be mechanically moved to the set position, the safety selector preventing the disconnector hook from catching the hammer hook, and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull the trigger member to fire the firearm without manually releasing the trigger member.

**INFRINGEMENT OF THE FRT MARKS**

44. On information and belief, Defendants are distributing, advertising, and/or selling products that do not originate with Plaintiffs but that nonetheless bear or are promoted in association with the FRT Marks.

45. Defendants are falsely associating their products with Plaintiffs’ well-known FRT Marks.

46. Defendants are advertising their products as “FRT” as shown at: https://www.odinworks.com/searchresults.asp?Search=FRT&Submit=.

47. Exemplary highlighted images are shown below:






Larger Photo

## H-FRT - Heavy Buffer for Forced Reset Triggers - AR15

Price: $79.00
Sale Price: $75.05
Savings: $3.95

**Availability::** Usually Ships in 1 to 2 Weeks
Product Code: OS-BS-HFRT-AR15

QTY:

- 1 +

Add To Cart

Add To Wishlist

**Description** | **Warranty Policy & Prop. 65 Warning**

The ODIN Works Heavy Buffer is built to run with Forced Reset Triggers. It offers a simplified, performance-driven approach to firearm tuning, delivering consistent cycling and recoil control without the need for adjustment. Designed to run smoothly on a variety of setups, this buffer achieves increased weight and pairs with a proprietary flat wire spring for reliable operation.

Helps manage recoil impulse, reduce wear on moving components, and and aid in reliable cycling with an FRT in AR-15 platforms.

***Includes proprietary flat wire spring**

**NOTE: Due to the wide variety of AR-platform configurations, the ODIN Works H-FRT Buffer may not function optimally in every firearm with an aftermarket FRT. Some rifles may require adjustments to the gas system, buffer weight, spring, or other operating components to achieve reliable performance. As with any performance upgrade, proper tuning may be necessary based on your specific firearm configuration and ammunition.**

**H-FRT (AR-15) should only be used on firearms with barrels over 10"**




## H-FRT9 - Heavy Buffer for Forced Reset Triggers - AR9

Price: $79.00
Sale Price: $75.05
Savings: $3.95

Availability:: Usually Ships in 1 to 2 Weeks
Product Code: OS-BS-HFRT-9

QTY:

- 1 +

Add To Cart

Add To Wishlist

Description | Warranty Policy & Prop. 65 Warning

The ODIN Works Heavy Buffer is built to run with Forced Reset Triggers. It offers a simplified, performance-driven approach to blowback PCC tuning, delivering consistent cycling and recoil control without the need for adjustment. Designed to run smoothly on a variety of setups, this buffer achieves increased weight and pairs with an (included) proprietary flat wire spring for reliable operation.

Aids in reliable cycling with an FRT in AR-9 platforms, manages recoil impulse, and reduces wear on moving components.

**NOTE: Due to the wide variety of AR-platform configurations, the ODIN Works H-FRT Buffer may not function optimally in every firearm with an aftermarket FRT. Some rifles may require adjustments to the gas system, buffer weight, spring, or other operating components to achieve reliable performance. As with any performance upgrade, proper tuning may be necessary based on your specific firearm configuration and ammunition.**

***Includes proprietary flat wire spring**




## 3 Position Forced Reset Trigger | Arizona Regulator

Price: $288.00
Sale Price: $273.60
Savings: $14.40

Product Code: AZR-15A1

QTY:

- 1 +

Add To Cart

Add To Wishlist

Description | Warranty Policy & Prop. 65 Warning

**Arizona Regulator® Forced Reset Triggers**

**Distributed by ODIN Works**

ODIN Works is proud to announce our partnership with **Arizona Regulator®** as an authorized distributor of their Forced Reset Trigger (FRT) products. These systems are engineered for reliability, precision manufacturing, and compatibility with Mil-Spec AR platforms when installed according to manufacturer guidelines.

AZR-15A1 - 3 Position Selector




48. Despite Defendants' marketing, Defendants' products are **not** one of Plaintiffs' FRT products.

49. Defendants' unauthorized use of the FRT Marks to identify and promote their products is likely to mislead consumers into falsely believing that Defendants' products are in fact Plaintiffs' products, or are endorsed by or associated with Plaintiffs.

50. The only reason Defendants would use the FRT Marks in connection with their products is to trade on the goodwill Plaintiffs have developed in the FRT Marks, and thus Defendants' conduct is willful.

**COUNT I — INFRINGEMENT OF THE '247 PATENT**

51. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

52. In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '247 Patent, including but not limited to claim 15, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '247 Patent. Such unlicensed products include the Arizona Regulator.

53. On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '247 Patent, including but not limited to claim 15, literally and/or under the doctrine of equivalents.

54. An exemplary comparison of the Arizona Regulator, when assembled and used as intended, with claim 15 of the '247 Patent, is illustrated in the chart below:

| **'247 Patent, Claim 15** | **Infringing Device (Arizona Regulator)** |
|---|---|
| 15. A firearm trigger mechanism comprising: | When installed and used as directed, the Arizona Regulator is part of a forced reset trigger mechanism and functions as a cam that in at least one mode, both forces the reset of the trigger and locks the trigger during the cycle of operation. |

| ’247 Patent, Claim 15 | Infringing Device (Arizona Regulator) |
| --- | --- |
| | <br>https://www.odinworks.com/category-s/2033.htm<br><br><br>**Arizona Regulator** |
| a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver | The Arizona Regulator (Green, Blue, Magenta, and Yellow) is installed in a fire control mechanism pocket of a receiver along with a hammer (Red) that has a sear catch and a hook for engaging a disconnector (Orange). |

<table>
<tr><th>’247 Patent, Claim 15</th><th>Infringing Device (Arizona Regulator)</th></tr>
<tr><td></td><td><br>(Plaintiff-generated renderings of Arizona Regulator here and below)</td></tr>
<tr><td>to pivot on a transverse hammer pivot axis between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier,</td><td>The hammer (Red) pivots on a transverse hammer pivot axis between set and released positions, depicted below. The hammer is adapted to be pivoted rearward by rearward movement of a bolt carrier.<br><br>Hammer Set Position</td></tr>
</table>

| ’247 Patent, Claim 15 | Infringing Device (Arizona Regulator) |
| --- | --- |
| | <br>**Hammer Released Position** |
| a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, | The Arizona Regulator (Green, Blue, Magenta, and Yellow) is installed with a trigger member (Brown) in the fire control mechanism pocket and the trigger member pivots on a transverse trigger member pivot axis between set and released positions. The trigger member (Brown) has a sear.<br> |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member | The sear of the trigger member (Brown) and sear catch of the hammer (Red) are in engagement when the hammer and trigger member are in their set positions. |

| ’247 Patent, Claim 15 | Infringing Device (Arizona Regulator) |
|---|---|
| | <br>**Trigger Member Set Position** |
| and are out of engagement in said released positions of said hammer and trigger member, | The sear of the trigger member (Brown) and sear catch of the hammer (Red) are out of engagement in the released position.<br><br>**Trigger Member Released Position** |
| said disconnector having a hook for engaging said hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, | The disconnector (Orange) is adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis. The disconnector has a hook for engaging the hammer (Red). |

| ’247 Patent, Claim 15 | Infringing Device (Arizona Regulator) |
|---|---|
| |  **Disconnector Hook Engaged** |
| and a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, | The Arizona Regulator has a cam with a cam lobe and lever that is adapted to be movably mounted in the fire control mechanism pocket. (*See* Image above depicting Arizona Regulator, shown in green, blue, magenta, and yellow in fire control mechanism pocket)   **Arizona Regulator Cam with Lobe and Lever** |
| said cam being movable between a first position and a second position, in said second position said cam lobe forces said trigger member towards said set position, | The cam is movable between a first position and a second position. |

| '247 Patent, Claim 15 | Infringing Device (Arizona Regulator) |
|---|---|
| | <br>**Cam and Lobe First Position**<br><br>In the second position, the cam lobe forces the trigger member (Brown) toward the set position when the cam is in the forced reset semi-automatic mode.<br><br>**Cam and Lobe Second Position** |
| whereupon in a standard semi-automatic mode, | During at least part of the cycle in the standard semi-automatic mode, |

| ’247 Patent, Claim 15 | Infringing Device (Arizona Regulator) |
|---|---|
| said cam is in said first position, |  |
| rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, | . . . the cam is in the first position during at least part of the cycle.  |
| and thereafter the bolt carrier moves forward into battery, | Rearward movement of the bolt carrier causes rearward pivoting of the hammer (Red) such that the disconnector (Orange) hook catches the hammer hook. |
| at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger | |

| ’247 Patent, Claim 15 | Infringing Device (Arizona Regulator) |
|---|---|
| member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and |  Thereafter, the bolt carrier moves forward into battery,  . . . at which time a user must manually release the trigger member (Brown) to free said hammer (Red) from the disconnector (Orange) to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. |

| ’247 Patent, Claim 15 | Infringing Device (Arizona Regulator) |
|---|---|
| |  |
| whereupon in a forced reset semi-automatic mode,<br><br>said cam is in said second position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook is prevented from catching said hammer hook, | When in the forced reset semi-automatic mode,<br><br>. . . the cam is in the second position during at least part of the cycle and forces the trigger member toward the set position. Rearward movement of the bolt carrier causes rearward pivoting of the hammer (Red) such that the disconnector (Orange) hook is prevented from catching the hammer hook. |

<table>
<tr><th>’247 Patent, Claim 15</th><th>Infringing Device (Arizona Regulator)</th></tr>
<tr><td></td><td></td></tr>
<tr><td>and thereafter the bolt carrier moves forward into battery,<br><br>at which time the user can pull said trigger member to fire the firearm.</td><td>Thereafter, the bolt carrier moves forward into battery,<br><br>. . . at which time the user can pull the trigger member (Brown) to fire the firearm.</td></tr>
</table>

| '247 Patent, Claim 15 | Infringing Device (Arizona Regulator) |
| --- | --- |
| |  |

55. On information and belief, in addition to direct infringement, Defendants take active steps to induce others, including their customers, to directly infringe the '247 patent. Defendants take such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, installation of, encouraging, advertising, promoting, and instructing others to use and/or how to use the Arizona Regulator.

56. On information and belief, Defendants know or should know that such activities induce others to directly infringe at least claim 15 of the '247 Patent.

57. On information and belief, Defendants also contribute to the infringement of the '247 Patent by others, including their customers. Acts by Defendants that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendants of the components of the Arizona Regulator, such as the cam or cam lever arm. The components are not suitable for substantial noninfringing use as they are specially designed and

adapted to be used in a fire control unit to mechanically reset a trigger mechanism and infringe the ’247 Patent.

58. Defendants have engaged in egregious infringement behavior with knowledge of the ’247 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the ’247 Patent and that the ’247 Patent is valid at least through the service of this complaint. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the ’247 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the ’247 Patent.

59. By their actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the ’247 Patent pursuant to 35 U.S.C. § 271.

60. By their actions, Defendants’ infringement of the ’247 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

61. By their actions, Defendants’ infringement of the ’247 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

62. Defendants’ infringement of the ’247 patent is exceptional and entitles Plaintiffs to attorneys’ fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

63. Defendants’ acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs’ business, sales, reputation, and good-will.

64. Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

**COUNT II — INFRINGEMENT OF THE '784 PATENT**

65. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

66. In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '784 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '784 patent. Such unlicensed products include the Arizona Regulator.

67. On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '784 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents.

68. An exemplary comparison of the Arizona Regulator, when assembled and used as intended, with claim 1 of the '784 Patent, is illustrated in the chart below:

| **Claim 1: Language** | **Infringing Device (Arizona Regulator)** |
|---|---|
| 1. In a forced reset trigger mechanism, an extended trigger member locking device, comprising: | When installed and used as directed, the Arizona Regulator is part of a forced reset trigger mechanism and functions as an extended trigger member locking device. |

| Claim 1: Language | Infringing Device (Arizona Regulator) |
| --- | --- |
| | <br>https://www.odinworks.com/category-s/2033.htm<br><br><br>**Arizona Regulator** |

| Claim 1: Language | Infringing Device (Arizona Regulator) |
|---|---|
| | <br>**Arizona Regulator Installed**<br>(Plaintiff-generated renderings of Arizona Regulator here and below; Housing and bolt carrier shown here and below in section view for clarity) |
| a locking member that is movable between a first position in which it locks a trigger against pulling movement | The Arizona Regulator has a locking member **(Blue)** which has a first position in which the trigger member is locked against pulling movement.<br><br>**Locked First Position** |
| and a second position where it does not restrict movement of the trigger member, | The locking member **(Blue)** is moveable from the first position to a second position where it does not restrict movement of the trigger member. |

| Claim 1: Language | Infringing Device (Arizona Regulator) |
|---|---|
| |  **Unlocked Second Position** |
| the locking member configured to be movably supported by a frame | The locking member **(Blue)** is movably (pivotally about the axis depicted below) supported by a frame **(Magenta)**.  |

<table>
<tr><th>Claim 1: Language</th><th>Infringing Device (Arizona Regulator)</th></tr>
<tr><td></td><td></td></tr>
<tr><td>and including a generally upward extension portion configured to make actuating contact with a surface of the bolt carrier,</td><td>The locking member has an upward extending portion (Green) configured to make actuating contact with a surface of the bolt carrier (Gray).<br><br>Actuating Contact When Bolt Carrier Cycles Rearward</td></tr>
</table>

<table>
<tr><th>Claim 1: Language</th><th>Infringing Device (Arizona Regulator)</th></tr>
<tr><td></td><td><br>Actuating Contact When Bolt Carrier Cycles Forward</td></tr>
<tr><td>such actuating contact causing the locking member to move from the first position to the second position,</td><td>The actuating contact with the extension portion (Green) causes the locking member (Blue) to move from the first position to the second position.<br><br>Locked First Position</td></tr>
</table>

| Claim 1: Language | Infringing Device (Arizona Regulator) |
|---|---|
| |  **Unlocked Second Position** |
| the locking member having a body portion that is movably supported | The locking member has a body portion **(Blue)** that is movably supported by a housing **(Magenta).**  |
| and an upwardly extending deflectable portion that is separately movable relative to the body portion between an extended position and a deflected position. | The upwardly extending deflectable lever arm is designed to allow separate movement of the lever arm relative to the body portion **(Blue)** between one position (depicted in green) where it is extended and another position where it is deflected (depicted in red). This independent movement occurs at the beginning of the deflectable portion (lever arm) movement as it makes actuating contact with the bolt carrier both as the bolt carrier moves rearward . . . |

| Claim 1: Language | Infringing Device (Arizona Regulator) |
|---|---|
| | <br>**Deflection of Upwardly Extending Deflectable Portion Separately From Body Portion as Bolt Carrier Moves Rearward**<br><br>. . . and as the bolt carrier moves forward.<br><br><br>**Deflection of Upwardly Extending Deflectable Portion Separately From Body Portion as Bolt Carrier Moves Forward** |

69. On information and belief, in addition to direct infringement, Defendants take active steps to induce others, including their customers, to directly infringe the ’784 patent. Defendants take such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, installation of, encouraging, advertising, promoting, and instructing others to use and/or how to use the Arizona Regulator while selling products.

70. On information and belief, Defendants know or should know that such activities induce others to directly infringe at least claim 1 of the ’784 Patent.

71. On information and belief, Defendants also contribute to the infringement of the ’784 Patent by others, including their customers. Acts by Defendants that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendants of the components of the Arizona Regulator, such as the cam or cam lever arm. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to mechanically reset a trigger mechanism and infringe the ’784 Patent.

72. Defendants have engaged in egregious infringement behavior with knowledge of the ’784 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the ’784 Patent and that the ’784 Patent is valid at least through the service of this complaint. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the ’784 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and

the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the ’784 Patent.

73. By their actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the ’784 Patent pursuant to 35 U.S.C. § 271.

74. By their actions, Defendants’ infringement of the ’784 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

75. By their actions, Defendants’ infringement of the ’784 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

76. Defendants’ infringement of the ’784 patent is exceptional and entitles Plaintiffs to attorneys’ fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

77. Defendants’ acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs’ business, sales, reputation, and good-will.

78. Plaintiffs have been substantially harmed by Defendants’ infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys’ fees.

**COUNT III — INFRINGEMENT OF THE ’159 PATENT**

79. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

80. In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the ’159 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed

products in a manner that infringes the ’159 patent. Such unlicensed products include the Arizona Regulator.

81. On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the ’159 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents.

82. An exemplary comparison of the Arizona Regulator, when assembled and used as intended, with claim 1 of the ’159 Patent is illustrated in the chart below:

| **’159 Patent, Claim 1** | **Infringing Device (Arizona Regulator)** |
| --- | --- |
| 1. A firearm trigger mechanism for a firearm having a fire control mechanism pocket and a reciprocating bolt means, the trigger mechanism operable in a first, standard semi-automatic mode and in a second, forced reset semi-automatic mode, the mechanism comprising: | When installed and used as directed, the Arizona Regulator is part of a forced reset trigger mechanism that uses a bolt means. With the Arizona Regulator installed, the trigger mechanism operates in a standard semi-automatic mode and a forced reset semi-automatic mode  https://www.odinworks.com/category-s/2033.htm |

| ’159 Patent, Claim 1 | Infringing Device (Arizona Regulator) |
|---|---|
| | <br><br>**Arizona Regulator** |
| a hammer having a sear surface and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver | The Arizona Regulator **(Green, Blue, Magenta and Yellow)** is installed in a fire control mechanism pocket of a receiver along with a hammer **(Red)** that has a sear surface and a hook for engaging a disconnector **(Orange)**.<br><br><br>(Plaintiff-generated renderings of Arizona Regulator here and below) |
| to pivot on a transverse hammer pivot axis between set and released positions, the hammer adapted to be pivoted rearward by rearward | The hammer **(Red)** pivots on a transverse hammer pivot axis between set and released positions, depicted below. The hammer is adapted to be pivoted rearward by rearward movement of a bolt means. |

| '159 Patent, Claim 1 | Infringing Device (Arizona Regulator) |
|---|---|
| movement of a bolt means, |   **Hammer Set Position**  **Hammer Released Position** |
| a trigger member having a trigger sear surface and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis<br><br>between set and | The Arizona Regulator **(Green, Blue, Magenta, and Yellow)** is installed with a trigger member **(Brown)** in the fire control mechanism pocket and the trigger member pivots on a transverse trigger member pivot axis between set and released positions. The trigger member has a sear surface. |

| ’159 Patent, Claim 1 | Infringing Device (Arizona Regulator) |
|---|---|
| released positions, |  **Trigger Member Set Position**  **Trigger Member Released Position** |
| wherein the trigger member sear surface and hammer sear surface are in engagement in the set positions of the hammer and trigger member | The sear surface of the trigger member **(Brown)** and sear surface of the hammer **(Red)** are in engagement when the hammer and trigger member are in their set positions. |

| ’159 Patent, Claim 1 | Infringing Device (Arizona Regulator) |
|---|---|
| |   **Trigger Member and Hammer Member Set Position** |
| and are out of engagement in the released positions of the hammer and trigger member, | The sear surface of the trigger member **(Brown)** and sear catch surface of the hammer **(Red)** are out of engagement in the released position.   **Trigger Member and Hammer Member Released Positions** |
| the disconnector having a hook for engaging the hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a | The disconnector **(Orange)** is adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis. The disconnector has a hook for engaging the hammer **(Red)**. |

| ’159 Patent, Claim 1 | Infringing Device (Arizona Regulator) |
|---|---|
| transverse disconnector pivot axis, and |   **Disconnector Hook Engaged** |
| a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, | The Arizona Regulator has a cam with a cam lobe and lever that is adapted to be movably mounted in the fire control mechanism pocket. (*See* Image above depicting Arizona Regulator, shown in green, blue, and magenta, in fire control mechanism pocket) |

| ’159 Patent, Claim 1 | Infringing Device (Arizona Regulator) |
|---|---|
| | <br>**Arizona Regulator Cam with Lobe and Lever** |
| the cam being movable between a first position and a second position, in the second position the cam lobe forces the trigger member toward the set position, | The cam is movable between a first position and a second position.<br><br>**Cam and Lobe First Position**<br>In the second position, the cam lobe forces the trigger member **(Brown)** toward the set position when the cam is in the forced reset semi-automatic mode. |

| ’159 Patent, Claim 1 | Infringing Device (Arizona Regulator) |
| --- | --- |
| | <br>**Cam and Lobe Second Position** |
| whereupon in the first mode, | While in the first (standard semi-automatic) mode,<br> |
| rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, | Rearward movement of the bolt means causes rearward pivoting of the hammer **(Red)** such that the disconnector **(Orange)** hook catches the hammer hook. |

| ’159 Patent, Claim 1 | Infringing Device (Arizona Regulator) |
|---|---|
| |  **Disconnector Hook Catches the Hammer** |
| and thereafter the bolt means moves forward into battery, | Thereafter, the bolt means moves forward into battery,  **Pressure on Trigger Member Prevents Reset** |
| at which time a user must manually reduce pressure on the trigger member to free the hammer from the disconnector to permit the hammer and trigger | at which time a user must manually reduce pressure on the trigger member **(Brown)** to free the hammer **(Red)** from the disconnector **(Orange)** to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. |

| ’159 Patent, Claim 1 | Infringing Device (Arizona Regulator) |
|---|---|
| member to pivot to the set positions so that the user can pull the trigger member to fire the firearm, and |  **Reduced Pressure on Trigger Member Allows Reset** |
| whereupon in a second mode, | When in the second (forced reset semi-automatic) mode,  |
| rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook is prevented from holding the hammer, | . . . rearward movement of the bolt means causes rearward pivoting of the hammer **(Red)** and the cam to force the trigger member toward the reset position such that the disconnector **(Orange)** hook is prevented from holding the hammer hook. |

<table>
<tr><th>’159 Patent, Claim 1</th><th>Infringing Device (Arizona Regulator)</th></tr>
<tr><td></td><td></td></tr>
<tr><td>and thereafter the bolt means moves forward into battery,<br><br>at which time the user can pull the trigger member to fire the firearm.</td><td>Thereafter, the bolt means moves forward into battery and the hammer moves to its reset position,<br><br>at which time the user can pull the trigger member (Brown) to fire the firearm without having to first release pressure on the trigger member.</td></tr>
</table>

| ’159 Patent, Claim 1 | Infringing Device (Arizona Regulator) |
|---|---|
| |  |

83. On information and belief, in addition to direct infringement, Defendants take active steps to induce others, including their customers, to directly infringe the ’159 patent. Defendants take such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, installation of, encouraging, advertising, promoting, and instructing others to use and/or how to use the Arizona Regulator while selling products.

84. On information and belief, Defendants know or should know that such activities induce others to directly infringe at least claim 1 of the ’159 Patent.

85. On information and belief, Defendants also contribute to the infringement of the ’159 Patent by others, including their customers. Acts by Defendants that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendants of the components of the Arizona Regulator, such as the cam or cam lever arm. The components are not suitable for substantial noninfringing use as they are specially designed and

adapted to be used in a fire control unit to mechanically reset a trigger mechanism and infringe the ’159 Patent.

86. Defendants have engaged in egregious infringement behavior with knowledge of the ’159 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the ’159 Patent and that the ’159 Patent is valid at least through the service of this complaint. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the ’159 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the ’159 Patent.

87. By their actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the ’159 Patent pursuant to 35 U.S.C. § 271.

88. By their actions, Defendants’ infringement of the ’159 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

89. By their actions, Defendants’ infringement of the ’159 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

90. Defendants’ infringement of the ’159 patent is exceptional and entitles Plaintiffs to attorneys’ fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

91. Defendants’ acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs’ business, sales, reputation, and good-will.

92. Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

**COUNT IV — INFRINGEMENT OF THE '223 PATENT**

93. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

94. In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '223 patent, including but not limited to claim 4, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '223 patent. Such unlicensed products include the Disruptor.

95. On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '223 patent, including but not limited to claim 4, literally and/or under the doctrine of equivalents.

96. An exemplary comparison of the Disruptor, when assembled and used as intended, with claim 4 of the '223 Patent is illustrated in the chart below:

| '223 Patent Claim 4 | The Disruptor |
|---|---|
| 4. For a firearm having a receiver with a fire control mechanism pocket, assembly pin openings in side walls of the pocket, | The Disruptor is for an AR-pattern firearm, which has a lower receiver with a fire control pocket and assembly pin openings in side walls of the pocket. |

<table>
<tr><th>’223 Patent Claim 4</th><th>The Disruptor</th></tr>
<tr><td></td><td><br>https://www.odinworks.com/category-s/2033.htm<br><br></td></tr>
<tr><td>and a bolt carrier that reciprocates and pivotally displaces a hammer when cycled, a trigger mechanism, comprising:</td><td>An AR-pattern firearm has a bolt carrier that reciprocates and pivotally displaces a hammer when cycled.<br><br></td></tr>
<tr><td>a housing having transversely aligned pairs of openings for receiving hammer and trigger assembly pins;</td><td>The Disruptor includes a housing with transversely aligned pairs of openings for receiving hammer and trigger assembly pins.</td></tr>
</table>

| ’223 Patent Claim 4 | The Disruptor |
|---|---|
| | <br><br>(Plaintiff–generated renderings of the Disruptor here and below) |
| a hammer having a sear notch and mounted in the housing to pivot on a transverse axis | The Disruptor includes a hammer (blue) with a sear notch and is mounted in the housing to pivot on a transverse axis. |

| ’223 Patent Claim 4 | The Disruptor |
|---|---|
| between set and |    Set Position |
| released positions; |  Released Position |

| ’223 Patent Claim 4 | The Disruptor |
|---|---|
| a trigger member having a sear and mounted in the housing to pivot on a transverse axis<br><br>between set | The Disruptor has a trigger member (green) that has a sear and is mounted in a housing to pivot on a transverse axis.<br><br>**Set Position** |
| and released positions, | <br>**Released Position** |
| the trigger member having a surface positioned to be contacted by the hammer when the hammer is displaced by the bolt carrier when cycled, | The trigger member (green) has a surface positioned to be contacted by a surface of the hammer (blue) |

<table>
<tr><th>’223 Patent Claim 4</th><th>The Disruptor</th></tr>
<tr><td></td><td>
</td></tr>
<tr><td>the contact causing the trigger member to be forced to the set position;</td><td>The hammer (blue) pivots rearward causing the trigger (green) to be mechanically moved to the set position.<br></td></tr>
</table>

| '223 Patent Claim 4 | The Disruptor |
|---|---|
| |  |
| a locking bar pivotally mounted in the housing | The Disruptor includes a locking bar (red) that is pivotally mounted in the housing.   |
| and spring biased toward a first position in which the locking bar mechanically blocks the trigger member from moving to the released position, | The locking bar is spring biased toward a first position in which the locking bar mechanically blocks the trigger member from moving to the released position. |

<table>
<tr><th>’223 Patent Claim 4</th><th>The Disruptor</th></tr>
<tr><td></td><td><br>First position Mechanically Blocked</td></tr>
<tr><td>and movable against the spring bias to a second position when contacted by the bolt carrier reaching a substantially in-battery position</td><td>The locking bar is movable against the spring bias to a second position when contacted by the bolt carrier reaching a substantially in-battery position.</td></tr>
<tr><td>in which the trigger member can be moved by an external force to the released position.</td><td>In this position, the trigger member can be moved by an external force (pull by the trigger finger) to the released position.<br></td></tr>
</table>

97. On information and belief, in addition to direct infringement, Defendants take active steps to induce others, including their customers, to directly infringe the ’223 patent. Defendants take such active steps knowing that those steps will induce, encourage, and facilitate

direct infringement by others. Such active steps include, but are not limited to, encouraging, advertising, promoting, and instructing others to use and/or how to use the Disruptor while selling products.

98. On information and belief, Defendants know or should know that such activities induce others to directly infringe at least claim 4 of the ’223 Patent.

99. On information and belief, Defendants also contribute to the infringement of the ’223 Patent by others, including their customers. Acts by Defendants that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendants of the components of the Disruptor, such as the trigger assembly. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to mechanically reset a trigger mechanism and infringe the ’223 Patent.

100. Defendants have engaged in egregious infringement behavior with knowledge of the ’223 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the ’223 Patent and that the ’223 Patent is valid at least through the service of this complaint. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the ’223 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the ’223 Patent.

101. By their actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the ’223 Patent pursuant to 35 U.S.C. § 271.

102. By their actions, Defendants' infringement of the '223 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

103. By their actions, Defendants' infringement of the '223 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

104. Defendants' infringement of the '223 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

105. Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

106. Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

**COUNT V — INFRINGEMENT OF THE '003 PATENT**

107. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

108. In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '003 patent, including but not limited to claim 4, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '003 patent. Such unlicensed products include the Disruptor.

109. On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '003 patent, including but not limited to claim 4, literally and/or under the doctrine of equivalents.

110. An exemplary comparison of the Disruptor, when assembled and used as intended, with claim 4 of the ’003 patent is illustrated in the chart below:

| ’003 Patent Claim 4 | The Disruptor |
|---|---|
| 4. A firearm trigger mechanism comprising: | The Disruptor is a firearm trigger mechanism.<br><br>https://www.odinworks.com/category-s/2033.htm |
| a housing having a first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin, | The Disruptor includes a housing (black) that has a first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin.<br><br><br>The Disruptor is sold with hammer and trigger pins. |

| ’003 Patent Claim 4 | The Disruptor |
|---|---|
| |   |
| a hammer having a sear catch and a hook for engaging a disconnector and mounted in said housing to pivot on said hammer pin | The Disruptor includes a hammer (blue) that has a sear catch and a hook for engaging a disconnector. It is mounted in the housing to pivot on the hammer pin between set and released positions. The hammer is pivoted rearward by rearward movement of a bolt carrier.   (Plaintiff-generated renderings of the Disruptor here and below) |

<table>
<tr><th>’003 Patent Claim 4</th><th>The Disruptor</th></tr>
<tr><td>between set and<br><br>released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier,</td><td><br>Set Position<br><br>Released Position</td></tr>
<tr><td>a trigger member having a sear and mounted in said housing to pivot on said trigger member pin</td><td>The Disruptor includes a trigger member (green) that has a sear and is mounted in the housing to pivot on the trigger member pin</td></tr>
</table>

| ’003 Patent Claim 4 | The Disruptor |
|---|---|
| between set<br><br>and released positions, | <br>**Set Position**<br><br>**Released Position** |
| said trigger member having a surface positioned to be contacted by a surface of said hammer | The trigger member (green) has a surface positioned to be contacted by a surface of the hammer (blue) |

| ’003 Patent Claim 4 | The Disruptor |
| --- | --- |
| |  |
| during rearward pivoting of said hammer to cause said trigger member to be forced to said set position, | The hammer (blue) pivots rearward causing the trigger (green) to be mechanically moved to the set position.<br> |

| ’003 Patent Claim 4 | The Disruptor |
| --- | --- |
| |  |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member | The sear and sear catch are engaged in the set position  **Set Position** |
| and are out of engagement in said released positions of said hammer and trigger member, | The sear and sear catch are out of engagement in the released position |

| ’003 Patent Claim 4 | The Disruptor |
|---|---|
| |  **Released Position** |
| a disconnector having a hook for engaging said hammer | The Disruptor has a disconnector (orange) that has a hook for engaging the hammer (blue) hook   |
| and mounted in said housing to pivot on said trigger member pin, | The disconnect is mounted in the housing to pivot on the trigger (green) member pin |

| ’003 Patent Claim 4 | The Disruptor |
|---|---|
| |  |
| a locking member mounted in said housing to pivot on a transverse locking member pin, | The Disruptor has a locking member (red) that is mounted in the housing and it pivots on a transverse locking member pin   |
| said locking member being pivotable between a first position at which said locking member mechanically blocks said trigger member from moving to said released position | When the locking bar (red) is in the first position, the locking member blocks the trigger (green) from being pulled |

| ’003 Patent Claim 4 | The Disruptor |
|---|---|
| |  **First Position Mechanically Blocked** |
| and a second position at which said locking member does not mechanically block said trigger member allowing said trigger member to be moved to said released position, | When the locking bar (red) is in the second position, it does not prevent the trigger (green) from being pulled  **Second Position Not Mechanically Blocked** |
| said locking member spring biased toward said first position and adapted to be moved against said spring bias to said second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and | The locking member (red) is spring biased toward the first position and is moved against the spring bias to the second position by contact of the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position. |

<table>
<tr><th>’003 Patent Claim 4</th><th>The Disruptor</th></tr>
<tr><td>a safety selector adapted to be mounted in a fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions,</td><td>The Disruptor includes a safety selector that is mounted in the fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and “forced reset” semi-automatic positions.<br><br></td></tr>
<tr><td>whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook,<br>at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and</td><td>While in the standard semi-automatic position rearward movement of the bolt carrier causes the hammer (blue) to pivot and the disconnect (orange) hook catches the hammer hook<br><br>Standard Semi-automatic Position</td></tr>
<tr><td>whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer causing said trigger member to be forced to said set position,</td><td>When the Disruptor is in the “forced reset” semi-automatic position rearward movement of the bolt carrier causes the hammer (blue) to pivot which causes the trigger (green) to be mechanically moved to the set position.</td></tr>
</table>

| ’003 Patent Claim 4 | The Disruptor |
|---|---|
| |  **Trigger Pulled to the Rear, Hammer First Touches the Trigger**  **Hammer has now Caused the Trigger to Move to the Reset Position** |
| said safety selector preventing said disconnector hook from catching said hammer hook, | The safety selector prevents the disconnector (orange) hook from catching the hammer (blue) hook |

| ’003 Patent Claim 4 | The Disruptor |
|---|---|
| |  **Set Position** |
| and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull said trigger member to fire the firearm without manually releasing said trigger member. | When the bolt carrier reaches a substantially in-battery position the user can pull the trigger (green) without manually releasing pressure off the trigger  |

111. On information and belief, in addition to direct infringement, Defendants take active steps to induce others, including their customers, to directly infringe the ’003 patent. Defendants take such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging,

advertising, promoting, and instructing others to use and/or how to use the Disruptor while selling products.

112. On information and belief, Defendants know or should know that such activities induce others to directly infringe at least claim 4 of the ’003 Patent.

113. On information and belief, Defendants also contribute to the infringement of the ’003 Patent by others, including their customers. Acts by Defendants that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendants of the components of the Disruptor, such as the trigger assembly. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to mechanically reset a trigger mechanism and infringe the ’003 Patent.

114. Defendants have engaged in egregious infringement behavior with knowledge of the ’003 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the ’003 Patent and that the ’003 Patent is valid at least through the service of this complaint. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the ’003 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the ’003 Patent.

115. By their actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the ’003 Patent pursuant to 35 U.S.C. § 271.

116. By their actions, Defendants' infringement of the '003 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

117. By their actions, Defendants' infringement of the '003 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

118. Defendants' infringement of the '003 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

119. Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

120. Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

**COUNT VI — INFRINGEMENT OF THE '336 PATENT**

121. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

122. In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '336 patent, including but not limited to claim 3, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '336 patent. Such unlicensed products include the Disruptor.

123. On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '336 patent, including but not limited to claim 3, literally and/or under the doctrine of equivalents.

124. An exemplary comparison of the Disruptor, when assembled and used as intended, with claim 3 of the '336 patent is illustrated in the chart below:

| '336 Patent, Claim 3 | The Disruptor |
|---|---|
| 3. A firearm trigger mechanism comprising: | The Disruptor is a firearm trigger mechanism.  https://www.odinworks.com/category-s/2033.htm |
| a housing having a first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin, | The Disruptor includes a housing that has a first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin.   The Infringing Devise is sold with hammer and trigger pins. |

<table>
<tr><th>’336 Patent, Claim 3</th><th>The Disruptor</th></tr>
<tr><td></td><td>
</td></tr>
<tr><td>a hammer having a sear catch and a hook for engaging a disconnector and mounted in said housing to pivot on said hammer pin</td><td>The Disruptor includes a hammer (blue) that has a sear catch and a hook for engaging a disconnector. It is mounted in the housing to pivot on the hammer pin between set and released positions. The hammer is pivoted rearward by rearward movement of a bolt carrier.<br>
<br>(Plaintiff-generated renderings of the Disruptor here and below)</td></tr>
</table>

| ’336 Patent, Claim 3 | The Disruptor |
|---|---|
| between set and |  **Set Position** |
| released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, |  **Released Position** |
| a trigger member having a sear and mounted in said housing to pivot on said trigger member pin | The Disruptor includes a trigger member (green) that has a sear and is mounted in the housing to pivot on the trigger member pin |

| ’336 Patent, Claim 3 | The Disruptor |
|---|---|
| between set |  **Set Position** |
| and released positions, |  **Released Position** |
| said trigger member having a surface positioned to be contacted by a surface of said hammer | The trigger member (green) has a surface positioned to be contacted by a surface of the hammer (blue) |

| ’336 Patent, Claim 3 | The Disruptor |
|---|---|
| |   |
| during rearward pivoting of said hammer to cause said trigger member to be forced to said set position, | The hammer (blue) pivots rearward causing the trigger (green) to be mechanically moved to the set position  |

| ’336 Patent, Claim 3 | The Disruptor |
| --- | --- |
| |  |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member | The sear and sear catch are engaged in the set position  **Set Position** |
| and are out of engagement in said released positions of said hammer and trigger member, | The sear and sear catch are out of engagement in the released position |

| ’336 Patent, Claim 3 | The Disruptor |
| --- | --- |
| |  **Released Position** |
| a disconnector having a hook for engaging said hammer | The Disruptor has a disconnector (orange) that has a hook for engaging the hammer (blue) hook.   |
| and mounted in said housing to pivot on said trigger member pin, | The disconnect is mounted in the housing to pivot on the trigger (green) member pin |

| ’336 Patent, Claim 3 | The Disruptor |
|---|---|
| |  |
| a locking member mounted in said housing to pivot on a transverse locking member pin, | The Disruptor has a locking member (red) that is mounted in the housing and it pivots on a transverse locking member pin.   |
| said locking member being pivotable between a first position at which said locking member mechanically blocks said trigger member from moving to said released position | When the locking bar (red) is in the first position, the locking member blocks the trigger (green) from being pulled |

| ’336 Patent, Claim 3 | The Disruptor |
|---|---|
| |  **First Position Mechanically Blocked** |
| and a second position at which said locking member does not mechanically block said trigger member allowing said trigger member to be moved to said released position, | When the locking bar (red) is in the second position, it does not prevent the trigger (green) from being pulled.  **Second Position Not Mechanically Blocked** |
| said locking member spring biased toward said first position and adapted to be moved against said spring bias to said second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and | The locking member (red) is spring biased toward the first position and is moved against the spring bias to the second position by contact of the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position. |
| a safety selector adapted to be mounted in a fire control mechanism pocket of a | The Disruptor includes a safety selector that is mounted in the fire control mechanism pocket of a |

<table>
<tr><th>’336 Patent, Claim 3</th><th>The Disruptor</th></tr>
<tr><td>receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions,</td><td>receiver to pivot between safe, standard semi-automatic, and “forced reset” semi-automatic positions.<br><br></td></tr>
<tr><td>said safety selector configured such that, when said safety selector is in said forced reset semi-automatic position, said safety selector causes said disconnector to be repositioned and in doing so prevents said disconnector hook from catching said hammer hook,</td><td>While in the “forced reset” semi-automatic position the disconnect (orange) moves to a position that does not allow the disconnector hook to catch the hammer (blue) hook<br><br>**“Forced Reset” Semi-Automatic Position**</td></tr>
<tr><td>whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook,<br><br>at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can</td><td>While in the standard semi-automatic position rearward movement of the bolt carrier causes the hammer (blue) to pivot and the disconnect (orange) hook catches the hammer hook</td></tr>
</table>

| ’336 Patent, Claim 3 | The Disruptor |
| --- | --- |
| pull said trigger member to fire the firearm, and |  **Standard Semi-Automatic Position** |
| whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer causing said trigger member to be forced to said set position, | When the Disruptor is in the “forced reset” semi-automatic position rearward movement of the bolt carrier causes the hammer (blue) to pivot which causes the trigger (green) to be mechanically moved to the set position.  **Trigger Pulled to the Rear, Hammer First Touches the Trigger** |

| ’336 Patent, Claim 3 | The Disruptor |
|---|---|
| |  **Hammer has now Caused the Trigger to Move to the Reset Position** |
| said safety selector preventing said disconnector hook from catching said hammer hook, | The safety selector prevents the disconnector (orange) hook from catching the hammer (blue) hook  **Set Position** |
| and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull said trigger member to fire the firearm without manually releasing said trigger member. | When the bolt carrier reaches a substantially in-battery position the user can pull the trigger (green) without manually releasing pressure off the trigger |

125. On information and belief, in addition to direct infringement, Defendants take active steps to induce others, including their customers, to directly infringe the ’336 patent.

Defendants take such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging, advertising, promoting, and instructing others to use and/or how to use the Disruptor while selling products.

126. On information and belief, Defendants know or should know that such activities induce others to directly infringe at least claim 3 of the ’336 Patent.

127. On information and belief, Defendants also contribute to the infringement of the ’336 Patent by others, including their customers. Acts by Defendants that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendants of the components of the Disruptor, such as the trigger assembly. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to mechanically reset a trigger mechanism and infringe the ’336 Patent.

128. Defendants have engaged in egregious infringement behavior with knowledge of the ’336 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the ’336 Patent and that the ’336 Patent is valid at least through the service of this complaint. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the ’336 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the ’336 Patent.

129. By their actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the ’336 Patent pursuant to 35 U.S.C. § 271.

130. By their actions, Defendants' infringement of the '336 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

131. By their actions, Defendants' infringement of the '336 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

132. Defendants' infringement of the '336 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

133. Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

134. Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

**COUNT VII — INFRINGEMENT OF THE '807 PATENT**

135. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

136. In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '807 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '807 patent. Such unlicensed products include the Disruptor.

137. On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the ’807 patent, including but not limited to claim 1, literally and/or under the doctrine of equivalents.

138. An exemplary comparison of the Disruptor, when assembled and used as intended, with claim 1 of the ’807 patent is illustrated in the chart below:

| **’807 Patent, Claim 1** | **The Disruptor** |
|---|---|
| A firearm trigger mechanism comprising: | The Disruptor is a firearm trigger mechanism.  https://www.odinworks.com/category-s/2033.htm |
| a hammer having a sear catch and a hook and adapted to be mounted in a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis | The Disruptor includes a hammer (blue) that has a sear catch and a hook for engaging a disconnector. It is mounted in the fire control mechanism pocket to pivot on a transverse hammer pivot axis between set and released positions. The hammer is pivoted rearward by rearward movement of a bolt carrier. |

| '807 Patent, Claim 1 | The Disruptor |
| --- | --- |
| between set and | <br>(Plaintiff-generated renderings of the Disruptor here and below)<br><br>**Set Position** |

| ’807 Patent, Claim 1 | The Disruptor |
|---|---|
| released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, |  **Released Position** |
| a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis<br><br>between set | The Disruptor includes a trigger member (green) that has a sear and is mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis<br><br> **Set Position** |

| ’807 Patent, Claim 1 | The Disruptor |
|---|---|
| and released positions, |  **Released Position** |
| said trigger member having a surface positioned to be contacted by a surface of said hammer | The trigger member (green) has a surface positioned to be contacted by a surface of the hammer (blue)   |
| during rearward pivoting of said hammer to cause said trigger member to be forced to said set position, | The hammer (blue) pivots rearward causing the trigger (green) to be mechanically moved to the set position |

<table>
<tr><th>’807 Patent, Claim 1</th><th>The Disruptor</th></tr>
<tr><td></td><td><br></td></tr>
<tr><td>wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member</td><td>The sear and sear catch are engaged in the set position<br><br>Set Position</td></tr>
</table>

| '807 Patent, Claim 1 | The Disruptor |
|---|---|
| and are out of engagement in said released positions of said hammer and trigger member, | The sear and sear catch are out of engagement in the released position  **Released Position** |
| a disconnector having a hook for engaging said hammer hook | The Disruptor has a disconnector (orange) that has a hook for engaging the hammer (blue) hook   |
| and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, | The disconnect is mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis |

| ’807 Patent, Claim 1 | The Disruptor |
|---|---|
| |  |
| a locking member adapted to be movably mounted in the fire control mechanism pocket, | The Disruptor has a locking member (red) that is movably mounted in the fire control mechanism pocket and it is movable between a first position and a second position.   |
| said locking member being movable between a first position at which said locking member mechanically blocks said trigger member from moving to said released position | When the locking bar (red) is in the first position, the locking member blocks the trigger (green) from being pulled |

<table>
<tr><th>’807 Patent, Claim 1</th><th>The Disruptor</th></tr>
<tr><td></td><td><br>First Position Mechanically Blocked</td></tr>
<tr><td>and a second position at which said locking member does not mechanically block said trigger member allowing said trigger member to be moved to said released position,<br><br>said locking member spring biased toward said first position and adapted to be moved against said spring bias to said second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and</td><td>When the locking bar (red) is in the second position, it does not prevent the trigger (green) from being pulled<br><br>Second Position Not Mechanically Blocked<br>The locking member (red) is spring biased toward the first position and is moved against the spring bias to the second position by contact of the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position</td></tr>
</table>

<table>
<tr><th>’807 Patent, Claim 1</th><th>The Disruptor</th></tr>
<tr><td>a safety selector adapted to be movably mounted in the fire control mechanism pocket to move between safe, standard semi-automatic, and forced reset semi-automatic positions,</td><td>The Disruptor includes a safety selector that is mounted in the fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and “forced reset” semi-automatic positions.<br><br></td></tr>
<tr><td>whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook,<br><br>at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and</td><td>While in the standard semi-automatic position rearward movement of the bolt carrier causes the hammer (blue) to pivot and the disconnect (orange) hook catches the hammer hook<br><br>Standard Semi-Automatic Position</td></tr>
<tr><td>whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer causing said trigger member to be forced to said set position,</td><td>When the Disruptor is in the “forced reset” semi-automatic position rearward movement of the bolt carrier causes the hammer (blue) to pivot which causes the trigger (green) to be mechanically moved to the set position.</td></tr>
</table>

| ’807 Patent, Claim 1 | The Disruptor |
|---|---|
| |  **Trigger Pulled to the Rear, Hammer First Touches the Trigger**  **Hammer has now Caused the Trigger to Move to the Reset Position** |
| said safety selector preventing said disconnector hook from catching said hammer hook, | The safety selector prevents the disconnector (orange) hook from catching the hammer (blue) hook. |

<table>
<tr><th>’807 Patent, Claim 1</th><th>The Disruptor</th></tr>
<tr><td></td><td><br>Set Position</td></tr>
<tr><td>and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull said trigger member to fire the firearm without manually releasing said trigger member.</td><td>When the bolt carrier reaches a substantially in-battery position the user can pull the trigger (green) without manually releasing pressure off the trigger.<br></td></tr>
</table>

139. On information and belief, in addition to direct infringement, Defendants take active steps to induce others, including their customers, to directly infringe the ’807 patent. Defendants take such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging, advertising, promoting, and instructing others to use and/or how to use the Disruptor while selling products.

140. On information and belief, Defendants know or should know that such activities induce others to directly infringe at least claim 1 of the ’807 Patent.

141. On information and belief, Defendants also contribute to the infringement of the ’807 Patent by others, including their customers. Acts by Defendants that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendants of the components of the Disruptor, such as the trigger assembly. The components are not suitable for substantial noninfringing use as they are specially designed and adapted to be used in a fire control unit to mechanically reset a trigger mechanism and infringe the ’807 Patent.

142. Defendants have engaged in egregious infringement behavior with knowledge of the ’807 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the ’807 Patent and that the ’807 Patent is valid at least through the service of this complaint. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the ’807 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the ’807 Patent.

143. By their actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the ’807 Patent pursuant to 35 U.S.C. § 271.

144. By their actions, Defendants’ infringement of the ’807 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

145. By their actions, Defendants' infringement of the '807 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

146. Defendants' infringement of the '807 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

147. Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

148. Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

**COUNT VIII — INFRINGEMENT OF THE '403 PATENT**

149. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

150. In violation of 35 U.S.C. § 271, Defendants have infringed, induced others to infringe, and/or contributed to the infringement of one or more claims of the '403 patent, including but not limited to claims 38 and 54, literally and/or under the doctrine of equivalents, by among other things, making, using, offering for sale, selling, and/or importing into the United States unlicensed products in a manner that infringes the '403 patent. Such unlicensed products include the Infringing Devices.

151. On information and belief, Defendants have and continue to willfully infringe, induce others to infringe, and/or contribute to the infringement of one or more claims of the '403 patent, including but not limited to claims 38 and 54, literally and/or under the doctrine of equivalents.

152. An exemplary comparison of the Disruptor, when assembled and used as intended, with claim 38 of the ’403 Patent is illustrated in the chart below:

| ’403 Patent, Claim 38 | The Disruptor |
|---|---|
| 38. A forced reset trigger mechanism, comprising: | When installed and used as directed, the Disruptor is part of a trigger mechanism.  https://www.odinworks.com/category-s/2033.htm  **Disruptor** |

| ’403 Patent, Claim 38 | The Disruptor |
|---|---|
| a hammer having a hammer hook and adapted to pivot on a transverse hammer pivot axis; | The Disruptor has a hammer (blue) that has a hammer hook and pivots on a transverse axis.<br><br>**Disruptor (Installed)**<br>(Plaintiff-generated renderings of Disruptor here and below) |
| a disconnector having a disconnector hook and adapted to pivot on a transverse disconnector pivot axis; | The Disruptor has a disconnector (orange) which has a disconnector hook and pivots on a transverse disconnector pivot axis.<br><br>**Disconnector (orange)** |

| ’403 Patent, Claim 38 | The Disruptor |
|---|---|
| a trigger member; and | The Disruptor has a trigger member (green) which has a disconnector hook and pivots on a transverse disconnector pivot axis<br><br>**Trigger Member (green)** |
| a safety selector adapted to be movable between a standard semi-automatic position | The Disruptor has a safety selector adapted to be movable between a (**standard semi-automatic**) position,<br><br>**Disruptor (installed) in Standard Semi-Automatic Position** |

| ’403 Patent, Claim 38 | The Disruptor |
|---|---|
| and a forced reset semi-automatic position, | . . . and a “forced reset” semi-automatic position,<br><br>**Disruptor (installed) in “Forced Reset” Semi-Automatic Position** |

| ’403 Patent, Claim 38 | The Disruptor |
|---|---|
| wherein when the safety selector is in the standard semi-automatic position and the trigger member is rearwardly actuated, | When safety selector is in the standard semi-automatic position the trigger member (green) is rearwardly actuated.  |
| and after the hammer pivots rearward to a position where the hammer hook is past the disconnector hook, | The hammer (blue) pivots rearward to a position where the hammer hook is past the disconnector hook (orange),  |

| ’403 Patent, Claim 38 | The Disruptor |
|---|---|
| rearward pressure on the trigger member must be reduced to permit the trigger member to then be actuated to fire a firearm. | Rearward pressure on the trigger member (green) must be reduced to permit the trigger member to then be actuated to fire a firearm.  |

153. An exemplary comparison of the Arizona Regulator, when assembled and used as intended, with claim 38 of the ’403 Patent is illustrated in the chart below:

| ’403 Patent, Claim 38 | Arizona Regulator |
|---|---|
| 38. A forced reset trigger mechanism, comprising: | When installed and used as directed, the Arizona Regulator is part of a forced reset trigger mechanism.  https://www.odinworks.com/category-s/2033.htm |

<table>
<tr><th>’403 Patent, Claim 38</th><th>Arizona Regulator</th></tr>
<tr><td></td><td>

Arizona Regulator</td></tr>
<tr><td>a hammer having a hammer hook and adapted to pivot on a transverse hammer pivot axis;</td><td>The Arizona Regulator (Green, Blue, Magenta, and Yellow) is installed in a fire control mechanism pocket along with a hammer (red) that has a hammer hook and is adapted to pivot on a transverse hammer pivot axis.<br><br>Arizona Regulator (Installed)<br>(Plaintiff-generated renderings of Arizona Regulator here and below)</td></tr>
<tr><td>a disconnector having a disconnector hook and adapted to pivot on a transverse disconnector pivot axis;</td><td>The Arizona Regulator is installed along with a disconnector (orange) which has a disconnector hook and is adapted to pivot on a transverse disconnector pivot axis, and a trigger member (brown).</td></tr>
</table>

| ’403 Patent, Claim 38 | Arizona Regulator |
|---|---|
| a trigger member; and |  **Disconnector and Trigger Member** |
| a safety selector adapted to be movable between a standard semi-automatic position | The Arizona Regulator interacts with a safety selector adapted to be movable between a standard semi-automatic position,  **Arizona Regulator (installed) in Standard Semi-Automatic Position** |
| and a forced reset semi-automatic position, | . . . and a forced reset semi-automatic position, |

| '403 Patent, Claim 38 | Arizona Regulator |
|---|---|
| |  **Arizona Regulator (installed) in Forced Reset Semi-Automatic Position** |
| wherein when the safety selector is in the standard semi-automatic position and the trigger member is rearwardly actuated, | When safety selector is in the standard semi-automatic position the trigger member (brown) is rearwardly actuated.  |
| and after the hammer pivots rearward to a position where the hammer hook is past the disconnector hook, | The hammer (red) pivots rearward to a position where the hammer hook is past the disconnector hook (orange). |

| ’403 Patent, Claim 38 | Arizona Regulator |
|---|---|
| |  |
| rearward pressure on the trigger member must be reduced to permit the trigger member to then be actuated to fire a firearm. | Rearward pressure on the trigger member (brown) must be reduced to permit the trigger member to then be actuated to fire a firearm.  |

154. An exemplary comparison of the Arizona Regulator, when assembled and used as intended, with claim 54 of the ’403 Patent is illustrated in the chart below:

| ’403 Patent, Claim 54 | Arizona Regulator |
|---|---|
| 54. A forced reset trigger mechanism, comprising: | When installed and used as directed, the Arizona Regulator is part of a forced reset trigger mechanism. |

| ’403 Patent, Claim 54 | Arizona Regulator |
|---|---|
| | <br>https://www.odinworks.com/category-s/2033.htm<br><br><br>**Arizona Regulator** |
| a trigger member configured to pivot about a transverse axis; | The Arizona Regulator is installed in a fire control mechanism pocket along with a trigger member that is configured to pivot about a transverse axis. |

<table>
<tr><th>’403 Patent, Claim 54</th><th>Arizona Regulator</th></tr>
<tr><td></td><td><br>Arizona Regulator (Installed)<br>(Plaintiff-generated renderings of Arizona Regulator above and below)<br><br></td></tr>
<tr><td>a hammer</td><td>The Arizona Regulator (Green, Blue, Magenta, and Yellow) is installed in a fire control mechanism pocket along with a hammer (red) in image above.</td></tr>
<tr><td>a disconnector operatively associated with the trigger member and the hammer;</td><td>The Arizona Regulator is installed along with a disconnector (orange) which is operatively associated with the hammer (Red) and trigger (Brown).</td></tr>
</table>

| ’403 Patent, Claim 54 | Arizona Regulator |
|---|---|
| |  **Disconnector, Trigger Member, and Hammer** |
| a locking member operatively associated with the trigger member; | The Arizona Regulator uses the cam ( Green) as a locking member and it is operatively associated with the trigger member.  |
| Wherein cycling of the action causes the trigger member to be forcibly returned to a set position in at least one operating mode; and | When using a Arizona Regulator, the cycling of the action causes the trigger member to be forcibly returned to the set position in at least one operating mode. |

| ’403 Patent, Claim 54 | Arizona Regulator |
|---|---|
| |   |

<table>
<tr><th>’403 Patent, Claim 54</th><th>Arizona Regulator</th></tr>
<tr><td></td><td><br></td></tr>
<tr><td>wherein the trigger mechanism includes a selector inter-face structured to cooperate with a selector having at least two discrete selectable positions including:<br>(i) a standard semi-automatic position; and</td><td>The Arizona Regulator interacts with a safety selector adapted to be movable between a standard semi-automatic position,</td></tr>
</table>

<table>
<tr><th>'403 Patent, Claim 54</th><th>Arizona Regulator</th></tr>
<tr><td></td><td><br>Arizona Regulator (installed) in Standard Semi-Automatic Position</td></tr>
<tr><td>(ii) a forced reset semi-automatic position,</td><td>. . . and a forced reset semi-automatic position,<br><br>Arizona Regulator (installed) in Forced Reset Semi-Automatic Position</td></tr>
<tr><td>Such that rotation of the selector to the forced reset</td><td>When the safety selector is in the forced reset position the forced reset operating mode is enabled.</td></tr>
</table>

| ’403 Patent, Claim 54 | Arizona Regulator |
|---|---|
| position enables said forced reset operating mode. |  |

155. On information and belief, in addition to direct infringement, Defendants take active steps to induce others, including their customers, to directly infringe the ’403 patent. Defendants take such active steps knowing that those steps will induce, encourage, and facilitate direct infringement by others. Such active steps include, but are not limited to, encouraging, advertising, promoting, and instructing others to use and/or how to use the Infringing Device while selling products.

156. On information and belief, Defendants know or should know that such activities induce others to directly infringe at least claims 38 and 54 of the ’403 Patent.

157. On information and belief, Defendants also contribute to the infringement of the ’403 Patent by others, including their customers. Acts by Defendants that contribute to the infringement of others include, but are not limited to, the sale, offer for sale, and/or importation by Defendants of the components of the Infringing Devices, such as the trigger assembly or the cam or cam lever arm. The components are not suitable for substantial noninfringing use as they are

specially designed and adapted to be used in a fire control unit to mechanically reset a trigger mechanism and infringe the '403 Patent.

158. Defendants have engaged in egregious infringement behavior with knowledge of the '403 Patent, which has been duly issued by the USPTO, and is presumed valid. On information and belief, Defendants have known or should have known that their actions constituted and continue to constitute infringement of the '403 Patent and that the '403 Patent is valid at least through the service of this complaint. Defendants could not reasonably or subjectively believe that their actions do not constitute infringement of the '403 Patent, nor could they reasonably or subjectively believe that the patent is invalid. Despite that knowledge and subjective belief, and the objectively high likelihood that their actions constitute infringement, Defendants have continued their infringing activities. As such, Defendants willfully infringe the '403 Patent.

159. By their actions, Defendants have injured Plaintiffs and are liable to Plaintiffs for infringement of the '403 Patent pursuant to 35 U.S.C. § 271.

160. By their actions, Defendants' infringement of the '403 Patent has irreparably injured Plaintiffs. Unless such infringing acts are enjoined by this Court, Plaintiffs will continue to suffer additional irreparable injury.

161. By their actions, Defendants' infringement of the '403 Patent has damaged and continues to damage, Plaintiffs in an amount yet to be determined.

162. Defendants' infringement of the '403 patent is exceptional and entitles Plaintiffs to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

163. Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

164. Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

**COUNT IX — FEDERAL TRADEMARK INFRINGEMENT**
**15 U.S.C. § 1114(1)**

165. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

166. As described above, Plaintiff RBTM is the owner and Plaintiff Rare Breed is the exclusive licensee of the FRT Marks in connection with firearm triggers.

167. The federal trademark registrations for the FRT Marks as detailed above are in full force and effect. Plaintiff RBTM owns all right, title, and interest in and to these federal trademark registrations.

168. The FRT Marks are inherently distinctive and have acquired significant goodwill in the marketplace through Plaintiffs' continuous and substantially exclusive use of those marks in commerce. As a result of their widespread and continuous use, the FRT Marks have become uniquely associated in the minds of consumers and the trade with Plaintiffs.

169. The reputation Plaintiffs have built in the FRT Marks is of great value to Plaintiffs.

170. Plaintiffs' use of and rights in the FRT Marks predate any use by Defendants of FRT.

171. Defendants are wrongfully using FRT as a source identifier in U.S. commerce in connection with the distribution, advertising, and/or sale of firearm trigger products.

172. Defendants' use of the FRT Marks was and is without Plaintiffs' consent. Such unauthorized use by Defendants is likely to confuse consumers as to the origin, sponsorship,

endorsement, or affiliation of Defendants' products, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

173. Defendants' unlawful acts have caused and, unless enjoined by this Court pursuant to 15 U.S.C. § 1116, will continue to cause, great harm and irreparable injury to Plaintiffs for which Plaintiffs have no adequate remedy at law, including undermining consumers' association of the FRT Marks with Plaintiffs.

174. Plaintiffs are entitled to injunctive relief prohibiting Defendants from using the FRT Marks and any mark confusingly similar to the FRT Marks.

175. Upon information and belief, Defendants have realized unjust profits, gains, and advantages from their unlawful actions, including by making sales under the FRT Marks, and have caused Plaintiffs monetary damage in an amount to be determined at trial.

**COUNT X — FALSE DESIGNATION OF ORIGIN**
**15 U.S.C. § 1125(A)**

176. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

177. As described above, Plaintiff RBTM owns and Plaintiff Rare Breed is the exclusive licensee of the distinctive FRT Marks in connection with firearm triggers through their continuous and substantially exclusive use of the FRT Marks since at least as early as 2020, which is well before any use of FRT by Defendants.

178. Plaintiffs' common law rights in the FRT Marks predate Defendants' infringing use of FRT and any other confusingly similar name or mark comprised of or containing FRT.

179. Defendants are using FRT as a source identifier in U.S. commerce in connection with the distribution, advertising, and/or sale of firearm trigger products.

180. Defendants' actions described above constitute use of a false designation of origin that wrongfully and falsely designates the origin of Defendants' goods and services and is likely to cause confusion or mistake and/or to deceive as to affiliation, connection, or association or as to the origin, sponsorship, or approval of Defendants' goods by Plaintiffs. These actions constitute a false designation of origin in interstate commerce in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

181. Defendants' unlawful acts, which were committed and continue to be committed with full knowledge of Plaintiffs' prior rights in the FRT Marks, are knowing, willful, and done in bad faith.

182. Defendants' acts have caused and, unless enjoined by this Court pursuant to 15 U.S.C. § 1116, will continue to cause, great harm and irreparable injury to Plaintiffs for which Plaintiffs have no adequate remedy at law, including undermining consumers' association of the FRT Marks with Plaintiffs.

183. Plaintiffs are entitled to injunctive relief prohibiting Defendants from using the FRT Marks or any other mark confusingly similar to the FRT Marks.

184. Upon information and belief, Defendants have realized unjust profits, gains, and advantages from their unlawful actions, including by making sales under the FRT Marks, and have caused Plaintiffs monetary damage in an amount to be determined at trial.

## COUNT XI — COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

185. Plaintiffs re-allege and incorporate the allegations of the preceding paragraphs as if fully set forth herein.

186. As described above, Plaintiff RBTM owns and Plaintiff Rare Breed is the exclusive licensee of the distinctive FRT Marks in connection with firearm triggers through their continuous use of the marks since at least as early 2020, prior to any use of FRT by Defendants.

187. Plaintiffs' common law rights in the FRT Marks predate Defendants' infringing use of FRT and/or other confusingly similar marks comprised of or containing FRT.

188. Defendants are using FRT as a source identifier in U.S. commerce in connection with the distribution, sale, offering for sale, and advertising of firearm triggers.

189. Defendants' use of FRT was and is without Plaintiffs' consent. Such unauthorized use by Defendants is likely to confuse consumers as to the origin, sponsorship, endorsement, or affiliation of Defendants' goods and services. As such, Defendants' acts constitute trademark infringement and unfair competition under common law.

190. Defendants' unlawful acts, which were committed and continue to be committed with full knowledge of Plaintiffs' prior common law rights in the FRT Marks are knowing, willful, and done in bad faith.

191. Defendants' acts have caused and, unless enjoined by this Court, will continue to cause great harm and irreparable injury to Plaintiffs for which it has no adequate remedy at law, including undermining consumers' association of the FRT Marks with Plaintiffs.

192. Plaintiffs are entitled to injunctive relief prohibiting Defendants from using FRT or any other mark confusingly similar to the FRT Marks.

193. Upon information and belief, Defendants have realized unjust profits, gains, and advantages from their unlawful actions, including by making sales under the FRT mark, and have caused Plaintiffs monetary damage in an amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants as follows:

a. Each of the Asserted Patents has been and continues to be infringed by Defendants;

b. Defendants' infringement of each of the Asserted Patents has been, and continues to be, willful;

c. Each of the Asserted Patents is enforceable and not invalid;

d. That Defendants willfully infringed Plaintiffs' registered FRT Marks in violation of the Lanham Act, 15 U.S.C. § 1114;

e. That Defendants committed willful acts of false designation of origin through their unauthorized use of the FRT Marks in violation of the Lanham Act, 15 U.S.C. § 1125(a);

f. That Defendants engaged in conduct constituting unfair competition under applicable law;

g. A preliminary injunction enjoining Defendants and their principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from (1) infringement or contributing to the infringement of each of the Asserted Patents during the pendency of this case; (2) using the mark "FRT" (or any similar or derivative term, including any FRT-formative term) (i) in association with firearm triggers or any related products, (ii) in any other manner that creates confusion or is likely to create confusion with Plaintiffs or Plaintiffs' FRT Marks, (iii) that in any way constitutes unfair competition with Plaintiffs; or (3) other such equitable relief as the Court determines is warranted;

h. A permanent injunction enjoining Defendants and their principals, agents, successors, assigns, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries,

parents, and all others acting in active concert therewith from (1) infringement or contributing to the infringement of each of the Asserted Patents; (2) using the mark "FRT" (or any similar or derivative term, including any FRT-formative term) (i) in association with firearm triggers or any related products, (ii) in any other manner that creates confusion or is likely to create confusion with Plaintiffs or Plaintiffs' FRT Marks, (iii) that in any way constitutes unfair competition with Plaintiffs; or (3) other such equitable relief as the Court determines is warranted;

i. Consistent with the above, order Defendants to (1) remove from display any advertisements and marketing, promotional, or sales materials comprising, bearing, or displaying the FRT Marks or any similar or derivative term that infringes or is likely to be confused with the FRT Marks, including any FRT-formative term, including from all Internet webpages and social media accounts within Defendants' custody or control; and (2) deliver to the Court for destruction, or to show proof of destruction of, any and all physical advertisements and marketing, promotional materials, and sales materials comprising, bearing, or displaying the term "FRT" or any similar or derivative term that infringes or is likely to be confused with the FRT Marks, including any FRT-formative term;

j. An award of damages adequate to compensate Plaintiffs for the infringement of each of the Asserted Patents that has occurred, together with pre-judgment interests and costs, post-judgment interests and costs, and an accounting;

k. An award of all other damages permitted by 35 U.S.C. § 284 and 15 U.S.C. § 1117(a), including increased damages up to three times the amount of compensatory damages found;

l. An award of all profits received by Defendants from sales and revenues of any kind made as a result of their trademark infringement and unfair competition;

m. An award of all damages sustained by Plaintiffs as a result of Defendants' infringement and unfair competition, including ascertainable damages, the costs incurred by Plaintiffs for corrective advertising, the costs for this action, and Plaintiffs' reasonable attorneys' fees;

n. A finding that this action is an exceptional case under 35 U.S.C. § 285 and 15 U.S.C. § 1117, and an award to Plaintiffs of their costs and attorneys' fees incurred in this action; and

o. Any and all other relief, at law or equity, to which Plaintiffs may show themselves to be entitled or which this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, under Rule 38 of the Federal Rules of Civil Procedure, request a trial by jury of any issues so triable by right.

DATED: July 13, 2026.

Respectfully submitted,

*/s/ Jared W. Allen*
Jared W. Allen
Beard St. Clair Gaffney PA

Glenn D. Bellamy (Pro Hac Vice forthcoming)
WOOD HERRON & EVANS LLP

Matthew A. Colvin (Pro Hac Vice forthcoming)
FISH & RICHARDSON P.C.

Attorneys for Plaintiffs

# Exhibit A

# U.S. Patent No. 12,038,247

Case 4:26-cv-01091-ALM Document 1 Filed 07/13/26 Page 129 of 331 PageID #: 129

Exhibit A

US012038247B2

(12) **United States Patent**
**Blakley**

(10) **Patent No.: US 12,038,247 B2**
(45) **Date of Patent: Jul. 16, 2024**

(54) **FIREARM TRIGGER MECHANISM**

(71) Applicant: **ABC IP, LLC**, Dover, DE (US)

(72) Inventor: **Brian A. Blakley**, Pinellas Park, FL (US)

(73) Assignee: **ABC IP, LLC**, Dover, DE (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **18/325,225**

(22) Filed: **May 30, 2023**

(65) **Prior Publication Data**

US 2024/0085136 A1 Mar. 14, 2024

**Related U.S. Application Data**

(60) Provisional application No. 63/374,941, filed on Sep. 8, 2022.

(51) **Int. Cl.**
***F41A 19/45*** (2006.01)
***F41A 17/46*** (2006.01)
(Continued)

(52) **U.S. Cl.**
CPC .............. ***F41A 19/45*** (2013.01); ***F41A 17/46*** (2013.01); ***F41A 19/10*** (2013.01); ***F41A 19/16*** (2013.01); *F41A 19/15* (2013.01)

(58) **Field of Classification Search**
CPC .......... F41A 19/10; F41A 19/45; F41A 19/15; F41A 17/46
(Continued)

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 2,765,562 A | 10/1956 | Roper et al. |
| 3,045,555 A | 7/1962 | Stoner |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| DE | 582963 C | 8/1933 |
| DE | 4008351 A1 | 9/1991 |

(Continued)

OTHER PUBLICATIONS

Statutory Invention Registration No. H107, Inventor: Bauer, Published Aug. 5, 1986 (8 pages).

*Primary Examiner* — Reginald S Tillman, Jr.
(74) *Attorney, Agent, or Firm* — Wood Herron & Evans LLP

(57) **ABSTRACT**

A trigger mechanism that can be used in AR-pattern firearms has a hammer, a trigger member, a disconnector, a cam, and a "three position" safety selector having safe, standard semi-automatic, and forced reset semi-automatic positions. In the standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer and pivoting of the cam from a first position to a second position such that a cam lobe forces the trigger member towards the set position, but prior to reaching the set position the disconnector hook catches the hammer hook, at which time a user must manually release the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to their set positions so that the user can pull the trigger member to fire the firearm. In the forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer and pivoting of the cam from the first position to the second position such that the cam lobe forces the trigger member to the set position, the safety selector preventing the disconnector hook from catching the hammer hook, at which time the user can pull the trigger member to fire the firearm without manually releasing the trigger member.

**23 Claims, 18 Drawing Sheets**



# US 12,038,247 B2



(51) **Int. Cl.**

| | |
|---|---|
| ***F41A 19/10*** | (2006.01) |
| ***F41A 19/15*** | (2006.01) |
| ***F41A 19/16*** | (2006.01) |

(58) **Field of Classification Search**

USPC .............................................. 42/69.01, 69.03

See application file for complete search history.

(56) **References Cited**


U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,292,492 | A | 12/1966 | Sturtevant |
| 3,301,133 | A | 1/1967 | Sturtevant |
| 3,670,442 | A | 6/1972 | Kennedy et al. |
| 4,023,465 | A | 5/1977 | Inskip |
| 4,057,003 | A | 11/1977 | Atchisson |
| 4,151,670 | A | 5/1979 | Rath |
| 4,276,808 | A | 7/1981 | York |
| 4,433,610 | A | 2/1984 | Tatro |
| 4,463,654 | A | 8/1984 | Bames et al. |
| 4,516,466 | A | 5/1985 | Jennie |
| 4,580,484 | A | 4/1986 | Moore |
| 4,656,993 | A | 4/1987 | Yuzawa et al. |
| 4,658,702 | A | 4/1987 | Tatro |
| 4,693,170 | A | 9/1987 | Atchisson |
| 4,697,495 | A | 10/1987 | Beretta |
| 4,787,288 | A | 11/1988 | Miller |
| 4,937,964 | A | 7/1990 | Crandall |
| 5,149,898 | A | 9/1992 | Chesnut et al. |
| 5,183,959 | A | 2/1993 | McCoan et al. |
| 5,223,649 | A | 6/1993 | Claridge |
| 5,339,721 | A | 8/1994 | Beretta |
| 5,517,897 | A | 5/1996 | Perrine |
| 5,614,691 | A | 3/1997 | Taylor |
| 5,623,114 | A | 4/1997 | Soper |
| 5,682,699 | A | 11/1997 | Gentry |
| 5,701,698 | A | 12/1997 | Wesp et al. |
| 5,704,153 | A | 1/1998 | Kaminski et al. |
| 5,760,328 | A | 6/1998 | Robbins |
| 5,770,814 | A | 6/1998 | Ealovega |
| 6,101,918 | A | 8/2000 | Akins |
| 6,360,467 | B1 | 3/2002 | Knight |
| 6,601,331 | B2 | 8/2003 | Salvitti |
| 6,718,680 | B2 | 4/2004 | Roca et al. |
| 6,722,072 | B1 | 4/2004 | McCormick |
| 6,851,346 | B1 | 2/2005 | Herring |
| 6,889,459 | B1 | 5/2005 | Salvitti |
| 6,976,416 | B2 | 12/2005 | Ealovega |
| 7,051,638 | B2 | 5/2006 | Thomele |
| 7,162,824 | B1 | 1/2007 | McCormick |
| 7,213,359 | B2 | 5/2007 | Beretta |
| 7,293,385 | B2 | 11/2007 | McCormick |
| 7,337,574 | B2 | 3/2008 | Crandall et al. |
| 7,347,021 | B1 | 3/2008 | Jones |
| 7,398,723 | B1 | 7/2008 | Blakley |
| 7,421,937 | B1 | 9/2008 | Gangl |
| 7,634,959 | B2 | 12/2009 | Frickey |
| 7,661,220 | B2 | 2/2010 | Crandall et al. |
| 7,806,039 | B1 | 10/2010 | Gomez |
| 8,037,805 | B1 | 10/2011 | Neroni |
| 8,112,928 | B2 | 2/2012 | Keough |
| 8,127,658 | B1 | 3/2012 | Cottle |
| 8,156,854 | B2 | 4/2012 | Brown |
| 8,443,537 | B2 | 5/2013 | Curry |
| 8,464,454 | B2 | 6/2013 | Martin et al. |
| 8,490,309 | B2 | 7/2013 | Zukowski |
| 8,667,881 | B1 | 3/2014 | Hawbaker |
| 8,695,477 | B2 | 4/2014 | Esch |
| 8,720,096 | B2 | 5/2014 | Siddle |
| 8,820,211 | B1 | 9/2014 | Hawbaker |
| 8,893,607 | B2 | 11/2014 | Audibert et al. |
| 8,925,234 | B1 | 1/2015 | Barrett |
| 8,985,006 | B1 | 3/2015 | Christensen et al. |
| 9,016,187 | B2 | 4/2015 | Findlay |
| 9,021,732 | B2 | 5/2015 | Johnson |
| 9,021,733 | B1 | 5/2015 | DiChario |
| 9,052,150 | B2 | 6/2015 | Talasco |
| 9,121,661 | B2 | 9/2015 | Calvete |
| 9,146,066 | B1 | 9/2015 | Cason |
| 9,146,067 | B2 | 9/2015 | Stakes |
| 9,182,189 | B2 | 11/2015 | Seigler |
| 9,228,786 | B2 | 1/2016 | Sullivan et al. |
| 9,310,150 | B1 | 4/2016 | Geissele |
| 9,347,726 | B1 | 5/2016 | Thomas |
| 9,448,023 | B2 | 9/2016 | Sheets, Jr. et al. |
| 9,476,660 | B2 | 10/2016 | Potter et al. |
| 9,513,076 | B2 | 12/2016 | Kolev et al. |
| 9,568,264 | B2 | 2/2017 | Graves |
| 9,618,288 | B2 | 4/2017 | Wilson |
| 9,618,289 | B1 | 4/2017 | Geissele |
| 9,625,231 | B1 | 4/2017 | Hass |
| 9,631,886 | B2 | 4/2017 | Findlay |
| 9,651,329 | B2 | 5/2017 | Hittmann |
| 9,658,007 | B2 | 5/2017 | Withey |
| 9,683,800 | B2 | 6/2017 | Sewell, Jr. et al. |
| 9,733,031 | B1 | 8/2017 | Sylvester et al. |
| 9,759,504 | B2 | 9/2017 | Geissele |
| 9,777,980 | B2 | 10/2017 | Heizer |
| 9,810,493 | B2 | 11/2017 | Fluhr et al. |
| 9,810,496 | B2 | 11/2017 | Kolev et al. |
| 9,816,772 | B2 | 11/2017 | Graves |
| 9,829,263 | B2 | 11/2017 | Bonner |
| 9,835,398 | B2 | 12/2017 | Biegel |
| 9,863,730 | B2 | 1/2018 | Elftmann |
| 9,869,522 | B2 | 1/2018 | Larson, Jr. et al. |
| 9,874,417 | B2 | 1/2018 | Zajk et al. |
| 9,927,197 | B1 | 3/2018 | Geissele |
| 9,939,221 | B2 | 4/2018 | Graves |
| 10,002,500 | B2 | 6/2018 | Hall et al. |
| 10,006,734 | B1 | 6/2018 | Findlay |
| 10,030,924 | B1 | 7/2018 | Smith |
| 10,077,960 | B2 | 9/2018 | Geissele |
| 10,107,580 | B2 | 10/2018 | Fellows et al. |
| 10,254,067 | B2 | 4/2019 | Foster |
| 10,267,584 | B2 | 4/2019 | Kasanjian-King |
| 10,330,413 | B2 | 6/2019 | Williams et al. |
| 10,488,136 | B2 | 11/2019 | Sullivan et al. |
| 10,502,511 | B2 | 12/2019 | Graves |
| 10,514,223 | B1 | 12/2019 | Rounds |
| 10,584,932 | B2 | 3/2020 | Foster |
| 11,287,205 | B2 | 3/2022 | Biegel |
| 11,293,715 | B1 | 4/2022 | Newsome et al. |
| 11,346,627 | B1 | 5/2022 | DeMonico |
| 11,724,003 | B2 | 8/2023 | Strbac |
| 2006/0048426 | A1 | 3/2006 | Crandall |
| 2006/0101695 | A1 | 5/2006 | Longueira |
| 2007/0051236 | A1 | 3/2007 | Groves et al. |
| 2007/0199435 | A1 | 8/2007 | Hochstrate et al. |
| 2009/0151213 | A1 | 6/2009 | Bell |
| 2009/0188145 | A1 | 7/2009 | Fluhr et al. |
| 2011/0209607 | A1 | 9/2011 | St. George |
| 2013/0118343 | A1 | 5/2013 | Hirt |
| 2014/0311004 | A1 | 10/2014 | Barrett |
| 2016/0010933 | A1 | 1/2016 | Bonner |
| 2016/0102933 | A1 | 4/2016 | Graves |
| 2016/0161202 | A1 | 6/2016 | Larue |
| 2017/0176124 | A1 | 6/2017 | Wilson |
| 2017/0219307 | A1 | 8/2017 | Foster |
| 2017/0276447 | A1 | 9/2017 | Foster |
| 2017/0284761 | A1 | 10/2017 | Lewis et al. |
| 2017/0299309 | A1 | 10/2017 | Fellows et al. |
| 2017/0328663 | A1 | 11/2017 | Fellows et al. |
| 2018/0066911 | A1 | 3/2018 | Graves |
| 2018/0087860 | A1 | 3/2018 | Sullivan et al. |
| 2018/0112944 | A1 | 4/2018 | Underwood et al. |
| 2018/0195823 | A1 | 7/2018 | Schafer et al. |
| 2018/0202740 | A1 | 7/2018 | Elftmann, Jr. |
| 2018/0231342 | A1 | 8/2018 | Martinez |
| 2021/0222974 | A1 | 7/2021 | Graves |

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| EP | 1678458 | B1 | 2/2012 |
| EP | 2950033 | B1 | 11/2016 |

(56) **References Cited**

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| TW | 409847 | U | 10/2000 |
| WO | 2016/028337 | A1 | 2/2016 |
| WO | 2018/058174 | A1 | 4/2018 |




FIG. 1




FIG. 2



10
110
111
116
114
112
36
50
53
52
72
82
84
86
78
12
20
16
24
46
30
76
22
26
18
32
74
60
64
48
66
56
58
38
54
68


FIG. 3

Case 4:26-cv-01091-ALM Document 1 Filed 07/13/26 Page 135 of 331 PageID #: 135

Exhibit A






FIG. 4A


12
20
46
30
56
53
32
60
64
50
36
48
54
38
16
72
74
76
82
84
22
116
114
112
66
68
110
10

FIG. 4B


20
46
30
52
12
56
54
16
64
48
53
32
50
58
38
36
60
74
72
66
68
82
86
116
114
84
22
111
110
10

FIG. 5A


20
46
30
56
12
32
53
54
60
64
50
36
48
38
16
72
74
76
112
82
84
116
22
111
114
110
66
68
10

FIG. 5B


20
46
30
52
12
56
54
16
64
48
32
53
50
58
36
60
74
114
72
66
82
86
112
68
84
116
22
110
111
38
10

FIG. 6A


12
20
46
30
56
32
53
60
64
50
36
48
54
38
16
72
74
76
114
82
84
22
112
116
66
68
110
111
10

FIG. 6B


14
99
102
92
42
30
20
104
12
46
52
56
60
50
53
36
48
54
38
98
58
64
44
32
72
82
111
74
96
84
94
86
78
114
112
22
66
110
90

FIG. 7


14
99
102
92
12
42
30
20
104
36
46
52
56
54
38
50
53
48
98
36
32
44
64
58
72
74
82
111
67
96
84
94
86
78
112
110
114
60
66
22
90

FIG. 8A


14
99
102
92
12
42
30
20
50
104
36
46
56
53
52
60
64
54
38
48
98
44
32
72
58
82
74
67
96
111
84
94
86
78
112
110
114
22
66
90

FIG. 8B


14
12
30
36
20
46
52
56
50
60
54
38
64
53
48
99
92
32
58
72
67
111
82
78
112
110
114
22
86
66
102
104
90
98

FIG. 8C


14
99
102
92
12
42
30
20
104
46
52
56
50
53
60
54
38
48
36
58
64
44
32
72
74
82
111
67
96
84
94
86
78
112
110
114
98
22
66
90

FIG. 8D



FIG. 9A


14
99
102
92
12
42
30
20
50
104
36
46
56
53
52
60
64
48
54
38
98
32
44
72
58
82
74
114
67
96
84
94
86
78
112
111
116
110
66
22
90

FIG. 9B


12
30
36
20
46
52
56
50
60
53
64
54
38
48
32
58
67
99
92
72
82
86
90
104
98
102
22
78
112
111
116
110
66

FIG. 9C


14
99
102
92
104
12
42
30
20
52
46
56
60
50
53
54
38
36
48
58
64
32
72
74
67
82
111
84
94
96
86
78
112
111
116
98
22
110
66
60
90

FIG. 9D

# FIREARM TRIGGER MECHANISM

## RELATED APPLICATIONS

This application claims the priority benefit of U.S. Provisional Patent Application No. 63/374,941 filed Sep. 8, 2022, which is hereby incorporated by reference herein as if fully set forth in its entirety.

## FIELD OF THE INVENTION

The present invention relates generally to a firearm trigger mechanism, and more particularly to a semiautomatic trigger that is selectively mechanically reset by movement of the bolt carrier.

## BACKGROUND OF THE INVENTION

In a standard semiautomatic firearm, actuation of the trigger releases a sear, allowing a hammer or striker to fire a chambered ammunition cartridge. Part of the ammunition's propellant force is used to cycle the action, extracting and ejecting a spent cartridge and replacing it with a loaded cartridge. The cycle includes longitudinal reciprocation of a bolt and/or carrier, which also resets the hammer or striker.

A standard semiautomatic trigger mechanism includes a disconnector, which holds the hammer or striker in a cocked position until the trigger member is reset to engage the sear. This allows the firearm to be fired only a single time when the trigger is pulled and held, because the user is not typically able to release the trigger rapidly enough so that the sear engages before the bolt or bolt carrier returns to its in-battery position. The disconnector prevents the firearm from either firing multiple rounds on a single pull of the trigger, or from allowing the hammer or striker to simply "follow" the bolt as it returns to battery without firing a second round, but leaving the hammer or striker uncocked.

For various reasons, shooters desire to increase the rate of semiautomatic fire. Sometimes this is simply for entertainment and the feeling of shooting a machine gun. In the past, users have been known to employ "bump firing" to achieve rapid semiautomatic fire. Bump firing uses the recoil of the semiautomatic firearm to fire shots in rapid succession. The process involves bracing the rifle with the non-trigger hand, loosening the grip of the trigger hand (but leaving the trigger finger in its normal position in front of the trigger), and pushing the rifle forward in order to apply pressure on the trigger from the finger while keeping the trigger finger stationary. When fired with the trigger finger held stationary, the firearm will recoil to the rear and allow the trigger to reset as it normally does. When the non-trigger hand pulls the firearm away from the body and back forward toward the original position, it causes the trigger to be pressed against the stationary finger again, firing another round as the trigger is pushed back.

Devices for increasing the rate of semiautomatic fire are shown in U.S. Pat. Nos. 9,568,264, 9,816,772, and 9,939,221, issued to Thomas Allen Graves. The devices shown in these patents forcefully reset the trigger with rigid mechanical contact between the trigger member and the bolt as the action cycles. To adapt this invention to an AR-pattern firearm, for example, would require not only a modified fire control mechanism, but also a modified bolt carrier.

Other devices for increasing the rate of semiautomatic fire are shown in the assignee's U.S. Pat. Nos. 10,514,223 and 11,346,627 and U.S. patent application Ser. No. 18/048,572 filed Oct. 21, 2022, all of which are hereby incorporated by



reference as if fully set forth in their entirety. In these devices the hammer forces the trigger to the set position, and a locking bar prevents early hammer release.

Another device for increasing the rate of semiautomatic fire is shown in U.S. Pat. No. 7,398,723, issued on Jul. 15, 2008, to Brian A. Blakley, and is hereby incorporated by reference herein as if fully set forth in its entirety. The device shown in this patent has a pivoting cam which is contacted by the rearwardly traveling bolt carrier, pivoting the cam rearwardly such that the bottom surface of the cam presses downward on the trigger-extension, forcing the rear of the trigger down, and thereby moving forward the surface of the trigger that an operator's finger engages.

Further improvement in forced reset triggers is desired.

## SUMMARY OF INVENTION

The present invention provides a semiautomatic trigger mechanism for increasing rate of fire that can be retrofitted into popular existing firearm platforms. In particular, this invention provides a trigger mechanism that can be used in AR-pattern firearms with an otherwise standard M16-pattern bolt carrier assembly. Embodiments of the present invention are particularly adaptable for construction as a "drop-in" replacement trigger module that only requires insertion of two assembly pins and the safety selector. Advantageously, the present invention provides a "three position" trigger mechanism having safe, standard semi-automatic, and forced reset semi-automatic positions.

In one aspect, a firearm trigger mechanism comprises a housing adapted to be installed in a fire control mechanism pocket of a receiver and having a first pair of transversely aligned openings for receiving a hammer pin, a second pair of transversely aligned openings for receiving a trigger pin, and a third pair of transversely aligned openings for receiving a cam pin, a hammer having a sear catch and a hook for engaging a disconnector and mounted in the housing to pivot on the hammer pin between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, a trigger member having a sear and mounted in the housing to pivot on the trigger member pin between set and released positions, wherein the sear and sear catch are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member, a disconnector having a hook for engaging the hammer and mounted in the housing to pivot on the trigger member pin, a cam having a cam lobe and mounted in the housing to pivot on the cam pin, the cam being pivotable between a first position at which the cam lobe does not force the trigger member towards the set position and a second position at which the cam lobe does force the trigger member towards the set position, and a safety selector adapted to be mounted in the fire control mechanism pocket to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions. In the standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer and pivoting of the cam from the first position to the second position such that the cam lobe forces the trigger member towards the set position but prior to reaching the set position the disconnector hook catches the hammer hook, and thereafter forward movement of the bolt carrier causes the cam to pivot to the first position, at which time a user must manually release the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. In the forced reset

semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer and pivoting of the cam from the first position to the second position such that the cam lobe forces the trigger member to the set position, the safety selector preventing the disconnector hook from catching the hammer hook, and thereafter forward movement of the bolt carrier causes the cam to pivot to the first position, at which time the user can pull the trigger member to fire the firearm without manually releasing the trigger member.

The safety selector can have a protuberance thereon which, when the safety selector is in the forced reset semi-automatic position, contacts the disconnector preventing the disconnector hook from catching the hammer hook. The trigger mechanism can further include a spring which biases the trigger member towards the set position.

In another aspect, a firearm trigger mechanism comprises a housing adapted to be installed in a fire control mechanism pocket of a receiver and having a first pair of transversely aligned openings for receiving a hammer pin, a second pair of transversely aligned openings for receiving a trigger pin, and a third pair of transversely aligned openings for receiving a cam pin, a hammer having a sear catch and a hook for engaging a disconnector and mounted in the housing to pivot on the hammer pin between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, a trigger member having a sear and mounted in the housing to pivot on the trigger member pin between set and released positions, wherein the sear and sear catch are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member, a disconnector having a hook for engaging the hammer and mounted in the housing to pivot on the trigger member pin, a cam having a cam lobe and mounted in the housing to pivot on the cam pin, the cam being pivotable between a first position at which the cam lobe does not force the trigger member towards the set position and a second position at which the cam lobe does force the trigger member towards the set position, and a safety selector adapted to be mounted in the fire control mechanism pocket to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions. In the standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer and pivoting of the cam from the first position to the second position such that the cam lobe forces the trigger member towards the set position but prior to reaching the set position the disconnector hook catches the hammer hook, and thereafter forward movement of the bolt carrier causes the cam to pivot to the first position, at which time a user must manually release the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. In the forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer and pivoting of the cam from the first position to the second position such that the cam lobe forces the trigger member to the set position, the safety selector preventing the disconnector hook from catching the hammer hook, and thereafter forward movement of the bolt carrier causes the cam to pivot to the first position, at which time the user can pull the trigger member to fire the firearm without manually releasing the trigger member.

The safety selector can have a protuberance thereon which, when the safety selector is in the forced reset semi-automatic position, contacts the disconnector preventing the disconnector hook from catching the hammer hook. The first and second pairs of transversely aligned openings in the housing can be adapted to be aligned with first and second pairs of transversely aligned assembly pin openings in the fire control mechanism pocket. The trigger mechanism can include a spring which biases the trigger member towards the set position. The spring can be a torsion spring.



In another aspect, a firearm comprises a receiver having a fire control mechanism pocket therein, a reciprocating bolt carrier, a hammer having a sear catch and a hook for engaging a disconnector and mounted in the fire control mechanism pocket to pivot on a transverse hammer pivot axis between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of the bolt carrier, a trigger member having a sear and mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, wherein the sear and sear catch are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member, a disconnector having a hook for engaging the hammer and mounted in the fire control mechanism pocket to pivot on the transverse trigger member pivot axis, a cam having a cam lobe and mounted in the fire control mechanism pocket to pivot on a transverse cam pivot axis, the cam being pivotable between a first position at which the cam lobe does not force the trigger member towards the set position and a second position at which the cam lobe does force the trigger member towards the set position, and a safety selector mounted in the fire control mechanism pocket to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions. In the standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer and pivoting of the cam from the first position to the second position such that the cam lobe forces the trigger member towards the set position but prior to reaching the set position the disconnector hook catches the hammer hook, and thereafter forward movement of the bolt carrier causes the cam to pivot to the first position, at which time a user must manually release the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. In the forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer and pivoting of the cam from the first position to the second position such that the cam lobe forces the trigger member to the set position, the safety selector preventing the disconnector hook from catching the hammer hook, and thereafter forward movement of the bolt carrier causes the cam to pivot to the first position, at which time the user can pull the trigger member to fire the firearm without manually releasing the trigger member.

The firearm can further comprise a housing having a first pair of transversely aligned openings with a hammer pin therethrough and a second pair of transversely aligned openings with a trigger member pin therethrough, the hammer mounted on the hammer pin, the trigger member and disconnector mounted on the trigger member pin. The receiver can have a first pair of transversely aligned assembly pin openings and a second pair of transversely aligned assembly pin openings, the housing first pair of openings coaxial with the receiver first pair of openings and the housing second pair of openings coaxial with the receiver second pair of openings, a first assembly pin passing through the receiver first pair of openings and through the housing first pair of openings, and a second assembly pin passing

through the receiver second pair of openings and through the housing second pair of openings. The firearm can further comprise a spring which biases the trigger member towards the set position. The spring can be a torsion spring.

In another aspect, a firearm trigger mechanism comprises a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, wherein the sear and sear catch are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member, a disconnector having a hook for engaging the hammer and adapted to be mounted in the fire control mechanism pocket to pivot on the transverse trigger member pivot axis, a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, the cam being movable between a first position at which the cam lobe does not force the trigger member towards the set position and a second position at which the cam lobe does force the trigger member towards the set position, and a safety selector adapted to be mounted in the fire control mechanism pocket to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions. In the standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer and movement of the cam from the first position to the second position such that the cam lobe forces the trigger member towards the set position but prior to reaching the set position the disconnector hook catches the hammer hook, and thereafter forward movement of the bolt carrier causes the cam to move to the first position, at which time a user must manually release the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. In the forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer and movement of the cam from the first position to the second position such that the cam lobe forces the trigger member to the set position, the safety selector preventing the disconnector hook from catching the hammer hook, and thereafter forward movement of the bolt carrier causes the cam to move to the first position, at which time the user can pull the trigger member to fire the firearm without manually releasing the trigger member.

Other aspects, features, benefits, and advantages of the present invention will become apparent to a person of skill in the art from the detailed description of various embodiments with reference to the accompanying drawing figures, all of which comprise part of the disclosure.

## BRIEF DESCRIPTION OF THE DRAWINGS

Like reference numerals are used to indicate like parts throughout the various drawing figures, wherein:

FIG. **1** is a top front right perspective view of a drop-in trigger module for an AR-pattern firearm according to one embodiment of the invention.

FIG. **2** is a top rear right perspective view thereof.

FIG. **3** is a top rear right exploded perspective view thereof.



FIG. **4**A is a top rear right cross-sectional view thereof with the safety selector in the safe position and with the hammer and trigger member in their set positions.

FIG. **4**B is a bottom rear right cross-sectional view thereof with the safety selector in the safe position and with the hammer and trigger member in their set positions.

FIG. **5**A is a top rear right cross-sectional view thereof with the safety selector in the standard semi-automatic position and with the hammer and trigger member in their set positions.

FIG. **5**B is a bottom rear right cross-sectional view thereof with the safety selector in the standard semi-automatic position and with the hammer and trigger member in their set positions.

FIG. **6**A is a top rear right cross-sectional view thereof with the safety selector in the forced reset semi-automatic position and with the hammer and trigger member in their set positions.

FIG. **6**B is a bottom rear right cross-sectional view thereof with the safety selector in the forced reset semi-automatic position and with the hammer and trigger member in their set positions.

FIG. **7** is a cross-sectional view showing the trigger module installed in a typical AR15-pattern lower receiver, with the hammer and trigger member in their set positions and with the bolt carrier in an in-battery position, and with the safety selector in the safe position.

FIG. **8**A is a view similar to FIG. **7** but with the safety selector in the standard semi-automatic position.

FIG. **8**B is a view similar to FIG. **8**A but after the trigger has been pulled to drop the hammer.

FIG. **8**C is a view similar to FIG. **8**B but with the bolt carrier cycling to the rear to pivot the hammer and cam.

FIG. **8**D is a view similar to FIG. **8**C but with the bolt carrier having returned to battery and the disconnector having caught the hammer.

FIG. **9**A is a view similar to FIG. **7** but with the safety selector in the forced reset semi-automatic position.

FIG. **9**B is a view similar to FIG. **9**A but after the trigger has been pulled to drop the hammer.

FIG. **9**C is a view similar to FIG. **9**B but with the bolt carrier cycling to the rear to pivot the hammer and cam.

FIG. **9**D is a view similar to FIG. **9**C but with the bolt carrier having returned to battery and the hammer and trigger having returned to their set positions.

## DETAILED DESCRIPTION OF THE DRAWINGS

With reference to the drawing figures, this section describes particular embodiments and their detailed construction and operation. Throughout the specification, reference to "one embodiment," "an embodiment," or "some embodiments" means that a particular described feature, structure, or characteristic may be included in at least one embodiment. Thus, appearances of the phrases "in one embodiment," "in an embodiment," or "in some embodiments" in various places throughout this specification are not necessarily all referring to the same embodiment. Furthermore, the described features, structures, and characteristics may be combined in any suitable manner in one or more embodiments. In view of the disclosure herein, those skilled in the art will recognize that the various embodiments can be practiced without one or more of the specific details or with other methods, components, materials, or the like. In some instances, well-known structures, materials, or operations are not shown or not described in detail to avoid obscuring aspects of the embodiments. "Forward" will indi-

cate the direction of the muzzle and the direction in which projectiles are fired, while "rearward" will indicate the opposite direction. "Lateral" or "transverse" indicates a side-to-side direction generally perpendicular to the axis of the barrel. Although firearms may be used in any orientation, "left" and "right" will generally indicate the sides according to the user's orientation, "top" or "up" will be the upward direction when the firearm is gripped in the ordinary manner. QAs used herein, "transverse" means a side-to-side direction generally perpendicular to the longitudinal axis of the barrel.

Referring first to FIGS. **1**-**6**B, there is illustrated a "drop-in" trigger module **10** adapted for use in an AR-pattern firearm according to a first embodiment of the present invention. As used herein, "AR-pattern" firearm includes the semiautomatic versions of the AR10 and AR15 firearms and variants thereof of any caliber, including pistol caliber carbines or pistols using a blow-back bolt. While select fire (fully automatic capable) versions of this platform, such as the M16 and M4, are also AR-pattern firearms, this invention only relates to semiautomatic firearm actions. The concepts of this invention may be adaptable to other popular semiautomatic firearm platforms, such as the Ruger 10/22™, AK-pattern firearms, and HK-pattern firearms.

The module **10** includes a frame or housing **12** sized and shaped to fit within the internal fire control pocket of an AR-pattern lower receiver **14**. Lower receiver parts not important to the present invention are well-known in the art and are omitted from the figures for clarity. The housing **12** includes left and right sidewalls **16**, **18** which extend substantially vertically and parallel to one another in a laterally spaced-apart relationship. The sidewalls **16**, **18** may be interconnected by front and rear sidewalls **20**, **22**. The sidewalls **16**, **18** include first and second pairs of aligned openings **24**, **26** for receiving hollow transverse pins **30**, **32** upon which a hammer **36** and trigger member **38** pivot. The openings **24**, **26** are located coaxially with openings **42**, **44** in the lower receiver **14**. Standard AR-pattern hammer and trigger pins **46**, **48** pass through the openings **42**, **44** in the lower receiver **14** and through the hollow transverse pins **30**, **32** to assemble the housing **12** into the lower receiver **14**. Thus, the pins **30**, **32** retain the hammer **36** and trigger member **38** in the housing **12** in modular fashion, whereas the pins **46**, **48** retain the trigger module **10** in the lower receiver **14**.

The hammer **36** has a hammer head **50**, a sear catch **52**, and a hammer hook **53**. The hammer **36** is spring biased towards a forward position by a standard AR-pattern hammer torsion spring (not shown).

The trigger member **38** has a trigger blade **54** that extends downwardly. The trigger blade **54** is the part of the trigger member **38** contacted by a user's finger to actuate the trigger mechanism. The trigger blade **54** may be curved (as shown) or straight, as desired. The trigger member **38** has a sear **56**. When the sear **56** and the sear catch **52** are engaged, the hammer **36** and trigger member **38** are in their set positions. When the sear **56** and sear catch **52** are not engaged, the hammer **36** and trigger member **38** are in their released positions. The trigger member **38** also has a cam follower **58**. The trigger member **38** is spring biased by a standard AR-pattern trigger member torsion spring (not shown) so that the trigger blade **54** is spring biased towards a forward position.

A disconnector **60** is pivoted on the hollow transverse pin **32** upon which the trigger member **38** pivots. The disconnector **60** has a disconnector hook **64** and a tail **66**. The tail **66** of the disconnector **60** is spring biased upwardly away from a tail **68** of the trigger member **38** by a standard AR-pattern disconnector compression spring **67**.

A cam **72** is movably mounted to the housing **12**. For example, the cam **72** can be pivoted on a cam pin **74** that is installed in aligned openings **76** in the sidewalls **16**, **18** of the housing **12**. The cam **72** has a cam lobe **78** that interacts with the cam follower **58**, in a manner to be described below. The cam **72** has a first contact surface **82** on an upper forward portion thereof and a second contact surface **84** on an upper rearward portion thereof. The cam **72** has a notch **86** below the second contact surface **84** to provide clearance for the rear wall **22** of the housing **12**. Alternatively, the cam **72** can be slidably mounted to the housing **12** with or without spring bias.

An upper receiver **90** houses a bolt carrier assembly **92**. As is well-known in the art, the bolt carrier assembly **92** (or blow-back bolt) slidably reciprocates in the upper receiver **90** and engages the breach of a barrel or barrel extension. As used herein, "bolt carrier" and "bolt carrier assembly" may be used interchangeably and include a blow-back type bolt used in pistol caliber carbine configurations of the AR-platform. The bolt carrier assembly **92** used with the embodiments of this invention can have either a standard mil-spec M16-pattern bolt carrier, a standard AR15-pattern bolt carrier, or some variation of the two, depending on the design of the cam **72**, and whether operated by a gas direct impingement system or a gas piston system. The bolt carrier assembly **92** has an engagement surface **94** in a rear portion **96** of the bolt carrier body **98**. As in an ordinary AR15-pattern configuration, during rearward travel of the bolt carrier assembly **92** a lower surface **102** in a forward portion **104** of the bolt carrier body **98** contacts the face of the hammer head **50** causing the hammer **36** to pivot rearward. During further rearward travel of bolt carrier assembly **92** the lower surface **102** of the bolt carrier body **98** contacts the surface **82** of the cam **72** to the pivot cam **72** in a first direction from a first position to a second position. During forward travel of the bolt carrier assembly **92** the engagement surface **94** of the bolt carrier body **98** contacts the surface **84** of the cam **72** to pivot the cam **72** in a second opposite direction from the second position to the first position.

A three position safety selector **110** has safe, standard semi-automatic, and forced reset semi-automatic positions. When in the safe position (safety selector indicator **111** pointing forward), a wide semi-circular portion **112** of the safety selector **110** prevents the trigger blade **54** from being pulled (FIGS. **4**A, **4**B, and **7**). When in the standard semi-automatic position (safety selector indicator **111** pointing upward), a flat portion **114** of the safety selector **110** permits the trigger blade **54** to be pulled. The disconnector **60** can pivot with the trigger member **38** and the disconnector hook **64** can catch the hammer hook **53** during rearward pivoting travel of the hammer head **50**. (FIGS. **5**A and **5**B). When in the forced reset semi-automatic position (safety selector indicator **111** pointing rearward), a narrow semi-circular portion **116** permits the trigger blade **54** to be pulled but prevents the disconnector **60** from pivoting with the trigger member **38** thus preventing the disconnector hook **64** from catching the hammer hook **53** during rearward pivoting travel of the hammer head **50**. (FIGS. **6**A and **6**B). In other words, in the forced reset semi-automatic position, the disconnector **60** is "disabled" in that the disconnector hook **64** is unable to catch the hammer hook **53** during cycling of the bolt carrier assembly **92**.

Referring now to FIGS. **8**A-**8**D, with the safety selector **110** set in the standard semi-automatic position, rearward

finger pressure on the trigger blade **54** causes the trigger member **38** to rotate clockwise. Depending on the position of the cam **72**, the cam follower **58** may or may not act upon the cam lobe **78** to pivot the cam **72** clockwise. Rotation of the trigger member **38** causes the sear **56** to disengage from the sear catch **52** of the hammer **36**. This allows the hammer **36** to drop by spring force onto the firing pin **99** of the bolt carrier assembly **92**, discharging an ammunition cartridge (not shown), and causing the action to cycle by moving the bolt carrier assembly **92** rearward. Rearward travel of the bolt carrier assembly **92** causes the lower surface **102** to contact the face of the hammer head **50** and pivot the hammer **36** counter-clockwise. During pivoting travel of the hammer **36** the disconnector hook **64** catches the hammer hook **53**. During further rearward travel of the bolt carrier assembly **92** the lower surface **102** contacts the surface **82** of the cam **72** to pivot the cam **72** counter-clockwise. As the cam **72** pivots counter-clockwise, the cam lobe **78** may acts upon the cam follower **58** to pivot the trigger member **38** counter-clockwise. Forward travel of the bolt carrier assembly **92** returning to battery causes the surface **94** to contact the surface **84** of the cam **72** to pivot the cam **72** clockwise. At this point rearward finger pressure on the trigger blade **54** must be released to allow the sear **56** to engage the sear catch **52**, returning the hammer **36** and trigger member **38** to their set positions. Thereafter the user can reapply rearward finger pressure on the trigger blade **54** to fire another round.

Referring now to FIGS. **9**A-**9**D, with the safety selector **110** set in the forced reset semi-automatic position, rearward finger pressure on the trigger blade **54** causes the trigger member **38** to rotate clockwise. The narrow semi-circular portion **116** of the safety selector **110** prevents the disconnector **60** from rotating with the trigger member **38**, thus "disabling" the disconnector **60**, preventing the disconnector hook **64** from catching the hammer hook **53**. Depending on the position of the cam **72**, the cam follower **58** may or may not act upon the cam lobe **78** to pivot the cam **72** clockwise. Rotation of the trigger member **38** causes the sear **56** to disengage from the sear catch **52** of the hammer **36**. This allows the hammer **36** to drop by spring force onto the firing pin **99** of the bolt carrier assembly **92**, discharging an ammunition cartridge, and causing the action to cycle by moving the bolt carrier assembly **92** rearward. Rearward travel of the bolt carrier assembly **92** causes the lower surface **102** to contact the face of the hammer head **50** and pivot the hammer **36** counter-clockwise. During further rearward travel of the bolt carrier assembly **92** the lower surface **102** contacts the surface **82** of the cam **72** to pivot the cam **72** counter-clockwise. As the cam **72** pivots counter-clockwise, the cam lobe **78** acts upon the cam follower **58** to the pivot trigger member **38** counter-clockwise. The bolt carrier assembly **92** thereby forces the hammer **36** and trigger member **38** to their set positions wherein the sear **56** engages the sear catch **52**. Forward travel of the bolt carrier assembly **92** returning to battery causes the surface **94** to contact the surface **84** of the cam **72** to pivot the cam **72** clockwise. At this point the user can reapply rearward finger pressure on the trigger blade **54** to fire another round, without first manually releasing rear finger pressure on the trigger blade **54**.

Thus, as the bolt carrier assembly **92** returns forward, the trigger member **38** is held in its set position by cam **72**. The trigger member **38** cannot be pulled to release the sear/sear catch engagement, thus precluding early hammer release or "hammer follow" against the bolt carrier assembly **92** and firing pin **99** as the bolt carrier assembly **92** is returning to battery. When the bolt carrier assembly **92** has reached (or



nearly reached) its closed, in-battery position, the engagement surface **94** contacts and forwardly displaces the contact surface **84** of cam **72**, disengaging the cam lobe **78** from the cam follower **58**, allowing the trigger blade **54** to be pulled. Again, this prevents early hammer release and contact of the hammer against the firing pin before the bolt is completely locked and in-battery.

While various embodiments of the present invention have been described in detail, it should be apparent that modifications and variations thereto are possible, all of which fall within the true spirit and scope of the invention. Therefore, the foregoing is intended only to be illustrative of the principles of the invention. The invention resides in each individual feature described herein, alone, and in any and all combinations and subcombinations of any and all of those features. Further, since numerous modifications and changes will readily occur to those skilled in the art, it is not intended to limit the invention to the exact construction and operation shown and described. Accordingly, all suitable modifications and equivalents may be included and considered to fall within the scope of the invention, defined by the following claim or claims.

What is claimed is:

**1**. A firearm trigger mechanism comprising:

a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier,

a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions,

wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member and are out of engagement in said released positions of said hammer and trigger member,

a disconnector having a hook for engaging said hammer and adapted to be mounted in the fire control mechanism pocket to pivot on said transverse trigger member pivot axis,

a cam having a cam lobe and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse cam pivot axis, said cam being pivotable between a first position at which said cam lobe does not force said trigger member towards said set position and a second position at which said cam lobe does force said trigger member towards said set position, and

a safety selector adapted to be mounted in the fire control mechanism pocket to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions,

whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer and pivoting of said cam from said first position to said second position such that said cam lobe forces said trigger member towards said set position but prior to reaching said set position said disconnector hook catches said hammer hook, and thereafter forward movement of the bolt carrier causes said cam to pivot to said first position, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and

whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer and pivoting of said cam from said first position to said second position such that said cam lobe forces said trigger member to said set position, said safety selector preventing said disconnector hook from catching said hammer hook, and thereafter forward movement of the bolt carrier causes said cam to pivot to said first position, at which time the user can pull said trigger member to fire the firearm without manually releasing said trigger member.

**2**. The trigger mechanism of claim **1**, wherein said safety selector has a protuberance thereon which, when said safety selector is in said forced reset semi-automatic position, contacts said disconnector preventing said disconnector hook from catching said hammer hook.

**3**. The trigger mechanism of claim **1** further including a spring which biases said trigger member towards said set position.

**4**. A firearm trigger mechanism comprising:

a housing adapted to be installed in a fire control mechanism pocket of a receiver and having a first pair of transversely aligned openings for receiving a hammer pin, a second pair of transversely aligned openings for receiving a trigger pin, and a third pair of transversely aligned openings for receiving a cam pin,

a hammer having a sear catch and a hook for engaging a disconnector and mounted in said housing to pivot on said hammer pin between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier,

a trigger member having a sear and mounted in said housing to pivot on said trigger member pin between set and released positions,

wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member and are out of engagement in said released positions of said hammer and trigger member,

a disconnector having a hook for engaging said hammer and mounted in said housing to pivot on said trigger member pin,

a cam having a cam lobe and mounted in said housing to pivot on said cam pin, said cam being pivotable between a first position at which said cam lobe does not force said trigger member towards said set position and a second position at which said cam lobe does force said trigger member towards said set position, and

a safety selector adapted to be mounted in the fire control mechanism pocket to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions,

whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer and pivoting of said cam from said first position to said second position such that said cam lobe forces said trigger member towards said set position but prior to reaching said set position said disconnector hook catches said hammer hook, and thereafter forward movement of the bolt carrier causes said cam to pivot to said first position, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and

whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer and pivoting of said cam from said first position to said second position such that said cam lobe forces said trigger member to said set position, said safety selector preventing said disconnector hook from catching said hammer hook, and thereafter forward movement of the bolt carrier causes said cam to pivot to said first position, at which time the user can pull said trigger member to fire the firearm without manually releasing said trigger member.

**5**. The trigger mechanism of claim **4**, wherein said safety selector has a protuberance thereon which, when said safety selector is in said forced reset semi-automatic position, contacts said disconnector preventing said disconnector hook from catching said hammer hook.

**6**. The trigger mechanism of claim **4**, wherein said first and second pairs of transversely aligned openings in said housing are adapted to be aligned with first and second pairs of transversely aligned assembly pin openings in the fire control mechanism pocket.

**7**. The trigger mechanism of claim **4** further including a spring which biases said trigger member towards said set position.

**8**. The trigger mechanism of claim **7** wherein said spring is a torsion spring.

**9**. A firearm comprising:

a receiver having a fire control mechanism pocket therein,

a reciprocating bolt carrier,

a hammer having a sear catch and a hook for engaging a disconnector and mounted in said fire control mechanism pocket to pivot on a transverse hammer pivot axis between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of said bolt carrier,

a trigger member having a sear and mounted in said fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions,

wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member and are out of engagement in said released positions of said hammer and trigger member,

a disconnector having a hook for engaging said hammer and mounted in said fire control mechanism pocket to pivot on said transverse trigger member pivot axis,

a cam having a cam lobe and mounted in said fire control mechanism pocket to pivot on a transverse cam pivot axis, said cam being pivotable between a first position at which said cam lobe does not force said trigger member towards said set position and a second position at which said cam lobe does force said trigger member towards said set position, and

a safety selector mounted in said fire control mechanism pocket to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions,

whereupon in said standard semi-automatic position, rearward movement of said bolt carrier causes rearward pivoting of said hammer and pivoting of said cam from said first position to said second position such that said cam lobe forces said trigger member towards said set position but prior to reaching said set position said disconnector hook catches said hammer hook, and thereafter forward movement of said bolt carrier causes said cam to pivot to said first position, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said

hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire said firearm, and

whereupon in said forced reset semi-automatic position, rearward movement of said bolt carrier causes rearward pivoting of said hammer and pivoting of said cam from said first position to said second position such that said cam lobe forces said trigger member to said set position, said safety selector preventing said disconnector hook from catching said hammer hook, and thereafter forward movement of said bolt carrier causes said cam to pivot to said first position, at which time the user can pull said trigger member to fire said firearm without manually releasing said trigger member.

**10**. The firearm of claim **9** further comprising:

a housing having a first pair of transversely aligned openings with a hammer pin therethrough and a second pair of transversely aligned openings with a trigger member pin therethrough,

said hammer mounted on said hammer pin, said trigger member and disconnector mounted on said trigger member pin.

**11**. The firearm of claim **10** further comprising:

said receiver having a first pair of transversely aligned assembly pin openings and a second pair of transversely aligned assembly pin openings,

said housing first pair of openings coaxial with said receiver first pair of openings and said housing second pair of openings coaxial with said receiver second pair of openings,

a first assembly pin passing through said receiver first pair of openings and through said housing first pair of openings, and

a second assembly pin passing through said receiver second pair of openings and through said housing second pair of openings.

**12**. The firearm of claim **10** further comprising a spring which biases said trigger member towards said set position.

**13**. The firearm of claim **12** wherein said spring is a torsion spring.

**14**. A firearm trigger mechanism comprising:

a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier,

a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions,

wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member and are out of engagement in said released positions of said hammer and trigger member,

a disconnector having a hook for engaging said hammer and adapted to be mounted in the fire control mechanism pocket to pivot on said transverse trigger member pivot axis,

a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, said cam being movable between a first position at which said cam lobe does not force said trigger member towards said set position and a second position at which said cam lobe does force said trigger member towards said set position, and



a safety selector adapted to be mounted in the fire control mechanism pocket to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions,

whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer and movement of said cam from said first position to said second position such that said cam lobe forces said trigger member towards said set position but prior to reaching said set position said disconnector hook catches said hammer hook, and thereafter forward movement of the bolt carrier causes said cam to move to said first position, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and

whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer and movement of said cam from said first position to said second position such that said cam lobe forces said trigger member to said set position, said safety selector preventing said disconnector hook from catching said hammer hook, and thereafter forward movement of the bolt carrier causes said cam to move to said first position, at which time the user can pull said trigger member to fire the firearm without manually releasing said trigger member.

**15**. A firearm trigger mechanism comprising:

a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier,

a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions,

wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member and are out of engagement in said released positions of said hammer and trigger member,

said disconnector having a hook for engaging said hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, and

a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, said cam being movable between a first position and a second position, in said second position said cam lobe forces said trigger member towards said set position,

whereupon in a standard semi-automatic mode, said cam is in said first position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, and thereafter the bolt carrier moves forward into battery, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and

whereupon in a forced reset semi-automatic mode, said cam is in said second position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook is prevented from

catching said hammer hook, and thereafter the bolt carrier moves forward into battery, at which time the user can pull said trigger member to fire the firearm.

**16**. The trigger mechanism of claim **15**, further comprising:

a housing having a first pair of transversely aligned openings with a hammer pin therethrough and a second pair of transversely aligned openings with a trigger member pin therethrough,

said hammer mounted on said hammer pin, said trigger member and disconnector mounted on said trigger member pin.

**17**. The trigger mechanism of claim **15**, further comprising a spring which biases said trigger member towards said set position.

**18**. The trigger mechanism of claim **17**, wherein said spring is a torsion spring.

**19**. The trigger mechanism of claim **15**, wherein the trigger member pivot axis and disconnector pivot axis are coaxial.

**20**. A firearm trigger mechanism comprising:

a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier,

a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions,

wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member and are out of engagement in said released positions of said hammer and trigger member,

a disconnector having a hook for engaging said hammer and adapted to be mounted in the fire control mechanism pocket to pivot on said transverse disconnector pivot axis,



a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, said cam being movable between a first position at which said cam lobe does not force said trigger member into said set position and a second position at which said cam lobe does force said trigger member into said set position, and

a safety selector adapted to be movably mounted in the fire control mechanism pocket to move between safe, standard semi-automatic, and forced reset semi-automatic positions,

whereupon in said standard semi-automatic position, said cam is in said first position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, and thereafter the bolt carrier moves forward into battery, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and

whereupon in said forced reset semi-automatic position, said cam is in said second position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook is prevented from catching said hammer hook, and thereafter the bolt carrier moves forward into battery, at which time the user can pull said trigger member to fire the firearm.

**21**. The trigger mechanism of claim **20**, wherein said cam is not a part of said safety selector.

**22**. The trigger mechanism of claim **20**, wherein said safety selector moves between safe, standard semi-automatic, and forced reset semi-automatic positions by rotation.

**23**. The trigger mechanism of claim **20**, wherein the trigger member pivot axis and disconnector pivot axis are coaxial.

* * * * *

# Exhibit B

# U.S. Patent No. 12,031,784

US012031784B1

(12) **United States Patent**
**DeMonico**

(10) **Patent No.: US 12,031,784 B1**
(45) **Date of Patent: Jul. 9, 2024**

# (54) ADAPTED FORCED RESET TRIGGER

(71) Applicant: **ABC IP, LLC**, Dover, DE (US)

(72) Inventor: **Lawrence DeMonico**, Austin, TX (US)

(73) Assignee: **ABC IP, LLC**, Dover, DE (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **18/052,606**

(22) Filed: **Nov. 4, 2022**

**Related U.S. Application Data**

(60) Provisional application No. 63/276,090, filed on Nov. 5, 2021.

(51) **Int. Cl.**
***F41A 17/46*** (2006.01)
***F41A 19/10*** (2006.01)
***F41A 19/43*** (2006.01)

(52) **U.S. Cl.**
CPC .............. ***F41A 17/46*** (2013.01); ***F41A 19/10*** (2013.01); ***F41A 19/43*** (2013.01)

(58) **Field of Classification Search**
CPC ........... F41A 17/46; F41A 19/10; F41A 19/43
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

3,318,192 A 5/1967 Miller et al.
4,023,465 A * 5/1977 Inskip ..................... F41A 19/03 89/142
4,133,128 A * 1/1979 Brush ..................... F41A 17/00 89/143
5,068,990 A * 12/1991 Marzocco .............. F41A 17/56 42/70.04
5,485,776 A * 1/1996 Ealovega ................ F41A 19/03 89/135
6,976,416 B2 12/2005 Ealovega
7,398,723 B1 * 7/2008 Blakley .................. F41A 19/10 89/129.01
7,690,144 B2 * 4/2010 Fagundes de Campos ................ F41A 17/72 42/70.08
9,151,557 B2 * 10/2015 Daley, Jr. ................ F41A 19/46
10,254,067 B2 4/2019 Foster
10,436,535 B1 10/2019 Bradshaw et al.
10,514,223 B1 12/2019 Rounds
10,767,950 B2 * 9/2020 Lake ....................... F41A 17/56
11,578,940 B2 * 2/2023 Lake ....................... F41A 19/10

* cited by examiner

*Primary Examiner* — Michelle Clement
(74) *Attorney, Agent, or Firm* — Wood Herron & Evans LLP

(57) **ABSTRACT**

In a forced rest trigger mechanism, provided is an extended trigger member locking device having a locking member that is movable between a first position in which it locks a trigger member against pulling movement and a second position where it does not restrict movement of the trigger member. The locking member is configured to be movably supported by a frame and includes a generally upward extension portion configured to make actuating contact with a surface of a bolt carrier. The locking member has a body portion that is movably supported and an upward extension portion that is separately movable relative to the body portion between an extended position and a deflected position.

**6 Claims, 5 Drawing Sheets**






FIG. 1




FIG. 2




FIG. 3




FIG. 4




FIG. 5




FIG. 6




FIG. 7




FIG. 8




FIG. 9




FIG. 10

# ADAPTED FORCED RESET TRIGGER

## TECHNICAL FIELD

This invention relates to a semiautomatic firearm trigger adapted for use in certain weapons platforms or calibers. In particular, it relates to a forced rest trigger assembly having a trigger locking member with a one-way folding capability to be actuated by forward movement of a bolt carrier assembly while allowing the bolt carrier to pass while cycling to the rear.

## BACKGROUND

A forced reset semiautomatic trigger is described and shown in U.S. Pat. No. 10,514,223, issued Dec. 24, 2019, the contents of which are hereby incorporated herein in its entirety by this reference. Its structure and function are fully described therein. The embodiment illustrated in that patent is particularly adapted for use in an AR15-pattern firearm.

The AR10 firearm pattern is similar in design, concept, and function to the AR15, but fires the larger 7.62 mm NATO (.308 Winchester) caliber cartridge and some dimensional specifications are somewhat less standardized. The larger caliber requires certain parts to be scaled differently from the AR15 pattern, resulting, for example, in a different profile of the bolt carrier body and spacing relative to the lower receiver and trigger mechanism. In particular, the rear or tail portion of the AR10-pattern bolt carrier is positioned vertically further from the lower receiver and trigger assembly parts, while a forward portion of the AR10-pattern bolt carrier is situated lower.

The embodiment illustrated in U.S. Pat. No. 10,514,223 could be installed in an AR10-pattern lower receiver (because the assembly/pivot pin locations are substantially the same), but it would not be operable because the upward extension of the locking member (bar) would be too short to be contacted and actuated (to release the trigger member) by the rear/tail portion of the bolt carrier as it reaches the in-battery position. However, if the upward length/height of the locking member is extended sufficiently to be actuated, it would then interfere with a lower surface of a forward portion of the bolt carrier as it cycles rearward, again making the device inoperable.

## SUMMARY OF THE INVENTION

The present invention provides a deflectable extension of the locking member that is actuated by forward movement of the bolt carrier, but deflects or folds to avoid interfering contact with the forward portion of the bolt carrier as the bolt carrier cycles to the rear.

In a forced rest trigger mechanism a trigger member locking device has a locking member that is movable between a first position in which it locks a trigger member against pulling movement and a second position where it does not restrict movement of the trigger member. The locking member is configured to be movably supported by a frame and includes a generally upward extension portion configured to make actuating contact with a surface of a bolt carrier. According to an aspect of the invention, the locking member has a body portion that is movably supported and an upward extension portion that is separately movable relative to the body portion between an extended position and a deflected position.

Two example embodiments are illustrated having a one-way hinge feature that causes the locking member to pivot



in one direction when actuated by a rear portion of the bolt carrier as it returns to the in-battery position, and to give way (i.e., deflect or fold) without pivoting the remainder of the locking member when contacted by the forward portion of the bolt carrier as it cycles to the rear.

Other aspects, features, benefits, and advantages of the present invention will become apparent to a person of skill in the art from the detailed description of various embodiments with reference to the accompanying drawing figures, all of which comprise part of the disclosure.

## BRIEF DESCRIPTION OF THE DRAWINGS

Like reference numerals are used to indicate like parts throughout the various drawing figures, wherein:

FIG. **1** is an isometric view of a trigger mechanism incorporating one embodiment of the present invention;

FIG. **2** is an exploded isometric view of the locking member according to this embodiment of the invention;

FIG. **3** is an assembled isometric view thereof;

FIG. **4** is a cross-sectional view taken substantially along line **4-4** of FIG. **3**;

FIG. **5** is a side sectional view of a trigger mechanism with a locking member according to this embodiment of the invention and a bolt carrier, in phantom lines, showing the bolt carrier moving forward toward the in-battery position

FIG. **6** is a similar view showing the bolt carrier in an in-battery position with the blocking member displaced (actuated) by the bolt carrier, the trigger member pulled, and the hammer released;

FIG. **7** is a similar view showing the bolt carrier moving toward its rearward cycled position in which it has pivoted the hammer against the trigger member to force the trigger member to the reset position and the upper extension of the locking member is pivoted to allow passage of the bolt carrier without interference or affecting the locking status of the locking member;

FIG. **8** is an exploded isometric view of an alternative embodiment locking member;

FIG. **9** is an assembled view thereof; and

FIG. **10** is a side sectional view taken substantially along line **10-10** of FIG. **9**, showing the displaced position of the hinged extension in phantom line.

## DETAILED DESCRIPTION

With reference to the drawing figures, this section describes particular embodiments and their detailed construction and operation. Throughout the specification, reference to "one embodiment," "an embodiment," or "some embodiments" means that a particular described feature, structure, or characteristic may be included in at least one embodiment. Thus, appearances of the phrases "in one embodiment," "in an embodiment," or "in some embodiments" in various places throughout this specification are not necessarily all referring to the same embodiment. Furthermore, the described features, structures, and characteristics may be combined in any suitable manner in one or more embodiments. In view of the disclosure herein, those skilled in the art will recognize that the various embodiments can be practiced without one or more of the specific details or with other methods, components, materials, or the like. In some instances, well-known structures, materials, or operations are not shown or not described in detail to avoid obscuring aspects of the embodiments. "Forward" will indicate the direction of the muzzle and the direction in which projectiles are fired, while "rearward" will indicate the

opposite direction. “Lateral” or “transverse” indicates a side-to-side direction generally perpendicular to the axis of the barrel. Although firearms may be used in any orientation, “left” and “right” will generally indicate the sides according to the user’s orientation, “top” or “up” will be the upward direction when the firearm is gripped in the ordinary manner.

Referring first to FIG. **1**, therein is shown a forced reset semiautomatic trigger assembly **10** with a locking member **12** according to a first embodiment of the present invention. As described in the aforementioned U.S. Pat. No. 10,514,223, the locking member (bar) **12** locks the trigger member **14** and prevents it from being pulled any time the bolt carrier assembly **16** is not in the substantially in-battery position. The bolt, firing pin, and other parts of the bolt carrier, the operation of which are well known to a person of ordinary skill in the art, are omitted from the illustrations for clarity. The trigger assembly can also include a trigger spring **15** that determines the pull force needed to pull the trigger member **14**, but the force of the spring **15** may be insignificant in returning the trigger member **14** to the reset position relative to the force of the hammer **34**. As used herein, “bolt,” “bolt carrier,” “bolt carrier body,” and/or “bolt carrier assembly” may be used interchangeably to refer to the part of the firearm action that reciprocates as the action cycles. The locking member **12** of the present invention includes a deflectable portion that moves to allow passage of the forward portion of the bolt carrier **16** as it cycles to the rear, which can include a hinging structure, as will be described in greater detail below.

The locking member **12** is supported to move (in this case, pivot, on a transverse axis) by the trigger housing **18**. It may be carried, for example on a substantially transverse pivot pin **20**, which allows the locking member **12**, to pivot as a whole unit. Likewise, the locking member could be supported by a frame other than a trigger housing, such as a separate frame or the receiver of the firearm (not shown).

Referring now also to FIGS. **2-4**, the locking member **12** acts as a pivot lever with lever arms extending substantially upwardly and downwardly from a substantially central pivot axis. The upper lever arm portion includes a foldable extension portion **22** that pivots on, for example a transverse pivot pin **24** relative to the locking bar body **26**. A spring means is provided to maintain the foldable extension **22** in the extended position. The spring means may be a torsion spring **28**, as illustrated, or may be some other type of spring, such as a leaf spring, etc. the extension portion **22** could be made from a resilient material configured to deflectably bend in one direction while retaining rigidity in an opposite direction.

As best indicated in FIG. **4**, the locking member body **26** and foldable extension **22** may include corresponding abutment surfaces **30**, **32** configured to limit the movement of the foldable extension **22** in one direction. Thus, force applied from a rearward direction toward the front to the foldable extension **22** causes the entire locking member **12** to pivot on the pivot pin **20** relative to the housing **18**. Rearward force applied to the foldable extension **22** from the front toward the rear causes the foldable extension **22** to fold on the pivot pin **24** and allow the bolt carrier **16** to pass without causing pivotal movement of the locking member body **26**.

Referring now to FIG. **5**, therein is shown in a sectional side view the relative positions of the trigger assembly **10** and bolt carrier body **16**. As shown in FIG. **5**, the hammer **34** has been reset by prior rearward reciprocating movement of the bolt carrier **16**. The pivotal reset of the hammer **34** has forced the trigger member **14** to its reset position, at which the sear **36** engages and holds the sear notch **38** of the hammer **34**. Likewise in this position, the locking member **12** is biased to the locked position by a spring **40** and prevents the trigger member **14** from being pulled by the user. This function is described in the aforementioned U.S. Pat. No. 10,514,223. As depicted by arrow **42** in FIG. **5**, the bolt carrier **16** is reciprocating forwardly toward the in-battery position.



Referring now to FIG. **6**, therein the bolt carrier **16** has returned to the substantially in-battery position, contacting the deflectable extension portion **22** of the locking member **12** from the rear and causing the locking bar **12** to deflect (e.g., pivot) as a whole about transverse pivot pin **20** against the bias of the spring **40**. As understood by a person of ordinary skill in the art, the bolt carrier **16** first contacts the locking member **12** before it reaches the fully in-battery position and then continues to travel forward the remaining distance as it moved the locking member **12** from one position to another. In this position, the locking member **12** has released the trigger member **14**, allowing the user to pull the trigger member **14** (see arrow **44**), releasing the hammer **34**, and allowing it to be spring biased into contact with the firing pin (not shown).

Referring now to FIG. **7**, therein is shown the trigger assembly **10** with the hammer **34** and trigger member **14** forced to the reset position in which the sear **36** is engaged with the sear notch **38**. As the bolt carrier **16** reciprocates to the rear (arrow **44** in FIG. **7**), a lower side surface of the bolt carrier **16** contacts the foldable extension portion **22**, causing it to pivot toward the rear on the pivot pin **24** and against the bias of the spring **28** without displacing the locking bar body **26** or affecting its locking of the trigger member **14**. In this manner, the locking member **12** can be of sufficient of upward extension length to be engaged by the bolt carrier **14** when it reaches its substantially in-battery position (FIG. **6**), while allowing rearward reciprocation of the bolt carrier **16** without causing damage to the locking member **12** or inducing an interference malfunction.

Referring now to FIGS. **8-10**, therein is shown a locking member **48** according to an alternate embodiment of the present invention. According to this embodiment, a foldable extension portion **50** is pivotable in one direction relative to the locking bar body **52** and both parts **50**, **52** pivot along a single substantially transverse pivot axis provided by pivot pin **54**. Again, the foldable extension portion **50** may be biased toward the extended position by a spring **56** and, as shown in FIG. **10**, the hinging movement of the foldable extension portion is operable separate from the locking bar body **52** in a rearward direction but engages an abutment surface **58** for unitary movement when the foldable extension portion **50** is actuated toward a forward direction.

The deflectable extension portion **22**, **50** of any embodiment can include a feature to reduce contact friction as the bolt carrier **16** slides rearwardly over it. For example, the contact surface would include a coating or treatment, it would include a friction-reducing material, such as ultra-high-molecular-weight (UHMW) polyurethane, or could include a rolling member, like a wheel.

The present invention can be adapted to other embodiments. For example, it can be adapted to sliding locking member, such as that shown in U.S. Pat. No. 11,346,627, issued May 31, 2022. A sliding locking member (not shown) can include an upward extension that is engaged by the bolt carrier **16** to slide the locking member to the unlocked position, but that also is deflectable to allow passage of the retracting forward portion of the bolt carrier **16**.

While one or more embodiments of the present invention have been described in detail, it should be apparent that

modifications and variations thereto are possible, all of which fall within the true spirit and scope of the invention. Therefore, the foregoing is intended only to be illustrative of the principles of the invention. Further, since numerous modifications and changes will readily occur to those skilled in the art, it is not intended to limit the invention to the exact construction and operation shown and described. Accordingly, all suitable modifications and equivalents may be included and considered to fall within the scope of the invention, defined by the following claim or claims.

What is claimed is:

**1**. In a forced rest trigger mechanism, an extended trigger member locking device, comprising:

a locking member that is movable between a first position in which it locks a trigger member against pulling movement and a second position where it does not restrict movement of the trigger member, the locking member configured to be movably supported by a frame and including a generally upward extension portion configured to make actuating contact with a surface of a bolt carrier, such actuating contact causing the locking member to move from the first position to the second position, the locking member having a body portion that is movably supported and an upwardly extending deflectable portion that is separately movable relative to the body portion between an extended position and a deflected position.

**2**. The device of claim **1**, wherein the locking member is supported by a trigger housing.

**3**. The device of claim **1**, wherein the locking member body portion pivots between the first and second positions.

**4**. The device of claim **1**, wherein the locking member deflectable portion pivots relative to the body portion.

**5**. The device of claim **3**, wherein the locking member deflectable portion pivots relative to the body portion on a pivot axis coaxial with that of the body portion.

**6**. The device of claim **1**, wherein the locking member deflectable portion is spring biased toward the extended position.

* * * * *

# Exhibit C

# U.S. Patent No. 12578159

US012578159B2

(12) **United States Patent**
**Blakley**

(10) **Patent No.: US 12,578,159 B2**
(45) **Date of Patent: *Mar. 17, 2026**

(54) **FIREARM TRIGGER MECHANISM**

(71) Applicant: **ABC IP, LLC**, Dover, DE (US)

(72) Inventor: **Brian A Blakley**, Pinellas Park, FL (US)

(73) Assignee: **ABC IP, LLC**, Dover, DE (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 160 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **18/761,606**

(22) Filed: **Jul. 2, 2024**

(65) **Prior Publication Data**

US 2026/0055983 A1 Feb. 26, 2026

**Related U.S. Application Data**

(63) Continuation of application No. 18/325,225, filed on May 30, 2023, now Pat. No. 12,038,247.

(Continued)

(51) **Int. Cl.**
***F41A 19/45*** (2006.01)
***F41A 17/46*** (2006.01)
(Continued)

(52) **U.S. Cl.**
CPC .............. ***F41A 19/45*** (2013.01); ***F41A 17/46*** (2013.01); ***F41A 19/10*** (2013.01); ***F41A 19/16*** (2013.01); *F41A 19/15* (2013.01)

(58) **Field of Classification Search**
CPC .......... F41A 19/45; F41A 19/10; F41A 19/15; F41A 19/64; F41A 17/46
(Continued)

(56) **References Cited**

U.S. PATENT DOCUMENTS

2,056,975 A 10/1936 Michal, Jr.
2,765,562 A 10/1956 Roper et al.
(Continued)

FOREIGN PATENT DOCUMENTS

DE 582963 C 8/1933
DE 4008351 A1 9/1991
(Continued)

OTHER PUBLICATIONS

Video; "Radian Mod for Tommy Trigger upgrade kit" posted Jun. 5, 2022 (online) at https://www.youtube.com/watch?v=Kj2S8gfTWew.
(Continued)

*Primary Examiner* — Reginald S Tillman, Jr.
(74) *Attorney, Agent, or Firm* — Wood Herron & Evans LLP

(57) **ABSTRACT**

A trigger mechanism that can be used in AR-pattern firearms has a hammer, a trigger member, a disconnector, a cam, and a "three position" safety selector having safe, standard semi-automatic, and forced reset semi-automatic positions. In the standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer and pivoting of the cam from a first position to a second position such that a cam lobe forces the trigger member towards the set position, but prior to reaching the set position the disconnector hook catches the hammer hook, at which time a user must manually release the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to their set positions so that the user can pull the trigger member to fire the firearm. In the forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer and pivoting of the cam from the first position to the second position such that the cam lobe forces the trigger member to the set position, the safety selector
(Continued)



preventing the disconnector hook from catching the hammer hook, at which time the user can pull the trigger member to fire the firearm without manually releasing the trigger member.

**18 Claims, 18 Drawing Sheets**

**Related U.S. Application Data**

(60) Provisional application No. 63/374,941, filed on Sep. 8, 2022.

(51) **Int. Cl.**
***F41A 19/10*** (2006.01)
***F41A 19/15*** (2006.01)
***F41A 19/16*** (2006.01)

(58) **Field of Classification Search**
USPC .......... 42/69.01, 69.03; 89/146, 148, 129.01, 89/129.02, 132
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS


| | | | |
|---|---|---|---|
| 3,045,555 | A | 7/1962 | Stoner |
| 3,292,492 | A | 12/1966 | Sturtevant |
| 3,301,133 | A | 1/1967 | Sturtevant |
| 3,670,442 | A | 6/1972 | Kennedy et al. |
| 4,023,465 | A | 5/1977 | Inskip |
| 4,057,003 | A | 11/1977 | Atchisson |
| 4,151,670 | A | 5/1979 | Rath |
| 4,276,808 | A | 7/1981 | York |
| 4,433,610 | A | 2/1984 | Tatro |
| 4,463,654 | A | 8/1984 | Barnes et al. |
| 4,516,466 | A | 5/1985 | Jennie |
| 4,580,484 | A | 4/1986 | Moore |
| 4,656,993 | A | 4/1987 | Yuzawa et al. |
| 4,658,702 | A | 4/1987 | Tatro |
| 4,693,170 | A | 9/1987 | Atchisson |
| 4,697,495 | A | 10/1987 | Beretta |
| 4,787,288 | A | 11/1988 | Miller |
| 4,937,964 | A | 7/1990 | Crandall |
| 5,149,898 | A | 9/1992 | Chesnut et al. |
| 5,183,959 | A | 2/1993 | McCoan et al. |
| 5,223,649 | A | 6/1993 | Claridge |
| 5,339,721 | A | 8/1994 | Beretta |
| 5,517,897 | A | 5/1996 | Perrine |
| 5,614,691 | A | 3/1997 | Taylor |
| 5,623,114 | A | 4/1997 | Soper |
| 5,682,699 | A | 11/1997 | Gentry |
| 5,701,698 | A | 12/1997 | Wesp et al. |
| 5,704,153 | A | 1/1998 | Kaminski et al. |
| 5,760,328 | A | 6/1998 | Robbins |
| 5,770,814 | A | 6/1998 | Ealovega |
| 6,101,918 | A | 8/2000 | Akins |
| 6,360,467 | B1 | 3/2002 | Knight |
| 6,601,331 | B2 | 8/2003 | Salvitti |
| 6,718,680 | B2 | 4/2004 | Roca et al. |
| 6,722,072 | B1 | 4/2004 | McCormick |
| 6,851,346 | B1 | 2/2005 | Herring |
| 6,889,459 | B1 | 5/2005 | Salvitti |
| 6,976,416 | B2 | 12/2005 | Ealovega |
| 7,051,638 | B2 | 5/2006 | Thomele |
| 7,162,824 | B1 | 1/2007 | McCormick |
| 7,213,359 | B2 | 5/2007 | Beretta |
| 7,293,385 | B2 | 11/2007 | McCormick |
| 7,337,574 | B2 | 3/2008 | Crandall et al. |
| 7,347,021 | B1 | 3/2008 | Jones |
| 7,398,723 | B1 | 7/2008 | Blakley |
| 7,421,937 | B1 | 9/2008 | Gangl |
| 7,634,959 | B2 | 12/2009 | Frickey |
| 7,661,220 | B2 | 2/2010 | Crandall et al. |
| 7,806,039 | B1 | 10/2010 | Gomez |
| 8,037,805 | B1 | 10/2011 | Neroni |
| 8,112,928 | B2 | 2/2012 | Keough |
| 8,127,658 | B1 | 3/2012 | Cottle |
| 8,156,854 | B2 | 4/2012 | Brown |
| 8,443,537 | B2 | 5/2013 | Curry |
| 8,464,454 | B2 | 6/2013 | Martin et al. |
| 8,490,309 | B2 | 7/2013 | Zukowski |
| 8,667,881 | B1 | 3/2014 | Hawbaker |
| 8,695,477 | B2 | 4/2014 | Esch |
| 8,720,096 | B2 | 5/2014 | Siddle |
| 8,820,211 | B1 | 9/2014 | Hawbaker |
| 8,893,607 | B2 | 11/2014 | Audibert et al. |
| 8,925,234 | B1 | 1/2015 | Barrett |
| 8,985,006 | B1 | 3/2015 | Christensen et al. |
| 9,016,187 | B2 | 4/2015 | Findlay |
| 9,021,732 | B2 | 5/2015 | Johnson |
| 9,021,733 | B1 | 5/2015 | DiChario |
| 9,052,150 | B2 | 6/2015 | Talasco |
| 9,121,661 | B2 | 9/2015 | Calvete |
| 9,146,066 | B1 | 9/2015 | Cason |
| 9,146,067 | B2 | 9/2015 | Stakes |
| 9,182,189 | B2 | 11/2015 | Seigler |
| 9,228,786 | B2 | 1/2016 | Sullivan et al. |
| 9,310,150 | B1 | 4/2016 | Geissele |
| 9,347,726 | B1 | 5/2016 | Thomas |
| 9,448,023 | B2 | 9/2016 | Sheets, Jr. et al. |
| 9,476,660 | B2 | 10/2016 | Potter et al. |
| 9,513,076 | B2 | 12/2016 | Kolev et al. |
| 9,568,264 | B2 | 2/2017 | Graves |
| 9,618,288 | B2 | 4/2017 | Wilson |
| 9,618,289 | B1 | 4/2017 | Geissele |
| 9,625,231 | B1 | 4/2017 | Hass |
| 9,631,886 | B2 | 4/2017 | Findlay |
| 9,651,329 | B2 | 5/2017 | Hittmann |
| 9,658,007 | B2 | 5/2017 | Withey |
| 9,683,800 | B2 | 6/2017 | Sewell, Jr. et al. |
| 9,733,031 | B1 | 8/2017 | Sylvester et al. |
| 9,759,504 | B2 | 9/2017 | Geissele |
| 9,777,980 | B2 | 10/2017 | Heizer |
| 9,810,493 | B2 | 11/2017 | Fluhr et al. |
| 9,810,496 | B2 | 11/2017 | Kolev et al. |
| 9,816,772 | B2 | 11/2017 | Graves |
| 9,829,263 | B2 | 11/2017 | Bonner |
| 9,835,398 | B2 | 12/2017 | Biegel |
| 9,863,730 | B2 | 1/2018 | Elftmann |
| 9,869,522 | B2 | 1/2018 | Larson, Jr. et al. |
| 9,874,417 | B2 | 1/2018 | Zajk et al. |
| 9,927,197 | B1 | 3/2018 | Geissele |
| 9,939,221 | B2 | 4/2018 | Graves |
| 10,002,500 | B2 | 6/2018 | Hall et al. |
| 10,006,734 | B1 | 6/2018 | Findlay |
| 10,030,924 | B1 | 7/2018 | Smith |
| 10,077,960 | B2 | 9/2018 | Geissele |
| 10,107,580 | B2 | 10/2018 | Fellows et al. |
| 10,254,067 | B2 | 4/2019 | Foster |
| 10,267,584 | B2 | 4/2019 | Kasanjian-King |
| 10,330,413 | B2 | 6/2019 | Williams et al. |
| 10,488,136 | B2 | 11/2019 | Sullivan et al. |
| 10,502,511 | B2 | 12/2019 | Graves |
| 10,514,223 | B1 | 12/2019 | Rounds |
| 10,584,932 | B2 | 3/2020 | Foster |
| 10,816,297 | B1 | 10/2020 | Williams et al. |
| 11,287,205 | B2 | 3/2022 | Biegel |
| 11,293,715 | B1 | 4/2022 | Newsome et al. |
| 11,346,627 | B1 | 5/2022 | DeMonico |
| 11,724,003 | B2 | 8/2023 | Strbac |
| 12,038,247 | B2 | 7/2024 | Blakley |
| 2006/0048426 | A1 | 3/2006 | Crandall |
| 2006/0101695 | A1 | 5/2006 | Longueira |
| 2007/0051236 | A1 | 3/2007 | Groves et al. |
| 2007/0199435 | A1 | 8/2007 | Hochstrate et al. |
| 2009/0151213 | A1 | 6/2009 | Bell |
| 2009/0188145 | A1 | 7/2009 | Fluhr et al. |
| 2011/0209607 | A1 | 9/2011 | St. George |
| 2013/0118343 | A1 | 5/2013 | Hirt |
| 2014/0311004 | A1 | 10/2014 | Barrett |
| 2016/0010933 | A1 | 1/2016 | Bonner |
| 2016/0102933 | A1 | 4/2016 | Graves |

Exhibit C



(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2016/0161202 | A1 | 6/2016 | Larue |
| 2017/0176124 | A1 | 6/2017 | Wilson |
| 2017/0219307 | A1 | 8/2017 | Foster |
| 2017/0276447 | A1 | 9/2017 | Foster |
| 2017/0284761 | A1 | 10/2017 | Lewis et al. |
| 2017/0299309 | A1 | 10/2017 | Fellows et al. |
| 2017/0328663 | A1 | 11/2017 | Fellows et al. |
| 2018/0066911 | A1 | 3/2018 | Graves |
| 2018/0087860 | A1 | 3/2018 | Sullivan et al. |
| 2018/0112944 | A1 | 4/2018 | Underwood et al. |
| 2018/0195823 | A1 | 7/2018 | Schafer et al. |
| 2018/0202740 | A1 | 7/2018 | Elftmann, Jr. |
| 2018/0231342 | A1 | 8/2018 | Martinez |
| 2020/0191513 | A1 | 6/2020 | Foster |
| 2021/0222974 | A1 | 7/2021 | Graves |
| 2022/0364812 | A1 | 11/2022 | Fellows |

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| EP | 1678458 | B1 | 2/2012 |
| EP | 2950033 | B1 | 11/2016 |
| TW | 409847 | U | 10/2000 |
| WO | 2016/028337 | A1 | 2/2016 |
| WO | 2018/058174 | A1 | 4/2018 |

OTHER PUBLICATIONS

Video: “Tommy Trigger’s Alamo 15 and Rare Breed FRT/E3 Safety Selector Guide” posted Jun. 29, 2022 (online) at https://www.youtube.com/watch?v=00mQ2mfjqfU.

Video: “Tommy Trigger 3 Selector Install for Alamo 15” posted Aug. 1, 2022 (online) at https://www.youtube.com/watch?v=PSvjkaUGJ3Q.

Tommy Triggers website home page https://TommyTriggers.com (online) copy retrieved Jan. 31, 2022.

Tommy Triggers website Shop page https://TommyTriggers.com/shop (online) copy retrieved Feb. 4, 2022.

Tommy Triggers website Rare Breed Upgrade page https://TommyTriggers.com/ols/products/the-ultimate-upgrade-for-the-rare-breed-trigger (online) copy retrieved Feb. 10, 2022.

Exhibit 1005 from IPR Petition No. 2025-01473 (photo of Radian Mod for Tommy Triggers upgrade kit).

Exhibit 1006 from IPR Petition No. 2025-01473 (photo of Tommy Triggers Alamo-15 And Rare Breed Frt E3 safety selector guide).

Exhibit 1007 from IPR Petition No. 2025-01473 (photo of Tommy Triggers 3 Selector install for Alamo-15).

Exhibit 1008 from IPR Petition No. 2025-01473 (*Rare Breed, et al.* v. *Strbac, d/b/s Tommy Triggers* Complaint, U.S. District Court for the N.D. Ohio, filed Feb. 21, 2022).

Statutory Invention Registration No. H107, Inventor: Bauer, Published Aug. 5, 1986 (8 pages).




FIG. 1




FIG. 2


10
110
111
116
114
112
36
50
53
52
72
82
84
86
78
12
20
16
24
46
30
76
22
26
18
32
74
60
64
48
66
56
58
38
68
54

FIG. 3


20
46
30
52
12
56
54
16
64
48
50
53
32
58
38
36
60
74
72
66
82
86
116
114
112
68
84
22
32
110
10

FIG. 4A


12
20
46
30
56
32
53
60
64
50
36
48
54
38
72
74
76
16
82
84
116
112
66
68
22
114
110
10

FIG. 4B


20
46
30
52
12
56
54
16
64
48
32
53
50
36
58
60
38
74
72
66
82
86
116
68
84
22
114
111
110
10

FIG. 5A


20
46
30
56
12
53
32
54
60
64
50
48
36
38
72
74
76
16
112
82
116
68
84
114
22
111
66
110
10

FIG. 5B


10
12
16
20
22
30
32
36
38
46
48
50
52
53
54
56
58
60
64
66
68
72
74
82
84
86
110
111
112
114
116

FIG. 6A


10
12
20
46
30
56
53
32
54
60
64
50
36
48
38
72
74
76
114
16
82
84
22
112
116
66
68
110
111

FIG. 6B


14
99
102
92
42
30
20
52
46
12
56
104
60
50
53
54
38
48
36
98
64
44
32
58
72
82
111
74
67
96
84
94
86
78
114
112
66
22
110
90

FIG. 7


14
99
102
92
12
42
30
20
104
36
46
52
56
54
38
50
53
48
98
36
64
44
32
72
58
74
82
111
67
96
84
94
78
112
110
114
86
60
22
66
90

FIG. 8A


14
99
102
92
12
42
30
20
50
104
36
46
56
53
52
64
60
98
54
38
48
44
32
58
72
82
74
111
96
84
94
86
78
112
110
114
67
22
66
90

FIG. 8B

Exhibit C






FIG. 8C


14
99
102
92
12
42
30
20
104
46
52
56
50
60
53
54
38
48
36
64
44
32
72
58
67
74
96
82
111
84
94
78
112
110
114
86
98
22
66
90

FIG. 8D


14
99
102
92
12
42
30
20
104
36
46
52
56
60
50
53
54
38
48
44
98
36
32
64
58
72
74
114
67
82
96
84
94
86
78
112
111
116
22
110
66
90

FIG. 9A


14
99
102
92
12
42
30
20
50
104
36
46
56
53
52
60
54
38
98
64
48
32
72
58
44
82
74
114
67
96
84
94
86
78
112
111
116
22
66
110
90

FIG. 9B


12
30
36
20
52
56
54
38
46
50
60
53
64
48
32
58
67
92
99
72
82
86
90
104
98
102
22
78
112
111
116
110
66

FIG. 9C


14
99
102
92
12
42
30
20
104
46
52
56
54
38
50
60
53
48
36
32
64
58
72
74
82
111
84
94
86
96
98
90
78
112
111
116
67
22
60
66
110

FIG. 9D

# FIREARM TRIGGER MECHANISM

## RELATED APPLICATIONS

This application is a continuation application of U.S. patent application Ser. No. 18/325,225, filed May 30, 2023, and claims the priority benefit of US Provisional Ser. No. 63/374,941 filed Sep. 8, 2022, which are hereby incorporated by reference herein as if fully set forth in their entirety.

## FIELD OF THE INVENTION

The present invention relates generally to a firearm trigger mechanism, and more particularly to a semiautomatic trigger that is selectively mechanically reset by movement of the bolt carrier.

## BACKGROUND OF THE INVENTION

In a standard semiautomatic firearm, actuation of the trigger releases a sear, allowing a hammer or striker to fire a chambered ammunition cartridge. Part of the ammunition's propellant force is used to cycle the action, extracting and ejecting a spent cartridge and replacing it with a loaded cartridge. The cycle includes longitudinal reciprocation of a bolt and/or carrier, which also resets the hammer or striker.

A standard semiautomatic trigger mechanism includes a disconnector, which holds the hammer or striker in a cocked position until the trigger member is reset to engage the sear. This allows the firearm to be fired only a single time when the trigger is pulled and held, because the user is not typically able to release the trigger rapidly enough so that the sear engages before the bolt or bolt carrier returns to its in-battery position. The disconnector prevents the firearm from either firing multiple rounds on a single pull of the trigger, or from allowing the hammer or striker to simply "follow" the bolt as it returns to battery without firing a second round, but leaving the hammer or striker uncocked.

For various reasons, shooters desire to increase the rate of semiautomatic fire. Sometimes this is simply for entertainment and the feeling of shooting a machine gun. In the past, users have been known to employ "bump firing" to achieve rapid semiautomatic fire. Bump firing uses the recoil of the semiautomatic firearm to fire shots in rapid succession. The process involves bracing the rifle with the non-trigger hand, loosening the grip of the trigger hand (but leaving the trigger finger in its normal position in front of the trigger), and pushing the rifle forward in order to apply pressure on the trigger from the finger while keeping the trigger finger stationary. When fired with the trigger finger held stationary, the firearm will recoil to the rear and allow the trigger to reset as it normally does. When the non-trigger hand pulls the firearm away from the body and back forward toward the original position, it causes the trigger to be pressed against the stationary finger again, firing another round as the trigger is pushed back.

Devices for increasing the rate of semiautomatic fire are shown in U.S. Pat. Nos. 9,568,264, 9,816,772, and 9,939,221, issued to Thomas Allen Graves. The devices shown in these patents forcefully reset the trigger with rigid mechanical contact between the trigger member and the bolt as the action cycles. To adapt this invention to an AR-pattern firearm, for example, would require not only a modified fire control mechanism, but also a modified bolt carrier.

Other devices for increasing the rate of semiautomatic fire are shown in the assignee's U.S. Pat. Nos. 10,514,223 and 11,346,627 and U.S. patent application Ser. No. 18/048,572 filed Oct. 21, 2022, all of which are hereby incorporated by reference as if fully set forth in their entirety. In these devices the hammer forces the trigger to the set position, and a locking bar prevents early hammer release.

Another device for increasing the rate of semiautomatic fire is shown in U.S. Pat. No. 7,398,723, issued on Jul. 15, 2008, to Brian A. Blakley, and is hereby incorporated by reference herein as if fully set forth in its entirety. The device shown in this patent has a pivoting cam which is contacted by the rearwardly traveling bolt carrier, pivoting the cam rearwardly such that the bottom surface of the cam presses downward on the trigger-extension, forcing the rear of the trigger down, and thereby moving forward the surface of the trigger that an operator's finger engages.

Further improvement in forced reset triggers is desired.

## SUMMARY OF INVENTION

The present invention provides a semiautomatic trigger mechanism for increasing rate of fire that can be retrofitted into popular existing firearm platforms. In particular, this invention provides a trigger mechanism that can be used in AR-pattern firearms with an otherwise standard M16-pattern bolt carrier assembly. Embodiments of the present invention are particularly adaptable for construction as a "drop-in" replacement trigger module that only requires insertion of two assembly pins and the safety selector. Advantageously, the present invention provides a "three position" trigger mechanism having safe, standard semi-automatic, and forced reset semi-automatic positions.

In one aspect, a firearm trigger mechanism comprises a housing adapted to be installed in a fire control mechanism pocket of a receiver and having a first pair of transversely aligned openings for receiving a hammer pin, a second pair of transversely aligned openings for receiving a trigger pin, and a third pair of transversely aligned openings for receiving a cam pin, a hammer having a sear catch and a hook for engaging a disconnector and mounted in the housing to pivot on the hammer pin between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, a trigger member having a sear and mounted in the housing to pivot on the trigger member pin between set and released positions, wherein the sear and sear catch are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member, a disconnector having a hook for engaging the hammer and mounted in the housing to pivot on the trigger member pin, a cam having a cam lobe and mounted in the housing to pivot on the cam pin, the cam being pivotable between a first position at which the cam lobe does not force the trigger member towards the set position and a second position at which the cam lobe does force the trigger member towards the set position, and a safety selector adapted to be mounted in the fire control mechanism pocket to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions. In the standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer and pivoting of the cam from the first position to the second position such that the cam lobe forces the trigger member towards the set position but prior to reaching the set position the disconnector hook catches the hammer hook, and thereafter forward movement of the bolt carrier causes the cam to pivot to the first position, at which time a user must manually release the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull

the trigger member to fire the firearm. In the forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer and pivoting of the cam from the first position to the second position such that the cam lobe forces the trigger member to the set position, the safety selector preventing the disconnector hook from catching the hammer hook, and thereafter forward movement of the bolt carrier causes the cam to pivot to the first position, at which time the user can pull the trigger member to fire the firearm without manually releasing the trigger member.

The safety selector can have a protuberance thereon which, when the safety selector is in the forced reset semi-automatic position, contacts the disconnector preventing the disconnector hook from catching the hammer hook. The trigger mechanism can further include a spring which biases the trigger member towards the set position.

In another aspect, a firearm trigger mechanism comprises a housing adapted to be installed in a fire control mechanism pocket of a receiver and having a first pair of transversely aligned openings for receiving a hammer pin, a second pair of transversely aligned openings for receiving a trigger pin, and a third pair of transversely aligned openings for receiving a cam pin, a hammer having a sear catch and a hook for engaging a disconnector and mounted in the housing to pivot on the hammer pin between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, a trigger member having a sear and mounted in the housing to pivot on the trigger member pin between set and released positions, wherein the sear and sear catch are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member, a disconnector having a hook for engaging the hammer and mounted in the housing to pivot on the trigger member pin, a cam having a cam lobe and mounted in the housing to pivot on the cam pin, the cam being pivotable between a first position at which the cam lobe does not force the trigger member towards the set position and a second position at which the cam lobe does force the trigger member towards the set position, and a safety selector adapted to be mounted in the fire control mechanism pocket to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions. In the standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer and pivoting of the cam from the first position to the second position such that the cam lobe forces the trigger member towards the set position but prior to reaching the set position the disconnector hook catches the hammer hook, and thereafter forward movement of the bolt carrier causes the cam to pivot to the first position, at which time a user must manually release the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. In the forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer and pivoting of the cam from the first position to the second position such that the cam lobe forces the trigger member to the set position, the safety selector preventing the disconnector hook from catching the hammer hook, and thereafter forward movement of the bolt carrier causes the cam to pivot to the first position, at which time the user can pull the trigger member to fire the firearm without manually releasing the trigger member.

The safety selector can have a protuberance thereon which, when the safety selector is in the forced reset semi-automatic position, contacts the disconnector preventing the disconnector hook from catching the hammer hook. The first and second pairs of transversely aligned openings in the housing can be adapted to be aligned with first and second pairs of transversely aligned assembly pin openings in the fire control mechanism pocket. The trigger mechanism can include a spring which biases the trigger member towards the set position. The spring can be a torsion spring.

In another aspect, a firearm comprises a receiver having a fire control mechanism pocket therein, a reciprocating bolt carrier, a hammer having a sear catch and a hook for engaging a disconnector and mounted in the fire control mechanism pocket to pivot on a transverse hammer pivot axis between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of the bolt carrier, a trigger member having a sear and mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, wherein the sear and sear catch are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member, a disconnector having a hook for engaging the hammer and mounted in the fire control mechanism pocket to pivot on the transverse trigger member pivot axis, a cam having a cam lobe and mounted in the fire control mechanism pocket to pivot on a transverse cam pivot axis, the cam being pivotable between a first position at which the cam lobe does not force the trigger member towards the set position and a second position at which the cam lobe does force the trigger member towards the set position, and a safety selector mounted in the fire control mechanism pocket to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions. In the standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer and pivoting of the cam from the first position to the second position such that the cam lobe forces the trigger member towards the set position but prior to reaching the set position the disconnector hook catches the hammer hook, and thereafter forward movement of the bolt carrier causes the cam to pivot to the first position, at which time a user must manually release the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. In the forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer and pivoting of the cam from the first position to the second position such that the cam lobe forces the trigger member to the set position, the safety selector preventing the disconnector hook from catching the hammer hook, and thereafter forward movement of the bolt carrier causes the cam to pivot to the first position, at which time the user can pull the trigger member to fire the firearm without manually releasing the trigger member.

The firearm can further comprise a housing having a first pair of transversely aligned openings with a hammer pin therethrough and a second pair of transversely aligned openings with a trigger member pin therethrough, the hammer mounted on the hammer pin, the trigger member and disconnector mounted on the trigger member pin. The receiver can have a first pair of transversely aligned assembly pin openings and a second pair of transversely aligned assembly pin openings, the housing first pair of openings coaxial with the receiver first pair of openings and the housing second pair of openings coaxial with the receiver second pair of openings, a first assembly pin passing through the receiver first pair of openings and through the housing

first pair of openings, and a second assembly pin passing through the receiver second pair of openings and through the housing second pair of openings. The firearm can further comprise a spring which biases the trigger member towards the set position. The spring can be a torsion spring.

In another aspect, a firearm trigger mechanism comprises a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, wherein the sear and sear catch are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member, a disconnector having a hook for engaging the hammer and adapted to be mounted in the fire control mechanism pocket to pivot on the transverse trigger member pivot axis, a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, the cam being movable between a first position at which the cam lobe does not force the trigger member towards the set position and a second position at which the cam lobe does force the trigger member towards the set position, and a safety selector adapted to be mounted in the fire control mechanism pocket to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions. In the standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer and movement of the cam from the first position to the second position such that the cam lobe forces the trigger member towards the set position but prior to reaching the set position the disconnector hook catches the hammer hook, and thereafter forward movement of the bolt carrier causes the cam to move to the first position, at which time a user must manually release the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. In the forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer and movement of the cam from the first position to the second position such that the cam lobe forces the trigger member to the set position, the safety selector preventing the disconnector hook from catching the hammer hook, and thereafter forward movement of the bolt carrier causes the cam to move to the first position, at which time the user can pull the trigger member to fire the firearm without manually releasing the trigger member.

Other aspects, features, benefits, and advantages of the present invention will become apparent to a person of skill in the art from the detailed description of various embodiments with reference to the accompanying drawing figures, all of which comprise part of the disclosure.

## BRIEF DESCRIPTION OF THE DRAWINGS

Like reference numerals are used to indicate like parts throughout the various drawing figures, wherein:

FIG. **1** is a top front right perspective view of a drop-in trigger module for an AR-pattern firearm according to one embodiment of the invention.

FIG. **2** is a top rear right perspective view thereof.

FIG. **3** is a top rear right exploded perspective view thereof.

FIG. **4**A is a top rear right cross-sectional view thereof with the safety selector in the safe position and with the hammer and trigger member in their set postions.

FIG. **4**B is a bottom rear right cross-sectional view thereof with the safety selector in the safe position and with the hammer and trigger member in their set positions.

FIG. **5**A is a top rear right cross-sectional view thereof with the safety selector in the standard semi-automatic position and with the hammer and trigger member in their set positions.

FIG. **5**B is a bottom rear right cross-sectional view thereof with the safety selector in the standard semi-automatic position and with the hammer and trigger member in their set positions.

FIG. **6**A is a top rear right cross-sectional view thereof with the safety selector in the forced reset semi-automatic position and with the hammer and trigger member in their set positions.

FIG. **6**B is a bottom rear right cross-sectional view thereof with the safety selector in the forced reset semi-automatic position and with the hammer and trigger member in their set positions.

FIG. **7** is a cross-sectional view showing the trigger module installed in a typical AR15-pattern lower receiver, with the hammer and trigger member in their set positions and with the bolt carrier in an in-battery position, and with the safety selector in the safe position.

FIG. **8**A is a view similar to FIG. **7** but with the safety selector in the standard semi-automatic position.

FIG. **8**B is a view similar to FIG. **8**A but after the trigger has been pulled to drop the hammer.

FIG. **8**C is a view similar to FIG. **8**B but with the bolt carrier cycling to the rear to pivot the hammer and cam.

FIG. **8**D is a view similar to FIG. **8**C but with the bolt carrier having returned to battery and the disconnector having caught the hammer.

FIG. **9**A is a view similar to FIG. **7** but with the safety selector in the forced reset semi-automatic position.

FIG. **9**B is a view similar to FIG. **9**A but after the trigger has been pulled to drop the hammer.

FIG. **9**C is a view similar to FIG. **9**B but with the bolt carrier cycling to the rear to pivot the hammer and cam.

FIG. **9**D is a view similar to FIG. **9**C but with the bolt carrier having returned to battery and the hammer and trigger having returned to their set positions.

## DETAILED DESCRIPTION OF THE DRAWINGS

With reference to the drawing figures, this section describes particular embodiments and their detailed construction and operation. Throughout the specification, reference to "one embodiment," "an embodiment," or "some embodiments" means that a particular described feature, structure, or characteristic may be included in at least one embodiment. Thus, appearances of the phrases "in one embodiment," "in an embodiment," or "in some embodiments" in various places throughout this specification are not necessarily all referring to the same embodiment. Furthermore, the described features, structures, and characteristics may be combined in any suitable manner in one or more embodiments. In view of the disclosure herein, those skilled in the art will recognize that the various embodiments can be practiced without one or more of the specific details or with other methods, components, materials, or the like. In some instances, well-known structures, materials, or operations are not shown or not described in detail to avoid obscuring aspects of the embodiments. "Forward" will indi-

cate the direction of the muzzle and the direction in which projectiles are fired, while "rearward" will indicate the opposite direction. "Lateral" or "transverse" indicates a side-to-side direction generally perpendicular to the axis of the barrel. Although firearms may be used in any orientation, "left" and "right" will generally indicate the sides according to the user's orientation, "top" or "up" will be the upward direction when the firearm is gripped in the ordinary manner. QAs used herein, "transverse" means a side-to-side direction generally perpendicular to the longitudinal axis of the barrel.

Referring first to FIGS. **1-6**B, there is illustrated a "drop-in" trigger module **10** adapted for use in an AR-pattern firearm according to a first embodiment of the present invention. As used herein, "AR-pattern" firearm includes the semiautomatic versions of the AR10 and AR15 firearms and variants thereof of any caliber, including pistol caliber carbines or pistols using a blow-back bolt. While select fire (fully automatic capable) versions of this platform, such as the M16 and M4, are also AR-pattern firearms, this invention only relates to semiautomatic firearm actions. The concepts of this invention may be adaptable to other popular semiautomatic firearm platforms, such as the Ruger 10/22™, AK-pattern firearms, and HK-pattern firearms.

The module **10** includes a frame or housing **12** sized and shaped to fit within the internal fire control pocket of an AR-pattern lower receiver **14**. Lower receiver parts not important to the present invention are well-known in the art and are omitted from the figures for clarity. The housing **12** includes left and right sidewalls **16**, **18** which extend substantially vertically and parallel to one another in a laterally spaced-apart relationship. The sidewalls **16**, **18** may be interconnected by front and rear sidewalls **20**, **22**. The sidewalls **16**, **18** include first and second pairs of aligned openings **24**, **26** for receiving hollow transverse pins **30**, **32** upon which a hammer **36** and trigger member **38** pivot. The openings **24**, **26** are located coaxially with openings **42**, **44** in the lower receiver **14**. Standard AR-pattern hammer and trigger pins **46**, **48** pass through the openings **42**, **44** in the lower receiver **14** and through the hollow transverse pins **30**, **32** to assemble the housing **12** into the lower receiver **14**. Thus, the pins **30**, **32** retain the hammer **36** and trigger member **38** in the housing **12** in modular fashion, whereas the pins **46**, **48** retain the trigger module **10** in the lower receiver **14**.

The hammer **36** has a hammer head **50**, a sear catch **52**, and a hammer hook **53**. The hammer **36** is spring biased towards a forward position by a standard AR-pattern hammer torsion spring (not shown).

The trigger member **38** has a trigger blade **54** that extends downwardly. The trigger blade **54** is the part of the trigger member **38** contacted by a user's finger to actuate the trigger mechanism. The trigger blade **54** may be curved (as shown) or straight, as desired. The trigger member **38** has a sear **56**. When the sear **56** and the sear catch **52** are engaged, the hammer **36** and trigger member **38** are in their set positions. When the sear **56** and sear catch **52** are not engaged, the hammer **36** and trigger member **38** are in their released positions. The trigger member **38** also has a cam follower **58**. The trigger member **38** is spring biased by a standard AR-pattern trigger member torsion spring (not shown) so that the trigger blade **54** is spring biased towards a forward position.

A disconnector **60** is pivoted on the hollow transverse pin **32** upon which the trigger member **38** pivots. The disconnector **60** has a disconnector hook **64** and a tail **66**. The tail **66** of the disconnector **60** is spring biased upwardly away from a tail **68** of the trigger member **38** by a standard AR-pattern disconnector compression spring **67**.



A cam **72** is movably mounted to the housing **12**. For example, the cam **72** can be pivoted on a cam pin **74** that is installed in aligned openings **76** in the sidewalls **16**, **18** of the housing **12**. The cam **72** has a cam lobe **78** that interacts with the cam follower **58**, in a manner to be described below. The cam **72** has a first contact surface **82** on an upper forward portion thereof and a second contact surface **84** on an upper rearward portion thereof. The cam **72** has a notch **86** below the second contact surface **84** to provide clearance for the rear wall **22** of the housing **12**. Alternatively, the cam **72** can be slidably mounted to the housing **12** with or without spring bias.

An upper receiver **90** houses a bolt carrier assembly **92**. As is well-known in the art, the bolt carrier assembly **92** (or blow-back bolt) slidably reciprocates in the upper receiver **90** and engages the breach of a barrel or barrel extension. As used herein, "bolt carrier" and "bolt carrier assembly" may be used interchangeably and include a blow-back type bolt used in pistol caliber carbine configurations of the AR-platform. The bolt carrier assembly **92** used with the embodiments of this invention can have either a standard mil-spec M16-pattern bolt carrier, a standard AR15-pattern bolt carrier, or some variation of the two, depending on the design of the cam **72**, and whether operated by a gas direct impingement system or a gas piston system. The bolt carrier assembly **92** has an engagement surface **94** in a rear portion **96** of the bolt carrier body **98**. As in an ordinary AR15-pattern configuration, during rearward travel of the bolt carrier assembly **92** a lower surface **102** in a forward portion **104** of the bolt carrier body **98** contacts the face of the hammer head **50** causing the hammer **36** to pivot rearward. During further rearward travel of bolt carrier assembly **92** the lower surface **102** of the bolt carrier body **98** contacts the surface **82** of the cam **72** to the pivot cam **72** in a first direction from a first position to a second position. During forward travel of the bolt carrier assembly **92** the engagement surface **94** of the bolt carrier body **98** contacts the surface **84** of the cam **72** to pivot the cam **72** in a second opposite direction from the second position to the first position.

A three position safety selector **110** has safe, standard semi-automatic, and forced reset semi-automatic positions. When in the safe position (safety selector indicator **111** pointing forward), a wide semi-circular portion **112** of the safety selector **110** prevents the trigger blade **54** from being pulled (FIGS. **4**A, **4**B, and **7**). When in the standard semi-automatic position (safety selector indicator **111** pointing upward), a flat portion **114** of the safety selector **110** permits the trigger blade **54** to be pulled. The disconnector **60** can pivot with the trigger member **38** and the disconnector hook **64** can catch the hammer hook **53** during rearward pivoting travel of the hammer head **50**. (FIGS. **5**A and **5**B). When in the forced reset semi-automatic position (safety selector indicator **111** pointing rearward), a narrow semi-circular portion **116** permits the trigger blade **54** to be pulled but prevents the disconnector **60** from pivoting with the trigger member **38** thus preventing the disconnector hook **64** from catching the hammer hook **53** during rearward pivoting travel of the hammer head **50**. (FIGS. **6**A and **6**B). In other words, in the forced reset semi-automatic position, the disconnector **60** is "disabled" in that the disconnector hook **64** is unable to catch the hammer hook **53** during cycling of the bolt carrier assembly **92**.

Referring now to FIGS. **8**A-**8**D, with the safety selector **110** set in the standard semi-automatic position, rearward

finger pressure on the trigger blade **54** causes the trigger member **38** to rotate clockwise. Depending on the position of the cam **72**, the cam follower **58** may or may not act upon the cam lobe **78** to pivot the cam **72** clockwise. Rotation of the trigger member **38** causes the sear **56** to disengage from the sear catch **52** of the hammer **36**. This allows the hammer **36** to drop by spring force onto the firing pin **99** of the bolt carrier assembly **92**, discharging an ammunition cartridge (not shown), and causing the action to cycle by moving the bolt carrier assembly **92** rearward. Rearward travel of the bolt carrier assembly **92** causes the lower surface **102** to contact the face of the hammer head **50** and pivot the hammer **36** counter-clockwise. During pivoting travel of the hammer **36** the disconnector hook **64** catches the hammer hook **53**. During further rearward travel of the bolt carrier assembly **92** the lower surface **102** contacts the surface **82** of the cam **72** to pivot the cam **72** counter-clockwise. As the cam **72** pivots counter-clockwise, the cam lobe **78** may acts upon the cam follower **58** to pivot the trigger member **38** counter-clockwise. Forward travel of the bolt carrier assembly **92** returning to battery causes the surface **94** to contact the surface **84** of the cam **72** to pivot the cam **72** clockwise. At this point rearward finger pressure on the trigger blade **54** must be released to allow the sear **56** to engage the sear catch **52**, returning the hammer **36** and trigger member **38** to their set positions. Thereafter the user can reapply rearward finger pressure on the trigger blade **54** to fire another round.

Referring now to FIGS. **9**A-**9**D, with the safety selector **110** set in the forced reset semi-automatic position, rearward finger pressure on the trigger blade **54** causes the trigger member **38** to rotate clockwise. The narrow semi-circular portion **116** of the safety selector **110** prevents the disconnector **60** from rotating with the trigger member **38**, thus "disabling" the disconnector **60**, preventing the disconnector hook **64** from catching the hammer hook **53**. Depending on the position of the cam **72**, the cam follower **58** may or may not act upon the cam lobe **78** to pivot the cam **72** clockwise. Rotation of the trigger member **38** causes the sear **56** to disengage from the sear catch **52** of the hammer **36**. This allows the hammer **36** to drop by spring force onto the firing pin **99** of the bolt carrier assembly **92**, discharging an ammunition cartridge, and causing the action to cycle by moving the bolt carrier assembly **92** rearward. Rearward travel of the bolt carrier assembly **92** causes the lower surface **102** to contact the face of the hammer head **50** and pivot the hammer **36** counter-clockwise. During further rearward travel of the bolt carrier assembly **92** the lower surface **102** contacts the surface **82** of the cam **72** to pivot the cam **72** counter-clockwise. As the cam **72** pivots counter-clockwise, the cam lobe **78** acts upon the cam follower **58** to the pivot trigger member **38** counter-clockwise. The bolt carrier assembly **92** thereby forces the hammer **36** and trigger member **38** to their set positions wherein the sear **56** engages the sear catch **52**. Forward travel of the bolt carrier assembly **92** returning to battery causes the surface **94** to contact the surface **84** of the cam **72** to pivot the cam **72** clockwise. At this point the user can reapply rearward finger pressure on the trigger blade **54** to fire another round, without first manually releasing rear finger pressure on the trigger blade **54**.

Thus, as the bolt carrier assembly **92** returns forward, the trigger member **38** is held in its set position by cam **72**. The trigger member **38** cannot be pulled to release the sear/sear catch engagement, thus precluding early hammer release or "hammer follow" against the bolt carrier assembly **92** and firing pin **99** as the bolt carrier assembly **92** is returning to battery. When the bolt carrier assembly **92** has reached (or nearly reached) its closed, in-battery position, the engagement surface **94** contacts and forwardly displaces the contact surface **84** of cam **72**, disengaging the cam lobe **78** from the cam follower **58**, allowing the trigger blade **54** to be pulled. Again, this prevents early hammer release and contact of the hammer against the firing pin before the bolt is completely locked and in-battery.

While various embodiments of the present invention have been described in detail, it should be apparent that modifications and variations thereto are possible, all of which fall within the true spirit and scope of the invention. Therefore, the foregoing is intended only to be illustrative of the principles of the invention. The invention resides in each individual feature described herein, alone, and in any and all combinations and subcombinations of any and all of those features. Further, since numerous modifications and changes will readily occur to those skilled in the art, it is not intended to limit the invention to the exact construction and operation shown and described. Accordingly, all suitable modifications and equivalents may be included and considered to fall within the scope of the invention, defined by the following claim or claims.

What is claimed is:

**1**. A firearm trigger mechanism for a firearm having a fire control mechanism pocket and a reciprocating bolt means, the trigger mechanism operable in a first, standard semi-automatic mode and in a second, forced reset semi-automatic mode, the mechanism comprising:

a hammer having a hammer sear surface and a hook for engaging a disconnector and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse hammer pivot axis between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of the bolt means,

a trigger member having a trigger sear surface and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions,

wherein the trigger member sear surface and hammer sear catch surface are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member,

the disconnector having a hook for engaging the hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, and

a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, the cam being movable between a first position and a second position, in the second position the cam lobe forces the trigger member toward the set position,

whereupon in the first mode, rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, and thereafter the bolt means moves forward into battery, at which time a user must manually reduce pressure on the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm, and

whereupon in the second mode, rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook is prevented from holding the hammer, and thereafter the bolt means moves forward into battery, at which time the user can pull the trigger member to fire the firearm.

Exhibit C





2. The trigger mechanism of claim 1, further comprising:
a housing having a first pair of transversely aligned openings with a hammer pin therethrough and a second pair of transversely aligned openings with a trigger member pin therethrough,
the hammer mounted on the hammer pin, the trigger member and disconnector mounted on the trigger member pin.

3. The trigger mechanism of claim 1, further comprising a spring which biases the trigger member toward the set position.

4. The trigger mechanism of claim 3, wherein the spring is a torsion spring.

5. The trigger mechanism of claim 1, wherein the trigger member pivot axis and disconnector pivot axis are coaxial.

6. A firearm trigger mechanism for a firearm having a fire control mechanism pocket and a reciprocating bolt means, the trigger mechanism operable in a first, standard semi-automatic mode and in a second, forced reset semi-automatic mode, the mechanism comprising:
a hammer having a sear surface and a hook for engaging a disconnector and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse hammer pivot axis between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of the bolt means,
a trigger member having a sear surface and adapted to be mounted in the fire control mechanism pocket to move between set and released positions,
wherein the hammer sear surface and trigger member sear surface are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member,
the disconnector having a hook for engaging the hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, and
a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, the cam being movable between a first position and a second position, in the second position the cam prevents the trigger member from moving from the set position to the released position,
whereupon in the first mode, rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, and thereafter the bolt means moves forward into battery, at which time a user must manually reduce pressure on the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to move to the set positions so that the user can pull the trigger member to fire the firearm again, and
whereupon in the second mode, rearward movement of the bolt means causes rearward pivoting of the hammer, movement of the trigger member to the set position, and the disconnector hook is prevented from holding the hammer, and thereafter the bolt means moves forward into battery, at which time the cam is moved to the first position, allowing the user to pull the trigger member to fire the firearm.

7. The trigger mechanism of claim 6, further comprising a spring which biases the trigger member toward the set position.

8. The trigger mechanism of claim 7, wherein the spring is a torsion spring.



9. The trigger mechanism of claim 6, wherein the trigger member pivots on a transverse trigger axis between set and released positions.

10. A firearm trigger mechanism for a firearm having a fire control mechanism pocket and a reciprocating bolt means, the trigger mechanism operable in a first, standard semi-automatic mode and in a second, forced reset semi-automatic mode, the mechanism comprising:
a hammer having a sear surface and a hook for engaging a disconnector and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse hammer pivot axis between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of the bolt means,
a trigger member having a sear surface and adapted to be mounted in the fire control mechanism pocket to move between set and released positions,
wherein the hammer sear surface and trigger member sear surface are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member,
the disconnector having a hook for engaging the hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, and
a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, the cam being movable between a first position and a second position, movement of the cam to the second position causing the trigger member to move from the released position toward the set position,
whereupon in the first mode, rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, and thereafter the bolt means moves forward into battery, at which time a user must manually reduce pressure on the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to move to the set positions so that the user can pull the trigger member to fire the firearm again, and
whereupon in the second mode, rearward movement of the bolt means causes rearward pivoting of the hammer and causes movement of the trigger member to the set position, and wherein the disconnector hook is prevented from holding the hammer, and thereafter the bolt means moves forward into battery, at which time the cam is moved to the first position and the user can pull the trigger member to fire the firearm again.

11. The trigger mechanism of claim 10, further comprising a spring which biases the trigger member toward the set position.

12. The trigger mechanism of claim 11, wherein the spring is a torsion spring.

13. The trigger mechanism of claim 10, wherein the trigger member pivots on a transverse trigger axis between set and released positions.

14. A firearm trigger mechanism comprising: a hammer having a sear surface and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver to move between set and released positions, the hammer adapted to be moved to the set position by rearward movement of a bolt means, a trigger member having a sear surface and adapted to be mounted in the fire control mechanism pocket to move between set and released positions, wherein the hammer sear surface and trigger member sear surface are in position to engage in the

set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member, the disconnector having a hook for engaging the hammer, and a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, the cam being movable between a first position and a second position, in the second position the cam lobe forces the trigger member toward the set position, when in a standard semi-automatic mode, rearward movement of the bolt carrier causes movement of the hammer such that the disconnector hook catches the hammer hook, and thereafter the bolt means moves forward into battery, at which time a user must manually reduce pressure on the trigger member to free the hammer from the disconnector to permit the hammer sear surface and trigger member sear surface to move into engagement so that the user can pull the trigger member to fire the firearm, and when in a forced reset semi-automatic mode, rearward movement of the bolt means causes movement of the hammer and the disconnector hook is prevented from holding the hammer, and thereafter the bolt means moves forward into battery, at which time the user can pull the trigger member to fire the firearm.

**15**. A firearm trigger mechanism comprising:

a hammer having a sear surface and a hook means for engaging a disconnector and adapted to move between set and released positions, the hammer adapted to be moved to the set position by rearward movement of a bolt means,

a trigger means having a sear surface and adapted to move between set and released positions,

wherein the hammer sear surface and trigger means sear surface are positioned to engage when the hammer and trigger means are in their set positions and are out of engagement in the hammer and trigger means are in their released positions,

the disconnector having a disconnector hook means for engaging the hammer hook means,

a cam adapted to be movable between a first position at which the cam does not force the trigger member into the set position and a second position at which the cam does force the trigger member toward the set position, and

a means for selecting between at least standard semi-automatic and forced reset semi-automatic modes,

when in the standard semi-automatic position, rearward movement of the bolt means causes movement of the hammer such that the disconnector hook means catches the hammer hook means, and thereafter the bolt means moves forward into battery, at which time a user must manually reduce pressure on the trigger means to free the hammer from the disconnector to permit the hammer and trigger means to move to the set positions so that the user can pull the trigger means to fire the firearm, and

when in the forced reset semi-automatic position, rearward movement of the bolt means causes movement of the hammer, the disconnector is prevented from holding the hammer, and thereafter the bolt means moves forward into battery, at which time the user can pull the trigger means to fire the firearm.

**16**. A firearm trigger mechanism comprising:

a hammer having a sear engagement surface and a hook means for engaging a disconnector and adapted to move between set and released positions, the hammer adapted to be moved to the set position by rearward movement of a bolt means,

a trigger means having a sear engagement surface and adapted to move between set and released positions,

wherein the trigger means and hammer sear engagement surfaces are in position to engage in the set positions of the hammer and trigger means and will not engage in the released positions of the hammer and trigger means,

the disconnector having a hook means for engaging the hammer hook means, and

a cam movable between a first position and a second position, in the second position the cam forces the trigger member toward the set position,

when in a standard semi-automatic mode, rearward movement of the bolt means causes movement of the hammer and the disconnector hook means catches the hammer hook means, and thereafter the bolt means moves forward into battery, at which time a user must manually reduce pressure on the trigger means to free the hammer from the disconnector to permit the hammer and trigger means to move to their set positions so that the user can pull the trigger means to fire the firearm, and

when in a forced reset semi-automatic mode, upon rearward movement of the bolt means, the disconnector is prevented from holding the hammer, and thereafter the bolt means moves forward into battery, at which time the user can pull the trigger means to fire the firearm.

**17**. A firearm trigger mechanism comprising:

a hammer movable between a set position and a released position, and having a sear engagement surface;

a trigger member having a sear engagement surface, the trigger member being movable between a set position and a released position;

a cam configured to move during cycling of the firearm's action and to contact the trigger member to bias it toward the set position;

a movable blocking means configured to selectively prevent the hammer sear catch surface from engaging with the sear in the set position;

a mode selector operable by the user to select between at least two modes of operation of the trigger mechanism, including:

a semi-automatic mode, in which the hammer and trigger member sear engagement surfaces are not able engage in the set position during cycling of the firearm's action until the user manually reduces pressure from the trigger member to disengage the blocking means before firing again, regardless of whether the cam moves the trigger member to the set position; and

a forced reset mode, in which the cam moves during cycling and forcibly biases the trigger member into the set position with the hammer and trigger member sear engagement surfaces engaged, permitting the user to immediately fire again without the user manually releasing pressure on the trigger member;

wherein if the cam moves in both modes, the difference in operation between modes is determined by movable selection of the blocking means, thereby selectively either permitting or preventing the hammer and trigger member sear engagement surfaces from engaging when the trigger member is biased by the cam.

**18**. For use in a firearm having a semiautomatic action, a firearm trigger mechanism comprising:

a trigger member movable between a set condition in which the trigger member is ready to fire and a released condition; and

a cam movable between a first position and a second position, in the second position, the cam contacting and biasing the trigger member toward the set condition;

wherein cycling of the firearm's action causes the cam to move from the first position toward the second position;

wherein the trigger mechanism is selectable between at least standard semi-automatic and forced reset semiautomatic operating modes, in the standard semi-automatic mode, after firing, cycling of the action causes the cam to move the trigger member without reaching the set condition, such that manually releasing pressure on the trigger member by the user is required to fully reset the trigger mechanism and enable subsequent firing, and in the forced reset semi-automatic mode, after firing, cycling of the action causes the cam to force the trigger member to the set condition, thereby enabling subsequent firing without requiring further manual reduction of pressure on the trigger member; and

wherein a selector means is provided to selectively prevent the trigger member from being fully reset by the cam without the user manually reducing pressure on the trigger member, thereby enabling operation in the standard semi-automatic mode.

* * * * *

# Exhibit D

# U.S. Patent No. 10514223

US010514223B1

(12) **United States Patent**
**Rounds**

(10) **Patent No.: US 10,514,223 B1**
(45) **Date of Patent: Dec. 24, 2019**

(54) **FIREARM TRIGGER MECHANISM**

(71) Applicant: **Wolf Tactical LLC**, Buda, TX (US)

(72) Inventor: **Jeffrey Cooper Rounds**, Buda, TX (US)

(73) Assignee: **Wolf Tactical LLC**, Buda, TX (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **16/143,624**

(22) Filed: **Sep. 27, 2018**

**Related U.S. Application Data**

(60) Provisional application No. 62/565,247, filed on Sep. 29, 2017.

(51) **Int. Cl.**

| | |
|---|---|
| ***F41A 19/43*** | (2006.01) |
| ***F41A 19/14*** | (2006.01) |
| ***F41A 19/10*** | (2006.01) |
| ***F41A 19/12*** | (2006.01) |
| *F41A 17/82* | (2006.01) |

(52) **U.S. Cl.**
CPC .............. ***F41A 19/43*** (2013.01); ***F41A 19/10*** (2013.01); ***F41A 19/12*** (2013.01); ***F41A 19/14*** (2013.01); *F41A 17/82* (2013.01)

(58) **Field of Classification Search**
CPC .......... F41A 19/10; F41A 19/12; F41A 19/14; F41A 19/43; F41A 17/82
USPC ............. 89/136, 139; 42/69.01, 69.02, 69.03
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

5,704,153 A * 1/1998 Kaminski ............ F41A 17/063 42/117
6,101,918 A 8/2000 Akins
6,722,072 B1 4/2004 McCormick
7,162,824 B1 1/2007 McCormick
7,213,359 B2 5/2007 Beretta
7,293,385 B2 11/2007 McCormick
7,398,723 B1 7/2008 Blakley
(Continued)

FOREIGN PATENT DOCUMENTS

TW 409847 U 10/2000

*Primary Examiner* — Bret Hayes
(74) *Attorney, Agent, or Firm* — Wood Herron & Evans LLP

(57) **ABSTRACT**

A trigger mechanism for use in a firearm having a receiver with a fire control mechanism pocket, transversely aligned pairs of hammer and trigger pin openings in the pocket, and a bolt carrier that reciprocates and pivotally displaces a hammer when cycled. The trigger mechanism includes a hammer, a trigger member, and a locking bar. The hammer has a sear notch and is mounted in the fire control mechanism pocket to pivot on a transverse hammer pin between set and released positions. The trigger member has a sear and is mounted in the fire control mechanism pocket to pivot on a transverse trigger pin between set and released positions. The trigger member has a surface positioned to be contacted by hammer when the hammer is displaced by cycling of the bolt carrier, the contact causing the trigger member to be forced to the set position. The locking bar is pivotally mounted in a frame and spring biased toward a first position in which it mechanically blocks the trigger member from moving to the release position, and is movable against the spring bias to a second position when contacted by the bolt carrier reaching a substantially in-battery position, allowing the trigger member to be moved by an external force to the released position.

**7 Claims, 4 Drawing Sheets**



(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 8,127,658 | B1 | 3/2012 | Cottle | |
| 8,820,211 | B1 | 9/2014 | Hawbaker | |
| 9,021,732 | B2 | 5/2015 | Johnson | |
| 9,513,076 | B2 * | 12/2016 | Kolev | F41A 3/12 |
| 9,568,264 | B2 | 2/2017 | Graves | |
| 9,816,772 | B2 | 11/2017 | Graves | |
| 9,939,221 | B2 | 4/2018 | Graves | |
| 2007/0199435 | A1 * | 8/2007 | Hochstrate | F41A 3/66<br>89/191.02 |
| 2016/0010933 | A1 | 1/2016 | Bonner | |
| 2016/0102933 | A1 | 4/2016 | Graves | |
| 2017/0219307 | A1 * | 8/2017 | Foster | F41A 19/06 |
| 2018/0066911 | A1 | 3/2018 | Graves | |
| 2018/0087860 | A1 * | 3/2018 | Sullivan | F41A 17/46 |

* cited by examiner


10
18
42
20
22
44
62
66
64
14
38
12
68
16
26
28
60

FIG. 1


20
42
10
18
44
62
34
66
64
38
24
68
70
50
26
28
32
30
60

FIG. 2


FWD
76
40
51
72
58
24
48
42
46
52
36
47
18
44
20
28
30
62
26
54
68
32
64
56
70
49
50
60
66

FIG. 3


FWD
76
40
51
72
18
24
48
44
46
36
47
52
20
32
30
28
62
26
54
68
64
56
70
49
50
60
66

FIG. 4

Exhibit D






FIG. 5

# FIREARM TRIGGER MECHANISM

## RELATED APPLICATIONS

This application claims priority to U.S. Provisional Patent Application No. 62/565,247 filed Sep. 29, 2017, and incorporates the same herein by reference.

## TECHNICAL FIELD

This invention relates to a firearm trigger mechanism. More particularly, it relates to a semiautomatic trigger that is mechanically reset by movement of the hammer when it is reset by the bolt carrier.

## BACKGROUND

In a standard semiautomatic firearm, actuation of the trigger releases a sear, allowing a hammer or striker to fire a chambered ammunition cartridge. Part of the ammunitions propellant force is used to cycle the action, extracting and ejecting a spent cartridge and replacing it with a loaded cartridge. The cycle includes longitudinal reciprocation of a bolt and/or carrier, which also resets the hammer or striker.

A standard semiautomatic trigger mechanism includes a disconnector, which holds the hammer or striker in a cocked position until the trigger member is reset to engage the sear. This allows the firearm to be fired only a single time when the trigger is pulled and held, because the user is not typically able to release the trigger rapidly enough so that the sear engages before the bolt or bolt carrier returns to its in-battery position. The disconnector prevents the firearm from either firing multiple rounds on a single pull of the trigger, or from allowing the hammer or striker to simply "follow" the bolt as it returns to battery without firing a second round, but leaving the hammer or striker uncocked.

For various reasons, shooters desire to increase the rate of semiautomatic fire. Sometimes this is simply for entertainment and the feeling of shooting a machine gun. In the past, users have been known to employ "bump firing" to achieve rapid semiautomatic fire. Bump firing uses the recoil of the semiautomatic firearm to fire shots in rapid succession. The process involves bracing the rifle with the non-trigger hand, loosening the grip of the trigger hand (but leaving the trigger finger in its normal position in front of the trigger), and pushing the rifle forward in order to apply pressure on the trigger from the finger while keeping the trigger finger stationary. When fired with the trigger finger held stationary, the firearm will recoil to the rear and allow the trigger to reset as it normally does. When the non-trigger hand pulls the firearm away from the body and back forward toward the original position, it causes the trigger to be pressed against the stationary finger again, firing another round as the trigger is pushed back.

Other devices have been offered that facilitate the bump fire process. One is shown in U.S. Pat. No. 6,101,918, issued Aug. 15, 2000, to William Akins for a Method and Apparatus for Accelerating the Cyclic Firing Rate of a Semi-automatic Firearm. This device, sold for some time as the Akins Accelerator™, allowed the receiver and action of the firearm to move longitudinally relative to the butt stock and used a spring to assist forward return movement. Other devices, such as that shown in U.S. Pat. No. 8,127,658, issued Mar. 6, 2012, and other patents owned by Slide Fire Solutions provide a replacement stock and handgrip assembly that facilitates bump firing, but without spring assistance.

Other solutions to increase the rate of semiautomatic fire include pull/release trigger mechanisms. These devices cause one round to be fired when the trigger is pulled and a second round to be fired when the trigger is released. Such a device is shown in U.S. Pat. No. 8,820,211, issued Sep. 2, 2014, entitled Selectable Dual Mode Trigger for Semiautomatic Firearms. A device like this is offered by FosTecH Outdoors, LLC as the ECHO TRIGGER™. Another device, offered by Digital Trigger Technologies, LLC under the name DigiTrigger™, provides a dual mode trigger in which the pull/release operating function is achieved electronically.

The above-described devices either require practice to use reliably, are complex, and/or are expensive to manufacture and install.

Another device for increasing the rate of semiautomatic fire is shown in U.S. Pat. Nos. 9,568,264; 9,816,772; and U.S. Pat. No. 9,939,221, issued to Thomas Allen Graves. The devices shown in these patents forcefully reset the trigger with rigid mechanical contact between the trigger member and the bolt as the action cycles. This invention, however, does not provide a "drop-in" solution for existing popular firearm platforms, like the AR15, AK47 variants, or the Ruger 10/22™. To adapt this invention to an AR-pattern firearm, for example, would require not only a modified fire control mechanism, but also a modified bolt carrier.

## SUMMARY OF INVENTION

The present invention provides a semiautomatic trigger mechanism for increasing rate of fire that can be retrofitted into popular existing firearm platforms. In particular, this invention provides a trigger mechanism that can be used in AR-pattern firearms with an otherwise standard M16-pattern bolt carrier assembly. The present invention is particularly adaptable for construction as a "drop-in" replacement trigger module that only requires insertion of two assembly pins and the safety selector. In the disclosed embodiments, the normal resetting of the hammer, as the bolt or bolt carrier is cycled, causes the trigger to be forcibly reset by contact between the hammer and a surface of the trigger member. Once reset, movement of the trigger is blocked by a locking bar and cannot be pulled until the bolt has returned to battery, thus preventing "hammer follow" behind the bolt or bolt carrier.

Other aspects, features, benefits, and advantages of the present invention will become apparent to a person of skill in the art from the detailed description of various embodiments with reference to the accompanying drawing figures, all of which comprise part of the disclosure.

## BRIEF DESCRIPTION OF THE DRAWINGS

Like reference numerals are used to indicate like parts throughout the various drawing figures; wherein;

FIG. **1** is an isometric view of a drop-in trigger module for an AR-pattern firearm according to one embodiment of the invention;

FIG. **2** is a partially cut-away view thereof;

FIG. **3** is a longitudinal section view showing the module of the embodiment installed in a typical AR15-pattern lower receiver in a cocked and ready to fire status with the bolt and bolt carrier in an in-battery position;

FIG. **4** is a similar view in which the trigger has been pulled and the hammer has fallen against a firing pin; and

FIG. **5** is a similar view showing the bolt carrier in a retracted position, forcing the hammer and trigger into a reset status.

## DETAILED DESCRIPTION

With reference to the drawing figures, this section describes particular embodiments and their detailed construction and operation. Throughout the specification, reference to "one embodiment," "an embodiment," or "some embodiments" means that a particular described feature, structure, or characteristic may be included in at least one embodiment. Thus, appearances of the phrases "in one embodiment," "in an embodiment," or "in some embodiments" in various places throughout this specification are not necessarily all referring to the same embodiment. Furthermore, the described features, structures, and characteristics may be combined in any suitable manner in one or more embodiments. In view of the disclosure herein, those skilled in the art will recognize that the various embodiments can be practiced without one or more of the specific details or with other methods, components, materials, or the like. In some instances, well-known structures, materials, or operations are not shown or not described in detail to avoid obscuring aspects of the embodiments.

Referring first to FIGS. **1** and **2**, therein is shown at **10** a "drop-in" trigger module adapted for use in an AR-pattern firearm according to a first embodiment of the present invention. As used herein, "AR-pattern" firearm includes the semiautomatic versions of the AR10 and AR15 firearms and variants thereof of any caliber, including pistol caliber carbines or pistols using a blow-back bolt. While select fire (fully automatic capable) versions of this platform, such as the M16 and M4, are also AR-pattern firearms, this invention only relates to semiautomatic firearm actions. The concepts of this invention may be adaptable to other popular semiautomatics firearm platforms, such as the Ruger 10/22™ or AK-pattern variants.

The module **10** includes a frame or housing **12** that may be sized and shaped to fit within the internal fire control mechanism pocket of an AR-pattern lower receiver. It includes first and second pairs of aligned openings **14**, **16** that are located to receive transverse pins (**40**, **36**, respectively, shown in FIGS. **3-5**) used in a standard AR-pattern trigger mechanism as pivot axes for the hammer and trigger member, respectively. The housing **12** includes left and right sidewalls **20**, **22**, which extend substantially vertically and parallel to one another in a laterally spaced-apart relationship. The sidewalls **20**, **22** may be interconnected at the bottom of the housing **12** at the front by a crossmember **24**.

A hammer **18** of ordinary (MIL-SPEC) AR-pattern shape and construction may be used. The illustrated hammer **18** may be standard in all respects and biased by a typical AR-pattern hammer spring (not shown).

A modified trigger member **26** may be sized to fit between the sidewalls **20**, **22** of the housing **12** and may include a trigger blade portion **28** that extends downwardly. The trigger blade portion **28** is the part of the trigger member **26** contacted by a user's finger to actuate the trigger mechanism. The trigger blade portion **28** may be curved (shown) or straight, as desired. The trigger member **26** may pivot on a transverse pin **36** (not shown in FIGS. **1** and **2**) that extends through aligned openings **16** in the sidewalls **20**, **22** of the housing **12**. The same pin **36** is aligned and positioned within aligned openings **47** of a lower receiver **50** to assemble the module **10** into a fire control mechanism pocket **49** of the lower receiver **50**, as shown in FIGS. **3-5**, for example. The modified trigger member **26** may have integral first and second contact surfaces **30**, **32**. Some part of the trigger member **26** includes contact surfaces for interaction with the hammer **18** and locking bar **62**. For example, the trigger member **26** can include first and second upwardly extended rear contact surfaces **30**, **32**. The first contact surface **30** is positioned to interact, for example, with a tail portion **44** of the hammer **18** that extends rearwardly from a head part **42** of the hammer **18**. The second contact surface **32** is positioned to interact with a locking bar **62**. The contact surfaces may be integral to a specially formed trigger body or may be a separate insert (shown) that is made to closely fit and mate with a standard AR-pattern trigger member, held in place by the trigger pin **36**, with no lost motion between the parts.

The hammer **18** may include bosses **34** coaxial with a transverse pivot pin opening **38** that receives an assembly/pivot pin **40** (not shown in FIGS. **1** and **2**) through the first set of aligned openings **14** in the housing **12** (and through openings **51** in the firearm receiver, to position the trigger module **10** within the fire control mechanism pocket **49** of the lower receiver **50**, as shown in FIGS. **3-5**). The bosses **34** may fit between the sidewalls **20**, **22** of the housing **12** to laterally position the hammer **18**, or can be received in the openings **14** (if enlarged) so that the hammer **18** stays assembled with the module **10** when the hammer's pivot pin is removed and/or when the module **10** is not installed in a firearm receiver. The hammer **18** includes a head portion **42** and a tail portion **44**. The hammer **18** also includes a sear catch **46** that engages the sear **48** on the trigger member **26**, when cocked. The trigger and hammer pins **36**, **40** provide pivot axes at locations (openings **47**, **51**, shown in FIGS. **3-5**, for example) standard for an AR-pattern fire control mechanism. Although FIGS. **3-5** are a longitudinal section view and only show one of the aligned openings **47**, **51**, it is understood that a typical AR15-pattern lower receiver **50** includes second, corresponding and aligned openings **47**, **51** in the half of the receiver **50** not shown).

Referring now also to FIG. **3**, the trigger module **10** is shown installed in the fire control mechanism pocket **49** of an AR-pattern lower receiver **50**. Other lower receiver parts not important to the present invention are well-known in the art and are omitted from all figures for clarity. As is well-known in the art, the bolt carrier assembly **52** (or blow-back bolt) would be carried by an upper receiver (not shown) and engage the breach of a barrel or barrel extension. As used herein, "bolt carrier" and "bolt carrier assembly" may be used interchangeably and include a blow-back type bolt used in pistol caliber carbine configurations of the AR-platform. The hammer **18** is shown in a cocked position and a bolt carrier assembly **52** is shown in an in-battery position. The sear **48** engages the sear catch **46** of the hammer **18**.

The bolt carrier assembly **52** used with the embodiments of this invention can be an ordinary (mil-spec) M16-pattern bolt carrier assembly, whether operated by direct impingement or a gas piston system, that has a bottom cut position to engage an auto sear in a fully automatic configuration. The bottom cut creates an engagement surface **54** in a tail portion **56** of the bolt carrier body **58**. This is distinct from a modified AR15 bolt carrier that is further cut-away so that engagement with an auto sear is impossible. The semiautomatic AR-pattern safety selector switch **60** may also be standard (MIL-SPEC) in all respects.

The trigger module of the present invention includes a trigger locking bar **62** carried on a frame **66** for pivotal movement on a transverse pivot pin **68**. The frame **66** may be part of the module housing **12**, if configured as a "drop-in" unit. An upper end of the locking bar **62** extends above the upper edge of the housing **12** and lower receiver **50** to be engaged by the engagement surface **54** of the bolt

carrier body **58** when the bolt carrier assembly **52** is at or near its in-battery position (as shown in FIG. **3**). Contact between the engagement surface **54** and upper end of the locking bar **62** causes the locking bar **62** to pivot into a first position (FIG. **3**) against a biasing spring **70** and allows pivotal movement of the trigger member **26**. If desired, the locking bar **62** may include a rearward extension **64** that serves as a means to limit the extent to which it can pivot toward the blocking position.

Referring now also to FIG. **4**, when the safety selector **60** is in the "fire" position (as shown in all figures), finger pressure pulling rearward against the trigger blade portion **28** causes the trigger member **26** to rotate on the pivot pin **36**, as indicated by arrows. This rotation causes the sear **48** to disengage from the sear catch **46** of the hammer **18**. This release allows the hammer **18** to rotate by spring force (hammer spring omitted for clarity) into contact with the firing pin **72**. Any contact between the rear portion of the trigger member **26** and front surface of the locking bar **62** will simply cause the locking bar **62** to rotate out of the way, as illustrated in FIG. **4**.

Referring now to FIG. **5**, discharging an ammunition cartridge (not shown) causes the action to cycle by moving the bolt carrier assembly **52** rearwardly, as illustrated. The same effect occurs when the action is cycled manually. As in an ordinary AR15-pattern configuration, a lower surface **76** of the bolt carrier body **58** pushes rearwardly against the head portion **42** of the hammer **18**, forcing it to pivot on the hammer pivot/assembly pin **40** against its spring (not shown) toward a reset position. As the rearward movement of the bolt carrier body **58** and pivotal movement of the hammer **18** continues, mechanical interference or contact between a rear surface **74** of the hammer **18** (such as on the tail portion **44**) and a contact surface **30** of the trigger member **26** forces the trigger to pivot (arrows in FIG. **5**) toward and to its reset position. At the same time, as the trigger member **26** is reset, the biasing spring **70** moves the lower end of the locking bar **62** into a second position (FIG. **5**) in which it blocks pivotal movement of the trigger **26**, including by finger pressure applied (or reapplied) to the trigger blade **28**. Thus, as the bolt carrier assembly **52** returns forward, the trigger member **26** is held in its reset position by the locking bar **62** where the hammer sear catch **46** will engage with the sear **48** carried on the trigger member **26** to reset the fire control mechanism. The trigger member **26** cannot be pulled to release the sear/hammer engagement, thus precluding early hammer release or "hammer follow" against the bolt carrier assembly **52** and firing pin **72** as the bolt carrier assembly **52** is returning to battery. A trigger return spring (not shown) of the type used in a standard AR-pattern trigger mechanism may be unnecessary in this case, because the trigger member **26** is forced to return by the hammer **18**, but may be used, if desired.

When the bolt carrier assembly **52** has reached (or nearly reached) its closed, in-battery position (shown in FIG. **3**), the engagement surface **54** of the bolt carrier tail portion **56** contacts and forwardly displaces the upper end of the locking bar **62**, disengaging the second contact surface **32** of the trigger member **26**, allowing the trigger **26** to be pulled a second time. The distance of travel during which there is no interference between the locking bar **62** and second contact surface **32** of the trigger member **26**, allowing the trigger member **26** to be manually displaced, may be about from about 0.10 to 0.31 inch. This prevents early release of the hammer **18** and contact of the hammer against the firing pin **72** before the bolt is completely locked and in-battery.



Force applied by the user's trigger finger against the trigger blade portion **28** is incapable of overcoming the mechanical interference and force of the hammer **18** against the contact surface **30** of the trigger member **26**. However, the trigger can immediately be pulled again—only by application of an external force—as soon as the locking bar **62** has been rotated against the spring **70** and out of blocking engagement with the trigger member **26**, as the bolt carrier assembly **52** approaches or reaches its in-battery position. This allows the highest possible standard rate of fire, without risk of hammer-follow, for the semiautomatic action of the firearm.

While various embodiments of the present invention have been described in detail, it should be apparent that modifications and variations thereto are possible, all of which fall within the true spirit and scope of the invention. Therefore, the foregoing is intended only to be illustrative of the principles of the invention. Further, since numerous modifications and changes will readily occur to those skilled in the art, it is not intended to limit the invention to the exact construction and operation shown and described. Accordingly, all suitable modifications and equivalents may be included and considered to fall within the scope of the invention, defined by the following claim or claims.

What is claimed is:

**1**. For a firearm having a receiver with a fire control mechanism pocket, transversely aligned pairs of hammer and trigger pin openings in side walls of the pocket, and a bolt carrier that reciprocates and pivotally displaces a hammer when cycled, a trigger mechanism, comprising:

a hammer having a sear notch and mounted in the fire control mechanism pocket to pivot on a transverse hammer pin between set and released positions;

a trigger member having a sear and mounted in the fire control mechanism pocket to pivot on a transverse trigger pin between set and released positions, the trigger member having a surface positioned to be contacted by the hammer when the hammer is displaced by cycling of the bolt carrier, the contact causing the trigger member to be forced to the set position;

a locking bar pivotally mounted in a frame and spring biased toward a first position in which the locking bar mechanically blocks the trigger member from moving to the released position, and movable against the spring bias to a second position when contacted by the bolt carrier reaching a substantially in-battery position, allowing the trigger member to be moved by an external force to the released position.

**2**. The trigger mechanism of claim **1**, wherein the trigger member has a second surface positioned to be contacted by the locking bar when the locking bar is in the first position.

**3**. The trigger mechanism of claim **1**, wherein the locking bar includes means for limiting the extent to which the locking bar can pivot by the spring bias toward the first position.

**4**. For a firearm having a receiver with a fire control mechanism pocket, assembly pin openings in side walls of the pocket, and a bolt carrier that reciprocates and pivotally displaces a hammer when cycled, a trigger mechanism, comprising:

a housing having transversely aligned pairs of openings for receiving hammer and trigger assembly pins;

a hammer having a sear notch and mounted in the housing to pivot on a transverse axis between set and released positions;

a trigger member having a sear and mounted in the housing to pivot on a transverse axis between set and

released positions, the trigger member having a surface positioned to be contacted by the hammer when the hammer is displaced by the bolt carrier when cycled, the contact causing the trigger member to be forced to the set position;

a locking bar pivotally mounted in the housing and spring biased toward a first position in which the locking bar mechanically blocks the trigger member from moving to the released position, and movable against the spring bias to a second position when contacted by the bolt carrier reaching a substantially in-battery position in which the trigger member can be moved by an external force to the released position.

**5**. The trigger mechanism of claim **4**, wherein the trigger member has a second surface positioned to be contacted by the locking bar when the locking bar is in the first position.

**6**. The trigger mechanism of claim **4**, wherein the housing's transversely aligned pairs of openings for receiving hammer and trigger assembly pins are aligned with the assembly pin openings in the fire control mechanism pocket of the receiver.

**7**. The trigger mechanism of claim **4**, wherein the locking bar includes means for limiting the extent to which the locking bar can pivot by the spring bias toward the first position.

* * * * *

# Exhibit E

# U.S. Patent No. 11724003

Exhibit E

US011724003B2

(12) **United States Patent**
**Strbac**

(10) **Patent No.: US 11,724,003 B2**
(45) **Date of Patent: Aug. 15, 2023**

(54) **FIREARM TRIGGER MECHANISM**

(71) Applicant: **ABC IP, LLC**, Dover, DE (US)

(72) Inventor: **Mladen Thomas Strbac**, Cleveland, OH (US)

(73) Assignee: **ABC IP, LLC**, Dover, DE (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **18/048,572**

(22) Filed: **Oct. 21, 2022**

(65) **Prior Publication Data**

US 2023/0221087 A1 Jul. 13, 2023

**Related U.S. Application Data**

(60) Provisional application No. 63/297,884, filed on Jan. 10, 2022.

(51) **Int. Cl.**
***F41A 19/24*** (2006.01)
***F41A 19/10*** (2006.01)
(Continued)

(52) **U.S. Cl.**
CPC .............. ***F41A 19/10*** (2013.01); ***F41A 17/48*** (2013.01); ***F41A 19/15*** (2013.01); ***F41A 19/24*** (2013.01)

(58) **Field of Classification Search**
CPC .......... F41A 19/24; F41A 19/10; F41A 19/15; F41A 19/16; F41A 17/46
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

2,765,562 A 10/1956 Rober et al.
3,045,555 A 7/1962 Stoner
(Continued)

FOREIGN PATENT DOCUMENTS

DE 582963 C 8/1933
DE 4008351 A1 9/1991
(Continued)

OTHER PUBLICATIONS

Statutory Invention Registration No. H107, Inventor: Bauer, Published Aug. 5, 1986 (8 pages).

*Primary Examiner* — J. Woodrow Eldred
(74) *Attorney, Agent, or Firm* — Wood Herron & Evans LLP

(57) **ABSTRACT**

A trigger mechanism that can be used in AR-pattern firearms has a hammer, a trigger member, a disconnector, a locking member, and a "three position" safety selector having safe, standard semi-automatic, and forced reset semi-automatic positions. In the standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, at which time a user must manually release the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. In the forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer causing the trigger member to be forced to the set position, the safety selector preventing the disconnector hook from catching the hammer hook, and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull the trigger member to fire the firearm without manually releasing the trigger member. The locking member is pivotable between a first position at which the locking member mechanically blocks the trigger member from moving to the released position and a second position at which the locking member does not mechanically block the trigger member allowing the trigger member to be moved to the released position. The locking member is spring biased toward the first position and moved against the spring bias to the second position by contact from the bolt
(Continued)



Exhibit E



carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position.

**14 Claims, 18 Drawing Sheets**

(51) **Int. Cl.**
***F41A 17/48*** (2006.01)
***F41A 19/15*** (2006.01)

(56) **References Cited**

U.S. PATENT DOCUMENTS


| | | | | |
|---|---|---|---|---|
| 3,292,492 | A | 12/1966 | Sturtevant | |
| 3,301,133 | A | 1/1967 | Sturtevant | |
| 3,670,442 | A | 6/1972 | Kennedy et al. | |
| 4,023,465 | A | 5/1977 | Inskip | |
| 4,057,003 | A | 11/1977 | Atchisson | |
| 4,151,670 | A | 5/1979 | Rath | |
| 4,276,808 | A | 7/1981 | York | |
| 4,433,610 | A | 2/1984 | Tatro | |
| 4,463,654 | A | 8/1984 | Barnes et al. | |
| 4,516,466 | A | 5/1985 | Jennie | |
| 4,580,484 | A | 4/1986 | Moore | |
| 4,656,993 | A | 4/1987 | Yuzawa et al. | |
| 4,658,702 | A | 4/1987 | Tatro | |
| 4,693,170 | A | 9/1987 | Atchisson | |
| 4,697,495 | A | 10/1987 | Beretta | |
| 4,787,288 | A | 11/1988 | Miller | |
| 4,937,964 | A | 7/1990 | Crandall | |
| 5,149,898 | A | 9/1992 | Chesnut et al. | |
| 5,183,959 | A | 2/1993 | McCoan et al. | |
| 5,223,649 | A | 6/1993 | Claridge | |
| 5,339,721 | A | 8/1994 | Beretta | |
| 5,517,897 | A | 5/1996 | Perrine | |
| 5,614,691 | A | 3/1997 | Taylor | |
| 5,623,114 | A | 4/1997 | Soper | |
| 5,682,699 | A | 11/1997 | Gentry | |
| 5,701,698 | A | 12/1997 | Wesp et al. | |
| 5,704,153 | A | 1/1998 | Kaminski et al. | |
| 5,760,328 | A | 6/1998 | Robbins | |
| 5,770,814 | A | 6/1998 | Ealovega | |
| 6,101,918 | A | 8/2000 | Akins | |
| 6,360,467 | B1 | 3/2002 | Knight | |
| 6,601,331 | B2 | 8/2003 | Salvitti | |
| 6,718,680 | B2 | 4/2004 | Roca et al. | |
| 6,722,072 | B1 | 4/2004 | McCormick | |
| 6,851,346 | B1 | 2/2005 | Herring | |
| 6,889,459 | B1 | 5/2005 | Salvitti | |
| 6,976,416 | B2 | 12/2005 | Ealovega | |
| 7,051,638 | B2 | 5/2006 | Thomele | |
| 7,162,824 | B1 | 1/2007 | McCormick | |
| 7,213,359 | B2 | 5/2007 | Beretta | |
| 7,293,385 | B2 | 11/2007 | McCormick | |
| 7,337,574 | B2 | 3/2008 | Crandall et al. | |
| 7,347,021 | B1 | 3/2008 | Jones | |
| 7,398,723 | B1 | 7/2008 | Blakley | |
| 7,421,937 | B1 | 9/2008 | Gangl | |
| 7,634,959 | B2 | 12/2009 | Frickey | |
| 7,661,220 | B2 | 2/2010 | Crandall et al. | |
| 7,806,039 | B1 | 10/2010 | Gomez | |
| 8,037,805 | B1 | 10/2011 | Neroni | |
| 8,112,928 | B2 | 2/2012 | Keough | |
| 8,127,658 | B1 | 3/2012 | Cottle | |
| 8,156,854 | B2 | 4/2012 | Brown | |
| 8,443,537 | B2 | 5/2013 | Curry | |
| 8,464,454 | B2 | 6/2013 | Martin et al. | |
| 8,490,309 | B2 | 7/2013 | Zukowski | |
| 8,667,881 | B1 | 3/2014 | Hawbaker | |
| 8,695,477 | B2 | 4/2014 | Esch | |
| 8,720,096 | B2 | 5/2014 | Siddle | |
| 8,820,211 | B1 | 9/2014 | Hawbaker | |
| 8,893,607 | B2 | 11/2014 | Audibert et al. | |
| 8,925,234 | B1 | 1/2015 | Barrett | |
| 8,985,006 | B1 | 3/2015 | Christensen et al. | |
| 9,016,187 | B2 | 4/2015 | Findlay | |
| 9,021,732 | B2 | 5/2015 | Johnson | |
| 9,021,733 | B1 | 5/2015 | DiChario | |
| 9,052,150 | B2 | 6/2015 | Talasco | |
| 9,121,661 | B2 | 9/2015 | Calvete | |
| 9,146,066 | B1 | 9/2015 | Cason | |
| 9,146,067 | B2 | 9/2015 | Stakes | |
| 9,182,189 | B2 | 11/2015 | Seigler | |
| 9,228,786 | B2 | 1/2016 | Sullivan et al. | |
| 9,310,150 | B1 | 4/2016 | Geissele | |
| 9,347,726 | B1 | 5/2016 | Thomas | |
| 9,448,023 | B2 | 9/2016 | Sheets, Jr. et al. | |
| 9,476,660 | B2 | 10/2016 | Potter et al. | |
| 9,513,076 | B2 | 12/2016 | Kolev et al. | |
| 9,568,264 | B2 | 2/2017 | Graves | |
| 9,618,288 | B2 | 4/2017 | Wilson | |
| 9,618,289 | B1 | 4/2017 | Geissele | |
| 9,625,231 | B1 | 4/2017 | Hass | |
| 9,631,886 | B2 | 4/2017 | Findlay | |
| 9,651,329 | B2 | 5/2017 | Hittmann | |
| 9,658,007 | B2 | 5/2017 | Withey | |
| 9,683,800 | B2 | 6/2017 | Sewell, Jr. et al. | |
| 9,733,031 | B1 | 8/2017 | Sylvester et al. | |
| 9,759,504 | B2 | 9/2017 | Geissele | |
| 9,777,980 | B2 | 10/2017 | Heizer | |
| 9,810,493 | B2 | 11/2017 | Fluhr et al. | |
| 9,810,496 | B2 | 11/2017 | Kolev et al. | |
| 9,816,772 | B2 | 11/2017 | Graves | |
| 9,829,263 | B2 | 11/2017 | Bonner | |
| 9,835,398 | B2 | 12/2017 | Biegel | |
| 9,863,730 | B2 | 1/2018 | Elftmann | |
| 9,869,522 | B2 | 1/2018 | Larson, Jr. et al. | |
| 9,874,417 | B2 | 1/2018 | Zajk et al. | |
| 9,927,197 | B1 | 3/2018 | Geissele | |
| 9,939,221 | B2 | 4/2018 | Graves | |
| 10,002,500 | B2 | 6/2018 | Hall et al. | |
| 10,006,734 | B1 | 6/2018 | Findlay | |
| 10,030,924 | B1 | 7/2018 | Smith | |
| 10,077,960 | B2 | 9/2018 | Geissele | |
| 10,107,580 | B2 | 10/2018 | Fellows et al. | |
| 10,254,067 | B2 | 4/2019 | Foster | |
| 10,267,584 | B2 | 4/2019 | Kasanjian-King | |
| 10,330,413 | B2 | 6/2019 | Williams et al. | |
| 10,488,136 | B2 | 11/2019 | Sullivan et al. | |
| 10,502,511 | B2 | 12/2019 | Graves | |
| 10,514,223 | B1 | 12/2019 | Rounds | |
| 10,584,932 | B2 | 3/2020 | Foster | |
| 10,816,297 | B1 * | 10/2020 | Williams | F41A 19/46 |
| 11,287,205 | B2 | 3/2022 | Biegel | |
| 11,293,715 | B1 | 4/2022 | Newsome et al. | |
| 11,346,627 | B1 | 5/2022 | DeMonico | |
| 2006/0048426 | A1 | 3/2006 | Crandall | |
| 2006/0101695 | A1 | 5/2006 | Longueira | |
| 2007/0051236 | A1 | 3/2007 | Groves et al. | |
| 2007/0199435 | A1 | 8/2007 | Hochstrate et al. | |
| 2009/0151213 | A1 | 6/2009 | Bell | |
| 2009/0188145 | A1 | 7/2009 | Fluhr et al. | |
| 2011/0209607 | A1 | 9/2011 | St. George | |
| 2013/0118343 | A1 | 5/2013 | Hirt | |
| 2014/0311004 | A1 | 10/2014 | Barrett | |
| 2016/0010933 | A1 | 1/2016 | Bonner | |
| 2016/0102933 | A1 | 4/2016 | Graves | |
| 2016/0161202 | A1 | 6/2016 | Larue | |
| 2017/0176124 | A1 | 6/2017 | Wilson | |
| 2017/0219307 | A1 | 8/2017 | Foster | |
| 2017/0276447 | A1 | 9/2017 | Foster | |
| 2017/0284761 | A1 | 10/2017 | Lewis et al. | |
| 2017/0299309 | A1 | 10/2017 | Fellows et al. | |
| 2017/0328663 | A1 | 11/2017 | Fellows et al. | |
| 2018/0066911 | A1 | 3/2018 | Graves | |
| 2018/0087860 | A1 | 3/2018 | Sullivan et al. | |
| 2018/0112944 | A1 | 4/2018 | Underwood et al. | |
| 2018/0195823 | A1 | 7/2018 | Schafer et al. | |
| 2018/0202740 | A1 | 7/2018 | Elftmann, Jr. | |
| 2018/0231342 | A1 | 8/2018 | Martinez | |
| 2020/0191513 | A1 * | 6/2020 | Foster | F41A 19/16 |
| 2021/0222974 | A1 | 7/2021 | Graves | |
| 2022/0364812 | A1 * | 11/2022 | Fellows | F41A 19/24 |

(56) **References Cited**

U.S. PATENT DOCUMENTS

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| EP | 1678458 | B1 | 2/2012 |
| EP | 2950033 | B1 | 11/2016 |
| TW | 409847 | U | 10/2000 |
| WO | 2016/028337 | A1 | 2/2016 |
| WO | 2018/058174 | A1 | 4/2018 |

* cited by examiner


10
72
78
84
21
23
50
22
76
74
58
38
51
36
110
60
64
53
16
12
66
26
32
24
30
18
48
46
54
20
38

FIG. 1


10
12
36
50
16
72
38
51
53
30
78
58
46
82
84
64
18
21
60
74
32
110
22
48
20
114
38
66
54
38

FIG. 2


10
36
50
51
53
52
110
111
116
114
112
64
56
60
66
58
56
69
38
67
68
59
54
72
78
82
80
16
12
74
21
76
84
24
30
76
26
46
23
22
20
18
32
48

FIG. 3


10
12
16
20
23
30
32
36
38
46
48
50
51
52
53
54
56
58
59
60
64
66
67
68
72
74
78
80
82
84
110
112
114
116

FIG. 4A


10
12
46
30
56
52
36
32
59
54
64
60
53
48
50
51
67
58
20
72
74
116
68
38
66
112
78
84
114
23
110

FIG. 4B


46
30
52
20
12
56
16
59
54
50
53
64
60
48
32
68
51
80
67
36
58
74
38
72
114
78
66
84
116
82
23
10
110

FIG. 5A


10
12
46
30
56
52
36
32
59
54
64
60
53
48
50
51
67
58
20
72
74
116
68
38
66
78
114
84
111
116
23
110

FIG. 5B


46
30
52
20
56
59
54
12
16
50
53
64
60
48
32
68
67
38
51
58
74
80
114
66
116
72
78
84
82
23
112
110
111
36
10

FIG. 6A


10
12
30
46
56
52
36
32
59
64
60
53
48
54
50
51
67
114
58
20
72
74
112
68
38
66
78
116
84
23
110
111

FIG. 6B


14
102
42
30
20
92
12
104
99
46
52
56
59
54
38
50
36
53
60
48
58
51
64
44
32
68
98
72
94
111
67
78
86
84
82
23
114
112
66
96
110
90

FIG. 7


14
102
92
12
42
30
20
104
99
46
52
56
59
50
36
53
60
48
38
54
58
51
44
32
68
98
72
64
80
67
94
112
78
86
84
82
23
114
110
66
96
90

FIG. 8A


14
102
92
30
20
104
50
99
46
56
51
52
59
12
38
60
64
48
58
98
36
32
68
54
72
80
112
67
94
78
66
86
84
114
110
82
23
96
90

FIG. 8B


14
30
20
36
46
52
56
59
99
50
60
64
48
38
54
58
32
68
66
80
112
78
92
72
114
110
82
23
90
102
104
98

FIG. 8C



FIG. 8D

Exhibit E






FIG. 9A


14
102
30
20
92
104
50
99
46
56
51
52
59
12
38
60
64
48
58
32
68
54
98
36
72
80
114
94
67
78
66
86
84
116
111
82
23
96
90

FIG. 9B


14
30
20
36
46
52
56
59
38
48
54
32
68
66
60
64
50
58
99
80
114
78
92
72
116
82
23
90
104
102
98

FIG. 9C


14
99
102
92
30
20
12
104
46
52
56
59
50
53
60
48
38
36
58
51
64
32
68
54
98
72
94
80
114
67
78
86
84
82
23
110
116
66
96
90

FIG. 9D

# FIREARM TRIGGER MECHANISM

## RELATED APPLICATIONS

This application claims the priority benefit of US Provisional Patent Application No. 63/297,884 filed Jan. 10, 2022, which is hereby incorporated by reference herein as if fully set forth in its entirety.

## TECHNICAL FIELD

The present invention relates generally to a firearm trigger mechanism, and more particularly to a semiautomatic trigger that is selectively mechanically reset by movement of the bolt carrier.

## BACKGROUND

In a standard semiautomatic firearm, actuation of the trigger releases a sear, allowing a hammer or striker to fire a chambered ammunition cartridge. Part of the ammunition's propellant force is used to cycle the action, extracting and ejecting a spent cartridge and replacing it with a loaded cartridge. The cycle includes longitudinal reciprocation of a bolt and/or carrier, which also resets the hammer or striker.

A standard semiautomatic trigger mechanism includes a disconnector, which holds the hammer or striker in a cocked position until the trigger member is reset to engage the sear. This allows the firearm to be fired only a single time when the trigger is pulled and held, because the user is not typically able to release the trigger rapidly enough so that the sear engages before the bolt or bolt carrier returns to its in-battery position. The disconnector prevents the firearm from either firing multiple rounds on a single pull of the trigger, or from allowing the hammer or striker to simply "follow" the bolt as it returns to battery without firing a second round, but leaving the hammer or striker uncocked.

For various reasons, shooters desire to increase the rate of semiautomatic fire. Sometimes this is simply for entertainment and the feeling of shooting a machine gun. In the past, users have been known to employ "bump firing" to achieve rapid semiautomatic fire. Bump firing uses the recoil of the semiautomatic firearm to fire shots in rapid succession. The process involves bracing the rifle with the non-trigger hand, loosening the grip of the trigger hand (but leaving the trigger finger in its normal position in front of the trigger), and pushing the rifle forward in order to apply pressure on the trigger from the finger while keeping the trigger finger stationary. When fired with the trigger finger held stationary, the firearm will recoil to the rear and allow the trigger to reset as it normally does. When the non-trigger hand pulls the firearm away from the body and back forward toward the original position, it causes the trigger to be pressed against the stationary finger again, firing another round as the trigger is pushed back.

Devices for increasing the rate of semiautomatic fire are shown in U.S. Pat. Nos. 9,568,264; 9,816,772; and 9,939,221, issued to Thomas Allen Graves. The devices shown in these patents forcefully reset the trigger with rigid mechanical contact between the trigger member and the bolt as the action cycles. To adapt this invention to an AR-pattern firearm, for example, would require not only a modified fire control mechanism, but also a modified bolt carrier.

Other devices for increasing the rate of semiautomatic fire are shown in U.S. Pat. Nos. 10,514,223 and 11,346,627, which are hereby incorporated by reference herein as if fully set forth in their entirety. In these devices the hammer forces the trigger to the set position, and a locking bar prevents early hammer release.



Another device for increasing the rate of semiautomatic fire is shown in U.S. Pat. No. 7,398,723, issued to Brian A. Blakley, and is hereby incorporated by reference herein as if fully set forth in its entirety. The device shown in this patent has a pivoting cam which is contacted by the rearwardly traveling bolt carrier, pivoting the cam rearwardly such that the bottom surface of the cam presses downward on the trigger-extension, forcing the rear of the trigger down, and thereby moving forward the surface of the trigger that an operator's finger engages. Another device for increasing the rate of semiautomatic fire employing a pivoting cam arrangement is shown in U.S. Provisional Patent Application No. 63/374,941 filed Sep. 8, 2022, also invented by Brian A. Blakley, and which is hereby incorporated by reference herein as if fully set forth in its entirety. This pivoting cam arrangement incorporates a three-position safety selector and associated structure to provide safe, standard semi-automatic, and forced reset semi-automatic modes.

Further improvement in forced reset triggers is desired.

## SUMMARY OF INVENTION

The present invention provides a semiautomatic trigger mechanism for increasing rate of fire that can be retrofitted into popular existing firearm platforms. In particular, this invention provides a trigger mechanism that can be used in AR-pattern firearms with an otherwise standard M16-pattern bolt carrier assembly. The present invention is particularly adaptable for construction as a "drop-in" replacement trigger module that only requires insertion of two assembly pins and the safety selector. Advantageously, the present invention provides a "three position" trigger mechanism having safe, standard semi-automatic, and forced reset semi-automatic positions.

In one aspect, a firearm trigger mechanism comprises a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, the trigger member having a surface positioned to be contacted by the hammer during rearward pivoting of the hammer to cause the trigger member to be forced to the set position, wherein the sear and sear catch are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member, a disconnector having a hook for engaging the hammer and adapted to be mounted in the fire control mechanism pocket to pivot on the transverse trigger member pivot axis, a locking member adapted to be mounted in the fire control mechanism pocket to pivot on a transverse locking member pivot axis, the locking member being pivotable between a first position at which the locking member mechanically blocks the trigger member from moving to the released position and a second position at which the locking member does not mechanically block the trigger member allowing the trigger member to be moved to the released position, the locking member spring biased toward the first position and adapted to be moved against the spring bias to the second position by contact from the bolt carrier during forward

movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and a safety selector adapted to be mounted in the fire control mechanism pocket to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions. In the standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, at which time a user must manually release the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. In the forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer causing the trigger member to be forced to the set position, the safety selector preventing the disconnector hook from catching the hammer hook, and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull the trigger member to fire the firearm without manually releasing the trigger member.

The safety selector can have a protuberance thereon which, when the safety selector is in the forced reset semi-automatic position, contacts the disconnector preventing the disconnector hook from catching the hammer hook. The trigger mechanism can further include a spring which biases the trigger member towards the set position.

In another aspect, a firearm trigger mechanism comprises a housing having a first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin, a hammer having a sear catch and a hook for engaging a disconnector and mounted in the housing to pivot on the hammer pin between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, a trigger member having a sear and mounted in the housing to pivot on the trigger member pin between set and released positions, the trigger member having a surface positioned to be contacted by the hammer during rearward pivoting of the hammer to cause the trigger member to be forced to the set position, wherein the sear and sear catch are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member, a disconnector having a hook for engaging the hammer and mounted in the housing to pivot on the trigger member pin, a locking member mounted in the housing to pivot on a transverse locking member pin, the locking member being pivotable between a first position at which the locking member mechanically blocks the trigger member from moving to the released position and a second position at which the locking member does not mechanically block the trigger member allowing the trigger member to be moved to the released position, the locking member spring biased toward the first position and adapted to be moved against the spring bias to the second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and a safety selector adapted to be mounted in a fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions. In the standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, at which time a user must manually release the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. In the forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer causing the trigger member to be forced to the set position, the safety selector preventing the disconnector hook from catching the hammer hook, and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull the trigger member to fire the firearm without manually releasing the trigger member.



The safety selector can have a protuberance thereon which, when the safety selector is in the forced reset semi-automatic position, contacts the disconnector preventing the disconnector hook from catching the hammer hook. The transversely aligned pairs of openings in the housing for receiving the hammer and trigger member pins can be adapted to be aligned with assembly pin openings in the fire control mechanism pocket. The trigger mechanism can further include a spring which biases the trigger member towards the set position. The spring can be a compression spring positioned between a forward end of the trigger member and a floor of the housing.

In another aspect, a firearm comprises a receiver having a fire control mechanism pocket therein, a reciprocating bolt carrier, a hammer having a sear catch and a hook for engaging a disconnector and mounted in the fire control mechanism pocket to pivot on a transverse hammer pivot axis between set and released positions, the hammer pivoted rearward by rearward movement of the bolt carrier, a trigger member having a sear and mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, the trigger member having a surface positioned to be contacted by the hammer during rearward pivoting of the hammer to cause the trigger member to be forced to the set position, wherein the sear and sear catch are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member, a disconnector having a hook for engaging the hammer and mounted in the fire control mechanism pocket to pivot on the transverse trigger member pivot axis, a locking member mounted in the fire control mechanism pocket to pivot on a transverse locking member pivot axis, the locking member being pivotable between a first position at which the locking member mechanically blocks the trigger member from moving to the released position and a second position at which the locking member does not mechanically block the trigger member allowing the trigger member to be moved to the released position, the locking member spring biased toward the first position and moved against the spring bias to the second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and a safety selector adapted mounted in the fire control mechanism pocket to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions. In the standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, at which time a user must manually release the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. In the forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer causing the trigger member to be forced to the set position, the safety selector preventing the disconnector hook from catching the hammer hook, and thereafter when the bolt carrier reaches the substantially in-battery position

the user can pull the trigger member to fire the firearm without manually releasing the trigger member.

The firearm can further comprise a housing having a first pair of transversely aligned openings with a hammer pin therethrough and a second pair of transversely aligned openings with a trigger member pin therethrough, the hammer mounted on the hammer pin, the trigger member and disconnector mounted on the trigger member pin. The firearm can further comprise the receiver having a first pair of transversely aligned assembly pin openings and a second pair of transversely aligned assembly pin openings, the housing first pair of openings coaxial with the receiver first pair of openings and the housing second pair of openings coaxial with the receiver second pair of openings, a first assembly pin passing through the receiver first pair of openings and through the housing first pair of openings, and a second assembly pin passing through the receiver second pair of openings and through the housing second pair of openings. The firearm can further include a spring which biases the trigger member towards the set position. The spring can be a compression spring positioned between a forward end of the trigger member and a floor of the housing.

In another aspect, a firearm trigger mechanism comprises a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, the trigger member having a surface positioned to be contacted by a surface of the hammer during rearward pivoting of the hammer to cause the trigger member to be forced to the set position, wherein the sear and sear catch are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member, a disconnector having a hook for engaging the hammer and adapted to be mounted in the fire control mechanism pocket to pivot on the transverse trigger member pivot axis, a locking member adapted to be movably mounted in the fire control mechanism pocket, the locking member being movable between a first position at which the locking member mechanically blocks the trigger member from moving to the released position and a second position at which the locking member does not mechanically block the trigger member allowing the trigger member to be moved to the released position, the locking member spring biased toward the first position and adapted to be moved against the spring bias to the second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and a safety selector adapted to be mounted in the fire control mechanism pocket to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions. In the standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, at which time a user must manually release the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. In the forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer causing the trigger member to be forced to the set position, the safety selector preventing the disconnector hook from catching the hammer hook, and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull the trigger member to fire the firearm without manually releasing the trigger member.



Other aspects, features, benefits, and advantages of the present invention will become apparent to a person of skill in the art from the detailed description of various embodiments with reference to the accompanying drawing figures, all of which comprise part of the disclosure.

## BRIEF DESCRIPTION OF THE DRAWINGS

Like reference numerals are used to indicate like parts throughout the various drawing figures, wherein:

FIG. **1** is a top front right perspective view of a drop-in trigger module for an AR-pattern firearm according to one embodiment of the invention.

FIG. **2** is a top rear right perspective view thereof.

FIG. **3** is a top rear right exploded perspective view thereof.

FIG. **4**A is a top rear right cross-sectional view thereof with the safety selector in the safe position and with the hammer and trigger member in their set positions.

FIG. **4**B is a bottom rear right cross-sectional view thereof with the safety selector in the safe position and with the hammer and trigger member in their set positions.

FIG. **5**A is a top rear right cross-sectional view thereof with the safety selector in the standard semi-automatic position and with the hammer and trigger member in their set positions.

FIG. **5**B is a bottom rear right cross-sectional view thereof with the safety selector in the standard semi-automatic position and with the hammer and trigger member in their set positions.

FIG. **6**A is a top rear right cross-sectional view thereof with the safety selector in the forced reset semi-automatic position and with the hammer and trigger member in their set positions.

FIG. **6**B is a bottom rear right cross-sectional view thereof with the safety selector in the forced reset semi-automatic position and with the hammer and trigger member in their set positions.

FIG. **7** is a cross-sectional view showing the trigger module installed in a typical AR15-pattern lower receiver, with the hammer and trigger member in their set positions and with the bolt carrier in an in-battery position, and with the safety selector in the safe position.

FIG. **8**A is a view similar to FIG. **7** but with the safety selector in the standard semi-automatic position.

FIG. **8**B is a view similar to FIG. **8**A but after the trigger has been pulled to drop the hammer.

FIG. **8**C is a view similar to FIG. **8**B but with the bolt carrier cycling to the rear to pivot the hammer.

FIG. **8**D is a view similar to FIG. **8**C but with the bolt carrier having returned to battery and the disconnector having caught the hammer.

FIG. **9**A is a view similar to FIG. **7** but with the safety selector in the forced reset semi-automatic position.

FIG. **9**B is a view similar to FIG. **9**A but after the trigger has been pulled to drop the hammer.

FIG. **9**C is a view similar to FIG. **9**B but with the bolt carrier cycling to the rear to pivot the hammer.

FIG. **9**D is a view similar to FIG. **9**C but with the bolt carrier having returned to battery and the hammer and trigger having returned to their set positions.

## DETAILED DESCRIPTION

With reference to the drawing figures, this section describes particular embodiments and their detailed construction and operation. Throughout the specification, reference to "one embodiment," "an embodiment," or "some embodiments" means that a particular described feature, structure, or characteristic may be included in at least one embodiment. Thus, appearances of the phrases "in one embodiment," "in an embodiment," or "in some embodiments" in various places throughout this specification are not necessarily all referring to the same embodiment. Furthermore, the described features, structures, and characteristics may be combined in any suitable manner in one or more embodiments. In view of the disclosure herein, those skilled in the art will recognize that the various embodiments can be practiced without one or more of the specific details or with other methods, components, materials, or the like. In some instances, well-known structures, materials, or operations are not shown or not described in detail to avoid obscuring aspects of the embodiments. "Forward" will indicate the direction of the muzzle and the direction in which projectiles are fired, while "rearward" will indicate the opposite direction. "Lateral" or "transverse" indicates a side-to-side direction generally perpendicular to the axis of the barrel. Although firearms may be used in any orientation, "left" and "right" will generally indicate the sides according to the user's orientation, "top" or "up" will be the upward direction when the firearm is gripped in the ordinary manner.

Referring first to FIGS. **1**-**6**B, there is illustrated a "drop-in" trigger module **10** adapted for use in an AR-pattern firearm according to a first embodiment of the present invention. As used herein, "AR-pattern" firearm includes the semiautomatic versions of the AR10 and AR15 firearms and variants thereof of any caliber, including pistol caliber carbines or pistols using a blow-back bolt. While select fire (fully automatic capable) versions of this platform, such as the M16 and M4, are also AR-pattern firearms, this invention only relates to semiautomatic firearm actions. The concepts of this invention may be adaptable to other popular semiautomatic firearm platforms, such as the Ruger 10/22™, AK-pattern firearms, and HK-pattern firearms.

The module **10** includes a frame or housing **12** sized and shaped to fit within the internal fire control pocket of an AR-pattern lower receiver **14**. Lower receiver parts not important to the present invention are well-known in the art and are omitted from the figures for clarity. The housing **12** includes forward left and right sidewalls **16**, **18** which extend substantially vertically and parallel to one another in a laterally spaced-apart relationship. The sidewalls **16**, **18** may be interconnected by a floor **20**. Shorter, more narrowly spaced apart and substantially vertical and parallel rear sidewalls **21**, **22** extend rearward from forward sidewalls **16**, **18** and are interconnected by a rear end wall **23**. The sidewalls **16**, **18** include first and second pairs of aligned openings **24**, **26** for receiving hollow transverse pins **30**, **32** upon which a hammer **36** and trigger member **38** pivot. The openings **24**, **26** are located coaxially with openings **42**, **44** in the lower receiver **14**. Standard AR-pattern hammer and trigger pins **46**, **48** pass through the openings **42**, **44** in the lower receiver **14** and through the hollow transverse pins **30**, **32** to assemble the housing **12** into the lower receiver **14**. Thus, the pins **30**, **32** retain the hammer **36** and trigger member **38** in the housing **12** in modular fashion, whereas the pins **46**, **48** retain the trigger module **10** in the lower receiver **14**.

The hammer **36** has a hammer head **50**, a sear catch **52**, a hammer hook **53**, and a concave contact surface **51**. The hammer **36** is spring biased towards a forward position by a standard AR-pattern hammer torsion spring (not shown).

The trigger member **38** has a trigger blade **54** that extends downwardly. The trigger blade **54** is the part of the trigger member **38** contacted by a user's finger to actuate the trigger mechanism. The trigger blade **54** may be curved (as shown) or straight, as desired. The trigger member **38** has a sear **56**. When the sear **56** and the sear catch **52** are engaged, the hammer **36** and trigger member **38** are in their set positions. When the sear **56** and sear catch **52** are not engaged, the hammer **36** and trigger member **38** are in their released positions. The trigger member **38** has a convex contact surface **58** that interacts with concave surface **51** on hammer **36** in a manner described below. The trigger member **38** also has a contact surface **69**. The trigger member **38** is spring biased by a compression spring **59** positioned between a forward end of the trigger member **38** and the floor **20** of the housing **12** so that the trigger blade **54** is spring biased towards a forward position.

A disconnector **60** is pivoted on the hollow transverse pin **32** upon which the trigger member **38** pivots. The disconnector **60** has a disconnector hook **64** and a tail **66**. The tail **66** of the disconnector **60** is spring biased upwardly away from a tail **68** of the trigger member **38** by a compression spring **67**.

A locking or blocking member **72** is movably mounted to the housing **12**. For example, the locking/blocking member **72** can be pivoted on a locking/blocking member pin or screw **74** that is installed in aligned openings **76** in the sidewalls **21**, **22** of the housing **12**. The locking member **72** has a first contact surface **78** that interacts with an engagement surface **94** in a rear portion **96** of a bolt carrier body **98** of a bolt carrier assembly **92**, in a manner to be described below. The locking member **72** has a second contact surface **80** that interacts with surface **69** of trigger member **38** in a manner to be described below. The locking member **72** is spring biased by a torsion spring **82** acting between a pin **84** in the sidewalls **21**, **22** and a lower portion of the locking member **72** such that surface **78** is biased rearward and surface **80** is biased forward. Alternatively, the locking/blocking member **72** can be slidably mounted to the housing **12** and spring biased forward by a compression spring.

An upper receiver **90** houses a bolt carrier assembly **92**. As is well-known in the art, the bolt carrier assembly **92** (or blow-back bolt) slidably reciprocates in the upper receiver **90** and engages the breach of a barrel or barrel extension. As used herein, "bolt carrier" and "bolt carrier assembly" may be used interchangeably and include a blow-back type bolt used in pistol caliber carbine configurations of the AR-platform. The bolt carrier assembly **92** used with the embodiments of this invention can have either a standard mil-spec M16-pattern bolt carrier, a standard AR15-pattern bolt carrier, or some variation of the two, depending on the design of the locking member **72**, and whether operated by a gas direct impingement system or a gas piston system. The bolt carrier assembly **92** has an engagement surface **94** in a rear portion **96** of the bolt carrier body **98**. As in an ordinary AR15-pattern configuration, during rearward travel of the bolt carrier assembly **92** a lower surface **102** in a forward portion **104** of the bolt carrier body **98** contacts the face of the hammer head **50** causing the hammer **36** to pivot rearward. Rearward travel of bolt carrier assembly **92** also moves engagement surface **94** rearward and away from surface **78** of locking member **72**. The action of spring **82** causes locking member **72** to pivot in a first direction from

a first position wherein surface **80** of locking member **72** does not impede upward movement of surface **69** of trigger member **38** to a second position wherein surface **80** of locking member **72** does impede upward movement of surface **69** of trigger member **38** thus preventing the trigger blade **54** from being pulled by the user. During forward travel of the bolt carrier assembly **92** the engagement surface **94** of the bolt carrier body **98** contacts the surface **78** of the locking member **72** to pivot the locking member **72** in a second opposite direction from the second position to the first position.

A three position safety selector **110** has safe, standard semi-automatic, and forced reset semi-automatic positions. When in the safe position (safety selector indicator **111** pointing forward), a wide semi-circular portion **112** of the safety selector **110** prevents the trigger blade **54** from being pulled (FIGS. **4**A, **4**B, and **7**). When in the standard semi-automatic position (safety selector indicator **111** pointing upward), a flat portion **114** of the safety selector **110** permits the trigger blade **54** to be pulled. The disconnector **60** can pivot with the trigger member **38** and the disconnector hook **64** can catch the hammer hook **53** during rearward pivoting travel of the hammer head **50**. (FIGS. **5**A and **5**B). When in the forced reset semi-automatic position (safety selector indicator **111** pointing rearward), a narrow semi-circular portion **116** permits the trigger blade **54** to be pulled but prevents the disconnector **60** from pivoting with the trigger member **38** thus preventing the disconnector hook **64** from catching the hammer hook **53** during rearward pivoting travel of the hammer head **50**. (FIGS. **6**A and **6**B). In other words, in the forced reset semi-automatic position, the disconnector **60** is "disabled" in that the disconnector hook **64** is unable to catch the hammer hook **53** during cycling of the bolt carrier assembly **92**.

Referring now to FIGS. **8**A-**8**D, with the safety selector **110** set in the standard semi-automatic position, rearward finger pressure on the trigger blade **54** causes the trigger member **38** to rotate clockwise. Rotation of the trigger member **38** causes the sear **56** to disengage from the sear catch **52** of the hammer **36**. This allows the hammer **36** to drop by spring force onto the firing pin **99** of the bolt carrier assembly **92**, discharging an ammunition cartridge (not shown), and causing the action to cycle by moving the bolt carrier assembly **92** rearward. Rearward travel of the bolt carrier assembly **92** frees the locking member **72** to pivot such that surface **80** is moved into a blocking position. Rearward travel of the bolt carrier assembly **92** also causes the lower surface **102** to contact the face of the hammer head **50** and pivot the hammer **36** counter-clockwise. During pivoting travel of the hammer **36** surface **51** contacts surface **58** of trigger member **38** forcing trigger member **38** to pivot counter-clockwise. Also during pivoting travel of the hammer **36** the disconnector hook **64** catches the hammer hook **53**. Forward travel of the bolt carrier assembly **92** returning to battery causes the surface **94** to contact the surface **78** of the locking member **72** to pivot the locking member **72** clockwise moving surface **80** out of the blocking position. At this point rearward finger pressure on the trigger blade **54** must be released to allow the sear **56** to engage the sear catch **52**, returning the hammer **36** and trigger member **38** to their set positions. Thereafter the user can reapply rearward finger pressure on the trigger blade **54** to fire another round.

Referring now to FIGS. **9**A-**9**D, with the safety selector **110** set in the forced reset semi-automatic position, rearward finger pressure on the trigger blade **54** causes the trigger member **38** to rotate clockwise. The narrow semi-circular portion **116** of the safety selector **110** prevents the disconnector **60** from rotating with the trigger member **38**, thus "disabling" the disconnector **60**, preventing the disconnector hook **64** from catching the hammer hook **53**. Rotation of the trigger member **38** causes the sear **56** to disengage from the sear catch **52** of the hammer **36**. This allows the hammer **36** to drop by spring force onto the firing pin **99** of the bolt carrier assembly **92**, discharging an ammunition cartridge, and causing the action to cycle by moving the bolt carrier assembly **92** rearward. Rearward travel of the bolt carrier assembly **92** frees the locking member **72** to pivot such that surface **80** is moved into a blocking position. Rearward travel of the bolt carrier assembly **92** also causes the lower surface **102** to contact the face of the hammer head **50** and pivot the hammer **36** counter-clockwise. During pivoting travel of the hammer **36** surface **51** contacts surface **58** of trigger member **38** forcing trigger member **38** to pivot counter-clockwise. The bolt carrier assembly **92** thereby forces the hammer **36** and trigger member **38** to their set positions wherein the sear **56** engages the sear catch **52**. Forward travel of the bolt carrier assembly **92** returning to battery causes the surface **94** to contact the surface **78** of the locking member **72** to pivot the locking member **72** clockwise. At this point the user can reapply rearward finger pressure on the trigger blade **54** to fire another round, without first manually releasing rear finger pressure on the trigger blade **54**.



Thus, as the bolt carrier assembly **92** returns forward, the trigger member **38** is held in its set position by the locking member **72**. The trigger member **38** cannot be pulled to release the sear/sear catch engagement, thus precluding early hammer release or "hammer follow" against the bolt carrier assembly **92** and firing pin **99** as the bolt carrier assembly **92** is returning to battery. When the bolt carrier assembly **92** has reached (or nearly reached) its closed, in-battery position, the engagement surface **94** contacts and forwardly displaces the contact surface **78** of the locking member **72**, disengaging the contact surface **80** of the locking member **72** from the contact surface **69** of the trigger member **38**, allowing the trigger blade **54** to be pulled. Again, this prevents early hammer release and contact of the hammer against the firing pin before the bolt is completely locked and in-battery.

While various embodiments of the present invention have been described in detail, it should be apparent that modifications and variations thereto are possible, all of which fall within the true spirit and scope of the invention. Therefore, the foregoing is intended only to be illustrative of the principles of the invention. The invention resides in each individual feature described herein, alone, and in any and all combinations and subcombinations of any and all of those features. Further, since numerous modifications and changes will readily occur to those skilled in the art, it is not intended to limit the invention to the exact construction and operation shown and described. Accordingly, all suitable modifications and equivalents may be included and considered to fall within the scope of the invention, defined by the following claim or claims.

What is claimed is:

**1**. A firearm trigger mechanism comprising:

a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier,

a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a

transverse trigger member pivot axis between set and released positions, said trigger member having a surface positioned to be contacted by a surface of said hammer during rearward pivoting of said hammer to cause said trigger member to be forced to said set position,

wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member and are out of engagement in said released positions of said hammer and trigger member,

a disconnector having a hook for engaging said hammer and adapted to be mounted in the fire control mechanism pocket to pivot on said transverse trigger member pivot axis,

a locking member adapted to be mounted in the fire control mechanism pocket to pivot on a transverse locking member pivot axis, said locking member being pivotable between a first position at which said locking member mechanically blocks said trigger member from moving to said released position and a second position at which said locking member does not mechanically block said trigger member allowing said trigger member to be moved to said released position, said locking member spring biased toward said first position and adapted to be moved against said spring bias to said second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and

a safety selector adapted to be mounted in the fire control mechanism pocket to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions,

whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and

whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer causing said trigger member to be forced to said set position, said safety selector preventing said disconnector hook from catching said hammer hook, and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull said trigger member to fire the firearm without manually releasing said trigger member.

**2**. The trigger mechanism of claim **1**, wherein said safety selector has a protuberance thereon which, when said safety selector is in said forced reset semi-automatic position, contacts said disconnector preventing said disconnector hook from catching said hammer hook.

**3**. The trigger mechanism of claim **1** further including a spring which biases said trigger member towards said set position.

**4**. A firearm trigger mechanism comprising:

a housing having a first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin,

a hammer having a sear catch and a hook for engaging a disconnector and mounted in said housing to pivot on said hammer pin between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier,

a trigger member having a sear and mounted in said housing to pivot on said trigger member pin between set and released positions, said trigger member having a surface positioned to be contacted by a surface of said hammer during rearward pivoting of said hammer to cause said trigger member to be forced to said set position,

wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member and are out of engagement in said released positions of said hammer and trigger member,

a disconnector having a hook for engaging said hammer and mounted in said housing to pivot on said trigger member pin,

a locking member mounted in said housing to pivot on a transverse locking member pin, said locking member being pivotable between a first position at which said locking member mechanically blocks said trigger member from moving to said released position and a second position at which said locking member does not mechanically block said trigger member allowing said trigger member to be moved to said released position, said locking member spring biased toward said first position and adapted to be moved against said spring bias to said second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and

a safety selector adapted to be mounted in a fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions,

whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and

whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer causing said trigger member to be forced to said set position, said safety selector preventing said disconnector hook from catching said hammer hook, and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull said trigger member to fire the firearm without manually releasing said trigger member.

**5**. The trigger mechanism of claim **4**, wherein said safety selector has a protuberance thereon which, when said safety selector is in said forced reset semi-automatic position, contacts said disconnector preventing said disconnector hook from catching said hammer hook.

**6**. The trigger mechanism of claim **4**, wherein said first and second pairs of openings in said housing are adapted to be aligned with first and second pairs of transversely aligned assembly pin openings in the fire control mechanism pocket.

**7**. The trigger mechanism of claim **4** further including a spring which biases said trigger member towards said set position.

**8**. The trigger mechanism of claim **7** wherein said spring is a compression spring positioned between a forward end of said trigger member and a floor of said housing.

**9**. A firearm comprising:

a receiver having a fire control mechanism pocket therein,

a reciprocating bolt carrier,

a hammer having a sear catch and a hook for engaging a disconnector and mounted in said fire control mechanism pocket to pivot on a transverse hammer pivot axis between set and released positions, said hammer pivoted rearward by rearward movement of said bolt carrier,

a trigger member having a sear and mounted in said fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, said trigger member having a surface positioned to be contacted by a surface of said hammer during rearward pivoting of said hammer to cause said trigger member to be forced to said set position,

wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member and are out of engagement in said released positions of said hammer and trigger member,

a disconnector having a hook for engaging said hammer and mounted in said fire control mechanism pocket to pivot on said transverse trigger member pivot axis,

a locking member mounted in said fire control mechanism pocket to pivot on a transverse locking member pivot axis, said locking member being pivotable between a first position at which said locking member mechanically blocks said trigger member from moving to said released position and a second position at which said locking member does not mechanically block said trigger member allowing said trigger member to be moved to said released position, said locking member spring biased toward said first position and moved against said spring bias to said second position by contact from said bolt carrier during forward movement of said bolt carrier as said bolt carrier reaches a substantially in-battery position, and

a safety selector adapted mounted in said fire control mechanism pocket to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions,

whereupon in said standard semi-automatic position, rearward movement of said bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and

whereupon in said forced reset semi-automatic position, rearward movement of said bolt carrier causes rearward pivoting of said hammer causing said trigger member to be forced to said set position, said safety selector preventing said disconnector hook from catching said hammer hook, and thereafter when said bolt carrier reaches the substantially in-battery position the user can pull said trigger member to fire the firearm without manually releasing said trigger member.

**10**. The firearm of claim **9** further comprising:

a housing having a first pair of transversely aligned openings with a hammer pin therethrough and a second pair of transversely aligned openings with a trigger member pin therethrough,

said hammer mounted on said hammer pin, said trigger member and disconnector mounted on said trigger member pin.



**11**. The firearm of claim **10** further comprising:

said receiver having a first pair of transversely aligned assembly pin openings and a second pair of transversely aligned assembly pin openings,

said housing first pair of openings coaxial with said receiver first pair of openings and said housing second pair of openings coaxial with said receiver second pair of openings,

a first assembly pin passing through said receiver first pair of openings and through said housing first pair of openings, and

a second assembly pin passing through said receiver second pair of openings and through said housing second pair of openings.

**12**. The firearm of claim **10** further including a spring which biases said trigger member towards said set position.

**13**. The firearm of claim **12** wherein said spring is a compression spring positioned between a forward end of said trigger member and a floor of said housing.

**14**. A firearm trigger mechanism comprising:

a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier,

a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, said trigger member having a surface positioned to be contacted by a surface of said hammer during rearward pivoting of said hammer to cause said trigger member to be forced to said set position,

wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member and are out of engagement in said released positions of said hammer and trigger member,

a disconnector having a hook for engaging said hammer and adapted to be mounted in the fire control mechanism pocket to pivot on said transverse trigger member pivot axis,

a locking member adapted to be movably mounted in the fire control mechanism pocket, said locking member being movable between a first position at which said locking member mechanically blocks said trigger member from moving to said released position and a second position at which said locking member does not mechanically block said trigger member allowing said trigger member to be moved to said released position, said locking member spring biased toward said first position and adapted to be moved against said spring bias to said second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and

a safety selector adapted to be mounted in the fire control mechanism pocket to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions,

whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer

and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and

whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer causing said trigger member to be forced to said set position, said safety selector preventing said disconnector hook from catching said hammer hook, and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull said trigger member to fire the firearm without manually releasing said trigger member.

* * * * *

Exhibit E

UNITED STATES PATENT AND TRADEMARK OFFICE

# CERTIFICATE OF CORRECTION

PATENT NO. : 11,724,003 B2
APPLICATION NO. : 18/048572
DATED : August 15, 2023
INVENTOR(S) : Mladen Thomas Strbac



It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

In the Specification

Column 4, Line 52, delete:
"… and a safety selector adapted mounted in the fire control …";
Insert:
--… and a safety selector adapted to be mounted in the fire control …--.

In the Claims

Column 13, Lines 38-39, Claim 9, delete:
"… a safety selector adapted mounted in said fire control mechanism pocket to pivot between safe, standard …";
Insert:
--… a safety selector adapted to be mounted in said fire control mechanism pocket to pivot between safe, standard …--.

Signed and Sealed this
Fifth Day of December, 2023

Katherine Kelly Vidal

Katherine Kelly Vidal
*Director of the United States Patent and Trademark Office*

# Exhibit F

# U.S. Patent No. 12036336

Case 4:26-cv-01091-ALM Document 1 Filed 07/13/26 Page 241 of 331 PageID #: 241

Exhibit F

US012036336B2

(12) **United States Patent**
**Strbac**

(10) **Patent No.: US 12,036,336 B2**
(45) **Date of Patent: Jul. 16, 2024**

(54) **FIREARM TRIGGER MECHANISM**

(71) Applicant: **ABC IP, LLC**, Dover, DE (US)

(72) Inventor: **Mladen Thomas Strbac**, Cleveland, OH (US)

(73) Assignee: **ABC IP, LLC**, Dover, DE (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **18/346,423**

(22) Filed: **Jul. 3, 2023**

(65) **Prior Publication Data**

US 2023/0355830 A1 Nov. 9, 2023

**Related U.S. Application Data**

(63) Continuation of application No. 18/048,572, filed on Oct. 21, 2022, now Pat. No. 11,724,003.
(Continued)

(51) **Int. Cl.**
***F41A 19/24*** (2006.01)
***A61L 24/00*** (2006.01)
(Continued)

(52) **U.S. Cl.**
CPC ....... ***A61L 24/0036*** (2013.01); ***A61L 24/0015*** (2013.01); ***A61L 24/043*** (2013.01);
(Continued)

(58) **Field of Classification Search**
CPC .......... F41A 19/24; F41A 19/10; F41A 19/15; F41A 19/16; F41A 17/46
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

2,765,562 A 10/1956 Roper et al.
3,045,555 A 7/1962 Stoner
(Continued)

FOREIGN PATENT DOCUMENTS

DE 582963 C 8/1933
DE 4008351 A1 9/1991
(Continued)

*Primary Examiner* — J. Woodrow Eldred
(74) *Attorney, Agent, or Firm* — Wood Herron & Evans LLP

(57) **ABSTRACT**

A trigger mechanism that can be used in AR-pattern firearms has a hammer, a trigger member, a disconnector, a locking member, and a "three position" safety selector having safe, standard semi-automatic, and forced reset semi-automatic positions. In the standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, at which time a user must manually release the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. In the forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer causing the trigger member to be forced to the set position, the safety selector preventing the disconnector hook from catching the hammer hook, and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull the trigger member to fire the firearm without manually releasing the trigger member. The locking member is pivotable between a first position at which the locking member mechanically blocks the trigger member from moving to the released position and a second position at which the locking member does not mechanically block the trigger member allowing the trigger member to be moved to the released position. The locking member is spring biased toward the first position and moved against the spring bias to the second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position.

**12 Claims, 18 Drawing Sheets**



**Related U.S. Application Data**

(60) Provisional application No. 63/297,884, filed on Jan. 10, 2022.

(51) **Int. Cl.**

| | |
|---|---|
| ***A61L 24/04*** | (2006.01) |
| ***F41A 17/48*** | (2006.01) |
| ***F41A 19/10*** | (2006.01) |
| ***F41A 19/15*** | (2006.01) |

(52) **U.S. Cl.**
CPC .............. ***F41A 17/48*** (2013.01); ***F41A 19/10*** (2013.01); ***F41A 19/15*** (2013.01); ***F41A 19/24*** (2013.01); *A61L 2300/252* (2013.01); *A61L 2300/418* (2013.01); *A61L 2400/04* (2013.01); *A61L 2430/36* (2013.01)

(56) **References Cited**

U.S. PATENT DOCUMENTS


3,292,492 A 12/1966 Sturtevant
3,301,133 A 1/1967 Sturtevant
3,670,442 A 6/1972 Kennedy et al.
4,023,465 A 5/1977 Inskip
4,057,003 A 11/1977 Atchisson
4,151,670 A 5/1979 Rath
4,276,808 A 7/1981 York
4,433,610 A 2/1984 Tatro
4,463,654 A 8/1984 Barnes et al.
4,516,466 A 5/1985 Jennie
4,580,484 A 4/1986 Moore
H107 H 8/1986 Bauer
4,656,993 A 4/1987 Yuzawa et al.
4,658,702 A 4/1987 Tatro
4,693,170 A 9/1987 Atchisson
4,697,495 A 10/1987 Beretta
4,787,288 A 11/1988 Miller
4,937,964 A 7/1990 Crandall
5,149,898 A 9/1992 Chesnut et al.
5,183,959 A 2/1993 McCoan et al.
5,223,649 A 6/1993 Claridge
5,339,721 A 8/1994 Beretta
5,517,897 A 5/1996 Perrine
5,614,691 A 3/1997 Taylor
5,623,114 A 4/1997 Soper
5,682,699 A 11/1997 Gentry
5,701,698 A 12/1997 Wesp et al.
5,704,153 A 1/1998 Kaminski et al.
5,760,328 A 6/1998 Robbins
5,770,814 A 6/1998 Ealovega
6,101,918 A 8/2000 Akins
6,360,467 B1 3/2002 Knight
6,601,331 B2 8/2003 Salvitti
6,718,680 B2 4/2004 Roca et al.
6,722,072 B1 4/2004 McCormick
6,851,346 B1 2/2005 Herring
6,889,459 B1 5/2005 Salvitti
6,976,416 B2 12/2005 Ealovega
7,051,638 B2 5/2006 Thomele
7,162,824 B1 1/2007 McCormick
7,213,359 B2 5/2007 Beretta
7,293,385 B2 11/2007 McCormick
7,337,574 B2 3/2008 Crandall et al.
7,347,021 B1 3/2008 Jones
7,398,723 B1 7/2008 Blakley
7,421,937 B1 9/2008 Gangl
7,634,959 B2 12/2009 Frickey
7,661,220 B2 2/2010 Crandall et al.
7,806,039 B1 10/2010 Gomez
8,037,805 B1 10/2011 Neroni
8,112,928 B2 2/2012 Keough
8,127,658 B1 3/2012 Cottle
8,156,854 B2 4/2012 Brown
8,443,537 B2 5/2013 Curry
8,464,454 B2 6/2013 Martin et al.
8,490,309 B2 7/2013 Zukowski
8,667,881 B1 3/2014 Hawbaker
8,695,477 B2 4/2014 Esch
8,720,096 B2 5/2014 Siddle
8,820,211 B1 9/2014 Hawbaker
8,893,607 B2 11/2014 Audibert et al.
8,925,234 B1 1/2015 Barrett
8,985,006 B1 3/2015 Christensen et al.
9,016,187 B2 4/2015 Findlay
9,021,732 B2 5/2015 Johnson
9,021,733 B1 5/2015 DiChario
9,052,150 B2 6/2015 Talasco
9,121,661 B2 9/2015 Calvete
9,146,066 B1 9/2015 Cason
9,146,067 B2 9/2015 Stakes
9,182,189 B2 11/2015 Seigler
9,228,786 B2 1/2016 Sullivan et al.
9,310,150 B1 4/2016 Geissele
9,347,726 B1 5/2016 Thomas
9,448,023 B2 9/2016 Sheets, Jr. et al.
9,476,660 B2 10/2016 Potter et al.
9,513,076 B2 12/2016 Kolev et al.
9,568,264 B2 2/2017 Graves
9,618,288 B2 4/2017 Wilson
9,618,289 B1 4/2017 Geissele
9,625,231 B1 4/2017 Hass
9,631,886 B2 4/2017 Findlay
9,651,329 B2 5/2017 Hittmann
9,658,007 B2 5/2017 Withey
9,683,800 B2 6/2017 Sewell, Jr. et al.
9,733,031 B1 8/2017 Sylvester et al.
9,759,504 B2 9/2017 Geissele
9,777,980 B2 10/2017 Heizer
9,810,493 B2 11/2017 Fluhr et al.
9,810,496 B2 11/2017 Kolev et al.
9,816,772 B2 11/2017 Graves
9,829,263 B2 11/2017 Bonner
9,835,398 B2 12/2017 Biegel
9,863,730 B2 1/2018 Elftmann
9,869,522 B2 1/2018 Larson, Jr. et al.
9,874,417 B2 1/2018 Zajk et al.
9,927,197 B1 3/2018 Geissele
9,939,221 B2 4/2018 Graves
10,002,500 B2 6/2018 Hall et al.
10,006,734 B1 6/2018 Findlay
10,030,924 B1 7/2018 Smith
10,077,960 B2 9/2018 Geissele
10,107,580 B2 10/2018 Fellows et al.
10,254,067 B2 4/2019 Foster
10,267,584 B2 4/2019 Kasanjian-King
10,330,413 B2 6/2019 Williams et al.
10,488,136 B2 11/2019 Sullivan et al.
10,502,511 B2 12/2019 Graves
10,514,223 B1 12/2019 Rounds
10,584,932 B2 3/2020 Foster
10,816,297 B1 10/2020 Williams et al.
11,287,205 B2 3/2022 Biegel
11,293,715 B1 4/2022 Newsome et al.
11,346,627 B1 5/2022 DeMonico
11,724,003 B2 8/2023 Strbac
2006/0048426 A1 3/2006 Crandall
2006/0101695 A1 5/2006 Longueira
2007/0051236 A1 3/2007 Groves et al.
2007/0199435 A1 8/2007 Hochstrate et al.
2009/0151213 A1 6/2009 Bell
2009/0188145 A1 7/2009 Fluhr et al.
2011/0209607 A1 9/2011 St. George
2013/0118343 A1 5/2013 Hirt
2014/0311004 A1 10/2014 Barrett
2016/0010933 A1 1/2016 Bonner
2016/0102933 A1 4/2016 Graves
2016/0161202 A1 6/2016 Larue
2017/0176124 A1 6/2017 Wilson
2017/0219307 A1 8/2017 Foster
2017/0276447 A1 9/2017 Foster
2017/0284761 A1 10/2017 Lewis et al.
2017/0299309 A1 10/2017 Fellows et al.
2017/0328663 A1 11/2017 Fellows et al.
2018/0066911 A1 3/2018 Graves

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 2018/0087860 | A1 | 3/2018 | Sullivan et al. | |
| 2018/0112944 | A1 | 4/2018 | Underwood et al. | |
| 2018/0195823 | A1 | 7/2018 | Schafer et al. | |
| 2018/0202740 | A1 | 7/2018 | Elftmann, Jr. | |
| 2018/0231342 | A1 | 8/2018 | Martinez | |
| 2020/0191513 | A1 | 6/2020 | Foster | |
| 2021/0222974 | A1 | 7/2021 | Graves | |
| 2022/0364812 | A1 | 11/2022 | Fellows | |
| 2023/0097725 | A1 * | 3/2023 | Davis | F41A 17/46 42/69.01 |

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| EP | 1678458 | B1 | 2/2012 |
| EP | 2950033 | B1 | 11/2016 |
| TW | 409847 | U | 10/2000 |
| WO | 2016/028337 | A1 | 2/2016 |
| WO | 2018/058174 | A1 | 4/2018 |

* cited by examiner


10
72
78
84
23
21
50
22
76
74
38
58
36
51
110
60
64
53
16
12
66
26
32
24
30
18
48
46
20
54
38

FIG. 1



10
12
16
50
36
72
38
78
58
51
53
30
46
82
84
21
64
60
18
74
22
32
48
20
110
114
38
66
54
38


FIG. 2


10
36
50
51
53
52
110
111
116
114
112
64
56
60
66
58
56
69
38
67
68
59
54
72
78
82
80
74
16
12
21
76
84
76
24
30
46
26
23
22
20
18
32
48

FIG. 3


10
12
16
20
23
30
32
36
38
46
48
50
51
52
53
54
56
58
59
60
64
66
67
68
72
74
78
80
82
84
110
112
114
116

FIG. 4A

Case 4:26-cv-01091-ALM Document 1 Filed 07/13/26 Page 248 of 331 PageID #: 248

Exhibit F






FIG. 4B


10
12
16
20
23
30
32
36
38
46
48
50
51
52
53
54
56
58
59
60
64
66
67
68
72
74
78
80
82
84
110
114
116

FIG. 5A


10
12
46
30
56
52
36
59
32
64
60
53
48
54
50
51
67
58
20
72
74
116
68
38
66
78
114
84
111
116
23
110

FIG. 5B


46
30
52
20
56
59
12
16
54
64
60
48
53
50
32
68
51
80
67
36
58
74
38
114
72
66
116
78
112
84
82
23
110
10
111

FIG. 6A

Case 4:26-cv-01091-ALM Document 1 Filed 07/13/26 Page 252 of 331 PageID #: 252

Exhibit F






FIG. 6B


14
102
92
12
42
30
20
46
52
56
59
104
99
50
36
53
60
48
54
38
58
51
98
64
44
32
68
67
72
80
111
94
78
86
84
82
23
114
112
66
96
110
90

FIG. 7

Case 4:26-cv-01091-ALM Document 1 Filed 07/13/26 Page 254 of 331 PageID #: 254

Exhibit F






FIG. 8A

Case 4:26-cv-01091-ALM Document 1 Filed 07/13/26 Page 255 of 331 PageID #: 255

Exhibit F






FIG. 8B


14
30
20
36
46
52
56
59
38
54
48
32
68
66
60
64
50
99
58
80
112
78
92
72
114
110
82
23
90
102
104
98

FIG. 8C


14
99
102
92
30
20
12
104
46
52
56
59
38
50
53
60
48
36
58
51
64
32
68
54
98
72
112
67
94
78
86
84
82
23
114
110
66
96
90

FIG. 8D

Case 4:26-cv-01091-ALM Document 1 Filed 07/13/26 Page 258 of 331 PageID #: 258

Exhibit F






FIG. 9A


14
102
92
30
20
104
50
99
46
56
51
52
59
12
38
48
60
64
58
32
54
68
98
36
72
80
114
67
94
78
66
86
84
111
116
82
23
96
90

FIG. 9B


14
30
20
36
46
52
56
59
38
50
60
64
48
99
58
32
68
54
80
114
66
78
72
116
92
82
23
102
90
104
98

FIG. 9C


14
99
102
92
30
20
12
104
46
52
56
59
50
38
36
53
60
48
58
51
64
32
68
54
98
72
80
114
67
94
78
86
84
116
82
23
110
66
96
90

FIG. 9D

# FIREARM TRIGGER MECHANISM

## RELATED APPLICATIONS

This application is a continuation of U.S. patent application Ser. No. 18/048,572 filed Oct. 21, 2022, which claims the priority benefit of U.S. Provisional Patent Application No. 63/297,884 filed Jan. 10, 2022, both of which are hereby incorporated by reference herein as if fully set forth in their entirety.

## TECHNICAL FIELD

The present invention relates generally to a firearm trigger mechanism, and more particularly to a semiautomatic trigger that is selectively mechanically reset by movement of the bolt carrier.

## BACKGROUND

In a standard semiautomatic firearm, actuation of the trigger releases a sear, allowing a hammer or striker to fire a chambered ammunition cartridge. Part of the ammunition's propellant force is used to cycle the action, extracting and ejecting a spent cartridge and replacing it with a loaded cartridge. The cycle includes longitudinal reciprocation of a bolt and/or carrier, which also resets the hammer or striker.

A standard semiautomatic trigger mechanism includes a disconnector, which holds the hammer or striker in a cocked position until the trigger member is reset to engage the sear. This allows the firearm to be fired only a single time when the trigger is pulled and held, because the user is not typically able to release the trigger rapidly enough so that the sear engages before the bolt or bolt carrier returns to its in-battery position. The disconnector prevents the firearm from either firing multiple rounds on a single pull of the trigger, or from allowing the hammer or striker to simply "follow" the bolt as it returns to battery without firing a second round, but leaving the hammer or striker uncocked.

For various reasons, shooters desire to increase the rate of semiautomatic fire. Sometimes this is simply for entertainment and the feeling of shooting a machine gun. In the past, users have been known to employ "bump firing" to achieve rapid semiautomatic fire. Bump firing uses the recoil of the semiautomatic firearm to fire shots in rapid succession. The process involves bracing the rifle with the non-trigger hand, loosening the grip of the trigger hand (but leaving the trigger finger in its normal position in front of the trigger), and pushing the rifle forward in order to apply pressure on the trigger from the finger while keeping the trigger finger stationary. When fired with the trigger finger held stationary, the firearm will recoil to the rear and allow the trigger to reset as it normally does. When the non-trigger hand pulls the firearm away from the body and back forward toward the original position, it causes the trigger to be pressed against the stationary finger again, firing another round as the trigger is pushed back.

Devices for increasing the rate of semiautomatic fire are shown in U.S. Pat. Nos. 9,568,264; 9,816,772; and U.S. Pat. No. 9,939,221, issued to Thomas Allen Graves. The devices shown in these patents forcefully reset the trigger with rigid mechanical contact between the trigger member and the bolt as the action cycles. To adapt this invention to an AR-pattern firearm, for example, would require not only a modified fire control mechanism, but also a modified bolt carrier.

Other devices for increasing the rate of semiautomatic fire are shown in U.S. Pat. Nos. 10,514,223 and 11,346,627,



which are hereby incorporated by reference herein as if fully set forth in their entirety. In these devices the hammer forces the trigger to the set position, and a locking bar prevents early hammer release.

Another device for increasing the rate of semiautomatic fire is shown in U.S. Pat. No. 7,398,723, issued to Brian A. Blakley, and is hereby incorporated by reference herein as if fully set forth in its entirety. The device shown in this patent has a pivoting cam which is contacted by the rearwardly traveling bolt carrier, pivoting the cam rearwardly such that the bottom surface of the cam presses downward on the trigger-extension, forcing the rear of the trigger down, and thereby moving forward the surface of the trigger that an operator's finger engages. Another device for increasing the rate of semiautomatic fire employing a pivoting cam arrangement is shown in U.S. Provisional Patent Application No. 63/374,941 filed Sep. 8, 2022, also invented by Brian A. Blakley, and which is hereby incorporated by reference herein as if fully set forth in its entirety. This pivoting cam arrangement incorporates a three-position safety selector and associated structure to provide safe, standard semi-automatic, and forced reset semi-automatic modes.

Further improvement in forced reset triggers is desired.

## SUMMARY OF INVENTION

The present invention provides a semiautomatic trigger mechanism for increasing rate of fire that can be retrofitted into popular existing firearm platforms. In particular, this invention provides a trigger mechanism that can be used in AR-pattern firearms with an otherwise standard M16-pattern bolt carrier assembly. The present invention is particularly adaptable for construction as a "drop-in" replacement trigger module that only requires insertion of two assembly pins and the safety selector. Advantageously, the present invention provides a "three position" trigger mechanism having safe, standard semi-automatic, and forced reset semi-automatic positions.

In one aspect, a firearm trigger mechanism comprises a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, the trigger member having a surface positioned to be contacted by the hammer during rearward pivoting of the hammer to cause the trigger member to be forced to the set position, wherein the sear and sear catch are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member, a disconnector having a hook for engaging the hammer and adapted to be mounted in the fire control mechanism pocket to pivot on the transverse trigger member pivot axis, a locking member adapted to be mounted in the fire control mechanism pocket to pivot on a transverse locking member pivot axis, the locking member being pivotable between a first position at which the locking member mechanically blocks the trigger member from moving to the released position and a second position at which the locking member does not mechanically block the trigger member allowing the trigger member to be moved to the released position, the locking member spring biased toward the first position and adapted to be moved against the spring bias to the second

position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and a safety selector adapted to be mounted in the fire control mechanism pocket to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions. In the standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, at which time a user must manually release the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. In the forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer causing the trigger member to be forced to the set position, the safety selector preventing the disconnector hook from catching the hammer hook, and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull the trigger member to fire the firearm without manually releasing the trigger member.

The safety selector can have a protuberance thereon which, when the safety selector is in the forced reset semi-automatic position, contacts the disconnector preventing the disconnector hook from catching the hammer hook. The trigger mechanism can further include a spring which biases the trigger member towards the set position.

In another aspect, a firearm trigger mechanism comprises a housing having a first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin, a hammer having a sear catch and a hook for engaging a disconnector and mounted in the housing to pivot on the hammer pin between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, a trigger member having a sear and mounted in the housing to pivot on the trigger member pin between set and released positions, the trigger member having a surface positioned to be contacted by the hammer during rearward pivoting of the hammer to cause the trigger member to be forced to the set position, wherein the sear and sear catch are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member, a disconnector having a hook for engaging the hammer and mounted in the housing to pivot on the trigger member pin, a locking member mounted in the housing to pivot on a transverse locking member pin, the locking member being pivotable between a first position at which the locking member mechanically blocks the trigger member from moving to the released position and a second position at which the locking member does not mechanically block the trigger member allowing the trigger member to be moved to the released position, the locking member spring biased toward the first position and adapted to be moved against the spring bias to the second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and a safety selector adapted to be mounted in a fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions. In the standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, at which time a user must manually release the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user



can pull the trigger member to fire the firearm. In the forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer causing the trigger member to be forced to the set position, the safety selector preventing the disconnector hook from catching the hammer hook, and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull the trigger member to fire the firearm without manually releasing the trigger member.

The safety selector can have a protuberance thereon which, when the safety selector is in the forced reset semi-automatic position, contacts the disconnector preventing the disconnector hook from catching the hammer hook. The transversely aligned pairs of openings in the housing for receiving the hammer and trigger member pins can be adapted to be aligned with assembly pin openings in the fire control mechanism pocket. The trigger mechanism can further include a spring which biases the trigger member towards the set position. The spring can be a compression spring positioned between a forward end of the trigger member and a floor of the housing.

In another aspect, a firearm comprises a receiver having a fire control mechanism pocket therein, a reciprocating bolt carrier, a hammer having a sear catch and a hook for engaging a disconnector and mounted in the fire control mechanism pocket to pivot on a transverse hammer pivot axis between set and released positions, the hammer pivoted rearward by rearward movement of the bolt carrier, a trigger member having a sear and mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, the trigger member having a surface positioned to be contacted by the hammer during rearward pivoting of the hammer to cause the trigger member to be forced to the set position, wherein the sear and sear catch are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member, a disconnector having a hook for engaging the hammer and mounted in the fire control mechanism pocket to pivot on the transverse trigger member pivot axis, a locking member mounted in the fire control mechanism pocket to pivot on a transverse locking member pivot axis, the locking member being pivotable between a first position at which the locking member mechanically blocks the trigger member from moving to the released position and a second position at which the locking member does not mechanically block the trigger member allowing the trigger member to be moved to the released position, the locking member spring biased toward the first position and moved against the spring bias to the second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and a safety selector adapted mounted in the fire control mechanism pocket to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions. In the standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, at which time a user must manually release the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. In the forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer causing the trigger member to be forced to the set position, the safety selector preventing the disconnector hook from catching the hammer hook, and thereafter when

the bolt carrier reaches the substantially in-battery position the user can pull the trigger member to fire the firearm without manually releasing the trigger member.

The firearm can further comprise a housing having a first pair of transversely aligned openings with a hammer pin therethrough and a second pair of transversely aligned openings with a trigger member pin therethrough, the hammer mounted on the hammer pin, the trigger member and disconnector mounted on the trigger member pin. The firearm can further comprise the receiver having a first pair of transversely aligned assembly pin openings and a second pair of transversely aligned assembly pin openings, the housing first pair of openings coaxial with the receiver first pair of openings and the housing second pair of openings coaxial with the receiver second pair of openings, a first assembly pin passing through the receiver first pair of openings and through the housing first pair of openings, and a second assembly pin passing through the receiver second pair of openings and through the housing second pair of openings. The firearm can further include a spring which biases the trigger member towards the set position. The spring can be a compression spring positioned between a forward end of the trigger member and a floor of the housing.

In another aspect, a firearm trigger mechanism comprises a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, the trigger member having a surface positioned to be contacted by a surface of the hammer during rearward pivoting of the hammer to cause the trigger member to be forced to the set position, wherein the sear and sear catch are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member, a disconnector having a hook for engaging the hammer and adapted to be mounted in the fire control mechanism pocket to pivot on the transverse trigger member pivot axis, a locking member adapted to be movably mounted in the fire control mechanism pocket, the locking member being movable between a first position at which the locking member mechanically blocks the trigger member from moving to the released position and a second position at which the locking member does not mechanically block the trigger member allowing the trigger member to be moved to the released position, the locking member spring biased toward the first position and adapted to be moved against the spring bias to the second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and a safety selector adapted to be mounted in the fire control mechanism pocket to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions. In the standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, at which time a user must manually release the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. In the forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer causing the trigger member to be forced to the set position, the safety selector preventing the disconnector hook from catching the hammer hook, and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull the trigger member to fire the firearm without manually releasing the trigger member.



Other aspects, features, benefits, and advantages of the present invention will become apparent to a person of skill in the art from the detailed description of various embodiments with reference to the accompanying drawing figures, all of which comprise part of the disclosure.

## BRIEF DESCRIPTION OF THE DRAWINGS

Like reference numerals are used to indicate like parts throughout the various drawing figures, wherein:

FIG. **1** is a top front right perspective view of a drop-in trigger module for an AR-pattern firearm according to one embodiment of the invention.

FIG. **2** is a top rear right perspective view thereof.

FIG. **3** is a top rear right exploded perspective view thereof.

FIG. **4**A is a top rear right cross-sectional view thereof with the safety selector in the safe position and with the hammer and trigger member in their set positions.

FIG. **4**B is a bottom rear right cross-sectional view thereof with the safety selector in the safe position and with the hammer and trigger member in their set positions.

FIG. **5**A is a top rear right cross-sectional view thereof with the safety selector in the standard semi-automatic position and with the hammer and trigger member in their set positions.

FIG. **5**B is a bottom rear right cross-sectional view thereof with the safety selector in the standard semi-automatic position and with the hammer and trigger member in their set positions.

FIG. **6**A is a top rear right cross-sectional view thereof with the safety selector in the forced reset semi-automatic position and with the hammer and trigger member in their set positions.

FIG. **6**B is a bottom rear right cross-sectional view thereof with the safety selector in the forced reset semi-automatic position and with the hammer and trigger member in their set positions.

FIG. **7** is a cross-sectional view showing the trigger module installed in a typical AR15-pattern lower receiver, with the hammer and trigger member in their set positions and with the bolt carrier in an in-battery position, and with the safety selector in the safe position.

FIG. **8**A is a view similar to FIG. **7** but with the safety selector in the standard semi-automatic position.

FIG. **8**B is a view similar to FIG. **8**A but after the trigger has been pulled to drop the hammer.

FIG. **8**C is a view similar to FIG. **8**B but with the bolt carrier cycling to the rear to pivot the hammer.

FIG. **8**D is a view similar to FIG. **8**C but with the bolt carrier having returned to battery and the disconnector having caught the hammer.

FIG. **9**A is a view similar to FIG. **7** but with the safety selector in the forced reset semi-automatic position.

FIG. **9**B is a view similar to FIG. **9**A but after the trigger has been pulled to drop the hammer.

FIG. **9**C is a view similar to FIG. **9**B but with the bolt carrier cycling to the rear to pivot the hammer.

FIG. **9**D is a view similar to FIG. **9**C but with the bolt carrier having returned to battery and the hammer and trigger having returned to their set positions.

DETAILED DESCRIPTION

With reference to the drawing figures, this section describes particular embodiments and their detailed construction and operation. Throughout the specification, reference to "one embodiment," "an embodiment," or "some embodiments" means that a particular described feature, structure, or characteristic may be included in at least one embodiment. Thus, appearances of the phrases "in one embodiment," "in an embodiment," or "in some embodiments" in various places throughout this specification are not necessarily all referring to the same embodiment. Furthermore, the described features, structures, and characteristics may be combined in any suitable manner in one or more embodiments. In view of the disclosure herein, those skilled in the art will recognize that the various embodiments can be practiced without one or more of the specific details or with other methods, components, materials, or the like. In some instances, well-known structures, materials, or operations are not shown or not described in detail to avoid obscuring aspects of the embodiments. "Forward" will indicate the direction of the muzzle and the direction in which projectiles are fired, while "rearward" will indicate the opposite direction. "Lateral" or "transverse" indicates a side-to-side direction generally perpendicular to the axis of the barrel. Although firearms may be used in any orientation, "left" and "right" will generally indicate the sides according to the user's orientation, "top" or "up" will be the upward direction when the firearm is gripped in the ordinary manner.

Referring first to FIGS. **1**-**6**B, there is illustrated a "drop-in" trigger module **10** adapted for use in an AR-pattern firearm according to a first embodiment of the present invention. As used herein, "AR-pattern" firearm includes the semiautomatic versions of the AR10 and AR15 firearms and variants thereof of any caliber, including pistol caliber carbines or pistols using a blow-back bolt. While select fire (fully automatic capable) versions of this platform, such as the M16 and M4, are also AR-pattern firearms, this invention only relates to semiautomatic firearm actions. The concepts of this invention may be adaptable to other popular semiautomatic firearm platforms, such as the Ruger 10/22™, AK-pattern firearms, and HK-pattern firearms.

The module **10** includes a frame or housing **12** sized and shaped to fit within the internal fire control pocket of an AR-pattern lower receiver **14**. Lower receiver parts not important to the present invention are well-known in the art and are omitted from the figures for clarity. The housing **12** includes forward left and right sidewalls **16**, **18** which extend substantially vertically and parallel to one another in a laterally spaced-apart relationship. The sidewalls **16**, **18** may be interconnected by a floor **20**. Shorter, more narrowly spaced apart and substantially vertical and parallel rear sidewalls **21**, **22** extend rearward from forward sidewalls **16**, **18** and are interconnected by a rear end wall **23**. The sidewalls **16**, **18** include first and second pairs of aligned openings **24**, **26** for receiving hollow transverse pins **30**, **32** upon which a hammer **36** and trigger member **38** pivot. The openings **24**, **26** are located coaxially with openings **42**, **44** in the lower receiver **14**. Standard AR-pattern hammer and trigger pins **46**, **48** pass through the openings **42**, **44** in the lower receiver **14** and through the hollow transverse pins **30**, **32** to assemble the housing **12** into the lower receiver **14**. Thus, the pins **30**, **32** retain the hammer **36** and trigger member **38** in the housing **12** in modular fashion, whereas the pins **46**, **48** retain the trigger module **10** in the lower receiver **14**.

The hammer **36** has a hammer head **50**, a sear catch **52**, a hammer hook **53**, and a concave contact surface **51**. The hammer **36** is spring biased towards a forward position by a standard AR-pattern hammer torsion spring (not shown).

The trigger member **38** has a trigger blade **54** that extends downwardly. The trigger blade **54** is the part of the trigger member **38** contacted by a user's finger to actuate the trigger mechanism. The trigger blade **54** may be curved (as shown) or straight, as desired. The trigger member **38** has a sear **56**. When the sear **56** and the sear catch **52** are engaged, the hammer **36** and trigger member **38** are in their set positions. When the sear **56** and sear catch **52** are not engaged, the hammer **36** and trigger member **38** are in their released positions. The trigger member **38** has a convex contact surface **58** that interacts with concave surface **51** on hammer **36** in a manner described below. The trigger member **38** also has a contact surface **69**. The trigger member **38** is spring biased by a compression spring **59** positioned between a forward end of the trigger member **38** and the floor **20** of the housing **12** so that the trigger blade **54** is spring biased towards a forward position.

A disconnector **60** is pivoted on the hollow transverse pin **32** upon which the trigger member **38** pivots. The disconnector **60** has a disconnector hook **64** and a tail **66**. The tail **66** of the disconnector **60** is spring biased upwardly away from a tail **68** of the trigger member **38** by a compression spring **67**.

A locking or blocking member **72** is movably mounted to the housing **12**. For example, the locking/blocking member **72** can be pivoted on a locking/blocking member pin or screw **74** that is installed in aligned openings **76** in the sidewalls **21**, **22** of the housing **12**. The locking member **72** has a first contact surface **78** that interacts with an engagement surface **94** in a rear portion **96** of a bolt carrier body **98** of a bolt carrier assembly **92**, in a manner to be described below. The locking member **72** has a second contact surface **80** that interacts with surface **69** of trigger member **38** in a manner to be described below. The locking member **72** is spring biased by a torsion spring **82** acting between a pin **84** in the sidewalls **21**, **22** and a lower portion of the locking member **72** such that surface **78** is biased rearward and surface **80** is biased forward. Alternatively, the locking/blocking member **72** can be slidably mounted to the housing **12** and spring biased forward by a compression spring.

An upper receiver **90** houses a bolt carrier assembly **92**. As is well-known in the art, the bolt carrier assembly **92** (or blow-back bolt) slidably reciprocates in the upper receiver **90** and engages the breach of a barrel or barrel extension. As used herein, "bolt carrier" and "bolt carrier assembly" may be used interchangeably and include a blow-back type bolt used in pistol caliber carbine configurations of the AR-platform. The bolt carrier assembly **92** used with the embodiments of this invention can have either a standard mil-spec M16-pattern bolt carrier, a standard AR15-pattern bolt carrier, or some variation of the two, depending on the design of the locking member **72**, and whether operated by a gas direct impingement system or a gas piston system. The bolt carrier assembly **92** has an engagement surface **94** in a rear portion **96** of the bolt carrier body **98**. As in an ordinary AR15-pattern configuration, during rearward travel of the bolt carrier assembly **92** a lower surface **102** in a forward portion **104** of the bolt carrier body **98** contacts the face of the hammer head **50** causing the hammer **36** to pivot rearward. Rearward travel of bolt carrier assembly **92** also

moves engagement surface **94** rearward and away from surface **78** of locking member **72**. The action of spring **82** causes locking member **72** to pivot in a first direction from a first position wherein surface **80** of locking member **72** does not impede upward movement of surface **69** of trigger member **38** to a second position wherein surface **80** of locking member **72** does impede upward movement of surface **69** of trigger member **38** thus preventing the trigger blade **54** from being pulled by the user. During forward travel of the bolt carrier assembly **92** the engagement surface **94** of the bolt carrier body **98** contacts the surface **78** of the locking member **72** to pivot the locking member **72** in a second opposite direction from the second position to the first position.

A three position safety selector **110** has safe, standard semi-automatic, and forced reset semi-automatic positions. When in the safe position (safety selector indicator **111** pointing forward), a wide semi-circular portion **112** of the safety selector **110** prevents the trigger blade **54** from being pulled (FIGS. **4**A, **4**B, and **7**). When in the standard semi-automatic position (safety selector indicator **111** pointing upward), a flat portion **114** of the safety selector **110** permits the trigger blade **54** to be pulled. The disconnector **60** can pivot with the trigger member **38** and the disconnector hook **64** can catch the hammer hook **53** during rearward pivoting travel of the hammer head **50**. (FIGS. **5**A and **5**B). When in the forced reset semi-automatic position (safety selector indicator **111** pointing rearward), a narrow semi-circular portion **116** permits the trigger blade **54** to be pulled but prevents the disconnector **60** from pivoting with the trigger member **38** thus preventing the disconnector hook **64** from catching the hammer hook **53** during rearward pivoting travel of the hammer head **50**. (FIGS. **6**A and **6**B). In other words, in the forced reset semi-automatic position, the disconnector **60** is "disabled" in that the disconnector hook **64** is unable to catch the hammer hook **53** during cycling of the bolt carrier assembly **92**.

Referring now to FIGS. **8**A-**8**D, with the safety selector **110** set in the standard semi-automatic position, rearward finger pressure on the trigger blade **54** causes the trigger member **38** to rotate clockwise. Rotation of the trigger member **38** causes the sear **56** to disengage from the sear catch **52** of the hammer **36**. This allows the hammer **36** to drop by spring force onto the firing pin **99** of the bolt carrier assembly **92**, discharging an ammunition cartridge (not shown), and causing the action to cycle by moving the bolt carrier assembly **92** rearward. Rearward travel of the bolt carrier assembly **92** frees the locking member **72** to pivot such that surface **80** is moved into a blocking position. Rearward travel of the bolt carrier assembly **92** also causes the lower surface **102** to contact the face of the hammer head **50** and pivot the hammer **36** counter-clockwise. During pivoting travel of the hammer **36** surface **51** contacts surface **58** of trigger member **38** forcing trigger member **38** to pivot counter-clockwise. Also during pivoting travel of the hammer **36** the disconnector hook **64** catches the hammer hook **53**. Forward travel of the bolt carrier assembly **92** returning to battery causes the surface **94** to contact the surface **78** of the locking member **72** to pivot the locking member **72** clockwise moving surface **80** out of the blocking position. At this point rearward finger pressure on the trigger blade **54** must be released to allow the sear **56** to engage the sear catch **52**, returning the hammer **36** and trigger member **38** to their set positions. Thereafter the user can reapply rearward finger pressure on the trigger blade **54** to fire another round.

Referring now to FIGS. **9**A-**9**D, with the safety selector **110** set in the forced reset semi-automatic position, rearward



finger pressure on the trigger blade **54** causes the trigger member **38** to rotate clockwise. The narrow semi-circular portion **116** of the safety selector **110** prevents the disconnector **60** from rotating with the trigger member **38**, thus "disabling" the disconnector **60**, preventing the disconnector hook **64** from catching the hammer hook **53**. Rotation of the trigger member **38** causes the sear **56** to disengage from the sear catch **52** of the hammer **36**. This allows the hammer **36** to drop by spring force onto the firing pin **99** of the bolt carrier assembly **92**, discharging an ammunition cartridge, and causing the action to cycle by moving the bolt carrier assembly **92** rearward. Rearward travel of the bolt carrier assembly **92** frees the locking member **72** to pivot such that surface **80** is moved into a blocking position. Rearward travel of the bolt carrier assembly **92** also causes the lower surface **102** to contact the face of the hammer head **50** and pivot the hammer **36** counter-clockwise. During pivoting travel of the hammer **36** surface **51** contacts surface **58** of trigger member **38** forcing trigger member **38** to pivot counter-clockwise. The bolt carrier assembly **92** thereby forces the hammer **36** and trigger member **38** to their set positions wherein the sear **56** engages the sear catch **52**. Forward travel of the bolt carrier assembly **92** returning to battery causes the surface **94** to contact the surface **78** of the locking member **72** to pivot the locking member **72** clockwise. At this point the user can reapply rearward finger pressure on the trigger blade **54** to fire another round, without first manually releasing rear finger pressure on the trigger blade **54**.

Thus, as the bolt carrier assembly **92** returns forward, the trigger member **38** is held in its set position by the locking member **72**. The trigger member **38** cannot be pulled to release the sear/sear catch engagement, thus precluding early hammer release or "hammer follow" against the bolt carrier assembly **92** and firing pin **99** as the bolt carrier assembly **92** is returning to battery. When the bolt carrier assembly **92** has reached (or nearly reached) its closed, in-battery position, the engagement surface **94** contacts and forwardly displaces the contact surface **78** of the locking member **72**, disengaging the contact surface **80** of the locking member **72** from the contact surface **69** of the trigger member **38**, allowing the trigger blade **54** to be pulled. Again, this prevents early hammer release and contact of the hammer against the firing pin before the bolt is completely locked and in-battery.

While various embodiments of the present invention have been described in detail, it should be apparent that modifications and variations thereto are possible, all of which fall within the true spirit and scope of the invention. Therefore, the foregoing is intended only to be illustrative of the principles of the invention. The invention resides in each individual feature described herein, alone, and in any and all combinations and subcombinations of any and all of those features. Further, since numerous modifications and changes will readily occur to those skilled in the art, it is not intended to limit the invention to the exact construction and operation shown and described. Accordingly, all suitable modifications and equivalents may be included and considered to fall within the scope of the invention, defined by the following claim or claims.

What is claimed is:

**1**. A firearm trigger mechanism comprising:

a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis between set and released

positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier,

a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, said trigger member having a surface positioned to be contacted by a surface of said hammer during rearward pivoting of said hammer to cause said trigger member to be forced to said set position,

wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member and are out of engagement in said released positions of said hammer and trigger member,

a disconnector having a hook for engaging said hammer and adapted to be mounted in the fire control mechanism pocket to pivot on said transverse trigger member pivot axis,

a locking member adapted to be mounted in the fire control mechanism pocket to pivot on a transverse locking member pivot axis, said locking member being pivotable between a first position at which said locking member mechanically blocks said trigger member from moving to said released position and a second position at which said locking member does not mechanically block said trigger member allowing said trigger member to be moved to said released position, said locking member spring biased toward said first position and adapted to be moved against said spring bias to said second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and

a safety selector adapted to be mounted in the fire control mechanism pocket to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions, said safety selector configured such that, when said safety selector is in said forced reset semi-automatic position, said safety selector causes said disconnector to be repositioned and in doing so prevents said disconnector hook from catching said hammer hook,

whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and

whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer causing said trigger member to be forced to said set position, said safety selector preventing said disconnector hook from catching said hammer hook, and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull said trigger member to fire the firearm without manually releasing said trigger member.

**2**. The trigger mechanism of claim **1** further including a spring which biases said trigger member towards said set position.

**3**. A firearm trigger mechanism comprising:

a housing having a first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin,

a hammer having a sear catch and a hook for engaging a disconnector and mounted in said housing to pivot on said hammer pin between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier,

a trigger member having a sear and mounted in said housing to pivot on said trigger member pin between set and released positions, said trigger member having a surface positioned to be contacted by a surface of said hammer during rearward pivoting of said hammer to cause said trigger member to be forced to said set position,

wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member and are out of engagement in said released positions of said hammer and trigger member,

a disconnector having a hook for engaging said hammer and mounted in said housing to pivot on said trigger member pin,

a locking member mounted in said housing to pivot on a transverse locking member pin, said locking member being pivotable between a first position at which said locking member mechanically blocks said trigger member from moving to said released position and a second position at which said locking member does not mechanically block said trigger member allowing said trigger member to be moved to said released position, said locking member spring biased toward said first position and adapted to be moved against said spring bias to said second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and

a safety selector adapted to be mounted in a fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions, said safety selector configured such that, when said safety selector is in said forced reset semi-automatic position, said safety selector causes said disconnector to be repositioned and in doing so prevents said disconnector hook from catching said hammer hook,

whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and

whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer causing said trigger member to be forced to said set position, said safety selector preventing said disconnector hook from catching said hammer hook, and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull said trigger member to fire the firearm without manually releasing said trigger member.

**4**. The trigger mechanism of claim **3**, wherein said first and second pairs of openings in said housing are adapted to be aligned with first and second pairs of transversely aligned assembly pin openings in the fire control mechanism pocket.

**5**. The trigger mechanism of claim **3** further including a spring which biases said trigger member towards said set position.

**6**. The trigger mechanism of claim **5** wherein said spring is a compression spring positioned between a forward end of said trigger member and a floor of said housing.

**7**. A firearm comprising:

a receiver having a fire control mechanism pocket therein,

a reciprocating bolt carrier,

a hammer having a sear catch and a hook for engaging a disconnector and mounted in said fire control mechanism pocket to pivot on a transverse hammer pivot axis between set and released positions, said hammer pivoted rearward by rearward movement of said bolt carrier,

a trigger member having a sear and mounted in said fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, said trigger member having a surface positioned to be contacted by a surface of said hammer during rearward pivoting of said hammer to cause said trigger member to be forced to said set position,

wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member and are out of engagement in said released positions of said hammer and trigger member,

a disconnector having a hook for engaging said hammer and mounted in said fire control mechanism pocket to pivot on said transverse trigger member pivot axis,

a locking member mounted in said fire control mechanism pocket to pivot on a transverse locking member pivot axis, said locking member being pivotable between a first position at which said locking member mechanically blocks said trigger member from moving to said released position and a second position at which said locking member does not mechanically block said trigger member allowing said trigger member to be moved to said released position, said locking member spring biased toward said first position and moved against said spring bias to said second position by contact from said bolt carrier during forward movement of said bolt carrier as said bolt carrier reaches a substantially in-battery position, and

a safety selector adapted mounted in said fire control mechanism pocket to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions, said safety selector configured such that, when said safety selector is in said forced reset semi-automatic position, said safety selector causes said disconnector to be repositioned and in doing so prevents said disconnector hook from catching said hammer hook,

whereupon in said standard semi-automatic position, rearward movement of said bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and

whereupon in said forced reset semi-automatic position, rearward movement of said bolt carrier causes rearward pivoting of said hammer causing said trigger member to be forced to said set position, said safety selector preventing said disconnector hook from catching said hammer hook, and thereafter when said bolt carrier reaches the substantially in-battery position the user can pull said trigger member to fire the firearm without manually releasing said trigger member.



**8**. The firearm of claim **7** further comprising:

a housing having a first pair of transversely aligned openings with a hammer pin therethrough and a second pair of transversely aligned openings with a trigger member pin therethrough,

said hammer mounted on said hammer pin, said trigger member and disconnector mounted on said trigger member pin.

**9**. The firearm of claim **8** further comprising:

said receiver having a first pair of transversely aligned assembly pin openings and a second pair of transversely aligned assembly pin openings,

said housing first pair of openings coaxial with said receiver first pair of openings and said housing second pair of openings coaxial with said receiver second pair of openings,

a first assembly pin passing through said receiver first pair of openings and through said housing first pair of openings, and

a second assembly pin passing through said receiver second pair of openings and through said housing second pair of openings.

**10**. The firearm of claim **7** further including a spring which biases said trigger member towards said set position.

**11**. The firearm of claim **10** wherein said spring is a compression spring positioned between a forward end of said trigger member and a floor of said housing.

**12**. A firearm trigger mechanism comprising:

a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier,

a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, said trigger member having a surface positioned to be contacted by a surface of said hammer during rearward pivoting of said hammer to cause said trigger member to be forced to said set position,

wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member and are out of engagement in said released positions of said hammer and trigger member,

a disconnector having a hook for engaging said hammer and adapted to be mounted in the fire control mechanism pocket to pivot on said transverse trigger member pivot axis,

a locking member adapted to be movably mounted in the fire control mechanism pocket, said locking member being movable between a first position at which said locking member mechanically blocks said trigger member from moving to said released position and a second position at which said locking member does not mechanically block said trigger member allowing said trigger member to be moved to said released position, said locking member spring biased toward said first position and adapted to be moved against said spring bias to said second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and

a safety selector adapted to be mounted in the fire control mechanism pocket to pivot between safe, standard semi-automatic, and forced reset semi-automatic posi-

tions, said safety selector configured such that, when said safety selector is in said forced reset semi-automatic position, said safety selector causes said disconnector to be repositioned and in doing so prevents said disconnector hook from catching said hammer hook,

whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and

whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer causing said trigger member to be forced to said set position, said safety selector preventing said disconnector hook from catching said hammer hook, and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull said trigger member to fire the firearm without manually releasing said trigger member.

* * * * *

Exhibit F

UNITED STATES PATENT AND TRADEMARK OFFICE

# CERTIFICATE OF CORRECTION

PATENT NO. : 12,036,336 B2
APPLICATION NO. : 18/346423
DATED : July 16, 2024
INVENTOR(S) : Mladen Thomas Strbac



It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

In the Specification

Column 4, Line 53, delete:
"... and a safety selector adapted mounted in the fire control ....";
Insert:
--... and a safety selector adapted to be mounted in the fire control ....--.

In the Claims

Column 13, Line 41 or Claim 7, Line 38, delete:
"... a safety selector adapted mounted in said fire control ....";
Insert:
--... a safety selector adapted to be mounted in said fire control ....--.

Signed and Sealed this
Seventeenth Day of September, 2024

Katherine Kelly Vidal

Katherine Kelly Vidal
*Director of the United States Patent and Trademark Office*

# Exhibit G

# U.S. Patent No. 12274807

US012274807B2

(12) **United States Patent**
**Strbac**

(10) **Patent No.: US 12,274,807 B2**
(45) **Date of Patent: *Apr. 15, 2025**

(54) **FIREARM TRIGGER MECHANISM**

(71) Applicant: **ABC IP, LLC**, Dover, DE (US)

(72) Inventor: **Mladen Thomas Strbac**, Cleveland, OH (US)

(73) Assignee: **ABC IP, LLC**, Dover, DE (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **18/665,926**

(22) Filed: **May 16, 2024**

(65) **Prior Publication Data**

US 2024/0299616 A1 Sep. 12, 2024

**Related U.S. Application Data**

(63) Continuation of application No. 18/346,423, filed on Jul. 3, 2023, now Pat. No. 12,036,336, which is a (Continued)

(51) **Int. Cl.**
***F41A 19/15*** (2006.01)
***A61L 24/00*** (2006.01)
(Continued)

(52) **U.S. Cl.**
CPC ....... ***A61L 24/0036*** (2013.01); ***A61L 24/0015*** (2013.01); ***A61L 24/043*** (2013.01);
(Continued)

(58) **Field of Classification Search**
CPC .......... F41A 19/24; F41A 19/10; F41A 19/15; F41A 19/16; F41A 17/46
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2,765,562 | A | 10/1956 | Roper et al. |
| 3,045,555 | A | 7/1962 | Stoner |

(Continued)

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| DE | 582963 | C | 8/1933 |
| DE | 4008351 | A1 | 9/1991 |

(Continued)

OTHER PUBLICATIONS

Statutory Invention Registration No. H107, Inventor: Bauer, Published Aug. 5, 1986 (8 pages).

*Primary Examiner* — J. Woodrow Eldred
(74) *Attorney, Agent, or Firm* — Wood Herron & Evans LLP

(57) **ABSTRACT**

A trigger mechanism that can be used in AR-pattern firearms has a hammer, a trigger member, a disconnector, a locking member, and a “three position” safety selector having safe, standard semi-automatic, and forced reset semi-automatic positions. In the standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, at which time a user must manually release the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. In the forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer causing the trigger member to be forced to the set position, the safety selector preventing the disconnector hook from catching the hammer hook, and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull the trigger member to fire the firearm without manually releasing the trigger member. The locking member is pivotable between a first position at which the locking member mechanically blocks the trigger
(Continued)



member from moving to the released position and a second position at which the locking member does not mechanically block the trigger member allowing the trigger member to be moved to the released position. The locking member is spring biased toward the first position and moved against the spring bias to the second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position.

**8 Claims, 18 Drawing Sheets**

**Related U.S. Application Data**

continuation of application No. 18/048,572, filed on Oct. 21, 2022, now Pat. No. 11,724,003.

(60) Provisional application No. 63/297,884, filed on Jan. 10, 2022.

(51) **Int. Cl.**

| | |
|---|---|
| ***A61L 24/04*** | (2006.01) |
| ***F41A 17/48*** | (2006.01) |
| ***F41A 19/10*** | (2006.01) |
| ***F41A 19/24*** | (2006.01) |

(52) **U.S. Cl.**
CPC .............. ***F41A 17/48*** (2013.01); ***F41A 19/10*** (2013.01); ***F41A 19/15*** (2013.01); ***F41A 19/24*** (2013.01); *A61L 2300/252* (2013.01); *A61L 2300/418* (2013.01); *A61L 2400/04* (2013.01); *A61L 2430/36* (2013.01)

(56) **References Cited**

U.S. PATENT DOCUMENTS


| | | | |
|---|---|---|---|
| 3,292,492 | A | 12/1966 | Sturtevant |
| 3,301,133 | A | 1/1967 | Sturtevant |
| 3,670,442 | A | 6/1972 | Kennedy et al. |
| 4,023,465 | A | 5/1977 | Inskip |
| 4,057,003 | A | 11/1977 | Atchisson |
| 4,151,670 | A | 5/1979 | Rath |
| 4,276,808 | A | 7/1981 | York |
| 4,433,610 | A | 2/1984 | Tatro |
| 4,463,654 | A | 8/1984 | Barnes et al. |
| 4,516,466 | A | 5/1985 | Jennie |
| 4,580,484 | A | 4/1986 | Moore |
| 4,656,993 | A | 4/1987 | Yuzawa et al. |
| 4,658,702 | A | 4/1987 | Tatro |
| 4,693,170 | A | 9/1987 | Atchisson |
| 4,697,495 | A | 10/1987 | Beretta |
| 4,787,288 | A | 11/1988 | Miller |
| 4,937,964 | A | 7/1990 | Crandall |
| 5,149,898 | A | 9/1992 | Chesnut et al. |
| 5,183,959 | A | 2/1993 | McCoan et al. |
| 5,223,649 | A | 6/1993 | Claridge |
| 5,339,721 | A | 8/1994 | Beretta |
| 5,517,897 | A | 5/1996 | Perrine |
| 5,614,691 | A | 3/1997 | Taylor |
| 5,623,114 | A | 4/1997 | Soper |
| 5,682,699 | A | 11/1997 | Gentry |
| 5,701,698 | A | 12/1997 | Wesp et al. |
| 5,704,153 | A | 1/1998 | Kaminski et al. |
| 5,760,328 | A | 6/1998 | Robbins |
| 5,770,814 | A | 6/1998 | Ealovega |
| 6,101,918 | A | 8/2000 | Akins |
| 6,360,467 | B1 | 3/2002 | Knight |
| 6,601,331 | B2 | 8/2003 | Salvitti |
| 6,718,680 | B2 | 4/2004 | Roca et al. |
| 6,722,072 | B1 | 4/2004 | McCormick |
| 6,851,346 | B1 | 2/2005 | Herring |
| 6,889,459 | B1 | 5/2005 | Salvitti |
| 6,976,416 | B2 | 12/2005 | Ealovega |
| 7,051,638 | B2 | 5/2006 | Thomele |
| 7,162,824 | B1 | 1/2007 | McCormick |
| 7,213,359 | B2 | 5/2007 | Beretta |
| 7,293,385 | B2 | 11/2007 | McCormick |
| 7,337,574 | B2 | 3/2008 | Crandall et al. |
| 7,347,021 | B1 | 3/2008 | Jones |
| 7,398,723 | B1 | 7/2008 | Blakley |
| 7,421,937 | B1 | 9/2008 | Gangl |
| 7,634,959 | B2 | 12/2009 | Frickey |
| 7,661,220 | B2 | 2/2010 | Crandall et al. |
| 7,806,039 | B1 | 10/2010 | Gomez |
| 8,037,805 | B1 | 10/2011 | Neroni |
| 8,112,928 | B2 | 2/2012 | Keough |
| 8,127,658 | B1 | 3/2012 | Cottle |
| 8,156,854 | B2 | 4/2012 | Brown |
| 8,443,537 | B2 | 5/2013 | Curry |
| 8,464,454 | B2 | 6/2013 | Martin et al. |
| 8,490,309 | B2 | 7/2013 | Zukowski |
| 8,667,881 | B1 | 3/2014 | Hawbaker |
| 8,695,477 | B2 | 4/2014 | Esch |
| 8,720,096 | B2 | 5/2014 | Siddle |
| 8,820,211 | B1 | 9/2014 | Hawbaker |
| 8,893,607 | B2 | 11/2014 | Audibert et al. |
| 8,925,234 | B1 | 1/2015 | Barrett |
| 8,985,006 | B1 | 3/2015 | Christensen et al. |
| 9,016,187 | B2 | 4/2015 | Findlay |
| 9,021,732 | B2 | 5/2015 | Johnson |
| 9,021,733 | B1 | 5/2015 | DiChario |
| 9,052,150 | B2 | 6/2015 | Talasco |
| 9,121,661 | B2 | 9/2015 | Calvete |
| 9,146,066 | B1 | 9/2015 | Cason |
| 9,146,067 | B2 | 9/2015 | Stakes |
| 9,182,189 | B2 | 11/2015 | Seigler |
| 9,228,786 | B2 | 1/2016 | Sullivan et al. |
| 9,310,150 | B1 | 4/2016 | Geissele |
| 9,347,726 | B1 | 5/2016 | Thomas |
| 9,448,023 | B2 | 9/2016 | Sheets, Jr. et al. |
| 9,476,660 | B2 | 10/2016 | Potter et al. |
| 9,513,076 | B2 | 12/2016 | Kolev et al. |
| 9,568,264 | B2 | 2/2017 | Graves |
| 9,618,288 | B2 | 4/2017 | Wilson |
| 9,618,289 | B1 | 4/2017 | Geissele |
| 9,625,231 | B1 | 4/2017 | Hass |
| 9,631,886 | B2 | 4/2017 | Findlay |
| 9,651,329 | B2 | 5/2017 | Hittmann |
| 9,658,007 | B2 | 5/2017 | Withey |
| 9,683,800 | B2 | 6/2017 | Sewell, Jr. et al. |
| 9,733,031 | B1 | 8/2017 | Sylvester et al. |
| 9,759,504 | B2 | 9/2017 | Geissele |
| 9,777,980 | B2 | 10/2017 | Heizer |
| 9,810,493 | B2 | 11/2017 | Fluhr et al. |
| 9,810,496 | B2 | 11/2017 | Kolev et al. |
| 9,816,772 | B2 | 11/2017 | Graves |
| 9,829,263 | B2 | 11/2017 | Bonner |
| 9,835,398 | B2 | 12/2017 | Biegel |
| 9,863,730 | B2 | 1/2018 | Elftmann |
| 9,869,522 | B2 | 1/2018 | Larson, Jr. et al. |
| 9,874,417 | B2 | 1/2018 | Zajk et al. |
| 9,927,197 | B1 | 3/2018 | Geissele |
| 9,939,221 | B2 | 4/2018 | Graves |
| 10,002,500 | B2 | 6/2018 | Hall et al. |
| 10,006,734 | B1 | 6/2018 | Findlay |
| 10,030,924 | B1 | 7/2018 | Smith |
| 10,077,960 | B2 | 9/2018 | Geissele |
| 10,107,580 | B2 | 10/2018 | Fellows et al. |
| 10,254,067 | B2 | 4/2019 | Foster |
| 10,267,584 | B2 | 4/2019 | Kasanjian-King |
| 10,330,413 | B2 | 6/2019 | Williams et al. |
| 10,488,136 | B2 | 11/2019 | Sullivan et al. |
| 10,502,511 | B2 | 12/2019 | Graves |
| 10,514,223 | B1 | 12/2019 | Rounds |
| 10,584,932 | B2 | 3/2020 | Foster |
| 10,816,297 | B1 | 10/2020 | Williams et al. |
| 11,287,205 | B2 | 3/2022 | Biegel |
| 11,293,715 | B1 | 4/2022 | Newsome et al. |
| 11,346,627 | B1 | 5/2022 | DeMonico |
| 11,724,003 | B2 * | 8/2023 | Strbac ................ A61L 24/0036 42/69.01 |

Exhibit G



(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 12,031,784 | B1 * | 7/2024 | DeMonico .............. F41A 17/46 |
| 12,036,336 | B2 * | 7/2024 | Strbac ................. A61L 24/0036 |
| 2006/0048426 | A1 | 3/2006 | Crandall |
| 2006/0101695 | A1 | 5/2006 | Longueira |
| 2007/0051236 | A1 | 3/2007 | Groves et al. |
| 2007/0199435 | A1 | 8/2007 | Hochstrate et al. |
| 2009/0151213 | A1 | 6/2009 | Bell |
| 2009/0188145 | A1 | 7/2009 | Fluhr et al. |
| 2011/0209607 | A1 | 9/2011 | St. George |
| 2013/0118343 | A1 | 5/2013 | Hirt |
| 2014/0311004 | A1 | 10/2014 | Barrett |
| 2016/0010933 | A1 | 1/2016 | Bonner |
| 2016/0102933 | A1 | 4/2016 | Graves |
| 2016/0161202 | A1 | 6/2016 | Larue |
| 2017/0176124 | A1 | 6/2017 | Wilson |
| 2017/0219307 | A1 | 8/2017 | Foster |
| 2017/0276447 | A1 | 9/2017 | Foster |
| 2017/0284761 | A1 | 10/2017 | Lewis et al. |
| 2017/0299309 | A1 | 10/2017 | Fellows et al. |
| 2017/0328663 | A1 | 11/2017 | Fellows et al. |
| 2018/0066911 | A1 | 3/2018 | Graves |
| 2018/0087860 | A1 | 3/2018 | Sullivan et al. |
| 2018/0112944 | A1 | 4/2018 | Underwood et al. |
| 2018/0195823 | A1 | 7/2018 | Schafer et al. |
| 2018/0202740 | A1 | 7/2018 | Elftmann, Jr. |
| 2018/0231342 | A1 | 8/2018 | Martinez |
| 2020/0191513 | A1 | 6/2020 | Foster |
| 2021/0222974 | A1 | 7/2021 | Graves |
| 2022/0364812 | A1 | 11/2022 | Fellows |
| 2023/0097725 | A1 | 3/2023 | Davis et al. |
| 2024/0085136 | A1 * | 3/2024 | Blakley ................... F41A 19/45 |

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| EP | 1678458 | B1 | 2/2012 |
| EP | 2950033 | B1 | 11/2016 |
| TW | 409847 | U | 10/2000 |
| WO | 2016/028337 | A1 | 2/2016 |
| WO | 2018/058174 | A1 | 4/2018 |

* cited by examiner

Exhibit G






FIG. 1


10
12
16
36
50
72
78
38
58
51
53
30
46
82
84
21
64
60
18
74
22
32
48
20
110
114
38
66
54
38

FIG. 2


10
50
36
51
53
52
111
110
116
114
112
64
56
60
66
58
56
69
38
67
68
59
54
72
78
82
80
16
12
74
21
76
84
24
30
76
26
46
32
23
22
20
18
48

FIG. 3



FIG. 4A


10
12
20
23
30
32
36
38
46
48
50
51
52
53
54
56
58
59
60
64
66
67
68
72
74
78
84
110
112
114
116

FIG. 4B


46
30
52
20
56
59
54
12
16
50
53
64
60
48
32
68
67
38
36
51
80
58
74
72
114
66
78
84
116
82
23
10
110

FIG. 5A


10
12
46
30
56
52
59
36
32
64
60
53
50
51
48
54
67
58
72
74
116
20
68
38
66
114
78
84
23
111
116
110

FIG. 5B

Exhibit G






FIG. 6A


10
12
46
30
56
52
36
32
59
64
60
53
48
54
50
51
67
114
58
20
72
74
112
68
38
66
116
78
84
23
110
111

FIG. 6B


14
102
42
30
20
12
92
104
99
46
52
56
59
54
38
48
60
53
50
36
58
51
64
44
32
68
67
98
72
94
80
111
78
86
84
82
23
114
112
66
110
96
90

FIG. 7


14
102
92
104
99
12
42
30
20
52
46
56
59
50
36
53
60
58
48
38
54
51
98
64
44
32
68
72
94
80
112
67
78
86
84
82
23
114
110
66
96
90

FIG. 8A

Exhibit G






FIG. 8B


14
30
20
36
46
52
56
59
38
48
54
32
68
66
99
50
60
64
58
80
112
78
92
90
104
98
102
82
23
72
114
110

FIG. 8C


14
99
102
92
30
20
12
104
46
52
56
59
50
36
53
60
48
38
58
57
64
32
68
54
98
72
112
67
94
78
86
84
114
110
66
96
82
23
90

FIG. 8D


14
102
92
104
99
12
42
30
20
46
52
56
59
50
36
53
60
48
38
58
51
64
44
32
68
54
98
72
94
80
114
67
78
86
84
82
23
111
116
66
96
90

FIG. 9A


14
102
30
20
92
104
50
99
51
46
56
52
59
12
60
64
48
38
58
32
68
54
98
36
72
94
80
114
67
78
86
66
84
96
82
23
111
116
90

FIG. 9B

Exhibit G






FIG. 9C


14
99
102
30
20
92
12
104
46
52
56
59
50
53
60
48
38
36
58
51
64
32
54
68
98
72
80
114
67
94
78
86
84
96
82
23
110
116
66
90

FIG. 9D

# FIREARM TRIGGER MECHANISM

## RELATED APPLICATIONS

This application is a continuation of U.S. patent application Ser. No. 18/346,423 filed Jul. 3, 2023, now U.S. Pat. No. 12,036,336 issued Jul. 16, 2024, which is a continuation of U.S. patent application Ser. No. 18/048,572 filed Oct. 21, 2022, now U.S. Pat. No. 11,724,003 issued Aug. 15, 2023, which claims the priority benefit of U.S. Provisional Patent Application No. 63/297,884 filed Jan. 10, 2022, all of which are hereby incorporated by reference herein as if fully set forth in their entirety.

## TECHNICAL FIELD

The present invention relates generally to a firearm trigger mechanism, and more particularly to a semiautomatic trigger that is selectively mechanically reset by movement of the bolt carrier.

## BACKGROUND

In a standard semiautomatic firearm, actuation of the trigger releases a sear, allowing a hammer or striker to fire a chambered ammunition cartridge. Part of the ammunition's propellant force is used to cycle the action, extracting and ejecting a spent cartridge and replacing it with a loaded cartridge. The cycle includes longitudinal reciprocation of a bolt and/or carrier, which also resets the hammer or striker.

A standard semiautomatic trigger mechanism includes a disconnector, which holds the hammer or striker in a cocked position until the trigger member is reset to engage the sear. This allows the firearm to be fired only a single time when the trigger is pulled and held, because the user is not typically able to release the trigger rapidly enough so that the sear engages before the bolt or bolt carrier returns to its in-battery position. The disconnector prevents the firearm from either firing multiple rounds on a single pull of the trigger, or from allowing the hammer or striker to simply "follow" the bolt as it returns to battery without firing a second round, but leaving the hammer or striker uncocked.

For various reasons, shooters desire to increase the rate of semiautomatic fire. Sometimes this is simply for entertainment and the feeling of shooting a machine gun. In the past, users have been known to employ "bump firing" to achieve rapid semiautomatic fire. Bump firing uses the recoil of the semiautomatic firearm to fire shots in rapid succession. The process involves bracing the rifle with the non-trigger hand, loosening the grip of the trigger hand (but leaving the trigger finger in its normal position in front of the trigger), and pushing the rifle forward in order to apply pressure on the trigger from the finger while keeping the trigger finger stationary. When fired with the trigger finger held stationary, the firearm will recoil to the rear and allow the trigger to reset as it normally does. When the non-trigger hand pulls the firearm away from the body and back forward toward the original position, it causes the trigger to be pressed against the stationary finger again, firing another round as the trigger is pushed back.

Devices for increasing the rate of semiautomatic fire are shown in U.S. Pat. Nos. 9,568,264; 9,816,772; and 9,939,221, issued to Thomas Allen Graves. The devices shown in these patents forcefully reset the trigger with rigid mechanical contact between the trigger member and the bolt as the action cycles. To adapt this invention to an AR-pattern



firearm, for example, would require not only a modified fire control mechanism, but also a modified bolt carrier.

Other devices for increasing the rate of semiautomatic fire are shown in U.S. Pat. Nos. 10,514,223 and 11,346,627, which are hereby incorporated by reference herein as if fully set forth in their entirety. In these devices the hammer forces the trigger to the set position, and a locking bar prevents early hammer release.

Another device for increasing the rate of semiautomatic fire is shown in U.S. Pat. No. 7,398,723, issued to Brian A. Blakley, and is hereby incorporated by reference herein as if fully set forth in its entirety. The device shown in this patent has a pivoting cam which is contacted by the rearwardly traveling bolt carrier, pivoting the cam rearwardly such that the bottom surface of the cam presses downward on the trigger-extension, forcing the rear of the trigger down, and thereby moving forward the surface of the trigger that an operator's finger engages. Another device for increasing the rate of semiautomatic fire employing a pivoting cam arrangement is shown in U.S. Provisional Patent Application No. 63/374,941 filed Sep. 8, 2022, also invented by Brian A. Blakley, and which is hereby incorporated by reference herein as if fully set forth in its entirety. This pivoting cam arrangement incorporates a three-position safety selector and associated structure to provide safe, standard semi-automatic, and forced reset semi-automatic modes.

Further improvement in forced reset triggers is desired.

## SUMMARY OF INVENTION

The present invention provides a semiautomatic trigger mechanism for increasing rate of fire that can be retrofitted into popular existing firearm platforms. In particular, this invention provides a trigger mechanism that can be used in AR-pattern firearms with an otherwise standard M16-pattern bolt carrier assembly. The present invention is particularly adaptable for construction as a "drop-in" replacement trigger module that only requires insertion of two assembly pins and the safety selector. Advantageously, the present invention provides a "three position" trigger mechanism having safe, standard semi-automatic, and forced reset semi-automatic positions.

In one aspect, a firearm trigger mechanism comprises a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, the trigger member having a surface positioned to be contacted by the hammer during rearward pivoting of the hammer to cause the trigger member to be forced to the set position, wherein the sear and sear catch are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member, a disconnector having a hook for engaging the hammer and adapted to be mounted in the fire control mechanism pocket to pivot on the transverse trigger member pivot axis, a locking member adapted to be mounted in the fire control mechanism pocket to pivot on a transverse locking member pivot axis, the locking member being pivotable between a first position at which the locking member mechanically blocks the trigger member from moving to the released position and a second position at which the locking member

does not mechanically block the trigger member allowing the trigger member to be moved to the released position, the locking member spring biased toward the first position and adapted to be moved against the spring bias to the second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and a safety selector adapted to be mounted in the fire control mechanism pocket to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions. In the standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, at which time a user must manually release the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. In the forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer causing the trigger member to be forced to the set position, the safety selector preventing the disconnector hook from catching the hammer hook, and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull the trigger member to fire the firearm without manually releasing the trigger member.

The safety selector can have a protuberance thereon which, when the safety selector is in the forced reset semi-automatic position, contacts the disconnector preventing the disconnector hook from catching the hammer hook. The trigger mechanism can further include a spring which biases the trigger member towards the set position.

In another aspect, a firearm trigger mechanism comprises a housing having a first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin, a hammer having a sear catch and a hook for engaging a disconnector and mounted in the housing to pivot on the hammer pin between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, a trigger member having a sear and mounted in the housing to pivot on the trigger member pin between set and released positions, the trigger member having a surface positioned to be contacted by the hammer during rearward pivoting of the hammer to cause the trigger member to be forced to the set position, wherein the sear and sear catch are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member, a disconnector having a hook for engaging the hammer and mounted in the housing to pivot on the trigger member pin, a locking member mounted in the housing to pivot on a transverse locking member pin, the locking member being pivotable between a first position at which the locking member mechanically blocks the trigger member from moving to the released position and a second position at which the locking member does not mechanically block the trigger member allowing the trigger member to be moved to the released position, the locking member spring biased toward the first position and adapted to be moved against the spring bias to the second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and a safety selector adapted to be mounted in a fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions. In the standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, at which time a user must manually release the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. In the forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer causing the trigger member to be forced to the set position, the safety selector preventing the disconnector hook from catching the hammer hook, and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull the trigger member to fire the firearm without manually releasing the trigger member.

The safety selector can have a protuberance thereon which, when the safety selector is in the forced reset semi-automatic position, contacts the disconnector preventing the disconnector hook from catching the hammer hook. The transversely aligned pairs of openings in the housing for receiving the hammer and trigger member pins can be adapted to be aligned with assembly pin openings in the fire control mechanism pocket. The trigger mechanism can further include a spring which biases the trigger member towards the set position. The spring can be a compression spring positioned between a forward end of the trigger member and a floor of the housing.

In another aspect, a firearm comprises a receiver having a fire control mechanism pocket therein, a reciprocating bolt carrier, a hammer having a sear catch and a hook for engaging a disconnector and mounted in the fire control mechanism pocket to pivot on a transverse hammer pivot axis between set and released positions, the hammer pivoted rearward by rearward movement of the bolt carrier, a trigger member having a sear and mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, the trigger member having a surface positioned to be contacted by the hammer during rearward pivoting of the hammer to cause the trigger member to be forced to the set position, wherein the sear and sear catch are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member, a disconnector having a hook for engaging the hammer and mounted in the fire control mechanism pocket to pivot on the transverse trigger member pivot axis, a locking member mounted in the fire control mechanism pocket to pivot on a transverse locking member pivot axis, the locking member being pivotable between a first position at which the locking member mechanically blocks the trigger member from moving to the released position and a second position at which the locking member does not mechanically block the trigger member allowing the trigger member to be moved to the released position, the locking member spring biased toward the first position and moved against the spring bias to the second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and a safety selector adapted to be mounted in the fire control mechanism pocket to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions. In the standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, at which time a user must manually release the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. In the forced reset semi-automatic position, rear-

ward movement of the bolt carrier causes rearward pivoting of the hammer causing the trigger member to be forced to the set position, the safety selector preventing the disconnector hook from catching the hammer hook, and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull the trigger member to fire the firearm without manually releasing the trigger member.

The firearm can further comprise a housing having a first pair of transversely aligned openings with a hammer pin therethrough and a second pair of transversely aligned openings with a trigger member pin therethrough, the hammer mounted on the hammer pin, the trigger member and disconnector mounted on the trigger member pin. The firearm can further comprise the receiver having a first pair of transversely aligned assembly pin openings and a second pair of transversely aligned assembly pin openings, the housing first pair of openings coaxial with the receiver first pair of openings and the housing second pair of openings coaxial with the receiver second pair of openings, a first assembly pin passing through the receiver first pair of openings and through the housing first pair of openings, and a second assembly pin passing through the receiver second pair of openings and through the housing second pair of openings. The firearm can further include a spring which biases the trigger member towards the set position. The spring can be a compression spring positioned between a forward end of the trigger member and a floor of the housing.

In another aspect, a firearm trigger mechanism comprises a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, the trigger member having a surface positioned to be contacted by a surface of the hammer during rearward pivoting of the hammer to cause the trigger member to be forced to the set position, wherein the sear and sear catch are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member, a disconnector having a hook for engaging the hammer and adapted to be mounted in the fire control mechanism pocket to pivot on the transverse trigger member pivot axis, a locking member adapted to be movably mounted in the fire control mechanism pocket, the locking member being movable between a first position at which the locking member mechanically blocks the trigger member from moving to the released position and a second position at which the locking member does not mechanically block the trigger member allowing the trigger member to be moved to the released position, the locking member spring biased toward the first position and adapted to be moved against the spring bias to the second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and a safety selector adapted to be mounted in the fire control mechanism pocket to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions. In the standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, at which time a user must manually release the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. In the forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer causing the trigger member to be forced to the set position, the safety selector preventing the disconnector hook from catching the hammer hook, and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull the trigger member to fire the firearm without manually releasing the trigger member.

Other aspects, features, benefits, and advantages of the present invention will become apparent to a person of skill in the art from the detailed description of various embodiments with reference to the accompanying drawing figures, all of which comprise part of the disclosure.

## BRIEF DESCRIPTION OF THE DRAWINGS

Like reference numerals are used to indicate like parts throughout the various drawing figures, wherein:

FIG. **1** is a top front right perspective view of a drop-in trigger module for an AR-pattern firearm according to one embodiment of the invention.

FIG. **2** is a top rear right perspective view thereof.

FIG. **3** is a top rear right exploded perspective view thereof.

FIG. **4**A is a top rear right cross-sectional view thereof with the safety selector in the safe position and with the hammer and trigger member in their set positions.

FIG. **4**B is a bottom rear right cross-sectional view thereof with the safety selector in the safe position and with the hammer and trigger member in their set positions.

FIG. **5**A is a top rear right cross-sectional view thereof with the safety selector in the standard semi-automatic position and with the hammer and trigger member in their set positions.

FIG. **5**B is a bottom rear right cross-sectional view thereof with the safety selector in the standard semi-automatic position and with the hammer and trigger member in their set positions.

FIG. **6**A is a top rear right cross-sectional view thereof with the safety selector in the forced reset semi-automatic position and with the hammer and trigger member in their set positions.

FIG. **6**B is a bottom rear right cross-sectional view thereof with the safety selector in the forced reset semi-automatic position and with the hammer and trigger member in their set positions.

FIG. **7** is a cross-sectional view showing the trigger module installed in a typical AR15-pattern lower receiver, with the hammer and trigger member in their set positions and with the bolt carrier in an in-battery position, and with the safety selector in the safe position.

FIG. **8**A is a view similar to FIG. **7** but with the safety selector in the standard semi-automatic position.

FIG. **8**B is a view similar to FIG. **8**A but after the trigger has been pulled to drop the hammer.

FIG. **8**C is a view similar to FIG. **8**B but with the bolt carrier cycling to the rear to pivot the hammer.

FIG. **8**D is a view similar to FIG. **8**C but with the bolt carrier having returned to battery and the disconnector having caught the hammer.

FIG. **9**A is a view similar to FIG. **7** but with the safety selector in the forced reset semi-automatic position.

FIG. **9**B is a view similar to FIG. **9**A but after the trigger has been pulled to drop the hammer.

FIG. **9**C is a view similar to FIG. **9**B but with the bolt carrier cycling to the rear to pivot the hammer.

FIG. **9**D is a view similar to FIG. **9**C but with the bolt carrier having returned to battery and the hammer and trigger having returned to their set positions.

## DETAILED DESCRIPTION

With reference to the drawing figures, this section describes particular embodiments and their detailed construction and operation. Throughout the specification, reference to "one embodiment," "an embodiment," or "some embodiments" means that a particular described feature, structure, or characteristic may be included in at least one embodiment. Thus, appearances of the phrases "in one embodiment," "in an embodiment," or "in some embodiments" in various places throughout this specification are not necessarily all referring to the same embodiment. Furthermore, the described features, structures, and characteristics may be combined in any suitable manner in one or more embodiments. In view of the disclosure herein, those skilled in the art will recognize that the various embodiments can be practiced without one or more of the specific details or with other methods, components, materials, or the like. In some instances, well-known structures, materials, or operations are not shown or not described in detail to avoid obscuring aspects of the embodiments. "Forward" will indicate the direction of the muzzle and the direction in which projectiles are fired, while "rearward" will indicate the opposite direction. "Lateral" or "transverse" indicates a side-to-side direction generally perpendicular to the axis of the barrel. Although firearms may be used in any orientation, "left" and "right" will generally indicate the sides according to the user's orientation, "top" or "up" will be the upward direction when the firearm is gripped in the ordinary manner.

Referring first to FIGS. **1**-**6**B, there is illustrated a "drop-in" trigger module **10** adapted for use in an AR-pattern firearm according to a first embodiment of the present invention. As used herein, "AR-pattern" firearm includes the semiautomatic versions of the AR10 and AR15 firearms and variants thereof of any caliber, including pistol caliber carbines or pistols using a blow-back bolt. While select fire (fully automatic capable) versions of this platform, such as the M16 and M4, are also AR-pattern firearms, this invention only relates to semiautomatic firearm actions. The concepts of this invention may be adaptable to other popular semiautomatic firearm platforms, such as the Ruger 10/22™, AK-pattern firearms, and HK-pattern firearms.

The module **10** includes a frame or housing **12** sized and shaped to fit within the internal fire control pocket of an AR-pattern lower receiver **14**. Lower receiver parts not important to the present invention are well-known in the art and are omitted from the figures for clarity. The housing **12** includes forward left and right sidewalls **16**, **18** which extend substantially vertically and parallel to one another in a laterally spaced-apart relationship. The sidewalls **16**, **18** may be interconnected by a floor **20**. Shorter, more narrowly spaced apart and substantially vertical and parallel rear sidewalls **21**, **22** extend rearward from forward sidewalls **16**, **18** and are interconnected by a rear end wall **23**. The sidewalls **16**, **18** include first and second pairs of aligned openings **24**, **26** for receiving hollow transverse pins **30**, **32** upon which a hammer **36** and trigger member **38** pivot. The openings **24**, **26** are located coaxially with openings **42**, **44** in the lower receiver **14**. Standard AR-pattern hammer and trigger pins **46**, **48** pass through the openings **42**, **44** in the lower receiver **14** and through the hollow transverse pins **30**, **32** to assemble the housing **12** into the lower receiver **14**. Thus, the pins **30**, **32** retain the hammer **36** and trigger member **38** in the housing **12** in modular fashion, whereas the pins **46**, **48** retain the trigger module **10** in the lower receiver **14**.

The hammer **36** has a hammer head **50**, a sear catch **52**, a hammer hook **53**, and a concave contact surface **51**. The hammer **36** is spring biased towards a forward position by a standard AR-pattern hammer torsion spring (not shown).

The trigger member **38** has a trigger blade **54** that extends downwardly. The trigger blade **54** is the part of the trigger member **38** contacted by a user's finger to actuate the trigger mechanism. The trigger blade **54** may be curved (as shown) or straight, as desired. The trigger member **38** has a sear **56**. When the sear **56** and the sear catch **52** are engaged, the hammer **36** and trigger member **38** are in their set positions. When the sear **56** and sear catch **52** are not engaged, the hammer **36** and trigger member **38** are in their released positions. The trigger member **38** has a convex contact surface **58** that interacts with concave surface **51** on hammer **36** in a manner described below. The trigger member **38** also has a contact surface **69**. The trigger member **38** is spring biased by a compression spring **59** positioned between a forward end of the trigger member **38** and the floor **20** of the housing **12** so that the trigger blade **54** is spring biased towards a forward position.

A disconnector **60** is pivoted on the hollow transverse pin **32** upon which the trigger member **38** pivots. The disconnector **60** has a disconnector hook **64** and a tail **66**. The tail **66** of the disconnector **60** is spring biased upwardly away from a tail **68** of the trigger member **38** by a compression spring **67**.

A locking or blocking member **72** is movably mounted to the housing **12**. For example, the locking/blocking member **72** can be pivoted on a locking/blocking member pin or screw **74** that is installed in aligned openings **76** in the sidewalls **21**, **22** of the housing **12**. The locking member **72** has a first contact surface **78** that interacts with an engagement surface **94** in a rear portion **96** of a bolt carrier body **98** of a bolt carrier assembly **92**, in a manner to be described below. The locking member **72** has a second contact surface **80** that interacts with surface **69** of trigger member **38** in a manner to be described below. The locking member **72** is spring biased by a torsion spring **82** acting between a pin **84** in the sidewalls **21**, **22** and a lower portion of the locking member **72** such that surface **78** is biased rearward and surface **80** is biased forward. Alternatively, the locking/blocking member **72** can be slidably mounted to the housing **12** and spring biased forward by a compression spring.

An upper receiver **90** houses a bolt carrier assembly **92**. As is well-known in the art, the bolt carrier assembly **92** (or blow-back bolt) slidably reciprocates in the upper receiver **90** and engages the breach of a barrel or barrel extension. As used herein, "bolt carrier" and "bolt carrier assembly" may be used interchangeably and include a blow-back type bolt used in pistol caliber carbine configurations of the AR-platform. The bolt carrier assembly **92** used with the embodiments of this invention can have either a standard mil-spec M16-pattern bolt carrier, a standard AR15-pattern bolt carrier, or some variation of the two, depending on the design of the locking member **72**, and whether operated by a gas direct impingement system or a gas piston system. The bolt carrier assembly **92** has an engagement surface **94** in a rear portion **96** of the bolt carrier body **98**. As in an ordinary AR15-pattern configuration, during rearward travel of the bolt carrier assembly **92** a lower surface **102** in a forward portion **104** of the bolt carrier body **98** contacts the face of

the hammer head **50** causing the hammer **36** to pivot rearward. Rearward travel of bolt carrier assembly **92** also moves engagement surface **94** rearward and away from surface **78** of locking member **72**. The action of spring **82** causes locking member **72** to pivot in a first direction from a first position wherein surface **80** of locking member **72** does not impede upward movement of surface **69** of trigger member **38** to a second position wherein surface **80** of locking member **72** does impede upward movement of surface **69** of trigger member **38** thus preventing the trigger blade **54** from being pulled by the user. During forward travel of the bolt carrier assembly **92** the engagement surface **94** of the bolt carrier body **98** contacts the surface **78** of the locking member **72** to pivot the locking member **72** in a second opposite direction from the second position to the first position.

A three position safety selector **110** has safe, standard semi-automatic, and forced reset semi-automatic positions. When in the safe position (safety selector indicator **111** pointing forward), a wide semi-circular portion **112** of the safety selector **110** prevents the trigger blade **54** from being pulled (FIGS. **4**A, **4**B, and **7**). When in the standard semi-automatic position (safety selector indicator **111** pointing upward), a flat portion **114** of the safety selector **110** permits the trigger blade **54** to be pulled. The disconnector **60** can pivot with the trigger member **38** and the disconnector hook **64** can catch the hammer hook **53** during rearward pivoting travel of the hammer head **50**. (FIGS. **5**A and **5**B). When in the forced reset semi-automatic position (safety selector indicator **111** pointing rearward), a narrow semi-circular portion **116** permits the trigger blade **54** to be pulled but prevents the disconnector **60** from pivoting with the trigger member **38** thus preventing the disconnector hook **64** from catching the hammer hook **53** during rearward pivoting travel of the hammer head **50**. (FIGS. **6**A and **6**B). In other words, in the forced reset semi-automatic position, the disconnector **60** is "disabled" in that the disconnector hook **64** is unable to catch the hammer hook **53** during cycling of the bolt carrier assembly **92**.

Referring now to FIGS. **8**A-**8**D, with the safety selector **110** set in the standard semi-automatic position, rearward finger pressure on the trigger blade **54** causes the trigger member **38** to rotate clockwise. Rotation of the trigger member **38** causes the sear **56** to disengage from the sear catch **52** of the hammer **36**. This allows the hammer **36** to drop by spring force onto the firing pin **99** of the bolt carrier assembly **92**, discharging an ammunition cartridge (not shown), and causing the action to cycle by moving the bolt carrier assembly **92** rearward. Rearward travel of the bolt carrier assembly **92** frees the locking member **72** to pivot such that surface **80** is moved into a blocking position. Rearward travel of the bolt carrier assembly **92** also causes the lower surface **102** to contact the face of the hammer head **50** and pivot the hammer **36** counter-clockwise. During pivoting travel of the hammer **36** surface **51** contacts surface **58** of trigger member **38** forcing trigger member **38** to pivot counter-clockwise. Also during pivoting travel of the hammer **36** the disconnector hook **64** catches the hammer hook **53**. Forward travel of the bolt carrier assembly **92** returning to battery causes the surface **94** to contact the surface **78** of the locking member **72** to pivot the locking member **72** clockwise moving surface **80** out of the blocking position. At this point rearward finger pressure on the trigger blade **54** must be released to allow the sear **56** to engage the sear catch **52**, returning the hammer **36** and trigger member **38** to their set positions. Thereafter the user can reapply rearward finger pressure on the trigger blade **54** to fire another round.

Referring now to FIGS. **9**A-**9**D, with the safety selector **110** set in the forced reset semi-automatic position, rearward finger pressure on the trigger blade **54** causes the trigger member **38** to rotate clockwise. The narrow semi-circular portion **116** of the safety selector **110** prevents the disconnector **60** from rotating with the trigger member **38**, thus "disabling" the disconnector **60**, preventing the disconnector hook **64** from catching the hammer hook **53**. Rotation of the trigger member **38** causes the sear **56** to disengage from the sear catch **52** of the hammer **36**. This allows the hammer **36** to drop by spring force onto the firing pin **99** of the bolt carrier assembly **92**, discharging an ammunition cartridge, and causing the action to cycle by moving the bolt carrier assembly **92** rearward. Rearward travel of the bolt carrier assembly **92** frees the locking member **72** to pivot such that surface **80** is moved into a blocking position. Rearward travel of the bolt carrier assembly **92** also causes the lower surface **102** to contact the face of the hammer head **50** and pivot the hammer **36** counter-clockwise. During pivoting travel of the hammer **36** surface **51** contacts surface **58** of trigger member **38** forcing trigger member **38** to pivot counter-clockwise. The bolt carrier assembly **92** thereby forces the hammer **36** and trigger member **38** to their set positions wherein the sear **56** engages the sear catch **52**. Forward travel of the bolt carrier assembly **92** returning to battery causes the surface **94** to contact the surface **78** of the locking member **72** to pivot the locking member **72** clockwise. At this point the user can reapply rearward finger pressure on the trigger blade **54** to fire another round, without first manually releasing rear finger pressure on the trigger blade **54**.

Thus, as the bolt carrier assembly **92** returns forward, the trigger member **38** is held in its set position by the locking member **72**. The trigger member **38** cannot be pulled to release the sear/sear catch engagement, thus precluding early hammer release or "hammer follow" against the bolt carrier assembly **92** and firing pin **99** as the bolt carrier assembly **92** is returning to battery. When the bolt carrier assembly **92** has reached (or nearly reached) its closed, in-battery position, the engagement surface **94** contacts and forwardly displaces the contact surface **78** of the locking member **72**, disengaging the contact surface **80** of the locking member **72** from the contact surface **69** of the trigger member **38**, allowing the trigger blade **54** to be pulled. Again, this prevents early hammer release and contact of the hammer against the firing pin before the bolt is completely locked and in-battery.

While various embodiments of the present invention have been described in detail, it should be apparent that modifications and variations thereto are possible, all of which fall within the true spirit and scope of the invention. Therefore, the foregoing is intended only to be illustrative of the principles of the invention. The invention resides in each individual feature described herein, alone, and in any and all combinations and subcombinations of any and all of those features. Further, since numerous modifications and changes will readily occur to those skilled in the art, it is not intended to limit the invention to the exact construction and operation shown and described. Accordingly, all suitable modifications and equivalents may be included and considered to fall within the scope of the invention, defined by the following claim or claims.

What is claimed is:

**1**. A firearm trigger mechanism comprising:

a hammer having a sear catch and a hook and adapted to be mounted in a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis

between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier,

a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, said trigger member having a surface positioned to be contacted by a surface of said hammer during rearward pivoting of said hammer to cause said trigger member to be forced to said set position,

wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member and are out of engagement in said released positions of said hammer and trigger member,

a disconnector having a hook for engaging said hammer hook and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis,

a locking member adapted to be movably mounted in the fire control mechanism pocket, said locking member being movable between a first position at which said locking member mechanically blocks said trigger member from moving to said released position and a second position at which said locking member does not mechanically block said trigger member allowing said trigger member to be moved to said released position, said locking member spring biased toward said first position and adapted to be moved against said spring bias to said second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and

a safety selector adapted to be movably mounted in the fire control mechanism pocket to move between safe, standard semi-automatic, and forced reset semi-automatic positions,

whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, at which time a user must manually release said trigger member to free said



hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and

whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer causing said trigger member to be forced to said set position, said safety selector preventing said disconnector hook from catching said hammer hook, and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull said trigger member to fire the firearm without manually releasing said trigger member.

**2**. The trigger mechanism of claim **1**, wherein said safety selector is configured such that, when said safety selector is in said forced reset semi-automatic position, said safety selector contacts said disconnector preventing said disconnector hook from catching said hammer hook.

**3**. The trigger mechanism of claim **1**, further comprising a spring which biases said trigger member towards said set position.

**4**. The trigger mechanism of claim **1**, wherein said trigger member pivot axis and said disconnector pivot axis are the same axis.

**5**. The trigger mechanism of claim **1**, wherein said safety selector is adapted to be pivotably mounted in the fire control mechanism pocket to pivot on a transverse safety selector pivot axis.

**6**. The trigger mechanism of claim **1**, wherein said locking member is adapted to be pivotably mounted in the fire control mechanism pocket to pivot on a transverse locking member pivot axis.

**7**. The trigger mechanism of claim **1**, further comprising a housing having a first pair of transversely aligned openings for receiving a hammer pivot pin and a second pair of transversely aligned openings for receiving a trigger member pivot pin.

**8**. The trigger mechanism of claim **7**, wherein said housing has a third pair of transversely aligned openings for receiving a locking member pivot pin or screw.

* * * * *

# Exhibit H

# U.S. Patent No. 12636403

Exhibit H

US012636403B2

(12) **United States Patent**
**Strbac**

(10) **Patent No.: US 12,636,403 B2**
(45) **Date of Patent: *May 26, 2026**

(54) **FIREARM TRIGGER MECHANISM**

(71) Applicant: **ABC IP, LLC**, Dover, DE (US)

(72) Inventor: **Mladen Thomas Strbac**, Cleveland, OH (US)

(73) Assignee: **ABC IP, LLC**, Dover, DE (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **19/033,141**

(22) Filed: **Jan. 21, 2025**

(65) **Prior Publication Data**

US 2025/0170297 A1 May 29, 2025

**Related U.S. Application Data**

(63) Continuation of application No. 18/665,926, filed on May 16, 2024, now Pat. No. 12,271,807, which is a (Continued)

(51) **Int. Cl.**

| | |
|---|---|
| *F41A 19/24* | (2006.01) |
| *A61L 24/00* | (2006.01) |
| *A61L 24/04* | (2006.01) |

(52) **U.S. Cl.**
CPC ........ *A61L 24/0036* (2013.01); *A61L 24/0015* (2013.01); *A61L 24/043* (2013.01)
(Continued)

(58) **Field of Classification Search**
CPC ........ F41A 19/21; F41A 19/10; F41A 19/15; F41A 19/16; F41A 17/46
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

659,507 A 10/1900 Browning
2,090,975 A 10/1936 Wichal, Jr.
(Continued)

FOREIGN PATENT DOCUMENTS

DE 597,663 C 6/1934
DE 4008351 A1 9/1991
(Continued)

OTHER PUBLICATIONS

Summary Invention Report No. [illegible] Published Aug. 7, 1988 (8 pages).
(Continued)

*Primary Examiner* — J. Woodrow Eldred

(57) **ABSTRACT**

A trigger mechanism that can be used in AR-pattern firearms has a hammer, a trigger member, a disconnector, a locking member, and a "three position" safety selector having safe, standard semi-automatic, and forced reset semi-automatic positions. In the standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, at which time a user must manually release the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. In the forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer causing the trigger member to be forced to the set position, the safety selector preventing the disconnector hook from catching the hammer hook, and thereafter when the bolt carrier reaches the substantially in battery
(Continued)



position the user can pull the trigger member to fire the firearm without manually releasing the trigger member. The locking member is pivotable between a first position at which the locking member mechanically blocks the trigger member from moving to the released position and a second position at which the locking member does not mechanically block the trigger member allowing the trigger member to be moved to the released position. The locking member is spring biased toward the first position and moved against the spring bias to the second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position.

**55 Claims, 18 Drawing Sheets**

**Related U.S. Application Data**

continuation of application No. 18/346,423, filed on Jul. 3, 2023, now Pat. No. 12,036,336, which is a continuation of application No. 18/048,572, filed on Oct. 21, 2022, now Pat. No. 11,724,003.

(60) Provisional application No. 63/297,884, filed on Jan. 10, 2022.

(52) **U.S. Cl.**
CPC ......... ***F41A 19/24*** (2013.01); *A61L 2300/252* (2013.01); *A61L 2300/418* (2013.01); *A61L 2400/04* (2013.01); *A61L 2430/36* (2013.01)

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2,139,691 | A | 12/1938 | Michal, Jr. |
| 2,367,280 | A | 1/1945 | Hyde |
| 2,765,562 | A | 10/1956 | Roper et al. |
| 3,045,555 | A | 7/1962 | Stoner |
| 3,292,492 | A | 12/1966 | Sturtevant |
| 3,301,133 | A | 1/1967 | Sturtevant |
| 3,670,442 | A | 6/1972 | Kennedy et al. |
| 4,023,465 | A | 5/1977 | Inskip |
| 4,057,003 | A | 11/1977 | Atchisson |
| 4,151,670 | A | 5/1979 | Rath |
| 4,276,808 | A | 7/1981 | York |
| 4,433,610 | A | 2/1984 | Tatro |
| 4,463,654 | A | 8/1984 | Barnes et al. |
| 4,516,466 | A | 5/1985 | Jennie |
| 4,580,484 | A | 4/1986 | Moore |
| 4,656,993 | A | 4/1987 | Yuzawa et al. |
| 4,658,702 | A | 4/1987 | Tatro |
| 4,693,170 | A | 9/1987 | Atchisson |
| 4,697,495 | A | 10/1987 | Beretta |
| 4,787,288 | A | 11/1988 | Miller |
| 4,937,964 | A | 7/1990 | Crandall |
| 5,149,898 | A | 9/1992 | Chesnut et al. |
| 5,183,959 | A | 2/1993 | McCoan et al. |
| 5,223,649 | A | 6/1993 | Claridge |
| 5,339,721 | A | 8/1994 | Beretta |
| 5,517,897 | A | 5/1996 | Perrine |
| 5,614,691 | A | 3/1997 | Taylor |
| 5,623,114 | A | 4/1997 | Soper |
| 5,682,699 | A | 11/1997 | Gentry |
| 5,701,698 | A | 12/1997 | Wesp et al. |
| 5,704,153 | A | 1/1998 | Kaminski et al. |
| 5,760,328 | A | 6/1998 | Robbins |
| 5,770,814 | A | 6/1998 | Ealovega |
| 6,101,918 | A | 8/2000 | Akins |
| 6,360,467 | B1 | 3/2002 | Knight |
| 6,601,331 | B2 | 8/2003 | Salvitti |
| 6,718,680 | B2 | 4/2004 | Roca et al. |
| 6,722,072 | B1 | 4/2004 | McCormick |
| 6,851,346 | B1 | 2/2005 | Herring |
| 6,889,459 | B1 | 5/2005 | Salvitti |
| 6,976,416 | B2 | 12/2005 | Ealovega |
| 7,051,638 | B2 | 5/2006 | Thomele |
| 7,162,824 | B1 | 1/2007 | McCormick |
| 7,213,359 | B2 | 5/2007 | Beretta |
| 7,293,385 | B2 | 11/2007 | McCormick |
| 7,337,574 | B2 | 3/2008 | Crandall et al. |
| 7,347,021 | B1 | 3/2008 | Jones |
| 7,398,723 | B1 | 7/2008 | Blakley |
| 7,421,937 | B1 | 9/2008 | Gangl |
| 7,634,959 | B2 | 12/2009 | Frickey |
| 7,661,220 | B2 | 2/2010 | Crandall et al. |
| 7,806,039 | B1 | 10/2010 | Gomez |
| 8,037,805 | B1 | 10/2011 | Neroni |
| 8,112,928 | B2 | 2/2012 | Keough |
| 8,127,658 | B1 | 3/2012 | Cottle |
| 8,156,854 | B2 | 4/2012 | Brown |
| 8,443,537 | B2 | 5/2013 | Curry |
| 8,464,454 | B2 | 6/2013 | Martin et al. |
| 8,490,309 | B2 | 7/2013 | Zukowski |
| 8,667,881 | B1 | 3/2014 | Hawbaker |
| 8,695,477 | B2 | 4/2014 | Esch |
| 8,720,096 | B2 | 5/2014 | Siddle |
| 8,820,211 | B1 | 9/2014 | Hawbaker |
| 8,893,607 | B2 | 11/2014 | Audibert et al. |
| 8,925,234 | B1 | 1/2015 | Barrett |
| 8,985,006 | B1 | 3/2015 | Christensen et al. |
| 9,016,187 | B2 | 4/2015 | Findlay |
| 9,021,732 | B2 | 5/2015 | Johnson |
| 9,021,733 | B1 | 5/2015 | DiChario |
| 9,052,150 | B2 | 6/2015 | Talasco |
| 9,121,661 | B2 | 9/2015 | Calvete |
| 9,146,066 | B1 | 9/2015 | Cason |
| 9,146,067 | B2 | 9/2015 | Stakes |
| 9,182,189 | B2 | 11/2015 | Seigler |
| 9,228,786 | B2 | 1/2016 | Sullivan et al. |
| 9,310,150 | B1 | 4/2016 | Geissele |
| 9,347,726 | B1 | 5/2016 | Thomas |
| 9,448,023 | B2 | 9/2016 | Sheets, Jr. et al. |
| 9,476,660 | B2 | 10/2016 | Potter et al. |
| 9,513,076 | B2 | 12/2016 | Kolev et al. |
| 9,568,264 | B2 | 2/2017 | Graves |
| 9,618,288 | B2 | 4/2017 | Wilson |
| 9,618,289 | B1 | 4/2017 | Geissele |
| 9,625,231 | B1 | 4/2017 | Hass |
| 9,631,886 | B2 | 4/2017 | Findlay |
| 9,651,329 | B2 | 5/2017 | Hittmann |
| 9,658,007 | B2 | 5/2017 | Withey |
| 9,683,800 | B2 | 6/2017 | Sewell, Jr. et al. |
| 9,733,031 | B1 | 8/2017 | Sylvester et al. |
| 9,759,504 | B2 | 9/2017 | Geissele |
| 9,777,980 | B2 | 10/2017 | Heizer |
| 9,810,493 | B2 | 11/2017 | Fluhr et al. |
| 9,810,496 | B2 | 11/2017 | Kolev et al. |
| 9,816,772 | B2 | 11/2017 | Graves |
| 9,829,263 | B2 | 11/2017 | Bonner |
| 9,835,398 | B2 | 12/2017 | Biegel |
| 9,863,730 | B2 | 1/2018 | Elftmann |
| 9,869,522 | B2 | 1/2018 | Larson, Jr. et al. |
| 9,874,417 | B2 | 1/2018 | Zajk et al. |
| 9,927,197 | B1 | 3/2018 | Geissele |
| 9,939,221 | B2 | 4/2018 | Graves |
| 10,002,500 | B2 | 6/2018 | Hall et al. |
| 10,006,734 | B1 | 6/2018 | Findlay |
| 10,030,924 | B1 | 7/2018 | Smith |
| 10,077,960 | B2 | 9/2018 | Geissele |
| 10,107,580 | B2 | 10/2018 | Fellows et al. |
| 10,254,067 | B2 | 4/2019 | Foster |
| 10,267,584 | B2 | 4/2019 | Kasanjian-King |
| 10,330,413 | B2 | 6/2019 | Williams et al. |
| 10,488,136 | B2 | 11/2019 | Sullivan et al. |
| 10,502,511 | B2 | 12/2019 | Graves |
| 10,514,223 | B1 | 12/2019 | Rounds |
| 10,584,932 | B2 | 3/2020 | Foster |
| 10,816,297 | B1 | 10/2020 | Williams et al. |
| 11,287,205 | B2 | 3/2022 | Biegel |
| 11,293,715 | B1 | 4/2022 | Newsome et al. |

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 11,346,627 | B1 | 5/2022 | DeMonico | |
| 11,724,003 | B2 * | 8/2023 | Strbac | A61L 24/0031 42/69.01 |
| 12,036,336 | B2 * | 7/2024 | Strbac | A61L 24/0031 |
| 12,274,807 | B2 * | 4/2025 | Strbac | A61L 24/0036 |
| 2006/0048426 | A1 | 3/2006 | Crandall | |
| 2006/0101695 | A1 | 5/2006 | Longueira | |
| 2007/0051236 | A1 | 3/2007 | Groves et al. | |
| 2007/0199435 | A1 | 8/2007 | Hochstrate et al. | |
| 2009/0151213 | A1 | 6/2009 | Bell | |
| 2009/0188145 | A1 | 7/2009 | Fluhr et al. | |
| 2011/0209607 | A1 | 9/2011 | St. George | |
| 2013/0118343 | A1 | 5/2013 | Hirt | |
| 2014/0311004 | A1 | 10/2014 | Barrett | |
| 2016/0010933 | A1 | 1/2016 | Bonner | |
| 2016/0102933 | A1 | 4/2016 | Graves | |
| 2016/0161202 | A1 | 6/2016 | Larue | |
| 2017/0176124 | A1 | 6/2017 | Wilson | |
| 2017/0219307 | A1 | 8/2017 | Foster | |
| 2017/0276447 | A1 | 9/2017 | Foster | |
| 2017/0284761 | A1 | 10/2017 | Lewis et al. | |
| 2017/0299309 | A1 | 10/2017 | Fellows et al. | |
| 2017/0328663 | A1 | 11/2017 | Fellows et al. | |
| 2018/0066911 | A1 | 3/2018 | Graves | |
| 2018/0087860 | A1 | 3/2018 | Sullivan et al. | |
| 2018/0112944 | A1 | 4/2018 | Underwood et al. | |
| 2018/0195823 | A1 | 7/2018 | Schafer et al. | |
| 2018/0202740 | A1 | 7/2018 | Elftmann, Jr. | |
| 2018/0231342 | A1 | 8/2018 | Martinez | |
| 2020/0191513 | A1 | 6/2020 | Foster | |
| 2021/0222974 | A1 | 7/2021 | Graves | |
| 2022/0364812 | A1 | 11/2022 | Fellows | |
| 2023/0097725 | A1 | 3/2023 | Davis et al. | |

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| EP | 1678458 | B1 | 2/2012 |
| EP | 2950033 | B1 | 11/2016 |
| TW | 409847 | U | 10/2000 |
| WO | 2016/028337 | A1 | 2/2016 |
| WO | 2018/058174 | A1 | 4/2018 |

OTHER PUBLICATIONS

https://gundigest.com/gun-reviews/gun-accessories/tac-con-3mr-trigger Shelton, "Tac-Con 3MR Triggers Aiming at Speed, Accuracy," Gun Digest (Jan. 2, 2014).

https://www.americanrifleman.org/content/tac-con-3mr-trigger-system/ "Tac-Con 3MR Trigger System," American Rifleman (Jan. 14, 2014).

https://archive.smallarmsreview.com/display.article.cfm?idarticles=2429 Todd Burgreen, "Tactical Fire Control Tac-Con 3MR Trigger: Hype or True Enhancement?," Small Arms Review (Feb. 21, 2014) (Article ID 2429).

https://archive.smallarmsreview.com/display.article.cfm?idarticles=2646 Chris A. Choat, "Tac-Con 3MR Trigger," Small Arms Review (May 16, 2014) (Article ID 2646).

https://www.shootingillustrated.com/content/tac-con-introduces-ar-15-and-ak-platform-triggers/ Shooting Illustrated, "Tac-Con Introduces AR-15 and AK-Platform Triggers," (posted on or about Nov. 25, 2014).

https://www.shootingsportsretailer.com/gear/video-review-tac-con-3mr-trigger-1 Shooting Sports Retailer materials dated Sep. 4, 2014.

https://www.shootingillustrated.com/content/taccon-3mr-trigger/ Grazio, "TacCon 3MR Trigger," Shooting Illustrated, May 15, 2015.

https://www.recoilweb.com/franklin-armory-releases-binary-firing-system-73759.html Recoil, , "Franklin Armory Releases 'Binary Firing System'," Sep. 2015.

https://gunsamerica.com/digest/fostechs-echo-trigger-fires-rapid-fire-double-taps/ GunsAmerica Digest, "Fostech's 'Echo' Trigger Fires Rapid-Fire Double-Taps," Jan. 21, 2016.

https://www.ar15.com/forums/ar-15/How-the-Fostech-Echo-controls-timing---short-video-/118-709932/- "How the Fostech Echo controls timing—short video.," Feb. 20, 2017.

https://www.globenewswire.com/news-release/2021/09/22/2301309/0/en/Introducing-the-Wide-Open-Trigger.html GlobeNewswire press release. Big Daddy Unlimited's "Wide Open Trigger," Sep. 22, 2021.

https://www.theoutdoorwire.com/releases/5b6cfb8c-0039-4100-ad16-7a801478e14d/ The Outdoor Wire, "Big Daddy Unlimited's Wide Open Trigger," Sep. 21, 2021.

https://www.youtube.com/watch?v=5MfLYgTe6NI "How a Browning Auto-5 works | World of Guns," Jul. 27, 2017.

* cited by examiner


10
72
78
84
23
21
50
22
76
74
38
58
36
51
110
60
64
53
16
12
66
26
32
24
30
18
48
46
20
54
38

FIG. 1


10
36
50
16
12
72
38
58
51
53
30
78
82
84
21
46
64
18
60
Q
74
32
110
22
48
20
114
38
66
54
38

FIG. 2


10
36
50
51
53
52
110
111
116
114
112
64
56
60
66
58
56
69
38
67
68
59
54
72
78
82
80
74
16
12
21
76
84
24
30
76
26
46
23
22
20
18
32
48

FIG. 3



FIG. 4A


10
12
46
30
56
52
36
32
64
60
50
53
51
48
50
54
67
58
20'
72
74
116
78
84
23
114
112
66
38
68
110

FIG. 4B



FIG. 5A



FIG. 5B


46
30
52
20
56
59
54
42
16
64
60
48
50
53
32
68
67
80
51
36
58
74
38
114
72
66
116
78
84
112
82
23
110
111
10

FIG. 6A

Exhibit H





FIG. 6B


18
102
42
30
40
12
92
104
99
46
52
56
50
36
58
57
98
72
94
78
86
84
96
90
32
68
44
112
114
66

FIG. 7



FIG. 8A

Exhibit H





FIG. 8B



FIG. 8C



FIG. 8D



FIG. 9A

Exhibit H





FIG. 9B



FIG. 9C

Exhibit H





FIG. 9D

# FIREARM TRIGGER MECHANISM

## RELATED APPLICATIONS

This application is a continuation of U.S. patent application Ser. No. 18/665,926 filed May 16, 2024, which is a continuation of U.S. patent application Ser. No. 18/346,423 filed Jul. 3, 2023, now U.S. Pat. No. 12,036,336 issued Jul. 16, 2024, which is a continuation of U.S. patent application Ser. No. 18/048,572 filed Oct. 21, 2022, now U.S. Pat. No. 11,724,003 issued Aug. 15, 2023, which claims the priority benefit of U.S. Provisional Patent Application No. 63/297,884 filed Jan. 10, 2022, all of which are hereby incorporated by reference herein as if fully set forth in their entirety.

## TECHNICAL FIELD

The present invention relates generally to a firearm trigger mechanism, and more particularly to a semiautomatic trigger that is selectively mechanically reset by movement of the bolt carrier.

## BACKGROUND

In a standard semiautomatic firearm, actuation of the trigger releases a sear, allowing a hammer or striker to fire a chambered ammunition cartridge. Part of the ammunition's propellant force is used to cycle the action, extracting and ejecting a spent cartridge and replacing it with a loaded cartridge. The cycle includes longitudinal reciprocation of a bolt and/or carrier, which also resets the hammer or striker.

A standard semiautomatic trigger mechanism includes a disconnector, which holds the hammer or striker in a cocked position until the trigger member is reset to engage the sear. This allows the firearm to be fired only a single time when the trigger is pulled and held, because the user is not typically able to release the trigger rapidly enough so that the sear engages before the bolt or bolt carrier returns to its in-battery position. The disconnector prevents the firearm from either firing multiple rounds on a single pull of the trigger, or from allowing the hammer or striker to simply "follow" the bolt as it returns to battery without firing a second round, but leaving the hammer or striker uncocked.

For various reasons, shooters desire to increase the rate of semiautomatic fire. Sometimes this is simply for entertainment and the feeling of shooting a machine gun. In the past, users have been known to employ "bump firing" to achieve rapid semiautomatic fire. Bump firing uses the recoil of the semiautomatic firearm to fire shots in rapid succession. The process involves bracing the rifle with the non-trigger hand, loosening the grip of the trigger hand (but leaving the trigger finger in its normal position in front of the trigger), and pushing the rifle forward in order to apply pressure on the trigger from the finger while keeping the trigger finger stationary. When fired with the trigger finger held stationary, the firearm will recoil to the rear and allow the trigger to reset as it normally does. When the non-trigger hand pulls the firearm away from the body and back forward toward the original position, it causes the trigger to be pressed against the stationary finger again, firing another round as the trigger is pushed back.

Devices for increasing the rate of semiautomatic fire are shown in U.S. Pat. Nos. 9,568,264; 9,816,772; and 9,939,221, issued to Thomas Allen Graves. The devices shown in these patents forcefully reset the trigger with rigid mechanical contact between the trigger member and the bolt as the action cycles. To adapt this invention to an AR-pattern firearm, for example, would require not only a modified fire control mechanism, but also a modified bolt carrier.

Other devices for increasing the rate of semiautomatic fire are shown in U.S. Pat. Nos. 10,514,223 and 11,346,627, which are hereby incorporated by reference herein as if fully set forth in their entirety. In these devices the hammer forces the trigger to the set position, and a locking bar prevents early hammer release.

Another device for increasing the rate of semiautomatic fire is shown in U.S. Pat. No. 7,398,723, issued to Brian A. Blakley, and is hereby incorporated by reference herein as if fully set forth in its entirety. The device shown in this patent has a pivoting cam which is contacted by the rearwardly traveling bolt carrier, pivoting the cam rearwardly such that the bottom surface of the cam presses downward on the trigger-extension, forcing the rear of the trigger down, and thereby moving forward the surface of the trigger that an operator's finger engages. Another device for increasing the rate of semiautomatic fire employing a pivoting cam arrangement is shown in U.S. Provisional Patent Application No. 63/374,941 filed Sep. 8, 2022, also invented by Brian A. Blakley, and which is hereby incorporated by reference herein as if fully set forth in its entirety. This pivoting cam arrangement incorporates a three-position safety selector and associated structure to provide safe, standard semi-automatic, and forced reset semi-automatic modes.

Further improvement in forced reset triggers is desired.

## SUMMARY OF INVENTION

The present invention provides a semiautomatic trigger mechanism for increasing rate of fire that can be retrofitted into popular existing firearm platforms. In particular, this invention provides a trigger mechanism that can be used in AR-pattern firearms with an otherwise standard M16-pattern bolt carrier assembly. The present invention is particularly adaptable for construction as a "drop-in" replacement trigger module that only requires insertion of two assembly pins and the safety selector. Advantageously, the present invention provides a "three position" trigger mechanism having safe, standard semi-automatic, and forced reset semi-automatic positions.

In one aspect, a firearm trigger mechanism comprises a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, the trigger member having a surface positioned to be contacted by the hammer during rearward pivoting of the hammer to cause the trigger member to be forced to the set position, wherein the sear and sear catch are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member, a disconnector having a hook for engaging the hammer and adapted to be mounted in the fire control mechanism pocket to pivot on the transverse trigger member pivot axis, a locking member adapted to be mounted in the fire control mechanism pocket to pivot on a transverse locking member pivot axis, the locking member being pivotable between a first position at which the locking member mechanically blocks the trigger member from moving to the released position and a second position at which the locking member

does not mechanically block the trigger member allowing the trigger member to be moved to the released position, the locking member spring biased toward the first position and adapted to be moved against the spring bias to the second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and a safety selector adapted to be mounted in the fire control mechanism pocket to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions. In the standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, at which time a user must manually release the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. In the forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer causing the trigger member to be forced to the set position, the safety selector preventing the disconnector hook from catching the hammer hook, and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull the trigger member to fire the firearm without manually releasing the trigger member.

The safety selector can have a protuberance thereon which, when the safety selector is in the forced reset semi-automatic position, contacts the disconnector preventing the disconnector hook from catching the hammer hook. The trigger mechanism can further include a spring which biases the trigger member towards the set position.

In another aspect, a firearm trigger mechanism comprises a housing having a first pair of transversely aligned openings for receiving a hammer pin and a second pair of transversely aligned openings for receiving a trigger member pin, a hammer having a sear catch and a hook for engaging a disconnector and mounted in the housing to pivot on the hammer pin between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, a trigger member having a sear and mounted in the housing to pivot on the trigger member pin between set and released positions, the trigger member having a surface positioned to be contacted by the hammer during rearward pivoting of the hammer to cause the trigger member to be forced to the set position, wherein the sear and sear catch are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member, a disconnector having a hook for engaging the hammer and mounted in the housing to pivot on the trigger member pin, a locking member mounted in the housing to pivot on a transverse locking member pin, the locking member being pivotable between a first position at which the locking member mechanically blocks the trigger member from moving to the released position and a second position at which the locking member does not mechanically block the trigger member allowing the trigger member to be moved to the released position, the locking member spring biased toward the first position and adapted to be moved against the spring bias to the second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and a safety selector adapted to be mounted in a fire control mechanism pocket of a receiver to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions. In the standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, at which time a user must manually release the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. In the forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer causing the trigger member to be forced to the set position, the safety selector preventing the disconnector hook from catching the hammer hook, and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull the trigger member to fire the firearm without manually releasing the trigger member.

The safety selector can have a protuberance thereon which, when the safety selector is in the forced reset semi-automatic position, contacts the disconnector preventing the disconnector hook from catching the hammer hook. The transversely aligned pairs of openings in the housing for receiving the hammer and trigger member pins can be adapted to be aligned with assembly pin openings in the fire control mechanism pocket. The trigger mechanism can further include a spring which biases the trigger member towards the set position. The spring can be a compression spring positioned between a forward end of the trigger member and a floor of the housing.

In another aspect, a firearm comprises a receiver having a fire control mechanism pocket therein, a reciprocating bolt carrier, a hammer having a sear catch and a hook for engaging a disconnector and mounted in the fire control mechanism pocket to pivot on a transverse hammer pivot axis between set and released positions, the hammer pivoted rearward by rearward movement of the bolt carrier, a trigger member having a sear and mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, the trigger member having a surface positioned to be contacted by the hammer during rearward pivoting of the hammer to cause the trigger member to be forced to the set position, wherein the sear and sear catch are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member, a disconnector having a hook for engaging the hammer and mounted in the fire control mechanism pocket to pivot on the transverse trigger member pivot axis, a locking member mounted in the fire control mechanism pocket to pivot on a transverse locking member pivot axis, the locking member being pivotable between a first position at which the locking member mechanically blocks the trigger member from moving to the released position and a second position at which the locking member does not mechanically block the trigger member allowing the trigger member to be moved to the released position, the locking member spring biased toward the first position and moved against the spring bias to the second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and a safety selector adapted to be mounted in the fire control mechanism pocket to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions. In the standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, at which time a user must manually release the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. In the forced reset semi-automatic position, rear-

ward movement of the bolt carrier causes rearward pivoting of the hammer causing the trigger member to be forced to the set position, the safety selector preventing the disconnector hook from catching the hammer hook, and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull the trigger member to fire the firearm without manually releasing the trigger member.

The firearm can further comprise a housing having a first pair of transversely aligned openings with a hammer pin therethrough and a second pair of transversely aligned openings with a trigger member pin therethrough, the hammer mounted on the hammer pin, the trigger member and disconnector mounted on the trigger member pin. The firearm can further comprise the receiver having a first pair of transversely aligned assembly pin openings and a second pair of transversely aligned assembly pin openings, the housing first pair of openings coaxial with the receiver first pair of openings and the housing second pair of openings coaxial with the receiver second pair of openings, a first assembly pin passing through the receiver first pair of openings and through the housing first pair of openings, and a second assembly pin passing through the receiver second pair of openings and through the housing second pair of openings. The firearm can further include a spring which biases the trigger member towards the set position. The spring can be a compression spring positioned between a forward end of the trigger member and a floor of the housing.

In another aspect, a firearm trigger mechanism comprises a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, the trigger member having a surface positioned to be contacted by a surface of the hammer during rearward pivoting of the hammer to cause the trigger member to be forced to the set position, wherein the sear and sear catch are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member, a disconnector having a hook for engaging the hammer and adapted to be mounted in the fire control mechanism pocket to pivot on the transverse trigger member pivot axis, a locking member adapted to be movably mounted in the fire control mechanism pocket, the locking member being movable between a first position at which the locking member mechanically blocks the trigger member from moving to the released position and a second position at which the locking member does not mechanically block the trigger member allowing the trigger member to be moved to the released position, the locking member spring biased toward the first position and adapted to be moved against the spring bias to the second position by contact from the bolt carrier during forward movement of the bolt carrier as the bolt carrier reaches a substantially in-battery position, and a safety selector adapted to be mounted in the fire control mechanism pocket to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions. In the standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, at which time a user must manually release the trigger member to free the hammer from the disconnector to permit



the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. In the forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer causing the trigger member to be forced to the set position, the safety selector preventing the disconnector hook from catching the hammer hook, and thereafter when the bolt carrier reaches the substantially in-battery position the user can pull the trigger member to fire the firearm without manually releasing the trigger member.

Other aspects, features, benefits, and advantages of the present invention will become apparent to a person of skill in the art from the detailed description of various embodiments with reference to the accompanying drawing figures, all of which comprise part of the disclosure.

## BRIEF DESCRIPTION OF THE DRAWINGS

Like reference numerals are used to indicate like parts throughout the various drawing figures, wherein:

FIG. **1** is a top front right perspective view of a drop-in trigger module for an AR-pattern firearm according to one embodiment of the invention.

FIG. **2** is a top rear right perspective view thereof.

FIG. **3** is a top rear right exploded perspective view thereof.

FIG. **4**A is a top rear right cross-sectional view thereof with the safety selector in the safe position and with the hammer and trigger member in their set positions.

FIG. **4**B is a bottom rear right cross-sectional view thereof with the safety selector in the safe position and with the hammer and trigger member in their set positions.

FIG. **5**A is a top rear right cross-sectional view thereof with the safety selector in the standard semi-automatic position and with the hammer and trigger member in their set positions.

FIG. **5**B is a bottom rear right cross-sectional view thereof with the safety selector in the standard semi-automatic position and with the hammer and trigger member in their set positions.

FIG. **6**A is a top rear right cross-sectional view thereof with the safety selector in the forced reset semi-automatic position and with the hammer and trigger member in their set positions.

FIG. **6**B is a bottom rear right cross-sectional view thereof with the safety selector in the forced reset semi-automatic position and with the hammer and trigger member in their set positions.

FIG. **7** is a cross-sectional view showing the trigger module installed in a typical AR15-pattern lower receiver, with the hammer and trigger member in their set positions and with the bolt carrier in an in-battery position, and with the safety selector in the safe position.

FIG. **8**A is a view similar to FIG. **7** but with the safety selector in the standard semi-automatic position.

FIG. **8**B is a view similar to FIG. **8**A but after the trigger has been pulled to drop the hammer.

FIG. **8**C is a view similar to FIG. **8**B but with the bolt carrier cycling to the rear to pivot the hammer.

FIG. **8**D is a view similar to FIG. **8**C but with the bolt carrier having returned to battery and the disconnector having caught the hammer.

FIG. **9**A is a view similar to FIG. **7** but with the safety selector in the forced reset semi-automatic position.

FIG. **9**B is a view similar to FIG. **9**A but after the trigger has been pulled to drop the hammer.

FIG. **9**C is a view similar to FIG. **9**B but with the bolt carrier cycling to the rear to pivot the hammer.

FIG. **9**D is a view similar to FIG. **9**C but with the bolt carrier having returned to battery and the hammer and trigger having returned to their set positions.

## DETAILED DESCRIPTION

With reference to the drawing figures, this section describes particular embodiments and their detailed construction and operation. Throughout the specification, reference to "one embodiment," "an embodiment," or "some embodiments" means that a particular described feature, structure, or characteristic may be included in at least one embodiment. Thus, appearances of the phrases "in one embodiment," "in an embodiment," or "in some embodiments" in various places throughout this specification are not necessarily all referring to the same embodiment. Furthermore, the described features, structures, and characteristics may be combined in any suitable manner in one or more embodiments. In view of the disclosure herein, those skilled in the art will recognize that the various embodiments can be practiced without one or more of the specific details or with other methods, components, materials, or the like. In some instances, well-known structures, materials, or operations are not shown or not described in detail to avoid obscuring aspects of the embodiments. "Forward" will indicate the direction of the muzzle and the direction in which projectiles are fired, while "rearward" will indicate the opposite direction. "Lateral" or "transverse" indicates a side-to-side direction generally perpendicular to the axis of the barrel. Although firearms may be used in any orientation, "left" and "right" will generally indicate the sides according to the user's orientation, "top" or "up" will be the upward direction when the firearm is gripped in the ordinary manner.

Referring first to FIGS. **1**-**6**B, there is illustrated a "drop-in" trigger module **10** adapted for use in an AR-pattern firearm according to a first embodiment of the present invention. As used herein, "AR-pattern" firearm includes the semiautomatic versions of the AR10 and AR15 firearms and variants thereof of any caliber, including pistol caliber carbines or pistols using a blow-back bolt. While select fire (fully automatic capable) versions of this platform, such as the M16 and M4, are also AR-pattern firearms, this invention only relates to semiautomatic firearm actions. The concepts of this invention may be adaptable to other popular semiautomatic firearm platforms, such as the Ruger 10/22™, AK-pattern firearms, and HK-pattern firearms.

The module **10** includes a frame or housing **12** sized and shaped to fit within the internal fire control pocket of an AR-pattern lower receiver **14**. Lower receiver parts not important to the present invention are well-known in the art and are omitted from the figures for clarity. The housing **12** includes forward left and right sidewalls **16**, **18** which extend substantially vertically and parallel to one another in a laterally spaced-apart relationship. The sidewalls **16**, **18** may be interconnected by a floor **20**. Shorter, more narrowly spaced apart and substantially vertical and parallel rear sidewalls **21**, **22** extend rearward from forward sidewalls **16**, **18** and are interconnected by a rear end wall **23**. The sidewalls **16**, **18** include first and second pairs of aligned openings **24**, **26** for receiving hollow transverse pins **30**, **32** upon which a hammer **36** and trigger member **38** pivot. The openings **24**, **26** are located coaxially with openings **42**, **44** in the lower receiver **14**. Standard AR-pattern hammer and trigger pins **46**, **48** pass through the openings **42**, **44** in the lower receiver **14** and through the hollow transverse pins **30**, **32** to assemble the housing **12** into the lower receiver **14**. Thus, the pins **30**, **32** retain the hammer **36** and trigger member **38** in the housing **12** in modular fashion, whereas the pins **46**, **48** retain the trigger module **10** in the lower receiver **14**.

The hammer **36** has a hammer head **50**, a sear catch **52**, a hammer hook **53**, and a concave contact surface **51**. The hammer **36** is spring biased towards a forward position by a standard AR-pattern hammer torsion spring (not shown).

The trigger member **38** has a trigger blade **54** that extends downwardly. The trigger blade **54** is the part of the trigger member **38** contacted by a user's finger to actuate the trigger mechanism. The trigger blade **54** may be curved (as shown) or straight, as desired. The trigger member **38** has a sear **56**. When the sear **56** and the sear catch **52** are engaged, the hammer **36** and trigger member **38** are in their set positions. When the sear **56** and sear catch **52** are not engaged, the hammer **36** and trigger member **38** are in their released positions. The trigger member **38** has a convex contact surface **58** that interacts with concave surface **51** on hammer **36** in a manner described below. The trigger member **38** also has a contact surface **69**. The trigger member **38** is spring biased by a compression spring **59** positioned between a forward end of the trigger member **38** and the floor **20** of the housing **12** so that the trigger blade **54** is spring biased towards a forward position.

A disconnector **60** is pivoted on the hollow transverse pin **32** upon which the trigger member **38** pivots. The disconnector **60** has a disconnector hook **64** and a tail **66**. The tail **66** of the disconnector **60** is spring biased upwardly away from a tail **68** of the trigger member **38** by a compression spring **67**.

A locking or blocking member **72** is movably mounted to the housing **12.** For example, the locking/blocking member **72** can be pivoted on a locking/blocking member pin or screw **74** that is installed in aligned openings **76** in the sidewalls **21**, **22** of the housing **12**. The locking member **72** has a first contact surface **78** that interacts with an engagement surface **94** in a rear portion **96** of a bolt carrier body **98** of a bolt carrier assembly **92**, in a manner to be described below. The locking member **72** has a second contact surface **80** that interacts with surface **69** of trigger member **38** in a manner to be described below. The locking member **72** is spring biased by a torsion spring **82** acting between a pin **84** in the sidewalls **21**, **22** and a lower portion of the locking member **72** such that surface **78** is biased rearward and surface **80** is biased forward. Alternatively, the locking/blocking member **72** can be slidably mounted to the housing **12** and spring biased forward by a compression spring.

An upper receiver **90** houses a bolt carrier assembly **92**. As is well-known in the art, the bolt carrier assembly **92** (or blow-back bolt) slidably reciprocates in the upper receiver **90** and engages the breach of a barrel or barrel extension. As used herein, "bolt carrier" and "bolt carrier assembly" may be used interchangeably and include a blow-back type bolt used in pistol caliber carbine configurations of the AR-platform. The bolt carrier assembly **92** used with the embodiments of this invention can have either a standard mil-spec M16-pattern bolt carrier, a standard AR15-pattern bolt carrier, or some variation of the two, depending on the design of the locking member **72**, and whether operated by a gas direct impingement system or a gas piston system. The bolt carrier assembly **92** has an engagement surface **94** in a rear portion **96** of the bolt carrier body **98**. As in an ordinary AR15-pattern configuration, during rearward travel of the bolt carrier assembly **92** a lower surface **102** in a forward portion **104** of the bolt carrier body **98** contacts the face of

the hammer head **50** causing the hammer **36** to pivot rearward. Rearward travel of bolt carrier assembly **92** also moves engagement surface **94** rearward and away from surface **78** of locking member **72**. The action of spring **82** causes locking member **72** to pivot in a first direction from a first position wherein surface **80** of locking member **72** does not impede upward movement of surface **69** of trigger member **38** to a second position wherein surface **80** of locking member **72** does impede upward movement of surface **69** of trigger member **38** thus preventing the trigger blade **54** from being pulled by the user. During forward travel of the bolt carrier assembly **92** the engagement surface **94** of the bolt carrier body **98** contacts the surface **78** of the locking member **72** to pivot the locking member **72** in a second opposite direction from the second position to the first position.

A three position safety selector **110** has safe, standard semi-automatic, and forced reset semi-automatic positions. When in the safe position (safety selector indicator **111** pointing forward), a wide semi-circular portion **112** of the safety selector **110** prevents the trigger blade **54** from being pulled (FIGS. **4**A, **4**B, and **7**). When in the standard semi-automatic position (safety selector indicator **111** pointing upward), a flat portion **114** of the safety selector **110** permits the trigger blade **54** to be pulled. The disconnector **60** can pivot with the trigger member **38** and the disconnector hook **64** can catch the hammer hook **53** during rearward pivoting travel of the hammer head **50**. (FIGS. **5**A and **5**B). When in the forced reset semi-automatic position (safety selector indicator **111** pointing rearward), a narrow semi-circular portion **116** permits the trigger blade **54** to be pulled but prevents the disconnector **60** from pivoting with the trigger member **38** thus preventing the disconnector hook **64** from catching the hammer hook **53** during rearward pivoting travel of the hammer head **50**. (FIGS. **6**A and **6**B). In other words, in the forced reset semi-automatic position, the disconnector **60** is "disabled" in that the disconnector hook **64** is unable to catch the hammer hook **53** during cycling of the bolt carrier assembly **92**.

Referring now to FIGS. **8**A-**8**D, with the safety selector **110** set in the standard semi-automatic position, rearward finger pressure on the trigger blade **54** causes the trigger member **38** to rotate clockwise. Rotation of the trigger member **38** causes the sear **56** to disengage from the sear catch **52** of the hammer **36**. This allows the hammer **36** to drop by spring force onto the firing pin **99** of the bolt carrier assembly **92**, discharging an ammunition cartridge (not shown), and causing the action to cycle by moving the bolt carrier assembly **92** rearward. Rearward travel of the bolt carrier assembly **92** frees the locking member **72** to pivot such that surface **80** is moved into a blocking position. Rearward travel of the bolt carrier assembly **92** also causes the lower surface **102** to contact the face of the hammer head **50** and pivot the hammer **36** counter-clockwise. During pivoting travel of the hammer **36** surface **51** contacts surface **58** of trigger member **38** forcing trigger member **38** to pivot counter-clockwise. Also during pivoting travel of the hammer **36** the disconnector hook **64** catches the hammer hook **53**. Forward travel of the bolt carrier assembly **92** returning to battery causes the surface **94** to contact the surface **78** of the locking member **72** to pivot the locking member **72** clockwise moving surface **80** out of the blocking position. At this point rearward finger pressure on the trigger blade **54** must be released to allow the sear **56** to engage the sear catch **52**, returning the hammer **36** and trigger member **38** to their set positions. Thereafter the user can reapply rearward finger pressure on the trigger blade **54** to fire another round.

Referring now to FIGS. **9**A-**9**D, with the safety selector **110** set in the forced reset semi-automatic position, rearward finger pressure on the trigger blade **54** causes the trigger member **38** to rotate clockwise. The narrow semi-circular portion **116** of the safety selector **110** prevents the disconnector **60** from rotating with the trigger member **38**, thus "disabling" the disconnector **60**, preventing the disconnector hook **64** from catching the hammer hook **53**. Rotation of the trigger member **38** causes the sear **56** to disengage from the sear catch **52** of the hammer **36**. This allows the hammer **36** to drop by spring force onto the firing pin **99** of the bolt carrier assembly **92**, discharging an ammunition cartridge, and causing the action to cycle by moving the bolt carrier assembly **92** rearward. Rearward travel of the bolt carrier assembly **92** frees the locking member **72** to pivot such that surface **80** is moved into a blocking position. Rearward travel of the bolt carrier assembly **92** also causes the lower surface **102** to contact the face of the hammer head **50** and pivot the hammer **36** counter-clockwise. During pivoting travel of the hammer **36** surface **51** contacts surface **58** of trigger member **38** forcing trigger member **38** to pivot counter-clockwise. The bolt carrier assembly **92** thereby forces the hammer **36** and trigger member **38** to their set positions wherein the sear **56** engages the sear catch **52**. Forward travel of the bolt carrier assembly **92** returning to battery causes the surface **94** to contact the surface **78** of the locking member **72** to pivot the locking member **72** clockwise. At this point the user can reapply rearward finger pressure on the trigger blade **54** to fire another round, without first manually releasing rear finger pressure on the trigger blade **54**.

Thus, as the bolt carrier assembly **92** returns forward, the trigger member **38** is held in its set position by the locking member **72**. The trigger member **38** cannot be pulled to release the sear/sear catch engagement, thus precluding early hammer release or "hammer follow" against the bolt carrier assembly **92** and firing pin **99** as the bolt carrier assembly **92** is returning to battery. When the bolt carrier assembly **92** has reached (or nearly reached) its closed, in-battery position, the engagement surface **94** contacts and forwardly displaces the contact surface **78** of the locking member **72**, disengaging the contact surface **80** of the locking member **72** from the contact surface **69** of the trigger member **38**, allowing the trigger blade **54** to be pulled. Again, this prevents early hammer release and contact of the hammer against the firing pin before the bolt is completely locked and in-battery.

While various embodiments of the present invention have been described in detail, it should be apparent that modifications and variations thereto are possible, all of which fall within the true spirit and scope of the invention. Therefore, the foregoing is intended only to be illustrative of the principles of the invention. The invention resides in each individual feature described herein, alone, and in any and all combinations and subcombinations of any and all of those features. Further, since numerous modifications and changes will readily occur to those skilled in the art, it is not intended to limit the invention to the exact construction and operation shown and described. Accordingly, all suitable modifications and equivalents may be included and considered to fall within the scope of the invention, defined by the following claim or claims.

What is claimed is:

**1**. A trigger mechanism for a firearm comprising:

a hammer having a hammer sear surface and a hammer hook and adapted to be mounted in a fire control mechanism pocket of a receiver to pivot on a transverse

hammer pivot axis between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of a bolt means;

a trigger member having a trigger member sear surface and adapted to be mounted in the fire control mechanism pocket to move between a set position and a released position, rearward pivoting of the hammer causing the trigger member to be forced to the set position;

wherein the hammer sear surface and trigger member sear surface are in engagement in the set position of the hammer and the set position of the trigger member and are out of engagement in the released position of the hammer and the released position of the trigger member;

a disconnector having a disconnector hook for engaging the hammer hook and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis

a locking member adapted to be movably mounted in the fire control mechanism pocket, the locking member being movable between a first position at which the locking member mechanically blocks the trigger member from moving to the released position and a second position at which the locking member does not mechanically block the trigger member allowing the trigger member to be moved to the released position and adapted to be moved to the second position by forward movement of the bolt; and

a safety selector adapted to be movably mounted in the fire control mechanism pocket to move between at least a safe position, a standard semi-automatic position, and a forced reset-semi-automatic position;

wherein in the standard semi-automatic position, rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, at which time a user must manually release pressure on the trigger member to free the hammer from the disconnector to permit the hammer and the trigger member to pivot to the set positions so that the user can actuate the trigger member to fire the firearm again; and

wherein in the forced reset semi-automatic position, rearward movement of the bolt means causes rearward pivoting of the hammer causing the trigger member to be forced to the set position, and the disconnector hook is prevented from catching the hammer hook, and thereafter when the bolt means reaches a substantially in-battery position or an in-battery position the user can actuate the trigger member to fire the firearm again.

**2**. The trigger mechanism of claim **1**, further comprising a spring which biases the trigger member toward the set position.

**3**. The trigger mechanism of claim **1**, wherein the safety selector is adapted to be pivotably mounted in the fire control mechanism pocket to pivot on a transverse safety selector pivot axis.

**4**. The trigger mechanism of claim **1**, wherein the locking member is adapted to be pivotably mounted in the fire control mechanism pocket to pivot on a transverse locking member pivot axis.

**5**. The trigger mechanism of claim **1**, wherein the trigger member pivots on a transverse trigger member pivot axis between the set position and the released position.

**6**. The trigger mechanism of claim **1**, wherein the locking member is spring biased toward the first position and adapted to be moved against the spring bias to the second position by contact from the bolt means during forward movement of the bolt means.

**7**. A trigger mechanism operable in a standard semi-automatic mode and in a forced reset semi-automatic mode for a firearm having a semi-automatic cycling action, comprising:

a hammer having a hammer sear surface and a hammer hook and adapted to pivot on a transverse hammer pivot axis between a hammer set position and hammer released position, the hammer adapted to be pivoted rearward by rearward movement of a bolt means;

a trigger member having a trigger member sear surface and adapted to move between a trigger member set position and a trigger member released position, cycling of the action causing the trigger member to be forced to the trigger member set position;

wherein the trigger member sear surface and the hammer sear catch are in engagement in the hammer set position-and the trigger member set position-and are out of engagement in the hammer released position-and the trigger member released position;

a disconnector having a disconnector hook for engaging the hammer hook and adapted to pivot on a transverse disconnector pivot axis; and

a locking member adapted to be movable between a first position at which the locking member mechanically blocks the trigger member from moving to the released position when in at least one mode of operation and a second position at which the locking member does not mechanically block the trigger member allowing said trigger member to be moved to the released position and adapted to be moved to the second position by forward movement of the bolt means,

wherein in the standard semi-automatic mode, rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook, at which time a user must manually reduce pressure on the trigger member to free the hammer from the disconnector to permit the hammer and the trigger member to pivot to the hammer set position and the trigger member set position so that the user can actuate the trigger member to fire the firearm again, and

wherein in the forced reset semi-automatic mode, rearward movement of the bolt means causes rearward pivoting of the hammer causing the trigger member to be forced to the trigger member set position, and the disconnector hook is prevented from holding the hammer hook, and thereafter when the bolt means reaches a substantially in-battery position or an in-battery position the user can actuate the trigger member to fire the firearm again.

**8**. The trigger mechanism of claim **7**, further comprising a spring which biases the trigger member toward the trigger member set position.

**9**. The trigger mechanism of claim **7**, wherein a safety selector is adapted to be pivotably mounted to pivot on a transverse safety selector pivot axis.

**10**. The trigger mechanism of claim **7**, wherein the locking member is adapted to be pivotably mounted in a fire control mechanism pocket to pivot on a transverse locking member pivot axis.

**11**. The trigger mechanism of claim **7**, wherein the trigger member pivots on a transverse trigger member pivot axis between the trigger member set position and the trigger member released position.

**12**. The trigger mechanism of claim **7**, wherein the locking member is spring biased toward the first position and adapted to be moved against the spring bias to the second position by contact from the bolt means during forward movement of the bolt means.

**13**. The trigger mechanism of claim **7**, further comprising a safety selector that is a separate part from the locking member.

**14**. A trigger mechanism for a firearm operable in at least a standard semi-automatic mode and a forced reset semi-automatic mode, comprising:

a hammer having a hammer sear catch and a hammer hook and adapted to pivot on a transverse hammer pivot axis between a set position and a released position, the hammer adapted to be pivoted rearward by rearward movement of a bolt means;

a trigger member having a trigger member sear and adapted to move between a set position and a released position, the trigger member being forced to the set position as a result of cycling action of the bolt means, such that the trigger member sear and the hammer sear catch are in engagement in the set position of the hammer and the set position of the trigger member and are out of engagement in the released position of the hammer and the released position of the trigger member;

wherein the trigger member sear and the hammer sear catch are in engagement in the set position of the hammer and the set position of the trigger member and are out of engagement in the released position of the hammer and the released position of the trigger member,

a disconnector having a disconnector hook for engaging the hammer hook and adapted to pivot on a transverse disconnector pivot axis; and

a locking member adapted to be movably mounted, the locking member being movable between a first position at which the locking member mechanically blocks the trigger member from moving to the released position and a second position at which the locking member does not mechanically block the trigger member allowing the trigger member to be moved to the released position and adapted to be moved to the second position by forward movement of the bolt means,

wherein in the standard semi-automatic mode, rearward movement of the bolt means causes rearward pivoting of the hammer such that the disconnector hook holds the hammer hook, at which time a user must manually reduce pressure on the trigger member to free the hammer from the disconnector to permit the hammer and the trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm again; and

wherein in the forced reset semi-automatic mode, rearward movement of the bolt means causes the trigger member to be forced to the set position, and the disconnector hook is prevented from holding the hammer hook, and thereafter when the bolt means reaches a substantially in-battery position or an in-battery position the user can actuate the trigger member to fire the firearm again.

**15**. The trigger mechanism of claim **14**, further comprising a safety selector, movement of which selects between at least standard semi-automatic mode and forced reset semi-automatic mode.

**16**. A trigger mechanism for a firearm comprising:

a hammer having a hammer sear catch and a hammer hook and adapted to pivot on a transverse hammer pivot axis between a hammer set position and a hammer released position, the hammer adapted to be pivoted rearward by rearward movement of a bolt means;

a trigger member having a trigger member sear and adapted to move between a trigger member set position and a trigger member released position, the trigger member being forced to the trigger member set position as a result of cycling action of the bolt means;

wherein the trigger member sear and the hammer sear catch are in engagement in the hammer set position-and trigger member set position-and are out of engagement in the hammer released position-and the trigger member released position;

a disconnector having a disconnector hook for engaging the hammer hook and adapted to pivot on a transverse disconnector pivot axis;

a locking member adapted to be movably mounted, the locking member being movable between a first position at which the locking member mechanically blocks the trigger member from moving to the trigger member released position and a second position at which the locking member does not mechanically block the trigger member allowing the trigger member to be moved to the trigger member released position and adapted to be moved to the second position by forward movement of the bolt means; and

a safety selector adapted to be movably mounted to move between at least standard semi-automatic position and forced reset semi-automatic position, wherein in the standard semi-automatic position, rearward movement of the bolt means causes rearward pivoting of the hammer such that thereafter the disconnector hook holds the hammer hook, after which a user must reduce rearward pressure on the trigger member before the trigger member can be actuated to fire the firearm again, and

wherein in the forced reset semi-automatic position, rearward movement of the bolt means causes the trigger member to be forced to the set position, the disconnector hook is prevented from holding the hammer hook, and thereafter, when the bolt means reaches a substantially in-battery position or an in-battery position, the trigger member can be actuated to fire the firearm again.

**17**. A trigger mechanism for a semi-automatic firearm, comprising:

a hammer comprising a hammer hook;

a disconnector comprising a disconnector hook for holding the hammer hook;

a trigger member, wherein the trigger member can be is forced into a trigger set position responsive to rearward motion of a cyclic semi-automatic action of the semi-automatic firearm; and

a locking member configured to move between a block position and a non-block position, wherein the block position mechanically blocks the trigger member from moving from the trigger set position to a trigger released position, wherein the non-block position permits the trigger member to be moved from the trigger set position to the trigger released position, wherein the locking member is moved into the block position during rearward motion of the cyclic semi-automatic

action and moved into the non-block position during forward motion of the cyclic semi-automatic action, and wherein:

in a standard semi-automatic mode, after cycling of the action and while the trigger member is in the trigger released position, the trigger mechanism is configured such that the disconnector hook holds the hammer hook, at which point, rearward pressure on the trigger member must be reduced before the trigger member can be actuated, and

in a forced reset semi-automatic mode, the disconnector hook is prevented from holding the hammer hook, and the trigger member can be actuated when the cyclic semi-automatic action reaches a substantially in-battery position or an in-battery position.

**18**. The trigger mechanism of claim **17**, wherein the cyclic semi-automatic action comprises a bolt.

**19**. The trigger mechanism of claim **17**, wherein the hammer is configured to pivot on an axis substantially perpendicular to an axis of the cyclic semi-automatic action.

**20**. The trigger mechanism of claim **17**, wherein the hammer is configured to pivot between a hammer set position and a hammer released position.

**21**. The trigger mechanism of claim **17**, wherein the disconnector is configured to pivot on an axis substantially perpendicular to an axis of the cyclic semi-automatic action.

**22**. The trigger mechanism of claim **17**, wherein the trigger member is configured to pivot on an axis substantially perpendicular to an axis of the cyclic semi-automatic action.

**23**. The trigger mechanism of claim **17**, wherein the trigger member is configured to pivot between the trigger set position and a trigger released position.

**24**. The trigger mechanism of claim **17**, wherein the hammer is configured to pivot rearwardly responsive to rearward motion of the cyclic semi-automatic action.

**25**. The trigger mechanism of claim **17**, wherein the hammer comprises a hammer sear surface and the trigger member comprises a trigger sear surface, and wherein the hammer sear surface and the trigger sear surface are in engagement when, simultaneously, the hammer is in a hammer set position and the trigger member is in the trigger set position.

**26**. The trigger mechanism of claim **17**, wherein the locking member is configured to pivot on an axis substantially transverse to a reciprocation axis of the cyclic semi-automatic action.

**27**. The trigger mechanism of claim **17**, further comprising a spring which biases the trigger member toward the trigger set position.

**28**. The trigger mechanism of claim **17**, comprising a safety selector, wherein the safety selector is configured to be pivotably mounted to pivot on a transverse axis of the semi-automatic firearm and substantially perpendicular to an axis of the cyclic semi-automatic action.

**29**. The trigger mechanism of claim **17**, comprising a safety selector, wherein the safety selector is selectable between at least the standard semi-automatic mode and the forced reset semi-automatic mode.

**30**. The trigger mechanism of claim **17**, comprising a safety selector that is separate from the locking member.

**31**. The trigger mechanism of claim **17**, wherein the locking member is biased by a spring toward the block position.

**32**. A trigger mechanism for a semi-automatic firearm operable in at least a standard semi-automatic mode and a forced reset semi-automatic mode, comprising:

a disconnector;

a trigger member, wherein the trigger member is forced into a trigger set position responsive to rearward motion of a cyclic semi-automatic action of the semi-automatic firearm; and

a locking member configured to move between a block position and a non-block position, wherein the block position mechanically blocks the trigger member from moving from the trigger set position to a trigger released position, wherein the non-block position permits the trigger member to be moved from the trigger set position to the trigger released position, wherein the locking member is moved into the block position during rearward motion of the cyclic semi-automatic action and moved into the non-block position during forward motion of the cyclic semi-automatic action;

a safety selector, wherein the safety selector is selectable between at least the standard semi-automatic mode and the forced reset semi-automatic mode; and wherein:

in the standard semi-automatic mode, rearward pressure on the trigger member must be reduced to disengage a hammer from the disconnector before the trigger member can again be actuated; and

in the forced reset semi-automatic mode, the trigger member is forced to the trigger set position and can be actuated without reducing pressure on the trigger member to fire another round when the cyclic semi-automatic action reaches a substantially in-battery position or an in-battery position.

**33**. The trigger mechanism of claim **1**, wherein the bolt means comprises a bolt carrier assembly.

**34**. The trigger mechanism of claim **7**, wherein the bolt means comprises a bolt carrier assembly.

**35**. The trigger mechanism of claim **14**, wherein the bolt means comprises a bolt carrier assembly.

**36**. The trigger mechanism of claim **16**, wherein the bolt means comprises a bolt carrier assembly.

**37**. A trigger mechanism operable in a standard semi-automatic mode and in a forced reset semi-automatic mode for a firearm having a semi-automatic cycling action, comprising:

a hammer having a hammer sear surface and a hammer hook and adapted to pivot on a transverse hammer pivot axis between a set position and released position, the hammer adapted to be pivoted rearward by a rearward phase of the semi-automatic cycling action;

a trigger member having a trigger member sear surface and adapted to move between a set position and a released position;

wherein the trigger member sear surface and the hammer sear surface are in engagement when the hammer and trigger member are each in their respective set position and are out of engagement when either the hammer or trigger member is not in their respective set position;

a disconnector having a disconnector hook and adapted to pivot on a transverse disconnector pivot axis; and

a locking member adapted to be movable between a first position at which the locking member mechanically blocks the trigger member from moving to the released position when in at least one mode of operation and a second position at which the locking member does not mechanically block the trigger member allowing said trigger member to be moved to the released position and adapted to be moved to the second position by a forward phase of the semi-automatic cycling action;

wherein in the standard semi-automatic mode, the rearward phase of the semi-automatic cycling action causes

a rearward pivot of the hammer to a position where the hammer hook is past the disconnector hook, the hammer sear surface is not in engagement with the trigger member sear surface, and, thereafter, rearward pressure on the trigger member must be reduced to permit the hammer and the trigger member to pivot to their respective set positions where the hammer sear surface engages with the trigger member sear surface, so the trigger member can be actuated to fire the firearm again; and

wherein in the forced reset semi-automatic mode the disconnector hook is prevented from catching the hammer hook and the rearward phase of the semi-automatic cycling action causes (1) rearward pivoting of the hammer to a position where the hammer hook is past the disconnector hook, (2) the trigger member to be forced to its respective set position, and (3) the hammer sear surface to be not in engagement with the trigger member sear surface, and thereafter, the hammer forwardly pivots to its respective set position with the hammer hook passing the disconnector hook, the hammer sear surface engages with the trigger member sear surface, and when the forward phase of the semi-automatic cycling action reaches an in-battery position, rearward pressure on the trigger member the trigger member does not need to be released to actuate the trigger member to fire the firearm again.

**38**. A forced reset trigger mechanism, comprising:

a hammer having a hammer hook and adapted to pivot on a transverse hammer pivot axis;

a disconnector having a disconnector hook and adapted to pivot on a transverse disconnector pivot axis;

a trigger member; and

a safety selector adapted to be movable between a standard semi-automatic position and a forced reset semi-automatic position,

wherein when the safety selector is in the standard semi-automatic position and the trigger member is rearwardly actuated, and after the hammer pivots rearward to a position where the hammer hook is past the disconnector hook, rearward pressure on the trigger member must be reduced to permit the trigger member to then be actuated to fire a firearm.

**39**. A forced reset trigger mechanism, comprising:

a hammer having a hammer hook and adapted to pivot on a transverse hammer pivot axis;

a disconnector having a disconnector hook and adapted to pivot on a transverse disconnector pivot axis;

a trigger member; and

a safety selector adapted to be movable between a standard semi-automatic position and a forced reset semi-automatic position,

wherein, when in either position, when the trigger member is pulled rearward, cycling of a firearm action rearwardly pivots the hammer to a position where the hammer hook is past the disconnector hook,

wherein if the safety selector is in the standard semi-automatic position, rearward pressure on the trigger member must be reduced to permit the trigger member to then be actuated to fire a firearm, and

wherein, if the safety selector is in the forced reset semi-automatic position, the trigger member is forced to move to a full reset position against rearward pressure on the trigger member and the rearward pressure on the trigger member does not need to be reduced to actuate the trigger to fire the firearm.

**40**. A forced reset trigger mechanism, comprising:

a hammer having a hammer hook and adapted to pivot on a transverse hammer pivot axis;

a disconnector having a disconnector hook and adapted to pivot on a transverse disconnector pivot axis;

a trigger member; and

a safety selector adapted to be movable between a standard semi-automatic position and a forced reset semi-automatic position, wherein, when in either position, when the trigger member is pulled rearward, cycling of a firearm action rearwardly pivots the hammer to a position where the hammer hook is past the disconnector hook,

wherein, if the safety selector is in the standard semi-automatic position, rearward pressure on the trigger member must be reduced to permit the trigger member to then be actuated to fire a firearm, and

wherein, when the safety selector is in the forced reset semi-automatic position, the hammer contacts the trigger member and forces the trigger member to move to a full reset position against rearward pressure on the trigger member and the rearward pressure on the trigger member does not need to be reduced to actuate the trigger to fire the firearm.

**41**. A forced reset trigger mechanism, comprising:

a trigger member configured to pivot about a transverse pivot axis and having a thickness defined between opposing lateral side surfaces; and

a disconnector positioned laterally adjacent to the trigger member.

**42**. The trigger mechanism of claim **41**, wherein a combined lateral width of the trigger member and the disconnector is sized to fit within a fire control mechanism pocket.

**43**. The trigger mechanism of claim **41**, wherein the trigger member includes a relieved portion extending inward from one of the opposing lateral side surfaces, the relieved portion being configured to receive at least a portion of the disconnector.

**44**. A forced reset trigger mechanism, comprising:

a trigger member configured to pivot about a transverse pivot axis and having opposing lateral side surfaces; and

a disconnector disposed laterally adjacent to the trigger member,

wherein the trigger member includes a reduced-thickness region defined at one of the opposing lateral side surfaces, and the disconnector is received at least partially within the reduced-thickness region such that the trigger member and the disconnector collectively define an overall lateral width.

**45**. A forced reset trigger mechanism, comprising:

a trigger member configured to pivot about a transverse pivot axis; and

a disconnector positioned laterally adjacent to the trigger member,

wherein the trigger member defines a lateral accommodation space, and the disconnector occupies at least a portion of the lateral accommodation space such that the trigger member and the disconnector overlap laterally.

**46**. A forced reset trigger mechanism, comprising:

a trigger member configured to pivot on a transverse trigger pivot axis, a forward of the trigger member comprising a downward oriented stop surface configured to abut an arresting surface that stops travel of the trigger when the trigger is pulled.

**47**. The forced reset trigger mechanism of claim **46**, wherein the arresting surface is an interior surface of a trigger cassette housing.

**48**. A forced reset trigger mechanism, comprising:

a hammer having a hammer hook;

a disconnector having a disconnector hook;

a trigger member; and

a safety selector adapted to be movable between a standard semi-automatic position and a forced reset semi-automatic position, wherein when the safety selector is moved from the standard semi-automatic position and into the forced reset semi-automatic position, the disconnector is moved into a position where, after the hammer hook passes the disconnector hook during firearm cycling, a reduction in rearward pressure on the trigger member is not required to fire a next shot.

**49**. A forced reset trigger mechanism, comprising:

a hammer having a hammer hook;

a disconnector having a disconnector hook;

a trigger member; and

a safety selector adapted to be movable between a standard semi-automatic position and a forced reset semi-automatic position, wherein when the safety selector is moved from the standard semi-automatic position and into the forced reset semi-automatic position, a portion of the safety selector moves the disconnector into a position so as to prevent the disconnector hook from catching the hammer hook where, after the hammer hook passes the disconnector hook during firearm cycling, a reduction in rearward pressure on the trigger member is not required to fire a next shot.

**50**. A trigger mechanism operable in a standard semi-automatic mode and in a forced reset semi-automatic mode for a firearm having a semi-automatic cycling action, comprising:

a hammer, having a hammer sear surface and a hammer hook, adapted to pivot on a hammer pivot axis between a hammer set position and a hammer released position, the hammer adapted to pivot rearward by a rearward phase of the semi-automatic cycling action;

a trigger member, having a trigger member sear surface, adapted to move between a trigger set position and a trigger released position;

wherein the trigger member sear surface and the hammer sear surface are in engagement when the hammer and trigger member are both in their respective set position and are out of engagement when either the hammer or trigger member is not in its respective set position;

a disconnector, having a disconnector hook for engaging the hammer hook, adapted to pivot on a disconnector pivot axis; and

a locking member adapted to be movable between a first position, where the locking member mechanically blocks the trigger member from moving from the trigger set position to the trigger released position, and a second position, where the locking member does not mechanically block the trigger member;

wherein said locking member is adapted to be moved from said first position to said second position by a forward phase of the semi-automatic cycling action;

whereas, in the standard semi-automatic mode, the trigger mechanism is configured such that rearward pressure on the trigger member causes the trigger member to move from the trigger set position toward the trigger released position, this movement causes the hammer to move from the hammer set position to the hammer release position, thereafter the hammer is positioned to pivot rearward;

whereas, the semi-automatic cycling action rearwardly pivots the hammer to a position where the hammer hook is below the disconnector hook;

following rearward pivot of the hammer from the hammer release position and while there is rearward pressure on the trigger member, the hammer hook is configured to engage the disconnector hook, and thereafter the rearward pressure on the trigger member must be reduced to allow the hammer hook to pivot forward above the disconnector hook and for the trigger member sear surface to engage with the hammer sear surface;

whereas, in the forced reset semi-automatic mode, the trigger mechanism is configured such that the disconnector hook is rearwardly displaced such that it cannot engage the hammer hook and rearward movement of the hammer causes the trigger member to move from the trigger released position to the trigger set position despite rearward pressure on the trigger member; and

whereas thereafter, the hammer returns to the hammer set position such that the hammer sear surface and the trigger member sear surface are engaged.

**51**. In a forced reset trigger mechanism, an assembly, comprising:

a trigger housing configured to be mounted in a fire control mechanism pocket of a firearm, the housing supporting a locking member, the locking member configured to be movable between a first position and a second position, wherein in the second position the locking member blocks the trigger from being actuate, and

a safety selector capable of at least standard semi-automatic mode and forced reset semi-automatic mode.

**52**. A forced reset trigger assembly for installation within a fire control pocket of a firearm, comprising:

a trigger housing configured to be receivable within the fire control pocket;

a trigger member pivotally supported by the trigger housing;

a locking member movably supported by the trigger housing and movable relative to the trigger member, the locking member movable between:

(a) a blocking position in which movement of the trigger member is prevented; and

(b) a non-blocking position in which the trigger member is permitted to move; and

a selector having at least two discrete operating positions including:

(i) a standard semi-automatic position; and

(ii) a forced-reset position in which the trigger assembly operates in a forced reset firing mode.

**53**. A forced reset trigger mechanism, comprising:

a trigger member configured to pivot about a transverse axis;

a hammer;

a disconnector operatively associated with the trigger member and the hammer; and

a locking member operatively associated with the trigger member,

wherein cycling of the action causes the trigger member to be forced to the set position in at least one operating mode; and

wherein the trigger mechanism is configured such that, when combined with a selector having an alternate selectable position, the trigger mechanism is enabled

for a forced reset operating mode corresponding to the alternate selectable position.

**54**. A forced reset trigger mechanism, comprising:

a trigger member configured to pivot about a transverse axis;

a hammer;

a disconnector operatively associated with the trigger member and the hammer;

a locking member operatively associated with the trigger member;

wherein cycling of the action causes the trigger member to be forcibly returned to a set position in at least one operating mode; and

wherein the trigger mechanism includes a selector interface structured to cooperate with a selector having at least two discrete selectable positions including:

(i) a standard semi-automatic position; and

(ii) a forced-reset position,

such that rotation of the selector to the forced reset position enables said forced reset operating mode.



**55**. A forced reset trigger mechanism, comprising:

a trigger member pivotable about a transverse axis;

a hammer;

a disconnector operatively associated with the trigger member and the hammer;

a locking member operatively associated with the trigger member;

wherein cycling of the firearm action causes the trigger member to be returned to a set position; and

wherein the trigger mechanism includes a selector interface structured to cooperate with a selector rotatable between at least two discrete positions including:

(i) a semi-automatic position in which the trigger resets without forced forward drive; and

(ii) a forced-reset position in which cycling of the action positively drives the trigger member forward to the set position.

* * * * *